**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re VITAMIN C ANTITRUST LITIGATION | ) ) ) ) |  1:06-MD-01738 (DGT) (JO) |

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | ) ) ) |
| ANIMAL SCIENCE PRODUCTS, INC., et al. | ) ) ) |
| Plaintiffs, | ) ) |  CV-05-453 |
| v. | ) ) |
| HEBEI WELCOME PHARMACEUTICAL CO. LTD., et al. | ) ) ) |
| Defendants. | ) |


**MEMORANDUM IN SUPPORT OF THE RANIS COMPANY'S**
<u>**MOTION FOR CLASS CERTIFICATION**</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

  A.  The Defendants' Conspiracy ...................................................................................... 1

  B.  Ranis Is An Assignee of a Direct Purchaser. ............................................................ 5

PROCEDURAL SUMMARY ............................................................................................. 6

ARGUMENT ....................................................................................................................... 8

  A.  Class Actions Are Favored Because of Their Importance in Enforcing the Antitrust Laws. ......................................................................................................... 8

  B.  The Standard for Class Certification Under Rule 23 ................................................ 9

  C.  The Damages Class Satisfies the Requirements of Rule 23(a). .............................. 10

      1.  The Damages Class Is Sufficiently Numerous. ............................................. 10

      2.  Defendants Have Stipulated to Commonality. ............................................... 11

      3.  Ranis's Claims Are Typical of the Class Claims. .......................................... 12

          a.  Ranis's Claims Involve the Same Facts and Legal Theory as the Claims of the Putative Class. ...................................................... 13

          b.  The Valid Assignment of Claims to Ranis Does Not Make Its Claims Untypical. ......................................................................... 14

          c.  Ranis's Arbitration Agreement with a Non-Defendant Does Not Make Its Claims Untypical. ....................................................... 16

      4.  Ranis Will Adequately and Fairly Protect the Interests of the Class. ........... 18

          a.  Ranis Shares Identical Interests with the Class Members. .................. 18

          b.  Ranis Will Vigorously Pursue the Class Claims. ................................ 21

          c.  Ranis's Counsel Are Qualified, Experienced, and Able to Conduct This Litigation. ........................................................................... 21

  D.  This Controversy Can Be Adjudicated as a Class Action under Rule 23(b)(3). ............... 22

      1.  Defendants Have Also Stipulated to Predominance. ..................................... 22

729359v1/008808

2.   No Other Significant Individual Issues Exist. ........................................................... 23

3.   A Class Action Is the Superior Method for Adjudicating This Dispute. .................... 23

CONCLUSION .......................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*In re Antibiotic Antitrust Actions*,
  333 F. Supp. 278 (S.D.N.Y. 1971), *amended by* 333 F. Supp. 291 (S.D.N.Y.),
  *mandamus denied sub nom. Pfizer, Inc. v. Lord*, 449 F.2d 119 (2d Cir. 1971) ................ 8

*Arden Architectural Specialties, Inc. v. Wash. Mills Electro Minerals Corp.*,
  2002-2 Trade Cas. (CCH) ¶  73,818 (W.D.N.Y. Sept. 17, 2002)................................. 8

*In re Ashanti Goldfields Securities Litigation*,
  No. CV 00-0717(DGT), 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) ......................... 10

*In re Auction Houses Antitrust Litigation*,
  193 F.R.D. 162 (S.D.N.Y. 2000) ................................................................. 8

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000) ........................................................................ 18

*In re Blech Sec. Litigation*,
  187 F.R.D. 97 (S.D.N.Y. 1999) .............................................................10, 11

*In re Brand Name Prescription Drugs Antitrust Litigation*,
  Nos. 94 C 897, MDL 997 (N.D. Ill. Nov. 18, 1994)...................................... 23

*In re Buspirone Patent Litigation*,
  210 F.R.D. 43 (S.D.N.Y. 2002)................................................................. 8

*In re Cardizem CD Antitrust Litigation*,
  200 F.R.D. 297 (D. Mich. 2001).........................................................14, 15, 19

*Coleman v. Cannon Oil Co.*,
  141 F.R.D. 516 (M.D. Ala. 1992)............................................................. 18

*Coleman v. GM Acceptance Corp.*,
  220 F.R.D. 64 (D. Tenn. 2004)................................................................ 17

*Consolidated Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995)..................... 10

*In re Currency Conversion Fee Antitrust Litigation*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005)........................................................ 8

*East Texas Motor Freight v. Rodriguez*,
  431 U.S. 395 (1977).............................................................................. 13

*Fears v. Wilhelmina Model Agency, Inc.*,
    No. 02 Civ. 4911, 2003 U.S. Dist. LEXIS 11897 (S.D.N.Y. July 15, 2003) .................... 8

*Fifth Moorings Condo., Inc. v. Shere*,
    81 F.R.D. 712 (S.D. Fla. 1979).................................................................................. 23

*Finnan v.  L.F. Rothschild & Co.*,
    726 F. Supp. 460 (S.D.N.Y. 1989) ............................................................................ 17

*Fogarazzao v. Lehman Brothers, Inc.*,
    232 F.R.D. 176 (S.D.N.Y. 2005) .............................................................................. 13

*In re Folding Carton Antitrust Litigation*,
    75 F.R.D. 727 (N.D. Ill. 1977) ................................................................................. 24

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990) ..................................................................................... 16

*General Telegraph Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)................................................................................................... 9

*In re Glassine & Greaseproof Paper Antitrust Litigation*,
    88 F.R.D. 302 (E.D. Pa. 1980) ................................................................................. 22

*Gulfstream III Associates v. Gulfstream Aero. Corp.*,
    995 F.2d 425 (3d Cir. 1993) ..................................................................................... 14

*Harris v. Initial Sec., Inc.*,
    No. 05 Civ. 38373(GBD), 2007 WL 703868 (S.D.N.Y. Mar. 7, 2007) ........................ 12

*In re Industrial Diamonds Antitrust Litigation*,
    167 F.R.D. 374 (S.D.N.Y. 1996) ............................................................................... 8

*In re Initial Public Offering Securities Litigation ("In re IPO")*,
    471 F.3d 24 (2d Cir. 2006) .................................................................................. 9, 20

*In re Initial Public Offering Sec. Litigation*,
    No. 21 MC 92 (SAS), 01 Civ. 3020 2007 WL. 656880 (S.D.N.Y. Feb. 28, 2007) ....13, 17

*In re Magnetic Audiotape Makers Antitrust Litigation*,
    No. 99 Civ. 1580, 2001 U.S. Dist. LEXIS 7303 (S.D.N.Y. June 1, 2001) ...................... 8

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .......................................................................10, 13, 14

v

*In re Master Key Antitrust Litigation*,
 70 F.R.D. 23 (D. Conn. 1975) ............................................................................. 8

*McDaniel v. North American Indemnity, N.V.*,
 2003 U.S. Dist. LEXIS 1663 (D. Ind. Jan. 27, 2003) ...............................15, 19

