**Authorized Translation**

中华人民共和国商务部

MINISTRY OF COMMERCE OF THE PEOPLE'S REPUBLIC OF CHINA
2, DONG CHANG'AN STREET, BEIJING, CHINA 100731

**Statement In *In Re Vitamin C Antitrust Litigation*, 06-MD-1738 (DGT)**

**August 31, 2009**

*Amicus* The Ministry of Commerce of the People's Republic of China (the "Ministry") authorizes its Department of Treaty and Law to respectfully submit this Statement (together with an authorized English translation).

1. The Ministry has attached great importance to the antirust litigation in the United States brought against Chinese vitamin C exporters. The Ministry submitted to this Court *the Brief of Amicus Curiae of the Ministry of Commerce of the People's Republic of China in support of the Defendants' Motion to Dismiss the Complaint* in June 2006 and its *Statement In Re Vitamin C Antitrust Litigation* in June 2008. Taking notice of the comments and views made by Your Honor, the plaintiffs, plaintiffs' counsels and the experts, and the relevant documents, the Ministry would like to draw the Court's attention to the positions taken by the Ministry in the above-mentioned two documents, and would like to reiterate here that the alleged conduct by the defendant Chinese vitamin C exporters is the result of the defendants' performing their obligations to comply with Chinese laws, rather than conduct on their own initiative.

2. In order to prevent self-destructive competition through distorted pricing by Chinese exporters caught unprepared for the drastic change of China's export policies, and to mitigate potential exposures to antidumping investigations in other countries against Chinese exporters, the Ministry took active measures by exerting export regulation over certain commodities that might encounter or have encountered such problems. Although different regulatory measures may have been implemented in line with changes of circumstances at different times, enterprises in regulated

industries were nevertheless compelled to comply with relevant rules and regulations, or they would otherwise be subject to penalties.

3. The actual specific measures taken by China to effect its regulatory policies include what is referred to as a "system of self-discipline". This system has a long history in China and has been well known to, and complied with by, Chinese companies. Self-discipline does not mean complete voluntariness or self-conduct. In effect, self-discipline refers to a system of regulation under the supervision of a designated agency acting on behalf of the Chinese government. Under this regulatory system, the parties involved consult with each other to reach consensus on coordinated activities for the purpose of reaching the objectives and serving the interest as set forth under Chinese laws and policies. Persons engaged in such required self-discipline are well aware that they are subject to penalties for failure to participate in such coordination, or for non-compliance with self-discipline, including forfeiting their export right.

4. Vitamin C falls into the category of products subject to the above-mentioned regulation. During the relevant period in the present case, the Ministry required vitamin C exporting companies to coordinate among themselves on export price and production volume in compliance with China's relevant rules and regulations in order to maintain orderly export, safeguard the interests of the country as a whole and avoid self-destructive competition.

5. The Ministry authorized and instructed the China Chamber of Commerce of Medicines & Health Products Importers & Exporters (the "Chamber") and its Vitamin C Subcommittee to implement relevant policies related to the export of vitamin C products. Embodied in the Ministry's delegation of authority to the Chamber were industry regulatory functions and powers as well as necessary enforcement measures. Vitamin C exporters were thus subject to the regulation by the Chamber, including compliance with the Chamber's requirements of self-discipline, the very purpose of which was to coordinate each exporter's behavior. No vitamin C exporter could ignore these policies, nor could they abstain from such coordination with regard to export price and production volume when asked to by the

Chamber.

6. The self-disciplinary system of export coordination also includes meetings and discussions between and among the parties subject to the Chamber's direction and supervision, and reaching agreements among themselves on taking appropriate actions in the interest of the country as a whole. Participation in such discussions, taking a vote and conducting other similar activities to reach their final consensus constitutes an integral part of the self-discipline process. Vitamin C exporters must comply with the above procedures and the agreements reached in compliance with such procedures; otherwise, the Chamber would be required to exercise its power to penalize those who were in violation of such procedures and agreements.

7. The Ministry has read the report issued by plaintiffs' expert, Dr. Paula Stern. The Ministry believes that statements of representatives of the Ministry and other government agencies, with regard to China's market economy status, and remarks regarding Chinese companies setting price and production volume according to the principle of market demand, quoted by Dr. Stern were made in a different context – one that had nothing to do with export price regulations -- and were *general descriptions* of the current status of China's market economy presented in a special context. These general descriptions are irrelevant to the present case and should not be deemed as explicit or implicit statements of China's abandonment of its limited regulatory policies over certain designated industries including the vitamin C industry, or of China's waiver of its power to continue to regulate according to Chinese and international law. The Ministry believes that maintaining its regulation in a limited manner (such as its regulation over vitamin C export) is consistent with China's national goal of establishing a socialist market economy. As stated under Point 2 above, the adoption of government regulations over certain commodities (such as vitamin C) at a given stage in history serves the specific interests of China and is consistent with the trade policies of importing countries to protect and regulate relevant domestic industries. The regulations are implemented in a manner consistent with international law and custom and, during the process of implementation, have not been subject to challenge from the government of other

countries or regions. China understands and believes that virtually all sovereign nations and regions (including the United States), proceeding from their own interests, have exercised various forms of government regulations over part of their private sector and certain industries. China's export regulations of vitamin C at issue in this case are no different.

