```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE VITAMIN C                          MEMORANDUM
ANTITRUST LITIGATION                     AND ORDER
                                         MD 06-1738 (BMC) (JO)
This document refers to: ALL ACTIONS
------------------------------------------------------------X
```

**JAMES ORENSTEIN, Magistrate Judge:**

Plaintiffs Animal Science Products, Inc.; The Ranis Company, Inc.; and Magno-Humphries Laboratories, Inc. move to compel defendant Northeast Pharmaceutical Group Co., Ltd. ("NEPG") to produce nine documents notwithstanding NEPG's assertion of privilege. Docket Entry ("DE") 317. For the reasons set forth below, I now grant the motion in part and deny it in part; specifically, I order NEPG to produce eight of the nine documents at issue (including two authored by a non-party and six that were distributed to non-parties) but deny similar relief with respect to the remaining document.

I.  Background

On August 21, 2008, the movants filed the instant application to compel NEPG to produce nine documents that it had withheld on the basis of attorney-client, work product, and joint defense privileges. DE 317 (Motion); *see id*. Ex. A (the "Privilege Log"). The movants argued that none of those privileges applied and that NEPG's disclosures to non-parties – including to the Ministry of Commerce ("Commerce Ministry") of the People's Republic of China ("PRC") – waived any protection that might otherwise have shielded the documents from disclosure. NEPG denied there had been any such waiver and provided the documents at issue for me to review *in camera*. DE 321 (NEPG's Opposition) ("Opp."). The Commerce Ministry, purporting to act as *amicus curiae*, also submitted a letter in opposition to the motion. DE 322.

I heard oral argument on the motion on September 10, 2008. DE 326 (minute entry); DE 329 (Transcript of Proceedings) ("Tr."). As NEPG's counsel noted at that time, although there are nine separate documents at issue in this motion, they consist of copies and variations of only three original documents: two authored by NEPG and one authored by the Commerce Ministry. Specifically, the nine documents at issue are those numbered 1, 3, 4, 6, 7, 8, 13, 17, and 43 in NEPG's Privilege Log. *See* Privilege Log at 1-2, 5. Documents 3 and 4 (collectively, the "Ministry Report") are two English translations of the same document which was written by the Commerce Ministry, addressed to "The Chamber," and shared with NEPG, "the [Commerce] Ministry's outside counsel," and the other defendants in this litigation. *Id.* at 1. NEPG authored documents 1, 6, 7, 8, 13, and 43 (collectively, the "Report to Government Agencies") – which all have essentially the same content – and sent them to the Commerce Ministry as well as the PRC's Ministry of Foreign Affairs (the "Foreign Ministry") and the Shenyang Municipal Bureau of Foreign Trade and Economic Cooperation ("Shenyang Bureau"). *Id.* at 1-2, 5. NEPG also authored document 17 and sent it exclusively to the Commerce Ministry. *See* Tr. at 41-43; Privilege Log at 2.

II.     Discussion

NEPG asserts two bases for withholding the documents at issue. First, it contends that all of the documents are shielded from disclosure as attorney work product pursuant to Federal Rule of Civil Procedure 26(b)(3), notwithstanding the fact that each was prepared by or disclosed to a non-party. Opp. at 1-2. Second, NEPG argues that the documents are independently shielded from discovery by the "common interest rule" or "joint defense" privilege. *Id*. at 2-3. I address each theory in turn below.

A.  Work Product

1.  Applicable Law

The work product doctrine protects from disclosure documents "prepared in anticipation of litigation or for trial by or for another party or by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). However, "the principle underlying the work product doctrine – sheltering the mental processes of an attorney as reflected in documents prepared for litigation – is generally not promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003) (citation omitted).

Generally, a voluntary breach of the zone of privacy protected by the work product doctrine – sharing, for instance, theories and strategy with an adversary – destroys the privilege. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975); *In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982)). The test for such waiver is whether the disclosure at issue has "substantially increased the opportunities for potential adversaries to obtain the information." *In re Visa Check/Master Money Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (citing 8 Charles A. Wright & Richard L. Marcus, Federal Practice & Procedure § 2024, at 369 (2d ed. 1994)); *see also In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y. 1990). The party seeking disclosure is not required to prove that its adversary's earlier disclosure to a purported ally substantially increased that risk; to the contrary,

it is the party claiming the privilege that carries the heavy burden of demonstrating that the privilege applies and has not been waived. *See In re Grand Jury Subpoenas*, 318 F.3d at 384; *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002) ("The party asserting the protection afforded by the work product doctrine has the burden of showing … that it has not been waived.") (citations omitted).

