```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
                                                               :
IN RE VITAMIN C ANTITRUST LITIGATION                           :   06-MD-1738 (BMC) (JO)
                                                               :
-------------------------------------------------------------- :
                                                               :
This document relates to:                                      :
                                                               :   MEMORANDUM
ANIMAL SCIENCE PRODUCTS, INC., et al.,                         :   DECISION AND ORDER
                                                               :
                               Plaintiffs,                     :   05-CV-0453
                                                               :
         -against-                                             :
                                                               :
HEBEI WELCOME PHARMACEUTICAL CO.                               :
LTD., et al.,                                                  :
                                                               :
                               Defendants.                     :
-------------------------------------------------------------- X
```

**COGAN**, District Judge.

This antitrust case is presently before me on a motion for summary judgment in favor of defendant Northeast Pharmaceutical Co. Ltd. ("Northeast"). For the reasons stated below, the motion is denied.

## BACKGROUND[1]

This action commenced on January 26, 2005. Related actions were subsequently filed in other districts, and all of these cases were eventually coordinated by the Judicial Panel for Multidistrict Litigation and transferred to this Court for pretrial proceedings. Plaintiffs accuse multiple Chinese companies of conspiring to fix the prices and limit the output of vitamin C exported to the United States from China. On September 6, 2011, I issued a Memorandum Decision and Order (the "September Order") denying an omnibus motion for summary judgment

---

[1] These facts are undisputed.

filed by many of the defendants in this action, including Northeast. In the September Order, familiarity with which is assumed for the purpose of this decision, I rejected defendants' contentions that the Chinese government had compelled the price-fixing conspiracy and that dismissal was warranted on the grounds of international comity; the foreign sovereign compulsion doctrine; and the acts of state doctrine. See In re Vitamin C Antitrust Litig., 810 F. Supp. 2d 522 (E.D.N.Y. 2011).

On January 26, 2012, I granted class certification under Rule 23 of the Federal Rules of Civil Procedure on behalf of two classes; one seeking damages and the other seeking injunctive relief. Northeast is named as a defendant in only the injunction class; no damages are sought against Northeast. The injunction class is represented by Animal Science Products, Inc. Plaintiffs have not proposed the specifics of the injunction that they seek at this point; the third amended complaint simply asks that "defendants be enjoined from continuing the currently ongoing unlawful combination and conspiracy alleged herein and other appropriate injunctive relief."

In addition to the omnibus motion for summary judgment, Northeast moved separately for summary judgment, arguing that the undisputed facts show that injunctive relief against Northeast is unwarranted because "it would be impracticable, requiring excessive court supervision to seek to enforce it; it would interfere with China's sovereignty and constitute an affront to that nation's identified national interests of 'vital importance'; it would ultimately be ineffectual, unenforceable, and futile; and it would, as ill-conceived and ineffective relief also at odds with international comity, diminish the judiciary's equitable powers generally."

## DISCUSSION

Although Northeast listed various theories in support of its motion, the crux of the argument is simple: Northeast contends that the Chinese government would decline to enforce an injunction from this Court, leaving Northeast to flout this Court's injunction with impunity. It follows, according to Northeast, that this Court's equitable powers would diminish if the Court issued an injunction that was bound to be flagrantly ignored.

The parties dispute whether or not China would enforce an injunction from this Court, but this point is immaterial because Northeast's motion is meritless even if Northeast is correct about China. Northeast argues that this Court would have no way to enforce its own injunction except to "embargo all exports of vitamin C from Northeast at U.S. ports," which would potentially "initiate an international trade war." Surely this is not the only option to enforce the injunction.

I am confident that I will be able to enforce an injunction against Northeast by other means. For example, if Northeast makes good on its promise to disobey an injunction, I can hold Northeast in civil or criminal contempt and assess fines in connection therewith. See United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 114 S. Ct. 2552 (1994) (fines may be imposed in connection with both civil and criminal contempt); Paramedics Electromedicina Comercial, LTDA v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 657 (2d Cir. 2004) ("A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt.") (citing Timken Roller Bearing Co. v. United States, 341 U.S. 593, 604, 71 S. Ct. 971 (1951)). To the extent that plaintiffs have sustained losses as a result of Northeast's contempt, the fines may be made payable to plaintiffs. See United States v. United Mine Workers of Am., 330 U.S. 258, 304, 67 S. Ct. 677 (1947); SD Protection, Inc. v. Del Rio, 587 F. Supp. 2d 429,

434 (E.D.N.Y. 2008). Plaintiffs would then be empowered to seize Northeast's United States assets or attach Northeast's right to receive payments from Northeast's United States customers.

