UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE VITAMIN C                                   MEMORANDUM
ANTITRUST LITIGATION                              AND ORDER

This document refers to: ALL ACTIONS            06-CV-1738 (BMC) (JO)
-----------------------------------------------------------X

James Orenstein, Magistrate Judge:

      Plaintiffs Animal Science Products, Inc. and The Ranis Company move to compel defendant Aland (Jiangsu) Nutraceutical Company, Ltd. ("Aland") to produce a memorandum that the law firm of Sidley Austin Brown & Wood, LLP ("Sidley") prepared in May 2005 (the "Sidley Memo") and sent to all of the defendants in this case as well as the Ministry of Commerce of the People's Republic of China (the "Commerce Ministry") and the China Chamber of Commerce of Medicines & Health Products Importers & Exporters (the "Chamber"). Docket Entry ("DE") 454 (Motion). Aland asserts that the document is protected against disclosure under the attorney-client, joint defense, and work-product privileges. DE 456 (Opposition) ("Opp."). For the reasons set forth below, I deny the motion on the ground that the memorandum at issue is attorney work product that Aland is privileged to withhold.

I.    Background

      I assume the reader's familiarity with prior proceedings in this litigation and summarize them here only to the extent necessary to provide context for the discussion below. In general, the plaintiffs contend that Aland and other Chinese manufacturers of vitamin C violated pertinent antitrust laws by fixing the prices and limiting the output of vitamin C exported to the United States from China. Shortly after the litigation began, on May 8, 2005, Aland retained the law firm of Heller Ehrman LLP to represent it in this litigation; after that firm's dissolution, Aland retained the law firm of Orrick, Herrington & Sutcliffe ("Orrick") to serve as its counsel of record. DE

456-1 (declaration of Aland's Deputy General Manager Wang Qiang ("Wang")) ("Wang Decl.") ¶ 13.

The Commerce Ministry is an agency of the Chinese government, as is its subsidiary, the Chamber; neither has ever been a party to the action. Indeed the Ministry has previously taken pains to distance itself from the private entities that have been named as party defendants: the Ministry represented to the court that its "relationship … to the defendants in this case is purely one of the government regulator to an industry that's regulated," and that "the Ministry is in no way involved in the manufacture, managerial control, operation or anything else having to do with pharmaceuticals[.]" DE 454-2 (transcript of proceedings dated May 3, 2006) at 3. Nevertheless, although the Commerce Ministry and the Chamber are not parties, the Commerce Ministry has been permitted to participate in certain proceedings to date as *amicus curiae*. *See* DE 11; DE 35. In its appearances as *amicus*, the Commerce Ministry has been represented by the Sidley firm, which authored the document at issue in the instant motion.[1]

In opposing the motion to compel, Aland now asserts for the first time that in the months immediately following the plaintiffs' initiation of this suit, Aland entered into its own attorney-client relationship with Sidley, concurrent with one undertaken by the Chamber. Opp. at 1. Specifically, Aland contends that in early February 2005, Wang met twice with representatives of the other named defendants as well as representatives of the Commerce Ministry and the

---

[1] In addition to discovery relief, the movants ask the court to "revisit the Ministry's status as *amicus curiae*." Motion at 1. I deny that aspect of the motion as moot: there are no further proceedings scheduled before me, nor is there any reason to anticipate that the Commerce Ministry will seek to be heard on any unresolved issue. Should the Commerce Ministry seek to appear in the future, the court can at that time assess whether it should be permitted to do so and will of course be free to consider the full record in this litigation in determining what weight, if any, to afford any argument the Commerce Ministry and its counsel might submit.

Chamber, to discuss the pending litigation. *Id.* Sidley attorneys attended the second of these meetings, on February 5, 2005, at which everyone present orally agreed to share litigation-related information with one other. *Id.*; Wang Decl. ¶¶ 5-7. On March 30, 2005, the defendants and the Chamber reduced what they termed their "joint defense" agreement to writing; Aland has voluntarily submitted a copy of this agreement to the court for *in camera* review in conjunction with this motion. Opp. at 2; Wang Decl. ¶ 9.

