UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | MASTER FILE 06-MD-1738 (BMC) (JO) |
| This Document Relates to: ALL CASES | |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF DIRECT AND INDIRECT
PURCHASER PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF SETTLEMENTS
<u>WITH DEFENDANT ALAND (JIANGSU) NUTRACEUTICAL CO., LTD.</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 2

      A.    The Litigation.................................................................................................. 2

      B.    The Settlements............................................................................................... 4

            1.    The Certified Classes Settlement Agreement ........................................... 4

                  a.    The Direct Purchaser Damages Class
                        Settlement Fund ....................................................................... 4

                  b.    The Release from the Direct Purchaser
                        Damages Class ........................................................................ 5

                  c.    Injunctive Relief and Other Provisions................................... 5

                  d.    The Release from Injunction Releasors .................................. 6

            2.    The Indirect Purchaser Damages Settlement Agreement ......................... 6

                  a.    The Indirect Purchaser Damages Class
                        Settlement Fund ....................................................................... 7

                  b.    The Release from Indirect Purchaser
                        Damages Releasors .................................................................. 7

III.  STANDARD OF JUDICIAL APPROVAL FOR THE
      CLASS ACTION SETTLEMENTS .......................................................................... 7

      A.    The Proposed Settlements are Procedurally Fair .......................................... 8

      B.    The Proposed Settlements Are Substantively Fair......................................... 9

            1.    Complexity, Expense, and Likely Duration of
                  the Litigation (*Grinnell* Factor 1) ........................................................ 10

            2.    Reaction of the Class to the Settlement
                  (*Grinnell* Factor 2) ............................................................................. 12

            3.    Stage of the Proceedings and Amount of
                  Discovery Completed (*Grinnell* Factor 3) .............................................. 12

4.      Risk of Establishing Liability, Damages, and in
        Maintaining the Class Action through the Trial
        (*Grinnell* Factors 4, 5, & 6) ....................................................................... 13

5.      Ability of Defendants to Withstand a Greater
        Judgment (*Grinnell* Factor 7)..................................................................... 14

6.      Range of Reasonableness of the Settlement Funds
        in Light of the Best Possible Recovery and All the
        Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)......................... 15

        a.      The Direct Purchaser Damages Settlement
                Agreement.......................................................................................... 15

        b.      The Indirect Purchaser Damages Settlement
                Agreement.......................................................................................... 16

        c.      The Reasonableness of Both the Direct
                and Indirect Purchaser Damages Classes'
                Settlements with Aland ..................................................................... 17

IV.     THE NOTICE PROGRAM SATISFIES DUE PROCESS ............................. 18

V.      THE PLAN OF ALLOCATION FOR THE
        SETTLEMENT FUNDS IS FAIR AND REASONABLE................................ 20

VI.     FEES/EXPENSES ............................................................................................ 22

VII.    ALAND HAS SATISFIED THE CAFA NOTICE
        REQUIREMENT............................................................................................... 23

VIII.   CONCLUSION.................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Beecher v. Able,
575 F.2d 1010 (2d Cir.1978)..................................................................................20

Chatelain v. Prudential–Bache Sec., Inc.,
805 F. Supp. 209 (S.D.N.Y. 1992) ...........................................................................9

City of Detroit v. Grinnell Corp.,
495 F.2d 448 (2d Cir. 1974).............................................10, 11, 12, 13, 14, 15

D'Amato v. Deutsche Bank,
236 F.3d 78 (2d Cir. 2001)...............................................................................7, 12

In re Air Cargo Shipping Servs. Antitrust Litig.,
No. 06-MD-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009).........................8

In re Am. Bank Note Holographics, Inc. Sec. Litig.,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................................20

In re Ampicillin Antitrust Litig.,
82 F.R.D. 652 (D.D.C. 1979)..................................................................................14

In re Baldwin United Corp.,
105 F.R.D. 475 (S.D.N.Y. 1984) .............................................................................13

In re Cendant Corp. Litig.,
264 F.3d 201 (3d Cir. 2001)..................................................................................16

In re Chambers Dev. Sec. Litig.,
912 F. Supp. 822 (W.D. Pa. 1995)...........................................................................17

In re Chicken Antitrust Litig. Am. Poultry,
669 F.2d 228, 238 (5th Cir.1982) ...........................................................................20

In re Corel Corp. Sec. Litig.,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................................................................15, 17

In re EVCI Career Colls. Holding Corp. Sec. Litig.,
No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)........................20, 21

In re Global Crossing Secs. & ERISA Litig.,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................9, 12, 13, 20

*In re Int'l Murex Techs Corp. Secs. Litig.*,
No. 93 CV 336 (JG), 1996 WL 1088899 (E.D.N.Y. Dec. 4, 1996)........................................12

*In re Joint E. & S. Dists. Asbestos Litig.*,
878 F. Supp. 473 (E.D.N.Y. 1995) ...........................................................................................8

*In re Linerboard Antitrust Litig.*,
296 F. Supp. 2d 568 (E.D. Pa. 2003) ......................................................................................10

*In re Lucent Techs., Inc., Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) .........................................................................................22

*In re Luxottica Group S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................20

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ..............................................................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................8, 13, 17

*In re Newbridge Networks Sec. Litig.*,
No. Civ. A. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 22, 1998)....................................16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y 1997) .........................................................................................9, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05-MD-1720 (JG)(JO), 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) ......................... 19-20

*In re Shopping Carts Antitrust Litig.*,
MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ....................................................10