*Monaco v. Stone*,
 187 F.R.D. 50 (E.D.N.Y. 1999) ........................................................................ 11

*Murray v. Cingular Wireless Services*,
 232 F.R.D. 295 (N.D. Ill. 2005) ....................................................................... 17

*In re NASDAQ Market-Makers Antitrust Litigation*,
 169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................... 8, 23

*Parker v. Time Warner Entertainment Co., L.P.*,
 239 F.R.D. 318 (E.D.N.Y. 2007) ..................................................................... 21

*In re Playmobil Antitrust Litigation*,
 35 F. Supp. 2d 231 (E.D.N.Y. 1998) ......................................................8, 13, 23

*Presbyterian Church v. Talisman Energy, Inc.*,
 226 F.R.D. 456 (S.D.N.Y. 2005) ...................................................................... 11

*In re Public Offering Fee Antitrust Litigation*,
 00 Civ. 7804 (LMM), 2006 U.S. Dist. LEXIS 21076 (S.D.N.Y. Apr. 18, 2006) ........... 20

*Robinson v. Metropolitan-North Commuter R.R. Co.*,
 267 F.3d 147 (2d Cir. 2001) .....................................................................13, 14, 18

*Rutstein v. Avis Rent-A-Car System, Inc.*,
 211 F.3d 1228 (11th Cir. 2000) ....................................................................... 22

*In re S. Central States Baking Products Antitrust Litigation*,
 86 F.R.D. 407 (M.D. La. 1980) ........................................................................ 19

*Scholes v. Stone, McGuire & Benjamin*,
 143 F.R.D. 181 (N.D. Ill. 1992) ....................................................................... 24

*Schwab v. Philip Morris USA, Inc.*,
 449 F. Supp. 2d 992 (E.D.N.Y. 2006) .............................................................. 21

*Shelter Realty Corp. v. Allied Maintenance Corp.*,
 75 F.R.D. 34 (S.D.N.Y. 1977) .......................................................................... 23

*Town of New Castle v. Yonkers Contracting Co.*,
     131 F.R.D. 38 (S.D.N.Y. 1990) ................................................................. 8

*United National Records, Inc. v. MCA, Inc.*,
     101 F.R.D. 323 (N.D. Ill. 1985) ............................................................. 24

*In re Visa Check/Master Money Antitrust Litigation*,
     192 F.R.D. 68 (E.D.N.Y. 2000) ............................................................... 8

*In re Visa Check/Master Money Antitrust Litigation*,
     280 F.3d 124 (2d Cir. 2001) ........................................................8, 18, 22

*In re Vitamins Antitrust Litigation*,
     209 F.R.D. 251 (D.D.C. 2002) ....................................................8, 22, 25

*In re Vivendi Universal, S.A. Securities Litigation*,
     --- F.R.D. ---, 2007 WL 861147 (S.D.N.Y. Mar. 22, 2007) ................ 12

*Weissman v. ABC Finance Services, Inc.*,
     203 F.R.D. 81 (E.D.N.Y. 2001) ............................................................. 10

## STATUTES

15 U.S.C. § 1 ................................................................................................. 1, 8

28 U.S.C. § 1407 ............................................................................................... 7

## RULES

Fed. R. Civ. P. 12 ............................................................................................. 7

Fed. R. Civ. P. 23 .......................................................................................*passim*

## MISCELLANEOUS

*As China's Trade Clout Grows, So Do Price-Fixing Accusations*
     WALL ST. J., Feb. 10, 2006 ....................................................................... 3

Plaintiff The Ranis Company ("Ranis") respectfully submits this memorandum in support of its motion for certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23.

# I N T R O D U C T I O N

This case arises from an ongoing conspiracy among Chinese manufacturers to fix the price and control the supply of vitamin C that is exported to the United States in violation of Section 1 of the Sherman Act. Ranis seeks certification of a direct purchaser class composed of the following members:

> All persons or entities, or assignees of such persons or entities, who directly purchased vitamin C for delivery in the United States, other than pursuant to a contract containing an arbitration clause, from any of Defendants or their co-conspirators, other than Northeast Pharmaceutical (Group) Co. Ltd., from December 1, 2001 to the present. Excluded from the proposed class are all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates.

Ranis proposes to represent this class of direct purchasers (the "Damages Class"), which is primarily comprised of brokers and distributors of pharmaceutical and vitamin products, but also includes food and beverage manufacturers, feed mills, premix blenders, and vitamin packagers for human distribution.

Certification of this horizontal price-fixing antitrust Damages Class should raise few, if any, thorny and complicated legal issues because **Defendants have already stipulated to commonality under Rule 23(a)(2) and** agreed that individual issues with respect to the common issues of law and fact will not defeat **predominance under Rule 23(b)(3)**.

## A.   THE DEFENDANTS' CONSPIRACY

Ranis is one of the two named plaintiffs bringing this federal antitrust class action against the Defendants: Hebei Welcome Pharmaceutical Co. Ltd., Jiangsu Jiangshan

Pharmaceutical Co., Ltd., Weisheng Pharmaceutical Co. Ltd., Shijiazhuang Pharmaceutical (USA), Inc., China Pharmaceutical Group Ltd., North China Pharmaceutical Group Corp., North China Pharmaceutical Co., Ltd., and North China Pharmaceutical Group Import & Export Trade Co., Ltd.[1]  The Defendants are a group of Chinese companies that manufacture vitamin C for export to the United States.  *See* FIRST AMENDED COMPLAINT [Doc #124] ("FIRST AM. COMPL.") ¶¶ 1-2, 8-9, 12-17.

Defendants are members of a nongovernmental trade association, also referred to as a social organization, called the China Chamber of Medicines & Health Products Importers & Exporters ("Chamber of Medicines & Health").  *See* DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS [Doc #67], at p. 6.  The Chamber of Medicines & Health includes a "Vitamin C Subcommittee" whose members also include Defendants in this action.  *Id.* at p. 7.  The global market for vitamin C is over $500 million.  FIRST AM. COMPL. ¶ 33.  The vitamins manufactured by defendants are commonly used in the United States in a variety of contexts, and the U. S. market for vitamin C exceeds $100 million per year.  *Id.* ¶ 30.

By 2001, the Defendants had captured and dominated the international market for vitamin C.  *Id.* ¶¶ 44-45.  At the same time that Chinese companies had acquired this market power, vitamin C prices had fallen below $3 per kg.  *Id.* ¶ 48.  In response to these developments, beginning in December 2001, Defendants and their co-conspirators formed a cartel to fix prices and control the volume of exports for vitamin C.  *Id.* ¶ 46.

According to records of the Chamber of Medicines & Health:

---

[1]  Ranis has voluntarily dismissed Northeast Pharmaceutical (Group) Co., Ltd. ("NEPG"), which was previously named as a defendant, from these proceedings.  *See* NOTICE OF VOLUNTARY DISMISSAL OF ACTION [Doc. #118].  NEPG remains a defendant in Animal Science Products, Inc.'s suit for injunctive relief.