Respectfully submitted,

Department of Treaty and Law
Ministry of Commerce of the
People's Republic of China

[affixed seal]

中 华 人 民 共 和 国 商 务 部

MINISTRY OF COMMERCE OF THE PEOPLE'S REPUBLIC OF CHINA

2, DONG CHANG'AN STREET, BEIJING, CHINA 100731

# 关于维生素 C 诉讼案 06-MD-1738（DGT）的声明

本案法庭之友中华人民共和国商务部（以下简称“商务部”）授权条约法律司在此敬呈本声明（经认可的英文译文一并呈递）。

一、商务部高度重视中国维生素 C 出口企业在美国遭遇的反垄断诉讼事宜，并以“法庭之友”身份，于 2006 年 6 月向贵法院提交了《中华人民共和国商务部支持被告驳回原告起诉的动议之法庭之友信函》，于 2008 年 6 月向贵法院提交了《关于维生素 C 反垄断诉讼案之声明》。商务部注意到本案法官及原告、原告律师、法律专家们及相关文件的表态，通过本信函提请贵法院注意商务部在上述两份文件中所表达的观点，并再次声明：本案中所指控的被告中国维生素 C 出口企业所采取的行为是它们遵守中国法律义务的结果，而非自主的行为。

二、为避免出现企业因不适应中国出口政策的剧烈变化，而在出口领域出现价格上扭曲贸易的恶性竞争，减少企业在海外遭遇反倾销调查的隐患，商务部对某些可能出现或已经出现上述问题的商品予以了积极的出口监管，虽然监管

方法随不同时期的情况变化而有所不同，但受监管行业的企业必须遵守相关监管，否则将受到处罚。

三、中国选择实施其监管政策的具体方式包括被称作“自律”的监管机制，这种“自律”概念在中国由来已久并为企业所熟知、遵守。自律并不意味着完全自愿或个人行为。实际上，自律指的是一种由政府指定的一个代表机构监督实施的监管机制，在这个监管机制下，当事人为了就协调行为达成一致意见而进行相互协商，以实现中国法律和政策的目标和利益。被要求自律者在进行自律时，都知道不参与协调过程或者不执行自律将受到不同形式的处罚，包括丧失从事出口业务的权利。

四、维生素C是上述受监管产品之一。在本案起诉书所涉年份期间，商务部要求维生素C出口企业按中国相关法律、法规维持出口秩序，维护国家的整体利益，协调出口价格和产量，避免恶性竞争。

五、商务部授权并指示中国医药保健品进出口商会（以下简称“医保商会”）及其维生素C分会执行维生素C出口相关政策。商务部赋予其行业监管功能和职权以及必要的手段。维生素C出口企业接受医保商会的监管，包括遵守医保商会提出的关于实行自律的要求，其目的就是协调各自的行为。参与维生素C出口的企业不能忽视这些政策，也不得在其被商会要求对价格和产量进行协调时不参与协调。

六、出口协调自律制度包括接受商会监督的当事方在医保商会的指导和监督下会面、讨论，并就为实现国家整体利益而采取适当的行动达成协议。参与讨论，采用投票以及其他类似行为，最终达成一致意见，都是自律过程的一部分。维生素C出口企业必须遵守上述程序以及根据上述程序达成的协议，医保商会必须行使其职权对违背者予以处罚。

七、商务部已经阅读了原告聘请的法律专家斯特恩博士的报告。商务部相信，斯特恩博士引用的商务部和其他部门的代表在与出口价格监管毫无关联的其它背景下发表的关于中国市场经济地位，以及中国企业按照市场原则确定产量和价格的言论，是在特定场合下对中国市场经济现状所做的总体性描述，既与本案无关，也无明示或暗示中国对于包括维C行业在内的部分特定行业放弃有限的监管政策或放弃自己继续根据中国法和国际法行使监管的权利。商务部认为它所维持的形式有限的监管（诸如对维生素C出口所实施的监管）与建立社会主义市场经济的国家目标是相一致的。正如商务部在本声明第二条中所言，在特殊历史背景下对某些商品（如维生素 C）实施出口监管，既符合中国的特定利益，也符合进口国保护和监管其国内相关产业的贸易政策，且其管理模式是符合国际法和国际惯例的，在实施过程中未受到其他国家或地区政府的质疑。中国理解和确信，事实上所有主权国家或地区（包括美国）都对部分私有个体和产业实

施符合其利益的各种形式的政府监管，而本案所涉及的中国政府对维生素 C 实施的出口监管也别无二致。



中华人民共和国商务部条约法律司敬呈

二 00 九年八月三十一日