        2.        The Ministry Report

NEPG describes each of documents 3 and 4 as a "Report from Ministry of Commerce sent to outside litigation counsel and NEPG regarding the Ministry's draft amicus curiae brief[.]" Privilege Log at 1. NEPG may not properly withhold these documents pursuant to the work product doctrine because they were not "prepared by or for a party, or by his representative." *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (citations and quotations omitted). NEPG argues that these documents meet this threshold concern because they were "prepared *for* a party – NEPG and the Defendants." Opp. at 1 (emphasis in original). This assertion contradicts the Privilege Log, which describes the document as one prepared by the Commerce Ministry and addressed to "The Chamber" – referring to the China Chamber of Commerce of Medicines & Health Products Importers & Exporters (the "Chamber"). The fact that the Ministry Report was also sent to NEPG does not mean it was prepared for NEPG, nor does the fact that the document was prepared to support NEPG's position in this litigation. Such an interpretation of the work product doctrine would extend its coverage far beyond its intended purpose, and NEPG cites no authority for the proposition that a document prepared by a non-party for another non-party is NEPG's work product.

Similarly, NEPG fails to demonstrate how the Commerce Ministry was acting as NEPG's agent or representative in preparing the Ministry Report for the Chamber. A representative

includes a "consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). NEPG submits no support for its implicit assertion that the Commerce Ministry of the PRC served it in any such role.[1] I thus conclude that NEPG has failed to carry its burden of demonstrating that the Ministry Report constitutes attorney work product within the meaning of the applicable rule.

### 3. The Report to Government Agencies

The Report to Government Agencies was plainly prepared by a party because of the instant litigation. It therefore is unquestionably subject to protection as attorney work product, and the movants do not argue to the contrary. Instead, the movants assert that NEPG waived the protection by disclosing the document to various non-party government bodies. I agree.

As a threshold matter, I note that NEPG improperly faults the movants for failing to assert that its dissemination of the documents at issue increased the risk of disclosure to its adversaries, and flatly asserts – albeit without citation to any evidence – that "there was *no* possibility that the PRC would allow opinion work product related to the defense of this litigation" to be so disclosed. Opp. at 2 (emphasis in original). The burden of demonstrating that no such risk existed, and to do so on the basis of something other than counsel's assertion, falls squarely on the party asserting the privilege. NEPG, however, has failed to establish that its disclosure to various government agencies did not substantially increase the opportunity for potential adversaries to obtain the otherwise privileged information. *See In re Visa Check/Master Money Antitrust Litig.*, 190 F.R.D. at 314 (citation omitted).

---

[1] Moreover, as the Commerce Ministry made clear in explaining the interest that prompted it to submit a brief as *amicus curiae* in support of the defendants' motion to dismiss, it participated in this lawsuit to vindicate the independent interests of the sovereign government of the PRC. DE 69 (*Amicus* Brief in Support of Motion to Dismiss) at 1. That explanation is plainly at odds with the implicit assertion that the Commerce Ministry was acting "for" NEPG in any meaningful sense.

Whatever the nature of NEPG's relationship with the Commerce Ministry (a matter discussed further below), the record contains no evidence about NEPG's relationship with the other recipients of the Report to Government Agencies. NEPG offers nothing in that regard other than a self-serving and conclusory assertion by NEPG's counsel that the Foreign Ministry and the Shenyang Bureau, as components of the government of the PRC, "share a common interest with the Defendants; [the Foreign Ministry] because this litigation implicates issues of international affairs as well as economic regulatory issues, and [the Shenyang Bureau] as a local branch of the [Commerce] Ministry." Opp. at 3 n.11. Such "ipse dixit assertions" are insufficient to carry the burden of proving that the work product privilege applies. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007); *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984); *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965) (observing that allowing a party to discharge its burden of establishing a relationship giving rise to a privilege through "mere conclusory or ipse dixit assertions … would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed").