Notably, Northeast cites no law in support of its contention that summary judgment is warranted based on the prospective unenforceability of an injunction in a foreign country. Northeast relies exclusively on an Eleventh Circuit case about water rights. See Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt., 280 F.3d 1364 (11th Cir. 2002). There, the district court issued an injunction banning the South Florida Water Management District from operating a pump station without a permit. Although the literal terms of the injunction would have required the defendant to turn off the pump during the time necessary to secure a permit, both parties agreed that turning off the pump station would cause substantial flooding and displace many homes. The Eleventh Circuit concluded that, due to the prospect of flooding, the injunction could never be strictly enforced. Crucially, the Court also concluded that the plaintiffs had never truly intended for the injunction to be enforced; they merely sought to force the defendant to obtain a permit. Northeast quotes language from this decision counseling that the "strong arm of equity . . . is debased and weakened if used to issue injunctions which cannot rightly be enforced." Northeast clipped off the end of this sentence, however, which reads "*and are actually never intended to be enforced.*" Id. at 1371 (emphasis added).

Miccosukee Tribe thus addressed unenforceability in a different sense of the word. The injunction at issue in that case was essentially silly; no Court would ever enforce it, no party would ever seek to have it enforced, and it was therefore meaningless. Understandably, the Eleventh Circuit reasoned that allowing such an injunction to stand would demean the judiciary's equitable powers by creating the impression that some injunctions are to be heeded and some are not. The injunction sought against Northeast, on the other hand, is meaningful and (if warranted

4

by defendants' actions) ought to be enforced. Plaintiffs, who have allegedly suffered economic harm as a result of defendants' Vitamin C conspiracy, are genuinely incentivized to have this injunction enforced. This Court will enforce the injunction if it determines that injunctive relief is appropriate on the merits. The injunction is not rendered "unenforceable" within the meaning of Miccosukee Tribe merely because China may, in the future, place obstacles in plaintiffs' path to prevent them from enforcing it in China.

Northeast's remaining arguments simply reiterate the international comity concerns addressed by this Court in the September Order. That decision made clear that, unless "defendants' price-fixing was compelled by the Chinese government, dismissal on comity grounds would not be justified." Vitamin C, 810 F. Supp. 2d at 543. Having found that China did not compel the defendants' conspiracy, see id., there is no reason for this Court to revisit the comity argument with respect to Northeast's separate motion.

To the extent Northeast raises comity concerns that specifically address enjoining activities on foreign soil, the cases cited by Northeast are inapposite to this case. Northeast warns that the power to enjoin foreign activities "should be exercised with great reluctance" and "often raise[s] serious concerns for sovereignty." But Northeast cites this Court only to cases in which the injunction at issue was sought directly against a foreign government; necessarily required the Court to invalidate a foreign country's decree; or compelled specific action from a foreign government. See, e.g., Bano v. Union Carbide Corp., 361 F.3d 696 (2d Cir. 2004) (declining to issue an injunction that would compel Madhya Pradesh, a state in India, to cooperate in an environmental clean-up task); Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 647 (2d Cir. 1956) (declining to "determine the validity of trade-marks which officials of

5

foreign countries have seen fit to grant"); McKusick v. City of Melbourne, Fla., 96 F.3d 478 (11th Cir. 1996) (declining to issue an injunction against the City of Melbourne, Florida).

In this case, however, plaintiffs are not asking this Court to enjoin uniquely foreign behavior or to force China to change its domestic policies with respect to price-fixing. Instead, plaintiffs ask this Court to enjoin private companies from engaging in behavior that takes place on foreign soil but is directed toward the United States. This is indisputably permissible. See Vanity Fair Mills, 234 F.2d at 647 ("We realize that a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere."). Moreover, since the cartel that plaintiffs seek to enjoin is specifically directed toward exports, including those to the United States, and since the Chinese government did not compel the existence of this cartel, an injunction to stop the cartel does not inappropriately encroach on China's sovereignty.

## CONCLUSION

Northeast's [434] motion for summary judgment is denied.

**SO ORDERED.**

s/ BMC
_____
U.S.D.J.

Dated: Brooklyn, New York
June 1, 2012