In his declaration, Wang states that pursuant to this agreement, he permitted Sidley attorneys to interview Aland employees and review Aland documents with the "understanding that the purpose of these interviews and of Aland allowing Sidley to review Aland's files was so that Sidley Austin could provide legal advice and recommendations regarding the litigation to Aland, the other defendants and the Chamber." Wang Decl. ¶ 8. He also states that he understood all such communications to be confidential. *Id.* ¶¶ 9-11. As noted above, Aland retained its own counsel on May 8, 2005, and it received the Sidley Memo on May 20, 2005. *Id.* ¶¶ 13-14. Following Aland's receipt of this document, Wang avers that "Sidley Austin no longer provided Aland with legal representation, and [Aland] looked solely to [its] own lawyers at Heller Ehrman and Orrick." *Id.* ¶ 16.

Sidley attorney Joel Mitnick ("Mitnick") declares that in or around March 2005, the Commerce Ministry directed the Chamber to engage Sidley "to provide legal analysis to the Ministry, the Chamber and each Defendant in connection with a legal analysis of the strengths and weaknesses of the allegations against the defendants and an analysis of possible affirmative

defenses to such litigation." DE 463-1 ("Mitnick Decl.") ¶ 2.[2] Mitnick declined to say whether Aland was his firm's client, and instead deferred to Aland with respect to whether the company understood itself to have an attorney-client relationship with Sidley from March 2005 to May 2005; however, he does state "categorically" that at all other times, "Sidley has not represented any Defendant for any purpose." Mitnick Decl. ¶ 5.

II.  Discussion

As codified in the relevant rule of procedure, the work product doctrine provides that "[o]rdinarily, a party may not discover documents … that are prepared in anticipation of litigation … for another party[.]" Fed. R. Civ. P. 26(b)(3). The initial burden of justifying the application of the work product doctrine is on the asserting party, and "the burden is a heavy one because privileges are neither lightly created nor expansively construed." *Gonzalez v. City of New York*, 2009 WL 2253118, at *2 (E.D.N.Y. July 28, 2009) (internal citations omitted). I conclude that Aland has met this burden: the record plainly establishes that the general rule applies in the circumstances of this motion, as the moving plaintiffs seek to discover a document that was prepared in anticipation of this litigation for its adversary, Aland.

The protection of the work product privilege, however, is not absolute. A party waives the privilege when it "uses the protected documents 'in a manner that is inconsistent with the protection,'" typically by sharing it with others in a way that "substantially increase[s] the opportunities for potential adversaries to obtain the information." *Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373, 380 (E.D.N.Y. 2011) (quoting *Bank of Am., Inc. v. Terra Nova Ins. Co.*,

---

[2] Mitnick did not purport to speak for his client in his declaration: to the contrary, although I asked the Commerce Ministry, as a friend of the court, to submit its own account of the pertinent events, DE 462, it refused to do so. *See* DE 463.

212 F.R.D. 166, 170 (S.D.N.Y. 2002). Consistent with prior rulings in this case, I cannot find such a waiver here. The Sidley Memo was shared only with Aland's codefendants, the Commerce Ministry, and the Chamber. As the court has already held in deciding an earlier similar motion in this litigation, at the time the Sidley Memo was created and shared, "the interests of the defendants and the various organs of the Chinese government were sufficiently aligned … as to render it highly unlikely that the Commerce Ministry or the Other Agencies [including the Chamber] would act in a manner that would risk disclosure of [a defendant's] communications to plaintiffs." DE 449 at 7 (Order dated Dec. 8, 2011). There is no discernible basis for distinguishing the circumstances of this motion from those that produced the quoted finding; as a result I conclude that the law of the case compels a finding that Aland did not waive its right to invoke the work product privilege when it shared the Sidley Memo with the Commerce Ministry and the Chamber.