*In re Sterling Foster & Co. Sec. Litig.*,
238 F. Supp. 2d 480 (E.D.N.Y. 2002) ......................................................................................8

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ........................................................................................8

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ......................................................................................7

*In re Vitamin C Antitrust Litig.*,
2012 U.S. Dist. LEXIS 16475 (E.D.N.Y. 2012)................................................................3, 13

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ...........................................................................................3, 13

*In re Vitamin C Antitrust Litig.*,
    584 F. Supp. 2d 546 (E.D.N.Y. 2008) ................................................................2

*In re Vitamin C Antitrust Litig.*,
    810 F. Supp. 2d 522 (E.D.N.Y. 2011) ............................................................3, 13

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ........................................................................16

*In re Warner Commc'ns Secs. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ..................................................................12

*Lazy Oil Co. v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ..............................................................13

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................11, 20, 21

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ...........................................................................21

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ..............................................................................8

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ...........................................................................15

*Nichols v. Smithkline Beecham Corp.*,
    No. Civ.A. 00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ..................15, 17

*Plotz v. NYAT Maint. Corp.*,
    No. 98 Civ. 8860 (RLE), 2006 WL 298427 (S.D.N.Y. Feb. 6, 2006) ..................22

*Snapp v. The Topps Co., Inc.*,
    No. 93-CV-0347, 1997 WL 1068687 (E.D.N.Y. Feb. 12, 1997) ...........................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................7, 8, 10, 12, 18, 19

*Weber v. Gov't Empl. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) .........................................................................15

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)...........................................................................7, 19

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ..................................................................10

**STATUTES**

28 U.S.C. § 1715(b) .................................................................................................23

28 U.S.C. § 1292(b) ...............................................................................3, 11, 13, 17

15 U.S.C. § 1 ..........................................................................................................2, 4, 5

18 U.S.C § 1711 .......................................................................................................23

**RULES**

Fed. R. Civ. P. 23(e) ...........................................................................1, 2, 7, 18, 19, 20

Fed. R. Civ. P. 45(b) ..............................................................................................6

Plaintiffs, by undersigned counsel, respectfully submit this memorandum in support of their motion for final approval of settlements with Aland (Jiangsu) Nutraceutical Co., Ltd. ("Aland").

## I.      INTRODUCTION

Plaintiffs seek final approval of two settlements with Aland. In the first settlement, reached with the Certified Classes, Aland has agreed to pay into a settlement fund $9.5 million for the Direct Purchaser Damages Class. In addition, Aland agreed to comply with any injunction entered against any non-settling Defendant by the Court. In the second settlement, reached with the Indirect Purchaser Plaintiffs, Aland has paid $1 million into a settlement fund. Both agreements represent ice breaker settlements in litigation which has lasted over six years, and both are the first civil settlements ever reached with Chinese defendants in an antitrust cartel case in a U.S. court.

On June 14, 2012, the Court preliminarily approved these settlements with Aland. Plaintiffs now seek final approval of these settlements under Federal Rule of Civil Procedure 23(e) because each is an excellent result for the respective classes.

The settlements, totaling $10.5 million, represent a significant initial recovery from the first settling cartel defendant in this case without prejudicing the ongoing claims for damages and injunctive relief against the remaining non-settling cartel Defendants. The difference in levels of the direct class settlement ($9.5 million) and the indirect class settlement ($1 million) is within the range of historical approvals of class action settlements and also fairly reflects that the direct class litigation is further progressed than the indirect class litigation. Following these settlements, both the direct class and indirect class are well positioned to pursue their claims against the remaining Defendants and to secure recoveries for their respective class members.

As detailed below, the settlements are fair, reasonable, and adequate; well within the range of possible approval; and in the best interest of class members. Plaintiffs respectfully submit that the settlements with Aland should be finally approved by this Court under Rule 23(e).

## II.     BACKGROUND

### A.     The Litigation

Plaintiffs The Ranis Company, Inc. and Animal Science Products, Inc. commenced this action on January 26, 2005. Related actions were subsequently filed in other districts, and all of these cases were eventually coordinated by the Judicial Panel for Multidistrict Litigation and transferred to this Court for pretrial proceedings. In these actions, Plaintiffs filed complaints individually and on behalf of various classes of persons and entities who purchased, either directly or indirectly, vitamin C from Aland and/or the other manufacturers named as Defendants. The Direct Purchaser Plaintiffs filed their First Consolidated Amended Class Action Complaint in January 2007, naming Aland and eight other defendant manufacturers. ECF No. 124. The Indirect Purchaser Plaintiffs filed an Amended Consolidated Class Action Complaint in November 2006. ECF No. 85. Plaintiffs alleged that Defendants conspired to unlawfully fix prices of vitamin C to be exported to the United States and worldwide, and committed other unlawful practices designed to inflate the prices of vitamin C sold to plaintiffs and other purchasers in the United States and elsewhere, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and various state laws.

Defendants filed several motions to dismiss both the Direct Purchaser and Indirect Purchaser complaints based on, among other things, sovereign immunity and lack of jurisdiction. Plaintiffs opposed the various motions and proceeded with discovery.  In November 2008, Judge Trager denied Defendants' motions to dismiss the Direct Purchaser Plaintiffs' complaint on

several grounds. *In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 559 (E.D.N.Y. 2008). Also in November 2008, a stipulation and order was entered staying the Indirect Purchaser Plaintiffs' cases until a final judgment is entered by the Court in the Direct Purchaser Action. ECF No. 340.