In December 2001, through efforts by the Vitamin C Sub-Committee of China Chamber of Commerce of Medicines and Health Products Importers and Exporters, each domestic manufacturers were able to reach a self-regulated agreement successfully, whereby they would voluntarily control the quantity and pace of exports, to achieve the goal of stabilizing and raising export prices. Such self-restraint measures, mainly based on 'restricting quantity to safeguard prices, export in a balanced and orderly manner and adjust dynamically' have been completely implemented by each enterprises' own decision and self-restraint, without any government intervention.

Through the work of the Vitamin C Sub-Committee of China Chamber of Commerce of Medicines and Health Products Importers and Exporters during the past year, and due to products discontinuation or reduction by foreign multinational firms such as BASF Takeda, Merck and F. Hoffman-La Roche of the United States, export prices of vitamin C have increased to over 3.35 US Dollars from 2.80 US Dollars in late 2001. Currently, the actual quotes have reached about 10 US Dollars.

*See* WEBSITE OF CHAMBER OF MEDICINES & HEALTH (Exhibit A). Moreover, these records show

that Defendants have acted independently from the government of China in furtherance of their

illegal cartel. For example, the document states that

Such self-restraint measures . . . have been completely implemented by each enterprises' own decision and self-restraint, without any government intervention.

*Id.*[2]   In remarkable contrast, subcommittees other than the Vitamin C Subcommittee in the

Chamber of Medicines & Health have concluded that they cannot form a cartel to limit supply or

increase prices in the absence of the type of market power achieved by the vitamin C defendants.

For instance, the Paracetamol (a form of the pain reliever acetaminophen) Subcommittee,

reported:

Attendees fervently indicated their wish to use the example of the Vitamin C Industry self-regulation as management model to improve the export situation of Paracetamol. In reply to this, the Chamber of Commerce Vice Chairman Mr.

---

[2] The *Wall Street Journal* reported that "[a] high-level official in the local government office that oversees North China Pharmaceutical says the government no longer 'interferes' in management. 'We don't help set prices, that concept is 20 or 30 years old,' says the official. 'They do what it takes to earn money.'" *As China's Trade Clout Grows, So Do Price-Fixing Accusations*, WALL ST. J., Feb. 10, 2006, at A1.

> Zhang Changxin explained that certain China products such as Vitamin C are leading the dominant position in the international market. . . .

See MINUTES OF PARACETAMOL SUBCOMMITTEE MEETING (Exhibit B).

In fact, when Chinese companies in the Chamber of Medicines & Health have objected to forming a cartel, cartel activity has ended:

> The Chamber of Commerce convened the Penicillin discussion forum on July 31, 2003 and the Penicillin Manufacturers' Summit on September 29, 2003. Both meetings studied and discussed the implementation and enforcement of industry self-regulation. Through cooperative negotiations, the group had established a consensus. . . . manufacturers signed the "China Penicillin Industrial Salt Manufacturers' Agreement on Self-regulation" and pledged to carry out the content set forth in the agreement. . . .

> Upon the request of various enterprises, the Chamber of Commerce convened another discussion forum on December 2, 2003. Due to the objection of Henan Xinxiang Huaxin to comply, *the meeting was unable to establish a consensus to continue with the industry self-regulation, and the "China Penicillin Industrial Salt Manufacturers' Agreement on Self-regulation" was forced to be aborted.* . . .

> Nevertheless, we still hope that Henan Huaxin will consider the bigger picture, return to the path of industry self-regulation as soon as possible and realized the "win-win" situation of the entire industry.

See REPORT ON REFUSAL TO COMPLY WITH SELF-REGULATION AGREEMENT (Exhibit C).

The formation of the cartel in December 2001 resulted in price increases of vitamin C in the United States from approximately $2.50 per kilogram in December 2001 to as high as $7 per kilogram in December 2002. FIRST AM. COMPL. ¶ 45. China Pharmaceutical also reported gross profit margins for its vitamin C production of 60.2 percent in 2002, an increase of 28.1 percent. *Id.*

To address the falling price levels in 2003, the Chamber of Medicines & Health called "an *emergency* meeting with major domestic producers of vitamin C" in late November or December 2003. *Id.* ¶ 57; REPORT OF EFEEDLINK.COM (12/2/03) (Exhibit D). Representatives of each of the defendants attended the emergency meeting. FIRST AM. COMPL. ¶ 57. There,

Defendants discussed how they would rationalize the market and restrain and limit the production levels of vitamin C to increase prices.  *Id.*  Notably, there is no mention of government intervention or participation in this emergency meeting.  *See* REPORT OF EFEEDLINK.COM (12/2/03) (Exhibit D).

The following chart illustrates the effects of Defendants' illegal activities on U.S. import prices for vitamin C:



*See* U.S. Int'l Trade Comm'n data, *available at* http://dataweb.usitc.gov.  The Defendants' cartel continues its illegal conduct today.  FIRST AM. COMPL. ¶ 62.

**B.     RANIS IS AN ASSIGNEE OF A DIRECT PURCHASER.**

Ranis proposes to represent the Damages Class as class representative in these proceedings.  Ranis has been assigned the antitrust claims of a company that directly purchased vitamin C from one of the Defendants.  *See* DECLARATION OF THE RANIS COMPANY IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION ("RANIS DECL.") ¶¶ 4-5 (Exhibit E) (filed under seal).  Ranis and its assignor are "sister" companies—*i.e.*, they share common ownership.  *Id.* ¶ 3.

Ranis's assignor expressly conveyed, assigned and transferred to Ranis "all rights, title, and interest in and to all causes of action it may have under the laws of the United States of America or of any State thereof relating to vitamin C, ascorbic acid, or related vitamin products during the period from 2000 through the present."[3]  *Id.* ¶ 5. Under the Assignment agreement, Ranis shall act as the "vehicle for any recovery attributable to [its assignor's] purchases of certain vitamin products," including vitamin C.  *See id.*

**P R O C E D U R A L   S U M M A R Y**

Ranis and Animal Science Products, Inc. (representing a putative class seeking injunctive relief) filed this complaint and commenced this action on January 26, 2005.  Related actions were filed in the Northern District of California and the District of Massachusetts.  On Defendants' motion, the Judicial Panel for Multidistrict Litigation entered an order on February 14, 2006 coordinating these actions and transferring them under 28 U.S.C. § 1407 to this Court for coordinated pretrial proceedings.  *See* TRANSFER ORDER [Doc. #1-2].

On June 30, 2006, Defendants filed a consolidated motion to dismiss all of the consolidated federal and state-law actions against them under Federal Rules 12(b)(1) or 12(b)(6). Defendants argue that dismissal is warranted because they "acted pursuant to a comprehensive scheme of government regulation of vitamin C export pricing at all times relevant to these actions."  DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS [Doc. #67], at p. 1. Defendants maintain that they "were required to coordinate prices and limit quantities at the direction of the Chinese government…"  *Id.*  Defendants, therefore, have asked this Court to dismiss all of the pending actions under the act of state doctrine, the doctrine of foreign

---

[3] The assignment agreement has been produced to Defendants under the STIPULATED PROTECTIVE ORDER [Doc. #133] entered in this action.

sovereign compulsion, and/or the principles of international comity. *Id.* This motion is fully briefed and awaits the Court's resolution.