It might make sense to assume that any agency of the PRC government, and not just its Commerce Ministry, would act in conformity with the interests of the defendants in this case, or at a minimum that there would be little if any risk that such agencies would affirmatively disclose NEPG's documents to the plaintiffs. But such an assumption would be pure speculation. A nation's foreign policy apparatus inherently has many competing interests to balance, and its support for any one private entity can easily lapse as new exigencies arise. Similarly, it is impossible to predict – at least without evidence – whether a municipal entity concerned with foreign trade would inevitably take the side of a domestic entity involved in a dispute with foreign companies or, in some circumstances, try to show support for the latter in the hope of

attracting their investment in the municipality's economy. I do not mean to suggest that there is any affirmative reason to believe that NEPG placed its attorney work product at risk by sharing it with the Foreign Ministry or the Sheyang Bureau. I suggest only that there is no reason to assume that the absence of evidence favors NEPG on the question of whether its disclosures to the Foreign Ministry and the Sheyang Bureau substantially increased the risk of disclosure to the movants. Accordingly, I conclude that NEPG has failed to meet its burden of establishing that it did not waive any work product doctrine with respect to the Report to Government Agencies.[2]

    4.    <u>Document 17</u>

NEPG describes document 17 as a letter it sent to the PRC's Minister of Commerce on August 29, 2005, that included the legal analysis of its counsel about the instant lawsuit. Privilege Log at 2. Before sending that letter, NEPG and the Chamber (a subsidiary agency within the Commerce Ministry) had entered into a written Joint Defense Agreement ("JDA"), a copy of which NEPG submitted under seal. Tr. at 32; Opp. Ex. A-2. The JDA requires its signatories to adhere to certain confidentiality obligations with respect to documents pertaining to this litigation. Although the JDA does not bind the Commerce Ministry itself, but only one of

---

[2] NEPG also relies on the existence of an "oral understanding" it had with the Commerce Ministry concerning the protection of information they shared. *See* Tr. at 33-34; DE 327 (supplemental letter by NEPG) at 1-2. Such reliance seems ill-advised, in part because it is based on nothing more than the hearsay report of NEPG's counsel of what he was told by the Commerce Ministry's counsel (later supported by a written assertion by the Commerce Ministry's counsel, *see* DE 322 at 1; DE 327 at 1-2). Moreover, the "oral understanding" would do nothing to advance NEPG's assertion of privilege with respect to the copies of the Report to Government Agencies that it shared with the Foreign Ministry and the Sheyang Bureau, neither of which was bound by any such agreement. Accordingly, NEPG has unquestionably failed to meet its burden with respect to the versions of the Report to Government Agencies shared with the latter two agencies. In light of NEPG's affirmative claim that all six versions of the Report to Government Agencies are substantially similar, *see* Tr. at 41-42, I conclude that its failure to establish an unwaived privilege as to the versions sent to the Foreign Ministry and the Sheyang Bureau suffice to require the disclosure of all six iterations of the document.

its components, it largely substantiates NEPG's assertion that the disclosure of its legal analysis to the Commerce Minister did not substantially increase the opportunities for potential adversaries to obtain such information. I therefore conclude that NEPG has not waived the work product privilege with respect to document 17.

It is of course true that a party will in many circumstances be deemed to have waived the protection of the work product doctrine by disclosing its counsel's analysis to a government agency. *See*, *e.g.*, *In re Steinhardt*, 9 F.3d at 234. But as the *Steinhardt* court itself emphasized, such disclosure does not necessarily waive the protection. *Id*. at 236. Indeed, the court explicitly anticipated that finding such waiver might not be appropriate where the disclosure advances the common interests of the party making the disclosure and the government agency. *Id*.; *see also In re Cardinal Health, Inc. Sec. Litig.*, 2007 WL 495150, at *9 (S.D.N.Y. Jan. 26, 2007). Because the evidence suffices to allow the inference that NEPG provided document 17 to the Minister of Commerce to promote an interest that was then, and apparently continues to be, aligned with the interests of the Commerce Ministry, I conclude that the disclosure did not significantly increase the risk that NEPG's attorney work product would be disclosed to NEPG's potential adversaries. The document therefore need not be produced.

  B. <u>Common Interest</u>

The "common interest" doctrine does not recognize a privilege as such, but instead creates a limited exception to the rule concerning waiver of the attorney-client privilege. *See United States v. Agnello*, 135 F. Supp. 2d 380, 382 (E.D.N.Y. 2001); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999); *ECDC Envtl., L.C. v. New York Marine & Gen. Ins. Co.*, 1998 WL 614478, at *16-17. "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense

effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). As the party seeking to invoke the privilege, NEPG bears the burden of establishing that it applies. *See*, *e.g.*, *United States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999); *In re Grand Jury Subpoena*, 750 F.2d 223, 224 (2d Cir. 1984).