In the absence of a waiver, the movants can overcome Aland's assertion of work product privilege only by demonstrating that they have a substantial need for the information in the Sidley Memo and that they are unable to obtain such information elsewhere without undue hardship. *In re Grand Jury Proceedings*, 219 F.3d 175, 190-91 (2d Cir. 2000); Fed. R. Civ. P. 26(b)(3)(A)(ii). In assessing such a claim of substantial need, I note that "courts have consistently made a distinction between primarily factual work product and so-called 'core' work product," the latter of which "includes the 'mental impressions, conclusions, opinions, or legal theories of an attorney.'" *Jean v. City of New York*, 2010 WL 148420, at *2 (E.D.N.Y. Jan. 12, 2010) (quoting *Abdell v. City of New York*, 2006 WL 2664313, at *6 (S.D.N.Y. Sept. 14, 2006)). Although the former is subject to disclosure once the required showings are made, the latter is entitled to more stringent protection, described by some courts as "absolute" or "near absolute." *Id.* (collecting cases). In this circuit, "at

5

a minimum such material is to be protected unless a highly persuasive showing [of need] is made." *Id.* (quoting *In re Grand Jury Proceedings*, 219 F.3d at 190-91).

The movants contend that they need the Sidley Memo for two reasons. First, they argue that it is "the only source of information about a [pair of] relevant document[s] in the case" (namely, the minutes of a November 20, 2001, Chamber meeting and an accompanying memorandum), and is therefore necessary to authenticate those documents should the case proceed to trial. Motion at 2. However, Aland has addressed that concern by stating in writing that it will not object to the documents' admission. Opp. at 3. I therefore conclude that the movants have no substantial need for the Sidley Memo for the purpose of authenticating evidence – although I will of course reconsider that part of my decision should any defendant object to the admission of the meeting minutes or accompanying memorandum on the ground that it is not properly authenticated.

Second, the movants assert that the Sidley Memo's factual statements would be relevant to their case in various ways, including but not limited to cross-examination at trial. DE 464 (supplemental letter) at 1. For purposes of analysis, I assume that to be true – but that does not suffice to overcome the privilege. To the extent the Sidley Memo contains useful factual information (as opposed to Sidley's legal analysis of such information), the movants must also show that they are unable to obtain such information in some other way without undue hardship. Because they have failed to do so, I conclude there is no basis to compel Aland to disclose the Sidley Memo over its invocation of the work product privilege. *See*, *e.g.*, *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 61 (E.D.N.Y. 2007). ("[B]ecause the work product privilege does not protect facts in [a] document (the privilege protects documents, not facts), the

party seeking those facts may obtain them through [means other than document requests], such as through depositions and interrogatories.") (quoting *ECDC Envtl., L.C. v. New York Marine and Gen. Ins. Co.*, 1998 WL 614478, at *16 (S.D.N.Y. June 4, 1998)); *SEC v. Treadway*, 229 F.R.D. 454, 456 (S.D.N.Y. 2005) ("No case cited by Defendants concludes that parties cannot, by deposing witnesses, obtain 'the substantial equivalent' of earlier [opposing] attorney interview notes of the same witnesses without 'undue hardship.'") (quoting *SEC v. Thrasher*, 1995 WL 46681, at *3 (S.D.N.Y. Feb. 7, 1995)).[3]

III.   Conclusion

For the reasons set forth above, I deny the motion to compel.

SO ORDERED.

Dated: Brooklyn, New York
       August 22, 2012

                                                    /s/
                                         JAMES ORENSTEIN
                                         U.S. Magistrate Judge

---

[3] Because I conclude that Aland may withhold the Sidley Memo pursuant to the work product privilege, I need not and do not decide whether it may also withhold the document as a privileged communication with its counsel.

7