The current operative Direct Purchaser complaint (the Third Consolidated Amended Complaint) was filed in December 2008. ECF No. 355. There are currently three operative Indirect Purchaser complaints: *Keane et al. v. Hebei Welcome Pharmaceutical Co. Ltd*, Case No. 06-cv-00149 (Amended Consolidated Complaint) filed in November 2006, *Audette v. Hebei Welcome Pharmaceutical Co. Ltd.*, Case No. 06-cv-00988 (Massachusetts) filed in February 2005, and *Philion v. Hebei Welcome Pharmaceutical Group. Ltd,* Case No. 06-cv-00987 (California) filed in November 2005.

Following extensive briefing, this Court denied Defendants' motions for summary judgment. *In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 567 (E.D.N.Y. 2011). The Court also denied Defendants' request for permission to take an interlocutory appeal of that decision under 28 U.S.C. § 1292(b). *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 16475 (E.D.N.Y. 2012). The Court granted Direct Purchaser Plaintiffs' motion for class certification. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012). And most recently, the Court denied the China Pharmaceutical Group Ltd.'s motion to dismiss and motion for summary judgment (ECF No. 494) and the North China Pharmaceutical Group Corp.'s motion to dismiss (ECF No. 496, granting in part and denying in part the NCPC Defendants' motion to dismiss).

On June 14, 2012, the Court preliminarily approved the settlements with Aland, approved the revised definitions of the Direct Purchaser Damages Class and the Injunction Class, and approved the Notice Plan with some minor modifications the next day. *See* Order (ECF No. 485)

and Memorandum Decision and Order (ECF No. 488). The Court set the Fairness Hearing for

October 17, 2012.

### B.   The Settlements

#### 1.   The Certified Classes Settlement Agreement

After vigorous arms-length negotiations, the Certified Classes reached an agreement with

Aland in May 2012. *See* Decl. of Michael D. Hausfeld, dated May 21, 2012 ("May 21, 2012

Hausfeld Decl.") [ECF No. 470-2] ¶ 2. Under the terms of the settlement agreement, Aland

agreed to pay damages to the Direct Purchaser Damages Class,[1] and agreed to abide by any

injunction enforcing Section 1 of the Sherman Act entered by the Court against a non-settling

Defendant.[2] The Court preliminarily approved the Certified Classes Settlement Agreement with

Aland on June 13, 2012, and plaintiffs issued notice to the classes.

#### a.   The Direct Purchaser Damages Class Settlement Fund

Under the Certified Classes Settlement Agreement, Aland will pay the Settlement

Amount of $9.5 million in three installments into an Escrow Account for the Direct Purchaser

Damages Class. Decl. of Michael D. Hausfeld ("Hausfeld Decl."), Ex. A (Certified Classes

---

[1] The Direct Purchaser Damages Class, as previously certified by the Court, includes:

> All persons or entities, or assignees of such person or entities, (but excluding all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates, and any person or entity that timely and validly elects to be excluded from the Damages Settlement Class) who directly purchased Vitamin C Products for delivery in the United States, other than pursuant to a contract containing an arbitration clause, from any Defendants or their co-conspirators, other than Northeast Pharmaceutical (Group) Co. Ltd., ("Northeast") from December 1, 2001 to June 30, 2006.

[2] The Injunction Class, as previously certified by the Court, includes:

> All persons or entities, or assignees of such persons or entities, (but excluding all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates) who purchased vitamin C manufactured by Defendants for delivery in the United States, other than pursuant to a contract with a Defendant containing an arbitration clause, from December 1, 2001 to the present, requiring injunctive relief against Defendants to end Defendants' antitrust violations.

Settlement Agreement) ¶ 30. The first payment of $4 million has been paid. Hausfeld Decl. ¶ 2.

The second payment of $3 million will be paid in December 2012 and the final payment of

$2,500,000 will be paid in March 2013. *Id.*, Ex. A ¶ 30.  All interest earned on the Settlement

Fund shall become and remain part of the Settlement Fund. *Id.*, Ex. A ¶ 11.

### b.  The Release from the Direct Purchaser Damages Class

In exchange for monetary and other consideration paid by Aland, the parties agreed to

broad releases of the antitrust claims. The Aland Releasees are completely released, acquitted,

and forever discharged by Direct Purchasers from any and all claims, demands, actions, suits,

causes of action, whether class, individual, or otherwise in nature in any way arising out of or

relating to any act or omission of Releasees (or any of them) concerning the pricing, production,

development, marketing, sale or distribution of Vitamin C Products[3] during the period from the

beginning of time to the present, including claims based on the conduct alleged and causes of

action asserted, or that could have been asserted, in complaints filed in *In re Vitamin C Antitrust*

*Litigation*, 06-MD-1738 (BMC) (JO) (E.D.N.Y.) (the "Action") by the Settling Plaintiffs. *Id.*,

Ex. A ¶ 22.

The release, discharge, and covenant not to sue do not include other claims, such as those

solely arising out of product liability, contract or warranty claims in the ordinary course of

business. *Id.*, Ex. A ¶¶ 21, 23–24.

### c.  Injunctive Relief and Other Provisions

Aland has agreed to obey a Section 1 injunction against violations of the antitrust laws

should one be entered by the Court. *Id.*, Ex. A. ¶ 29. Aland has also agreed to be treated as if it

---

[3] When used in reference to the Direct Purchaser Settlement and Release "Vitamin C" or "Vitamin C Products" means all products containing vitamin C, also known as ascorbic acid, either in its pure form or in combination with other substances.

remains a defendant in the Action through trial or settlement, including for purposes of a Fed. R.