Also on June 30, 2006, Defendants filed a *Motion to Dismiss The Ranis Company, Inc.'s Claim for Damages Under the Federal Antitrust Laws or, Alternatively, to Strike Class Allegations* [Doc. #63]. In that motion, Defendants contend that *Illinois Brick*'s direct-purchaser rule mandates dismissal of Ranis under Federal Rule 12(b)(6). Alternatively, Defendants moved to strike Ranis's class allegations under Rule 12(f) arguing that Ranis—as an assignee of a direct purchaser's claims—cannot serve as a representative of the Damages Class. This motion is also fully briefed and awaiting resolution by the Court.

On October 16, 2006, NEPG and the other Defendants filed motions to compel arbitration. *See* NOTICE OF MOTION TO COMPEL ARBITRATION [Docs. #94, 98], and their supporting memoranda [Docs. #95, #99]. Plaintiffs amended their complaint and specifically excluded any claims based on purchase agreements containing arbitration clauses, *see* FIRST AM. COMPL. ¶ 21, and voluntarily dismissed NEPG without prejudice from the Damages Class, *see* NOTICE OF VOLUNTARY DISMISSAL OF ACTION [Doc. #118]. Consequently, Defendants withdrew their motion to compel arbitration. *See* LETTER DATED FEB. 7, 2007 [Doc. #126].

Pursuant to this Court's scheduling order, Ranis and the Defendants have engaged in limited class certification discovery and entered into certain stipulations. Ranis now brings this motion for class certification under Rule 23 of the Federal Rules of Civil Procedure.

# A R G U M E N T

**A.   CLASS ACTIONS ARE FAVORED BECAUSE OF THEIR IMPORTANCE IN ENFORCING THE ANTITRUST LAWS.**

Courts in the Second Circuit routinely certify class actions involving horizontal restraints of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1.[4]  As one court has observed, "[s]ince private enforcement of antitrust laws provides a supplement to governmental enforcement, it is our view that *class action treatment of alleged antitrust violations is appropriate and desirable*." *Town of New Castle v. Yonkers Contracting Co.*, 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (emphasis added).   And this Court has previously recognized, "[b]ecause of the important role that class actions play in the private enforcement of antitrust actions, courts resolve doubts in favor of certifying the class." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 239 (E.D.N.Y. 1998).  *See also In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001) (recognizing, in a Section 1 antitrust class action, "the powerful policy considerations that favor certification"); *In re Inds. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 378 (S.D.N.Y. 1996); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 272 (D.D.C. 2002).

---

[4] *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005); *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2003 U.S. Dist. LEXIS 11897 (S.D.N.Y. July 15, 2003); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 61 (S.D.N.Y. 2002); *Arden Architectural Specialties, Inc. v. Wash. Mills Electro Minerals Corp.*, 2002-2 Trade Cas. (CCH) ¶ 73,818 (W.D.N.Y. Sept. 17, 2002); *In re Visa Check/Master Money Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000); *In re Magnetic Audiotape Makers Antitrust Litig.*, No. 99 Civ. 1580, 2001 U.S. Dist. LEXIS 7303, at *25-26 (S.D.N.Y. June 1, 2001); *In re Master Key Antitrust Litig.*, 70 F.R.D. 23, 28 (D. Conn. 1975); *In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 164 (S.D.N.Y. 2000); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 501 (S.D.N.Y. 1996); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 282-83 (S.D.N.Y. 1971), *amended by* 333 F. Supp. 291 (S.D.N.Y.), *mandamus denied sub nom. Pfizer, Inc. v. Lord*, 449 F.2d 119 (2d Cir. 1971).

**B.      THE STANDARD FOR CLASS CERTIFICATION UNDER RULE 23.**

Fundamentally, class actions conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (citations and quotations omitted).  The Federal Rules of Civil Procedure permit certification of a class if a movant satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—plus the requirements of one of the subparts of Rule 23(b).  Ranis seeks certification under Rule 23(b)(3), which allows certification if the Court finds that the common questions of law or fact predominate over questions affecting only individual members and that the class action is a superior method for the fair and efficient adjudication of the controversy.

The Second Circuit recently clarified the district court's role in assessing a motion for class certification in *In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006) ("*In re IPO*").  After extensively reviewing Supreme Court and Court of Appeals authority on the subject, the *In re IPO* Court reached five specific conclusions:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met;
>
> (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met;
>
> (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement;
>
> (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement;  and

(5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*Id.* at 41.  Applying this standard, Rule 23's requirements are satisfied here and the Damages Class should be certified.

## C.   THE DAMAGES CLASS SATISFIES THE REQUIREMENTS OF RULE 23(A).

The four threshold requirements for certification under Rule 23(a) are (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").  FED. R. CIV. P. 23(a).

### 1.   *The Damages Class Is Sufficiently Numerous.*

To satisfy numerosity, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  "Impracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder." *In re Ashanti Goldfields Secs. Litig.*, No. CV 00-0717(DGT), 2004 WL 626810, at *11 (E.D.N.Y. Mar. 30, 2004) (quoting *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999)).  The Second Circuit has recognized that "***numerosity is presumed at a level of 40 members.***"  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (emphasis added), *cert. denied*, 515 U.S. 1122 (1995) (citing 1 NEWBERG ON CLASS ACTIONS § 3.05 (2d ed. 1985)); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (recognizing that, under *Consol. Rail*, numerosity is "presumed at 40"); *accord Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y. 2001) ("Generally, courts will find a class sufficiently numerous when it comprises

forty or more members."); *Monaco v. Stone*, 187 F.R.D. 50, 61 (E.D.N.Y. 1999) (same); *see also Presbyterian Church v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005) (same).

"Precise quantification of the class members is not necessary because a court may make common sense assumptions regarding numerosity." *In re Blech Sec. Litig.*, 187 F.R.D. at 103. The Defendants have produced various types of records pertaining to their direct sales of vitamin C products into the United States. DECLARATION OF PHILIP INNES ¶ 4 (Exhibit F). These transaction records include, for example, sales contracts, sales invoices, purchase orders, and schedules summarizing vitamin C sales. *Id.* Based on a review of the records that the Defendants have produced so far, at least 139 distinct buyers directly purchased vitamin C for delivery in the United States from one or more of the Defendants between January 2001 and August 2006. *Id.* ¶ 5. This quantification of 139 discrete buyers is based on either (a) sales contracts and sales invoices that do not contain arbitration clauses or (b) other transaction documents, such as purchase orders or summary schedules, for which there is no evidence of a controlling arbitration clause. *Id.*

Because the number of members of the proposed Damages Class clearly exceeds 40, Rule 23(a)(1)'s numerosity requirement is satisfied here.