I conclude for several reasons that the common interest rule does not protect any of the documents at issue from disclosure. First, to the extent that NEPG relies on the proposition that it entered into an oral joint defense agreement with a subsidiary of the Commerce Ministry, *see* Opp. at 3; Tr. at 34, it has failed to establish the existence of such an agreement with sufficient specificity. As the party purporting to rely on such an agreement, NEPG "bears the burden of demonstrating its existence by establishing each element of the attorney client privilege." *United States v. Salvagno*, 306 F. Supp. 2d 258, 271 (N.D.N.Y. 2004) (citing *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997)). Specifically, "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *Int'l Bhd. of Teamsters*, 119 F.3d at 214. NEPG's vague description of the claimed agreement falls far short of establishing those elements, and the record contains literally no evidence to substantiate even that meager description, only unsupported assertions of counsel.

Second, regardless of the existence or specificity of any agreement between NEPG and any government agency, it is clear that NEPG did not share a *legal* interest with the entities to whom the documents at issue were disclosed. "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation

9

toward a common *legal* goal." *North River Ins. Co. v. Columbia Cas. Co.*, 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995) (emphasis added). "The doctrine does not extend to communications about a joint business strategy that happens to include a concern about litigation…. The parties claiming protection under the doctrine must show that they had a common *legal*, as opposed to commercial, interest…." *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y.1995)) (emphasis added); *see also Int'l Ins. Co. v. Newmont Mining Corp.*, 800 F. Supp. 1195, 1196 (S.D.N.Y. 1992) (finding mere shared desire for an action to succeed insufficient to invoke common interest rule). There may be any number of reasons – relating to economic or foreign policy, ideological considerations, or simple home-team favoritism – that might cause the PRC and its various agencies to have an interest in seeing this lawsuit end on terms favorable to the defendants that coincide with NEPG's legal interests in the litigation. But none of those reasons arises from the possibility that the outcome of this litigation will have any legal consequences for those agencies.[3]

     NEPG asserts no more than that it shares with the Commerce Ministry a "common interest with respect to the regulation and the efficient regulation of the economy[.]" Tr. at 47-48. It cites no authority, however, to support the proposition that such an interest can support assertion of the attorney-client privilege as extended by the common interest rule. The assertion of a common interest with the Sheyang Bureau is even weaker: NEPG relies on nothing more

---

[3] As the Commerce Ministry's counsel has emphasized, that government agency is "in no way involved in the manufacture, managerial control, operation or anything else having to do with pharmaceuticals...." DE 39 at 37 (Transcript of May 3, 2006 proceedings). Even leaving aside consideration of foreign sovereign immunity, it is therefore manifest that the Commerce Ministry's interest in this litigation is not of a legal nature.

than its assertion that the latter is "a local branch of the [Commerce] Ministry." Opp. at 3, n. 11. Because NEPG fails to demonstrate that it shares a common legal interest with the Commerce Ministry, it necessarily fails to make such a showing with respect to the Sheyang Bureau. Finally, NEPG has similarly failed to provide anything other than a conclusory statement that the Foreign Ministry shares a common interest with the defendants because "this litigation implicates issues of international affairs as well as economic regulatory issues." *Id.* That, too, is not a legal interest – and in any event NEPG makes no attempt to explain how NEPG, as a private entity, shares that interest in any way that trumps the movants' legitimate discovery interests. Accordingly, the common interest rule does not apply.[4]

III. Conclusion

For the reasons set forth above, I grant in part and deny in part the motion to compel; specifically, I order defendant Northeast Pharmaceutical Group Co., Ltd. to produce documents numbered 1, 3, 4, 6, 7, 8, 13, and 43 in its Privilege Log but deny similar relief with respect to document number 17.

**SO ORDERED.**

Dated: Brooklyn, New York
January 20, 2011

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge

---

[4] In addition, even if the relevant government agencies could properly be considered "parties" sharing a legal interest in common with NEPG, the Report to Government Agencies was not directed to counsel for any such party, but rather to the party itself. The common interest rule does not protect such communications. *See*, *e.g.*, *Walsh*, 165 F.R.D. at 18.