Civ. P. 45(b) trial subpoena, notwithstanding this Agreement. *Id.*, Ex. A ¶ 20.

### d.  The Release from Injunction Releasors

In exchange for Aland's agreement to comply with any injunction entered against any

non-settling Defendant by the Court, the Injunction Releasors shall release, acquit, and discharge

their claims related to injunctive relief against Aland. *Id.*, Ex. A ¶¶ 26–27, 29.

### 2.    The Indirect Purchaser Damages Settlement Agreement

After several months of vigorous arms-length negotiations, Indirect Purchaser Plaintiffs

reached an agreement with Aland in May 2012. *See* Decl. of Daniel C. Hedlund, dated May 21,

2012 ("Hedlund Decl.") [ECF No. 470-4] ¶ 2. On June 14, 2012, the Court preliminarily

approved the terms of the Indirect Purchaser Damages Settlement Agreement ("IP Settlement

Agreement") and certified the following class ("Indirect Purchaser Damages Settlement Class")

for settlement purposes:

> [A]ll persons or entities, (but excluding all governmental entities,
> Defendants, their co-conspirators, and their respective subsidiaries or
> affiliates, and any person or entity that timely and validly elects to be
> excluded from the Settlement Class) residing in a Settling Jurisdiction who
> indirectly purchased Vitamin C Products for use or consumption and not
> for resale from within one or more Settling Jurisdictions at any time from
> December 1, 2001 to June 30, 2006.

Decl. of R. Alexander Saveri ("Saveri Decl."), Ex. A (IP Settlement Agreement) ¶ 5; *see also*

Preliminary Approval Order (ECF No. 485) ¶ 4. When used in reference to the Indirect

Purchaser Settlement, "Vitamin C Products" means capsules or tablets containing Vitamin C

used for pharmacological purposes. *Id.* "Settling Jurisdictions" means California, New York,

Arizona, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan,

Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. Saveri Decl., Ex. A ¶ 5.

### a.  The Indirect Purchaser Damages Class Settlement Fund

Pursuant to the terms of the IP Settlement Agreement, Aland paid the Settlement Amount of $1 million into the Escrow Account.  *Id.*, Ex. A ¶¶ 22–23.  All interest earned on the Settlement Fund shall become and remain part of the Settlement Fund. *Id.*, Ex. A ¶ 9.

### b.  The Release from Indirect Purchaser Damages Releasors

In consideration of payment to the Settlement Fund, the Aland Releasees will be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, concerning the pricing, production, development, marketing, sale or distribution of Vitamin C from the beginning of time to the present, including claims based on the conduct alleged and causes of action asserted, or that could have been asserted, in complaints filed in the Action by the Settling Indirect Purchaser Plaintiffs. *Id.*, Ex. A ¶ 18.

### III.  STANDARD OF JUDICIAL APPROVAL FOR THE CLASS ACTION SETTLEMENTS

Under Rule 23(e), a class action "shall not be dismissed or compromised without the approval of the court . . . ."  Fed. R. Civ. P. 23(e).  "In order to approve such a settlement, the court must assure itself that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003) (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138 (2d Cir. 2000)); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). In determining whether the settlement meets these criteria, courts often consider both "the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc.*

*v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The Second Circuit recognizes a "presumption of fairness, reasonableness, and adequacy . . . where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (quotations omitted). "Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context." *Id.* (quotations omitted).

For the reasons explained below, Plaintiffs respectfully submit that the proposed settlement agreements should be approved as fair, reasonable, and adequate.

### A.     The Proposed Settlements are Procedurally Fair

Procedural fairness "must be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (quotations omitted).

The negotiations that led to the proposed settlements were fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients and each class member, and thus are entitled to a presumption of fairness. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement . . . ."); *see also In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473, 567 (E.D.N.Y. 1995), *aff'd in part and vacated in part on other grounds*, 78 F.3d 764 (2d Cir. 1996); 4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 87–89 (4th ed. 2002).

The settlements were the result of arm's length, and often long and difficult, negotiations. *See* May 21, 2012 Hausfeld Decl. ¶ 2; May 21, 2012 Hedlund Decl. ¶ 2.  In such cases, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself. *See Chatelain v. Prudential–Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("A substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y 1997) (stating that "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"), *aff'd*, 177 F.3d 721 (2d Cir. 1997).

Plaintiffs' counsel had access to sufficient discovery to allow them to analyze and evaluate all of the contested legal and factual issues posed by the litigation so that accurate valuation of the settling Defendant's position could be made. *See* May 21, 2012 Hausfeld Decl. ¶ 3. Co-Lead Counsel were well-informed of the facts of the case and the strength of the claims asserted when the terms of each settlement agreement were negotiated. *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). Accordingly, the procedural integrity of the settlement process creates a strong presumption that the settlements are fair, reasonable, and adequate.

**B.     The Proposed Settlements Are Substantively Fair**

Nine factors guide courts in evaluating the substantive fairness of the settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); *see also Wal-Mart*, 396 F.3d at 117 (approving use of *Grinnell* factors to determine fairness of class action settlement). In evaluating these factors, "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

### 1.   Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)

"Federal antitrust cases are complicated, lengthy, and bitterly fought." *Wal-Mart*, 396 F.3d at 118; *see also In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome.") (quotations and citations omitted); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting antitrust class actions "are notoriously complex, protracted, and bitterly fought"); *In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) (noting "antitrust price fixing actions are generally complex, expensive and lengthy").