### 2.    *Defendants Have Stipulated to Commonality.*

Next, Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A single common question of law is sufficient to satisfy the commonality requirement. *Monaco*, 187 F.R.D. at 61. By letter dated September 7, 2006, Defendants stipulated to this Rule 23(a)(2) requirement:

> [I]n light of the applicable law regarding the relevance of merits to class determination as well as the standards for assessing class certification motions, *Defendants*, while specifically reserving their rights to assert all defenses and raise all fact issues at the merits stage, have authorized me to advise you and the Court that they *do not intend to assert in opposition to your intended class*

> *certification motion on behalf of direct purchasers that there are not common issues of fact or law regarding either the existence or operation of the alleged conspiracy or its asserted common impact on direct purchasers.*"

LETTER FROM S. BOMSE TO J. SOUTHWICK (9/7/2006), at p. 1 (emphasis added) (Exhibit G).

Defendants informed the Court of this concession in their letter to Judge Orenstein dated September 8, 2006:

> In an attempt to narrow the issues and reduce the need for extensive discovery related to class certification in the *Animal Science Prods.* case, ***Defendants agreed that,*** while they reserve their right to assert all defenses and raise all fact issues at the merits stage of the litigation, solely for purposes of the class certification phase of the case ***they will not oppose certification of the class of direct purchasers alleged in*** **Animal Science Prods.** ***on the ground that there are not common issues of fact or law regarding either the existence or operation of the alleged conspiracy, or its asserted impact on direct purchasers.***

LETTER FROM R. GOLDSTEIN TO HON. J. ORENSTEIN (9/8/2006), at p. 3 [Doc #52] (emphasis added) (Exhibit H).

Because Defendants do not contest commonality, this requirement is met. *See In re Vivendi Universal, S.A. Secs. Litig.*, --- F.R.D. ----, 2007 WL 861147, at *6 (S.D.N.Y. Mar. 22, 2007) (finding, under the Second Circuit's new standard in *In re IPO*, that commonality was satisfied where the defendants did not dispute it); *Harris v. Initial Sec., Inc.*, No. 05 Civ. 38373(GBD), 2007 WL 703868, at *4 (S.D.N.Y. Mar. 7, 2007) (accepting defendant's concession regarding numerosity as sufficient under the Second Circuit's new standard in *In re IPO* for class certification).

### 3.   *Ranis's Claims Are Typical of the Class Claims.*

Ranis's claims arise from the same factual matrix and are based on the same legal theory as the claims of the absent class members.  Consequently, Ranis also satisfies Rule 23(a)(3)'s typicality requirement.

        a.    *Ranis's Claims Involve the Same Facts and Legal Theory*
               *as the Claims of the Putative Class.*

Like commonality, the test for typicality is not demanding. *See In re Initial Public Offering Sec. Litig.*, No. 21 MC 92(SAS), 01 Civ. 3020(SAS), 2007 WL 656880, at *3 (S.D.N.Y. Feb. 28, 2007); *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005). A class representative's claims simply must be typical of the class as a whole. That is, the representatives must "possess the same interest and suffer the same injury." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403 (1977) (citations omitted).

It is not necessary, however, that the named representative suffers precisely the same injury as the other class members; there simply needs to be a nexus between the injury suffered by the representative and the injury suffered by the other members of the class. Typicality therefore exists when the named plaintiff's claims and the absent class members' claims arise from "'the same course of events,'" and when each class member makes "'similar legal arguments to prove the defendant's liability.'" *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Giuliani*, 126 F.3d at 376). Moreover, courts considering the typicality prerequisite have observed that

> ***claims in antitrust price-fixing cases generally satisfy Rule 23(a)(3)'s typicality requirement***, even if members purchase different quantities and pay different prices. Thus, typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants.

*In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998) (citations omitted) (emphasis added).

Here, as in other price-fixing cases, there exists a sufficient nexus between Ranis and the putative class members to include them in the same class. The claims of Ranis and the other class members all arise from the "same course of events"—that is, the same unlawful and anticompetitive conspiracy carried out by Defendants to limit output and fix prices in the sale of

vitamin C—and each unnamed class member will make the same "'legal arguments to prove the defendant[s'] liability.'" *Robinson*, 267 F.3d at 155 (quoting *Giuliani*, 126 F.3d at 376).

Ranis's claims are undeniably typical of the claims of the members of the class.

> b.   *The Valid Assignment of Claims to Ranis Does Not Make Its Claims Untypical.*

Ranis's status as assignee of the antitrust claims it has brought does not impact the typicality analysis.  As discussed in greater detail in Ranis's *Memorandum in Opposition to Defendants' Motion to Dismiss or Strike* [Doc. #64], it is black-letter law that "an antitrust claim can be expressly assigned" and "[t]here would be nothing to prevent a direct purchaser from expressly assigning its antitrust claims to a remote purchaser."  *Gulfstream III Assocs. v. Gulfstream Aero. Corp.*, 995 F.2d 425, 437 (3d Cir. 1993).  Ranis and its sister company assignor executed a valid agreement giving Ranis the right to bring the claims in this suit.  And Ranis's proposed class definition includes assignees as class members.  *See* RANIS DECL. ¶¶ 3-5.

Not only are antitrust claims assignable, but the only court to issue a published opinion on the matter has permitted an assignee to serve as a class representative.  In *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297 (D. Mich. 2001), the named plaintiff, Duane Reade, Inc. ("Duane Reade") purchased Cardizem CD through a non-defendant wholesaler, Kinray, Inc. ("Kinray").  Kinray had purchased Cardizem CD during the class period directly from the Defendant HMRI and sold it to Duane Reade.  Prior to the filing of the lawsuit, Kinray had assigned its antitrust claims for these direct purchases to Duane Reade.  *Id.* at 301.  The proposed class definition specifically included assignees as class members.  *Id.* at 300.

In resisting the motion for class certification, HMRI asserted that Duane Reade could not serve as a representative of the direct purchaser class because, as an assignee, its claims were not typical under Rule 23(a).  Noting that a "necessary consequence of the typicality requirement is

that the representative's interests will be aligned with those of the represented group, and in

pursuing his own claims, the named plaintiff will also advance the interests of the class

members," *id*. at 304, the court explained why Duane Reade, as an assignee who "will stand in

Kinray's shoes," satisfied the typicality requirement:

> Here, as in other antitrust cases, the claims of the named representatives and the claims of the class members arise from the same events; they claim injury from the same HRMI/Andrx Agreement that this Court has found to be a per se violation of section 1 of the Sherman Antitrust Act. ***Their claims are typical of the class claims because each is a direct purchaser, or assignee of a direct purchaser***, of Cardizem CD, and each claims that they were forced to pay an artificially inflated price for their purchases as a result of Defendants' illegal conduct.

*Id*. (emphasis added).

Similarly, in a class action involving alleged ERISA violations, the court in *McDaniel v.*

*North American Indemnity, N.V.*, 2003 U.S. Dist. LEXIS 1663 (D. Ind. Jan. 27, 2003), permitted

a plaintiff, as an assignee, to serve as a class representative because the ERISA claims at issue

were assignable and as assignee the plaintiff stood "in the same position as the rest of the class."