This litigation is no exception. Pending since early 2005, plaintiffs in this action conducted an extensive analysis of the operations and pricing of multiple Chinese vitamin C manufacturers in order to prove the existence of a worldwide price-fixing conspiracy and the damages that resulted from the same. Navigating through extensive discovery, Plaintiffs have reviewed and translated thousands of documents, deposed 17 defense fact witnesses, and have

shouldered the cost of retaining an expert to conduct an extensive analysis of Defendants' data and other evidence to calculate overcharges, injury, and damages to class members. Further, the parties have engaged in extensive motion practice on a number of complex issues throughout the course of the litigation, which has brought the case to its current posture, with Plaintiffs having prevailed against the core Defendants at class certification and summary judgment.

Furthermore, these settlements mark the first civil settlements with a Chinese company in a U.S. antitrust cartel case. As such, the settlements are an important step in private enforcement of U.S. antitrust laws. The settlements follow hard-fought litigation against the Defendants and the Ministry of Commerce of China. Defendants' recent attempt at an interlocutory appeal of the Court's denial of their summary judgment motions under 28 U.S.C. § 1292(b), arguing that Chinese law and international comity require the Court to dismiss this case entirely, evidences that any jury verdict in Plaintiffs' favor would surely be appealed, potentially delaying resolution of Plaintiffs' claims for years more. The Ministry of Commerce of the People's Republic of China has filed amicus briefs in support of Defendants' position, and would likely continue to do so on appeal. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (approval granted where "[d]elay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait [for] years for any recovery, further reducing its value").

In addition, even after a full determination of the claims, Plaintiffs may face difficulty when trying to enforce the final judgment in China. Indirect Purchaser Plaintiffs share in Direct Purchaser Plaintiffs' challenges, but also have additional hurdles, such as class certification, to overcome before reaching a trial on the merits. For all the foregoing reasons, the first *Grinnell* factor strongly favors approval of the Settlements.

11

### 2.      Reaction of the Class to the Settlement (*Grinnell* Factor 2)

The objection deadline is September 27, 2012. As of August 29, 2012, Co-Lead Counsel have received no objections. To the extent any objections are received after the filing of this brief, Co-Lead Counsel will address those objections in a supplemental filing. Even a few objectors out of a large settlement class would be an indication that a proposed settlement is fair. *See Snapp v. The Topps Co., Inc.*, No. 93-CV-0347, 1997 WL 1068687, at *2 (E.D.N.Y. Feb. 12, 1997); *see also Wal-Mart*, 396 F.3d at 118–19.

Requests for exclusion must be postmarked by September 7, 2012. As of August 30, 2012, no requests have been received by the claims administrator for exclusion from any class under the Aland settlements. The class notice was mailed to potential members of the Direct Purchaser Class, (using customer lists produced by Defendants) and published in multiple locations. The small percentage of requests for exclusion also argues in favor of approval of this settlement. *See*, *e.g.*, *D'Amato,* 236 F.3d at 86–87 (district court properly considered as a fact favoring approval of settlement that there were 72 requests for exclusion out of 27,883 notices); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (approving settlement and noting that 222 class members had requested exclusion out of 104,000 notices mailed).

### 3.      Stage of the Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3)

The third *Grinnell* factor is designed to "assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *Global Crossing*, 225 F.R.D. at 458 (quotations and citation omitted). Ordinarily, "full discovery is not a prerequisite for approval as long as the court is assured that the parties had sufficient information about the claims to evaluate intelligently the desirability of settlement." *In re Int'l Murex Techs Corp. Secs. Litig.*, No. 93 CV 336 (JG), 1996 WL 1088899, at *4 (E.D.N.Y. Dec. 4, 1996); *see*

*also Global Crossing*, 225 F.R.D. at 458. Here, full discovery as to Aland has been completed.

As a result, Co-Lead Counsel are well-informed of the facts of the case and the strength of their claims against Aland. At this point, the case is well advanced. Following extensive briefing, this Court denied Defendants' motions to dismiss and motions for summary judgment. *In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d at 525; ECF Nos. 494, 496. The Court also denied Defendants' request for permission to take an interlocutory appeal of the decision denying summary judgment under 28 U.S.C. § 1292(b). *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 16475 (E.D.N.Y. 2012). The Court granted Direct Purchaser Plaintiffs' motion for class certification. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012). This factor thus also strongly favors approval of the settlements.

### 4. Risk of Establishing Liability, Damages, and in Maintaining the Class Action through the Trial (*Grinnell* Factors 4, 5, & 6)

Co-Lead Counsel must continue to litigate against the remaining Defendants, and thus a detailed discussion of the potential weaknesses of the litigation is precluded. As with even the strongest case, Plaintiffs face the risk that they may lose at trial, during which Defendants will assert defenses that will turn on questions of proof, much of which would be the subject of complicated expert testimony, particularly with regard to damages. *See NASDAQ,* 187 F.R.D. at 476 (observing that "[d]amages at trial inevitably would involve a 'battle of the experts'" and noting that it is "difficult to predict with any certainty which testimony would be credited"). "'[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.'" *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) (quoting *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), in which that court cited cases where settlements were disapproved and plaintiffs subsequently lost at trial), *aff'd*, 166 F.3d 581 (3d Cir. 1999); *In re Baldwin United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y.