*Id*. at *10.  As the Court explained:

> As an assignee of claims for benefits, Pedcor, like the other named Plaintiffs and the class, brings claims pursuant to ERISA sections 502(a)(1), 502(a)(2), 502(a)(3), and 409.  Each of the Plaintiffs' claims arises from Defendants' alleged course of conduct toward the class, and each of Plaintiffs' claims is based upon the same legal theory as the class members.  Plaintiffs' claims are typical of the class, and the typicality requirement of Rule 23(a) is satisfied.

*Id*. at *11 (citations omitted).

The rationale for permitting assignees to serve as class representatives as articulated in

*Cardizem CD* and *McDaniel* applies in this case.  As an assignee of the antitrust claims, Ranis is

a proper class representative.  Because its assignment is valid and the class definition includes

assignees, Ranis is a class member standing in the shoes of the assignor and therefore may bring

these antitrust claims on a class-wide basis as an assignee.

Ranis's status as class representative will present no manageability problems at the class certification stage or at trial. Ranis and its assignor are related companies. Any necessary fact witnesses or evidence from the assignor will be available through Ranis. *See* RANIS DECL. ¶ 10.

Counsel for Ranis has not located a single published or unpublished opinion that holds that a class representative cannot meet the typicality requirement merely because it is an assignee. Ranis's status as assignee satisfies the typicality requirement in this case.

> c.   *Ranis's Arbitration Agreement with a Non-Defendant Does Not Make Its Claims Untypical.*

Ranis, via its assignor, made direct purchases of vitamin C from Defendant Hebei Welcome Pharmaceutical Co. Ltd ("Hebei") pursuant to executed sales contracts. None of those contracts with Hebei, however, contains an arbitration provision. And Ranis's assignor did not purchase vitamin C from any of the other Defendants. Hence, Ranis's claims against Hebei and the other co-conspirator Defendants are *not* subject to arbitration.

The only direct purchases of vitamin C made by Ranis's assignor that arguably could be subject to arbitration involve Northeast Pharmaceutical Group Co. Ltd. ("NEPG"), a party Ranis has now dismissed from its suit. *See* note 1*, supra.* Because NEPG is no longer a Defendant in Ranis's direct purchaser action, the arbitration provision involving Ranis's assignor and NEPG does not—and cannot—form a valid basis for the remaining Defendants to challenge whether Ranis's claims are typical of the class. Thus, defenses arising from the arbitration provisions involving Ranis's assignor will *not* become the focus of the litigation, will *not* overshadow the primary claims, and will *not* prejudice the claims of other class members. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (noting that disparities that create unique defenses to some members of the putative class

may make class certification inappropriate only if they are likely to significantly divert the focus

of the class litigation); *In re Initial Pub. Offering Sec. Litig.*, 2007 WL 656880, at *3 (same).

The same holds true for any absent class member that has a valid arbitration provision

relating to purchases of vitamin C from any of the remaining Defendants.  In its class definition,

Ranis has excluded all vitamin C purchases made during the applicable time period that are

subject to an arbitration provision.  This eliminates the potential that a particular class member's

arbitration agreement with any Defendant will raise unique defenses so as to implicate typicality

considerations.

At least one court has endorsed Ranis's approach.  In certifying a class that included

some but not all class members that had signed arbitration agreements, Judge Leval in *Finnan v.*

*L.F. Rothschild & Co.*, 726 F. Supp. 460 (S.D.N.Y. 1989), noted that any issues or defenses

related to differences created by the existence of these arbitration agreements

> are subordinate to the far larger common defense which [the defendant] asserts
> against the Complaint.  They may well call for the eventual creation of subclasses,
> or for dropping certain members from the class, but they do not defeat the merits
> of the certification at this juncture.

*Id*. at 465.

Judge Leval's reasoning applies in this case.  By expressly excluding from the class

definition any claims for damages arising from vitamin C purchases made pursuant to a contract

containing an arbitration provision, Ranis avoids the potential of having the arbitration

provisions derail the merits of the certification.  *See Murray v. Cingular Wireless Servs.*, 232

F.R.D. 295, 303 (N.D. Ill. 2005) (rejecting defendants' claim that a class should not be certified

because certain class member have claims that "are subject to arbitration" because "the class

definition had been narrowed to remove those individuals"); *Coleman v. GM Acceptance Corp.*,

220 F.R.D. 64, 91-92 (D. Tenn. 2004) ("The possibility that some class members might have signed arbitration agreements does not defeat class certification").

### 4. *Ranis Will Adequately and Fairly Protect the Interests of the Class.*

Ranis is an adequate class representative under Rule 23(a)(4) because its interests are fully consistent with those of the class members and because, as evidenced by the leading role it has taken over the past two years in this litigation, Ranis has the resolve necessary to pursue vigorously its claims on behalf of the absent class members. *See* RANIS DECL. ¶ 8.

Rule 23(a)(4) requires the court to ensure that "the representative parties will fairly and adequately protect the interests of the class." The typicality inquiry largely duplicates the inquiry into whether the named plaintiffs will adequately represent and protect the interests of the proposed class members. *See Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 522 (M.D. Ala. 1992).

The adequacy inquiry is twofold: the proposed class representative must have no interests antagonistic to the interests of other class members, and it must have an interest in vigorously pursuing the claims of the class. *See Robinson*, 267 F.3d at 170; *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). A conflict or potential conflict alone will not, however, necessarily defeat class certification—the conflict must be "fundamental." *Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.)*, 280 F.3d 124, 145 (2d Cir. 2001). Ranis passes these tests.

### a. *Ranis Shares Identical Interests with the Class Members.*

Ranis has brought identical claims on behalf of itself and the putative class so there is no danger of conflicting claims. Ranis also shares the same goal as the other putative class members: proving that defendants conspired to fix vitamin C prices and limit output of vitamin C

sales to the United States in violation of U.S. antitrust laws.  *See* RANIS DECL. ¶ 6.  That mission is not undercut for the following reasons:

- Ranis has a valid assignment, and antitrust claims are assignable;

- Ranis has removed all issues associated with arbitration by non-suiting the only party that had an arbitration agreement with Ranis's assignor; and

- Ranis has eliminated from the class definition any claims by class members for damages associated with vitamin C purchases made pursuant to contracts that contain arbitration provisions.

Ranis's claims, therefore, will not conflict with the class, and there is no "actual showing of a real probability of a potential conflict which goes to the subject matter of the suit."  *In re S. Cent. States Baking Prods. Antitrust Litig.*, 86 F.R.D. 407, 418 (M.D. La. 1980).  In the unlikely event conflicts do arise, Rule 23 provides the Court "with considerable flexibility to deal with conflicts."  *In re Cardizem*, 200 F.R.D. at 306 (citation omitted).

Ranis's status as assignee does not change this calculus.  As noted in *In re Cardizem*, nothing prevents an assignee from adequately representing the interests of class members in an antitrust class action:

> ***Duane Reade is an adequate class representative under Rule 23(a)(4) because its interests are fully consistent with those of the Sherman Act Class Plaintiffs***.  Each has the same interest of establishing the injury and damage elements of their antitrust claim.