1984) (comparing advantages of immediate cash payments with risks involved in long and uncertain litigation). Moreover, even after trial is concluded, there is the potential for one or more lengthy appeals. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and citing a case where a multimillion dollar judgment was reversed).

With a case less advanced, Indirect Purchaser Plaintiffs believe that they would be able to prove their claims and obtain a substantial recovery at trial, but they recognize that there is no certainty in prevailing on any claim. Aland is represented by excellent attorneys that would oppose Indirect Purchasers' efforts to certify a class. While Indirect Purchaser Plaintiffs expect to prevail on a motion for class certification, the risk of an adverse ruling—which would bar any recovery by the class—must be taken into account.

Because liability under the Sherman Act is joint and several, settlements with a subset of Defendants do not prejudice plaintiffs' ability to recover full treble damages from non-settling co-conspirators. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Thus, the fourth, fifth and sixth *Grinnell* factors also favor approval of the settlements.

5. **Ability of Defendants to Withstand a Greater Judgment (*Grinnell* Factor 7)**

The seventh *Grinnell* factor addresses the Defendant's ability to withstand a greater judgment. Aland may have the ability to withstand a greater judgment, but "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not

14

undermine the reasonableness of the instant settlement." *Weber v. Gov't Empl. Ins. Co.,* 262 F.R.D. 431, 447 (D.N.J. 2009).

> **6.     Range of Reasonableness of the Settlement Funds in Light of the Best Possible Recovery and All the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

The determination of a reasonable settlement is not susceptible to a simple mathematical equation yielding a particular sum. Rather, "in any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  The settlements represent excellent results for the classes and fall well within the range of reasonableness.

> **a.     The Direct Purchaser Damages Settlement Agreement**

The Direct Purchaser Damages Class reached a settlement with Aland for $9.5 million. Plaintiffs' expert, Dr. B. Douglas Bernheim, estimates in his Rebuttal Report that the direct purchaser damages class suffered damages of $54.1 million.[4] The Direct Purchaser Plaintiffs' settlement with one Defendant (Aland) thus constitutes over 17.5% of estimated single damages. Defendants however argue that there are no more than $1.3 million in damages in this case. Expert Report of Lawrence Wu, PhD., Section IV.E & Ex. 25 (June 29, 2012).  If the settlement is evaluated based on the mean of the damage estimates of Plaintiffs and Defendants, the settlement constitutes at least 34% of single damages.

Settlements of this magnitude are routinely approved. *See, e.g.*, *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 489–90 (E.D. Pa. 2003) (approving a settlement valued at 15% of estimated damages); *Nichols v. Smithkline Beecham Corp.*, No. Civ.A. 00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (upholding a settlement in the range of 9.3–13.9% of

---

[4]  Dr. Bernheim's Rebuttal Report is being served on Defendants on the same day as this filing.

damages as "consistent with [the range] approved in other complex class action cases."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002) (upholding a settlement valued at 33% of alleged damages); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (upholding a settlement valued at 36–37% of damages, and noting that typical recoveries in securities class actions range from 1.6% to 14% of damages); *Molecular Diagnostics Labs. v. Hoffmann-La Roche Inc.*, 04-cv-1949, ECF No. 111 (D.D.C. Dec. 29, 2008) (approving settlement constituting one-third of estimated damages); *In re Newbridge Networks Sec. Litig.*, No. Civ. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) (approving settlement equal to 6–12% of potential damages in securities fraud class action, holding that such a figure "seems to be within the targeted range of reasonableness").

Further, Aland's settlement also marks the first civil settlement with a Chinese company in an antitrust cartel case in a U.S. court. Under these circumstances and considering these benefits, the proposed settlement not only falls well within the range of possible approval, but also represents an excellent result for members of the Direct Purchaser Damages Class.

### b.   The Indirect Purchaser Damages Settlement Agreement

The Indirect Purchaser Plaintiffs settled with Aland for $1 million. The Indirect Purchaser Plaintiff Damages Settlement represents a substantial portion of their estimated damages related to the sales of Aland. Damages in the indirect purchaser action vary from those in the direct purchaser action in several important ways. First, the Indirect Purchaser Damages Settlement Class includes only 21 jurisdictions comprising less than half the U.S. population. Second, the Indirect Purchaser Damages Settlement Class is limited to purchasers of pharmaceutical vitamin C in tablet and capsule form, representing less than half the market for vitamin C. Based on the new damages estimate in the aforementioned Rebuttal Report of

16

Plaintiffs' expert, Dr. B. Douglas Bernheim, and after adjusting for relevant jurisdictions and product market, the Indirect Purchaser Settlement represents a recovery of approximately 22 percent of single damages related to Aland's sales, which is well within the range of reasonableness. *See* Expert Report of B. Douglas Bernheim, Ph.D., Figures 3, 75 & ¶ 142 (Nov. 14, 2008) (stating assumptions relevant to IPP's calculation of damages); *see also*, *e.g.*, *Corel Corp.*, 293 F. Supp. 2d at 489–90 (approving a settlement valued at 15% of estimated damages); *Nichols*, 2005 WL 950616, at *16 (upholding a settlement in the range of 9.3–13.9%).

Although a smaller recovery than the Direct Purchaser Settlement, the Indirect Purchaser Settlement represents an excellent outcome for the class. The indirect purchaser action, which has been stayed, is less advanced than the direct purchaser action and faces unique litigation risks. The joint prosecution efforts and shared work product between Direct and Indirect Purchaser Counsel that led to this global settlement positions Indirect Purchasers to pursue their claims vigorously and efficiently against the remaining Defendants.