200 F.R.D. at 305-06 (emphasis added); *see also McDaniel*, 2003 U.S. Dist. LEXIS 1663, at *10-11 (finding that a plaintiff, as an assignee, can be an adequate class representative because it stands "in the same position as the rest of the class").

In this case, Ranis—like the assignee class representatives in *In re Cardizem* and *McDaniel*—and the absent class members share the same interest of establishing the injury and

damages elements of their antitrust claim.  There exists no inherent conflict between Ranis, as assignee, and the unnamed class members.

The only case to suggest otherwise is *In re Public Offering Fee Antitrust Litigation*, Nos. 98 Civ. 7890 (LMM), 00 Civ. 7804 (LMM), 2006 U.S. Dist. LEXIS 21076 (S.D.N.Y. Apr. 18, 2006).[5]   In this unpublished opinion, one of the proposed class representatives, Cordes & Company Financial Services, Inc. ("Cordes"), purchased the underlying antitrust claim of Western Pacific Airlines in a public, court-supervised auction.  *Id.* at *11-12.   The other proposed class representative was the Unsecured Creditors Trust of Equalnet Corporation ("Creditors Trust"), which acquired its antitrust claim from Equalnet Communication Corporation by foreclosure of certain security interests including the antitrust claim.  *Id.* at *12. Notably, the proposed class definition did *not* include assignees as class members.  *Id.* at *6.

Two aspects of Cordes's and Creditors Trust's unique arrangements troubled the court. First, the court concluded that Cordes and Creditors Trust were "not members of the proposed issuer class."  *Id.* at *13.   Second, the Court surmised, without explanation or citation to supporting case law, that as assignees Cordes and Creditors Trust would not fairly and adequately protect the interests of the class.  Instead, the court refused to permit the plaintiffs to serve as class representatives, noting that "class membership should not be treated as a transferable asset."  *Id.* at *14.

Neither concern is applicable with respect to Ranis's status as assignee.  The class definition in this case, unlike the one proposed in *Public Offering Fee*, does include assignees as

---

[5] The *Public Offering Fee Antitrust* case was a price-fixing antitrust class action against a group of investment banks and brokerage houses that served as managing underwriters for the IPO market since 1994.  2006 U.S. Dist. LEXIS 21076, at *4 (McKenna, J.).  It should not be confused with the *In re IPO* case, *see supra* p. 9, which was a securities class action alleging that IPO issuers, underwriters, and various individual officers engaged in a scheme to defraud the investing public in violation of federal securities laws.  471 F.3d at 27.

members of the class. Therefore, Ranis, as assignee, is a member of the class. And as the express assignee of a sister company and direct purchaser, Ranis's interests also align perfectly with the class. The *Public Offering Fee* court did not—because it could not—point to a single case that supports its conclusion that the assignees cannot serve as adequate class members, and the courts in *In re Cardizem* and *McDaniel* say just the opposite.

        b.     *Ranis Will Vigorously Pursue the Class Claims.*

Not only will Ranis advance the interests of the class members, Ranis attests that it will vigorously pursue the claims of the class. *See* RANIS DECL. ¶ 8. Ranis already has served as plaintiff in this case for more than two years and has moved aggressively to seek certification and prosecute all claims on behalf of the Damages Class.

        c.     *Ranis's Counsel Are Qualified, Experienced, and Able to Conduct This Litigation.*

Prior to the 2003 Amendments to Rule 23, the adequacy of class counsel was also evaluated under Rule 23(a)(4). *See Parker v. Time Warner Entertainment Co., L.P.*, 239 F.R.D. 318, 330 n.18 (E.D.N.Y. 2007). However, evaluation of counsel is now properly considered under Rule 23(g). *Id.*

> An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class ... the court must consider: the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law and the resources counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(B). *See also Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1106 (E.D.N.Y. 2006) ("When courts review the adequacy of counsel under Rule 23(a)(4), they generally inquire whether the counsel is willing and able to vigorously prosecute the action. Rule 23(a)(4) is satisfied where the class attorneys are experienced in the field or have demonstrated

professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case.").

Ranis is represented by some of the most qualified and experienced lawyers in the United States in the successful prosecution of antitrust class actions. *See* FIRM RESUMES (Exhibit I). There is, therefore, "no ground for supposing that plaintiffs will not adequately represent the class." *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 306 (E.D. Pa. 1980). This Court may take judicial notice that the three lead class counsel in this case—the law firms of Boies, Schiller & Flexner; Cohen, Milstein, Hausfeld & Toll; and Susman Godfrey—served successfully as co-lead counsel for the direct purchaser class in another antitrust class action in the vitamins industry in the District Court for the District of Columbia. *In re Vitamins Antitrust Litig.*, 209 F.R.D. at 262 (certifying class after concluding that the "proposed class representatives are willing and able to prosecute their case through experienced class counsel").

Ranis therefore meets Rule 23(a)(4)'s adequacy requirement.

## D.    THIS CONTROVERSY CAN BE ADJUDICATED AS A CLASS ACTION UNDER RULE 23(B)(3).

Once the four prerequisites of Rule 23(a) are satisfied, as in this case, the potential class must also satisfy at least one subpart of Rule 23(b). Rule 23(b)(3) requires (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that the class action provide a superior method for adjudicating the controversy. *See* FED. R. CIV. P. 23(b)(3); *Visa*, 280 F.3d at 133. Certification under both Rule 23(b) subparts is appropriate here.

### 1.    *Defendants Have Also Stipulated to Predominance.*

"To meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof.'" *Visa*, 280 F.3d at 136 (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th

Cir. 2000)).   The predominance requirement is generally satisfied "unless it is clear that individual issues will overwhelm the common questions."  *NASDAQ*, 169 F.R.D. at 517.

Along with their stipulation of commonality, *see supra* p. 11, the Defendants also have conceded that these common issues will predominate:

> As to the direct purchaser claims, defendants do not intend to argue that there was no conspiracy as alleged or that it did not have an impact on the class.  Therefore, ***we do not intend to assert that there are no common issues of law or fact, nor will we assert that individual issues as to those matters defeat predominance.***

E-MAIL FROM S. BOMSE TO J. SOUTHWICK (9/18/06) (emphasis added) (Exhibit J).

### 2.    *No Other Significant Individual Issues Exist.*

Because the Defendants have acknowledged a common impact and stipulated that this does not defeat predominance, no other significant individual issues exist to preclude certification.  Notably, Rule 23(b)(3) actually contemplates certification even if there are some issues that are not common to the class as a whole.  *See Playmobil*, 35 F. Supp. 2d at 240 ("[S]ome factual variation among class members' specific grievances will not prevent certification of claims on behalf of a class of plaintiffs"); *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977) ("The predominance requirement calls only for predominance, not exclusivity, of common questions.").