### c.   The Reasonableness of Both the Direct and Indirect Purchaser Damages Classes' Settlements with Aland

Continuing this litigation against Aland would entail a more lengthy and expensive trial than anticipated against the non-settling Defendants, to begin in November 2012. Plaintiffs will also depend on complicated expert opinions with regard to damages. *See NASDAQ*, 187 F.R.D. at 475–76. Defendants' recent attempt at an interlocutory appeal of the Court's denial of their summary judgment motions under 28 U.S.C. § 1292(b), evidences a high likelihood of future appeals that would further delay the resolution of Plaintiffs' claims. Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Furthermore, because liability is joint and several under the Sherman Act and the antitrust laws of many of the class jurisdictions, Aland's sales remain in the case for purposes of assessing damage liability against non-settling Defendants. Thus, this settlement does not prejudice the classes' ability to recover its full treble damages caused by the alleged conspiracy, where applicable. As the first settlement in a case that has extended over six years and the first civil antitrust settlement by any Chinese company ever in U.S. courts, the settlement amounts of $9.5 million for the direct purchasers, and $1 million for the indirect purchasers, are excellent results for the classes.

## IV.    THE NOTICE PROGRAM SATISFIES DUE PROCESS

Due process requires that class members be given notice of, and an opportunity to be heard regarding, a settlement. As the Second Circuit has explained:

> The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member.

*Wal-Mart*, 396 F.3d at 113–14 (internal quotations and citations omitted).

On June 15, 2012, the Court authorized dissemination of joint notice on behalf of the Direct Purchaser Damages Class, the Injunction Class, and the Indirect Purchaser Damages Settlement Class in the form of a long-form notice to be mailed and a summary notice for publication. Plaintiffs retained Kinsella Media, a recognized notice expert and its affiliate Rust Consulting, which have extensive experience in providing notification and administration services, to help design the notices and claim form and to implement and administer the notice

program and claims process. Decl. of Katherine Kinsella, dated May 25, 2012 ("Kinsella Decl.") [ECF No. 473-2] ¶¶ 1–10.

As set forth in the Court's June 15, 2012 order approving Plaintiffs' proposed notice plan, the notice was mailed to approximately 150 potential Direct Purchaser class members who could be reasonably identified. Aff. of Charlene Young re: Dissemination of Notice of Class Settlement (Aug. 30, 2012) ("Young Aff.") ¶ 3–4. In addition, the Court-approved notice program provided for publication of a summary notice. Between mid-July and early August 2012, the summary notice was published in each of the following trade journals targeted to direct purchasers of vitamin C: *Beverage Industry*, *Food Processing*, *Pharmaceutical Processing, Feedstuffs*, and *Cosmetic World*. *Id.* ¶ 7. In addition, during that same time period, the summary notice was published in *People*, *Sports Illustrated*, and *Time*, and through extensive online media placements, all targeted to reach indirect purchasers of vitamin C, who are included within both the Injunction Class and the Indirect Purchaser Damages Class. *Id.*

This direct mail and publication notice program was supplemented with a toll-free number and a website for class members to obtain further information. *Id.* ¶¶ 8–9

Accordingly, for the reasons set out above and more fully in the Kinsella Declaration, the notice program satisfies due process requirements and constitutes the best notice practicable under the circumstances. *Wal-Mart*, 396 F.3d at 113–14 ("There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or rule 23(e) requirements: the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'") (quoting *Weinberger*, 698 F.2d at 70)); *In re Payment Card Interchange Fee &*

*Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2008 WL 115104, at *15 (E.D.N.Y.

Jan. 8, 2008) (describing requirements of constitutionally adequate notice).

## V.    THE PLAN OF ALLOCATION FOR THE SETTLEMENT FUNDS IS FAIR AND REASONABLE

Plans of allocation are subject to the same standard of review as class action settlements;

they must be fair, reasonable and adequate. *Beecher v. Able,* 575 F.2d 1010, 1016 (2d Cir. 1978).

*See also In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982) (noting

the Rule 23(e) standard of fairness, adequacy, and reasonableness "applies with as much force to

the review of the allocation agreement as it does to the review of the overall settlement between

plaintiffs and defendants").

The purpose of developing a plan of allocation is to devise a method that permits the

equitable distribution of limited settlement proceeds to eligible class members. *In re Luxottica*

*Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316–17 (E.D.N.Y. 2006) (citing *Beecher,* 575 F.2d at

1016). "As a general rule, the adequacy of an allocation plan turns on  . . . whether the proposed

apportionment is fair and reasonable" under the specific facts of the case. *PaineWebber Ltd.*, 171

F.R.D. at 132–33. "As numerous courts have held, a plan of allocation need not be perfect." *In re*

*EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at

*11 (S.D.N.Y. July 27, 2007). Rather, "[a]n allocation formula need only have a reasonable,

rational basis, particularly if recommended by experienced and competent class counsel." *In re*

*Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001)

(quotations omitted); *see also Global Crossing*, 225 F.R.D. at 462; *Maley*, 186 F. Supp. 2d at

361.