### 3.    *A Class Action Is the Superior Method for Adjudicating This Dispute.*

This horizontal price-fixing case would most effectively be adjudicated as a class action. Neither the parties nor the judicial system would benefit from duplicative litigation in these matters.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, Nos. 94 C 897, MDL 997, at *5-6 (N.D. Ill. Nov. 18, 1994).  Allowing this controversy to be adjudicated in a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated."  *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla.

1979) (quoting FED. R. CIV. P. 23 Advisory Committee's notes); *accord United Nat'l Records, Inc. v. MCA, Inc.*, 101 F.R.D. 323 (N.D. Ill. 1985). "What would be unmanageable is the institution of numerous individual lawsuits." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992); *accord Visa*, 280 F.3d at 146 ("While both the district court and this Court have acknowledged that difficulties in managing this large class action may arise, these problems pale in comparison to the burden on the courts that would result from trying the cases individually.").

The words of Judges Will and Robeson in *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727 (N.D. Ill. 1977), are instructive here:

> We are further of the opinion that the alternative methods of adjudication inevitably involve duplicative, expensive, and time consuming suits without any countervailing benefits. Conversely, the class action embodies an efficient and fair balance of the interests of the plaintiffs, the class members, and the Defendants, all of whom will have their claims and the claims against them adjudicated in one lawsuit. While such litigation presents some problems to counsel and the court, these burdens are not nearly as onerous to the judicial system as a series of extended suits against the Defendants.
>
> The public at large likewise will benefit from a class action and expeditious adjudication of the issues involved, since class actions reinforce the regulatory scheme by providing an additional deterrent beyond that afforded either by public enforcement or by single-party private enforcement.

*Id.* at 733 (citations and quotations omitted).

The class action device is particularly well suited to adjudicating this controversy because the Defendants are Chinese companies, whose witnesses and documents are largely abroad. Discovery will require tremendous financial resources because of the substantial expenses of translating documents, procuring evidence and witness testimony abroad, and marshaling the necessary experts.  Requiring each of the approximately 139 individual class members to bring individual suits would be cost-prohibitive to the plaintiffs and would consume extraordinary judicial resources.  Moreover, the Federal Rules contain a number of tools that will enable the

court to address any manageability issues as the case progresses.  *See In re Vitamins Antitrust Litig.*, 209 F.R.D. at 270 ("[T]he Court is at a loss to understand how adding additional individual actions, especially in view of a trial on the merits, will promote manageability. Moreover, there are a variety of tools available pursuant to Rule 23(d) and the Federal Rules which have been used, and, will continue to be used, in this case, as needs arise. The Court is confident that with the assistance of able attorneys on both sides, management issues will be successfully resolved. The Court is satisfied that a class action is superior in this case.").

* * *

In sum, the proposed Damages Class meets both the requirements of Rule 23(a) and the requirements of Rule 23(b)(3).

# C O N C L U S I O N

For the foregoing reasons, Ranis respectfully requests that the Court certify the Damages Class as described here.

Dated: April 11, 2007

Respectfully submitted,


 /s/ *James T. Southwick*
William A. Isaacson
Tanya Chutkan
Brian C. Baker
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC  20015
Tel.:  (202) 237-2727
Fax:  (202) 237-6131

Alanna Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel:  (212) 446-2300
Fax:  (212) 446-2350

Michael D. Hausfeld
Brian A. Ratner
COHEN, MILSTEIN, HAUSFELD &
    TOLL, P.L.L.C.
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC  20005
Tel.:  (202) 408-4600
Fax:  (202) 408-4699

James T. Southwick
Shawn L. Raymond
Suyash Agrawal
SUSMAN GODFREY L.L.P
1000 Louisiana, Suite 5100
Houston, TX  77002
Tel.:  (713) 651-9366
Fax:  (713) 654-6666

*Counsel for Plaintiffs*
*Animal Science Products, Inc. and The Ranis Company, Inc.*

729359v1/008808

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that a true and correct copy of MEMORANDUM IN SUPPORT OF THE RANIS COMPANY'S MOTION FOR CLASS CERTIFICATION was served on this 11th day of April, 2007 on each of the persons on the attached Service List., via Federal Express.

 /s/ *Suyash Agrawal*
Suyash Agrawal

27

## Service List

**Attorneys for Defendant Hebei Welcome Pharmaceutical Co., Ltd.**
Charles H. Critchlow, Esq.
Darrell Prescott, Esq.
Douglas M. Tween, Esq.
Baker & McKenzie LLP
1114 Avenue of the Americas
New York, NY  10036
Charles.H.Critchlow@bakernet.com
Darrell.Prescott@bakernet.com
Douglas.Tween@bakernet.com

**Attorneys for Jiangsu Jiangshan Pharmaceutical Co., Ltd.**
Stephen V. Bomse, Esq.
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104
stephen.bomse@hellerehrman.com

Richard S. Goldstein, Esq.
Heller Ehrman LLP
Times Square Tower
7 Times Square
New York, NY  10036
richard.goldstein@hellerehrman.com

Jonathan M. Palmer, Esq.
Heller Ehrman LLP
One Exchange Square, 35th Floor
8 Connaught Road
Central
Hong Kong
jonathan.palmer@hellerehrman.com

**Attorneys for Defendant Northeast Pharmaceutical Group Co., Ltd.**
James I. Serota, Esq.
Kenneth Lapatine, Esq.
Rachel Izower, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY  10166
serotaj@gtlaw.com
lapatinek@gtlaw.com
izowerr@gtlaw.com

729359v1/008808

*Attorneys for Defendants Weisheng Pharmaceutical Co., Ltd.,*
*Shijiazhuang Pharmaceutical (USA) Inc., and China Pharmaceutical Group, Ltd.*
Daniel S. Mason, Esq.
Joseph Bell, Esq.
Athena Hou, Esq.
Zelle, Hoffman, Voelbel, Mason & Gette LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
dmason@zelle.com
jbell@zelle.com
ahou@zelle.com

David Boies III
Timothy Battin
Straus & Boies, LLP
4041 University Drive
Fairfax, VA 22030
Tel.: 703-764-8700
Fax:  703-764-8704
dboies@straus-boies.com
tbattin@straus-boies.com

Kenneth G. Walsh
Straus & Boies, LLP
2 Depot Plaza, Suite 203
Bedford Hills, NY 10507
Tel.: 914-244-3200
Fax:  914-244-3260
kwalsh@straus-boies.com

Daniel E. Gustafson
Daniel C. Hedlund
Amanda M. Martin
Gustafson Gluek PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, MN 55402
Tel.: 612-333-8844
Fax:  612-339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
amartin@gustafsongluek.com

Sylvie K. Kern
Glancy Binkow & Goldberg LLP
455 Market Street, Suite 1810
San Francisco, CA 94105
Tel.: 415-972-8160
Fax:  415-972-8166
skern@glancylaw.com

R. Alexander Saveri
Saveri & Saveri, Inc.
111 Pine Street, Suite 1700
San Francisco, CA  94111
Tel.: 415-217-6810
Fax: 415-217-6813
rick@saveri.com