Whether an allocation plan is fair and reasonable is "squarely within the discretion of the

district court." *PaineWebber*, 171 F.R.D. at 132. In making this determination, courts give

substantial weight to the opinions of experienced counsel. *Id.* at 133. Class Counsel's opinion should therefore be afforded great weight. *Id.*

As explained in the Notices, the Direct Purchaser Damages Class Settlement Fund will be divided among direct purchasers that submit valid claims, after deducting fees and expenses approved by the Court. Direct Purchaser Damages Class members' direct purchases for each year will be multiplied by the percentage overcharge found by Plaintiffs' expert economist for that year, to determine each class member's total claimed damages. The fund will then be divided in proportion to direct purchasers' total claimed damages.

As further explained in the Notices, a direct cash distribution to the Indirect Purchaser Damages Settlement Class is not practical as there are millions of members in the class. A *cy pres* plan of allocation therefore, is appropriate due to the high cost of processing claims and distributing funds to potentially millions of claimants relative to the average claim award. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (noting "[f]ederal courts have frequently approved [the Cy Pres] remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly") (alterations in original). The Notice explained that the settlement funds will be distributed to charitable, not-for-profit, or governmental organizations.  Here, the remedy of *cy pres* is proper because it allows the Court to put money that has been wrongfully obtained to its "*next best* compensation use . . . ."  *Id.* (emphasis in original) (quotations and citation omitted).

 "Courts also consider the reaction of a class to a plan of allocation" following notice, including whether objections have been submitted. *EVCI*, 2007 WL 2230177, at *11 (citing *Maley*, 186 F. Supp. 2d at 367). The Notice advised class members that they have until September 27, 2012 to object, and to date, no class member has submitted an objection. A lack

of objections is indicative of reasonableness. *Id.* (approving plan of allocation after noting that no objections had been received); *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) (noting reasonableness of allocation plan reflected in lack of objections following notice to class members).

Moreover, parties are afforded significant leeway in fashioning a plan of allocation that puts the settlement funds to the next best use. See *Plotz v. NYAT Maint. Corp.*, No. 98 Civ. 8860 (RLE), 2006 WL 298427, at *2, (S.D.N.Y. Feb. 6, 2006) ("The distribution preference of class counsel should be entitled to deference . . . where the designated recipient is a legitimate and appropriate organization."). In order to maximize the benefits distributed to the class and minimize transaction costs, Indirect Purchaser Plaintiffs recommend keeping the Settlement Funds (less Court-approved costs) in the interest-bearing Escrow Account until the total recovery in this case is determined. If Indirect Purchaser Plaintiffs reach additional settlements with the non-settling cartel Defendants, or the case is resolved through trial or dispositive ruling, or at any time the Court deems appropriate, Indirect Purchaser Plaintiffs will distribute the Settlement Funds to *cy pres* recipients approved by the Court.

Accordingly, the Plan of Allocation is fair, reasonable and adequate to the class.

## VI.   FEES/EXPENSES

Direct Purchaser Plaintiffs will be filing a separate motion regarding their request for fees and expenses. Indirect Purchaser Plaintiffs are deferring their request for fees. Assuming additional monies are recovered for the class, Indirect Purchaser Plaintiffs will seek fees in the future based on the total amount recovered. In a separate motion, Indirect Purchaser Plaintiffs are seeking reimbursement of only costs at this time.

## VII.    ALAND HAS SATISFIED THE CAFA NOTICE REQUIREMENT

The Class Action Fairness Act, 18 U.S.C § 1711 *et seq.* ("CAFA"), requires settling

defendants to serve notice of a proposed settlement on the "appropriate" state and federal

officials after a proposed class action settlement is filed with the court. 28 U.S.C. § 1715(b).

CAFA also provides a 90-day window following service of such notice within which the noticed

officials may review the settlement before a court may grant approval of the settlement. *Id.*

Aland's CAFA notice was mailed on May 31, 2012. *See* Young Aff. ¶ 13.

## VIII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final

approval of the Aland settlements.


Dated: August 31, 2012                              Respectfully submitted,

 */s/ Michael D. Hausfeld*                          */s/ William A. Isaacson*
Michael D. Hausfeld                                William A. Isaacson
Brian A. Ratner                                    Tanya Chutkan
Brent W. Landau                                    Jennifer Milici
HAUSFELD LLP                                       BOIES, SCHILLER & FLEXNER LLP
1700 K Street, NW Suite 650                        5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20006                               Washington, DC 20015
Tel: (202) 540-7200                                Tel.: (202) 237-2727
Fax: (202) 540-7201                                Fax: (202) 237-6131


*/s/ James T. Southwick*                            Alanna Rutherford (AR-0497)
James T. Southwick                                 BOIES, SCHILLER & FLEXNER LLP
Shawn L. Raymond                                   575 Lexington Avenue, 7th Floor
SUSMAN GODFREY L.L.P.                              New York, New York 10022
1000 Louisiana, Suite 5100                         Tel: (212) 446-2300
Houston, TX 77002                                  Fax: (212) 446-2350
Tel.: (713) 651-9366
Fax: (713) 654-6666


*Co-Lead Counsel for the Certified Direct Purchaser Damages Class and Injunction Class*

*/s/ Daniel E. Gustafson*
Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
**GUSTAFSON GLUEK, PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

*/s/ R. Alexander Saveri*
R. Alexander Saveri
Guido Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Tel: (415) 217-6810

*/s/ Timothy Battin*
David Boies
Timothy D. Battin
**STRAUS & BOIES, LLP**
4041 University Drive, Fifth Floor
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704

*Co-Lead Counsel for Indirect Purchaser Damages Settlement Class*