**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE**<br>**VITAMIN C ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>    *Animal Science Products, Inc., et al. v. Hebei*<br>    *Welcome Pharmaceutical Co., Ltd., et al.*,<br>    Case No. 1:05-CV-00453(BMC)(JO)<br>    (E.D.N.Y.) | **MASTER FILE 1:06-MDL-1738**<br>**(BMC)(JO)**<br><br><br>**MEMORANDUM OF LAW IN**<br>**SUPPORT OF DEFENDANT CHINA**<br>**PHARMACEUTICAL GROUP LTD.'S**<br>**MOTION FOR DETERMINATION OF**<br>**FOREIGN LAW AND JUDGMENT**<br>**ON THE PLEADINGS OR IN THE**<br>**ALTERNATIVE SUMMARY**<br>**JUDGMENT** |

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ...............................................................................1

ARGUMENT ........................................................................................................................2

    I.  Chinese Law Governs the Corporate Veil-Piercing of a Chinese Corporation.................2

   II.  Chinese Law Does Not Permit Corporate Veil-Piercing Absent Exceptional Circumstances in which there is Intent To Evade Debts and a Resulting Injury to a Creditor. ......................................................................................................................4

      A. The Shareholder Must Have "Abused the Company's Independent Status".................6

      B. The Shareholder Must Have Intended to Evade Debts. ...................................................7

      C. Serious Injury Must Have Resulted to a Creditor of the Company. .............................7

      D. There Must Be a Causal Relationship Between the Shareholder's Abuse and the Injury to the Creditor. ..............................................................................................8

   III.  Plaintiffs' Complaint Does Not Assert a Corporate Veil-Piercing Claim Against CPG, Nor Does It Allege Any Facts that Could Support One Under Chinese Law...................8

      A. Plaintiffs Failed to Allege A Valid Veil-Piercing Claim Against CPG. ........................9

      B. Amending the Complaint Would be Futile Because Plaintiffs Are Not Creditors and Thus Cannot Succeed in Holding CPG Liable for Debts Owed by Weisheng Under Chinese Law.................................................................................................10

   IV.  Plaintiffs Have No Evidence to Support a Veil-Piercing Claim Against CPG Under Chinese Law.................................................................................................................12

      A. Plaintiffs are Without Any Evidence to Prove That CPG Abused Weisheng's Corporate Status Under Chinese Law.......................................................................13

      B. Plaintiffs are Without Any Evidence to Prove Each of the Remaining Elements:  Intent to Evade Debts, Serious Injury to a Creditor, and Causation. .....................................15

    V. To the Extent Plaintiffs Continue to Assert that CPG Can Be Directly Liable, Their Claims are Precluded by the Court's Order Granting JPSC America's Motion for Summary Judgment. ......................................................................................................15

CONCLUSION.....................................................................................................................16

## TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*A.M. ex rel. J.M. v. NYC Dept. of Educ.,*
    840 F. Supp. 2d 660, 674 (E.D.N.Y. 2012)----------------------------------------------------------------13

*C.V. v. Hurowitz,*
    444 F Supp. 2d 231, 240 (S.D.N.Y. 2006)------------------------------------------------------------------ 2

*Caldarola v. Calabrese,*
    298 F.3d 156, 160 (2d Cir. 2002) ---------------------------------------------------------------------------13

*Cleveland v. Caplaw Enterprises,*
    448 F.3d 518, 521 (2d Cir. 2006) ---------------------------------------------------------------------------12

*EED Holdings v. Palmer Johnson Acquisition Corp.,*
    228 F.R.D. 508, 512 (S.D.N.Y. 2005)--------------------------------------------------------------------9, 12

*Farbstein v. Hicksville Pub. Library,*
    323 F. Supp. 2d 414, 421-22 (E.D.N.Y. 2004)-----------------------------------------------------------11

*First Nationwide Bank v. Gelt Funding Corp.,*
    27 F.3d 763, 771 (2d Cir. 1994)------------------------------------------------------------------------------ 9

*Fletcher v. Atex, Inc.,*
    68 F.3d 1451, 1456 (2d Cir. 1995)------------------------------------------------------------------ 3, 15, 16

*Harris v. Mills,*
    572 F.3d 66, 72 (2d Cir. 2009) ------------------------------------------------------------------------------ 9

*Hayden v. Paterson,*
    594 F.3d 150, 160-61 (2d Cir. 2010) ------------------------------------------------------------------- 8, 9

*Holmes v. Grubman,*
    568 F.3d 329, 334-35 (2d Cir. 2009) -----------------------------------------------------------------------11

*In re Crazy Eddie Sec. Litig.,*
    747 F. Supp. 850, 854 (E.D.N.Y. 1990) ------------------------------------------------------------------- 8

*In re Currency Conversion Fee Antitrust Litig.,*
    265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003)--------------------------------------------------------------- 9

*In re Saba Enterprises, Inc.,*
    *421 B.R. 626, 648 (Bankr. S.D.N.Y. 2009)*------------------------------------------------------------- *3*

In re Sunbeam Corp., 284 B.R.
   355, 366 (Bankr. S.D.N.Y. 2002) ----------------------------------------------------------------- 9

*In re Vitamin C Antitrust Litig.*,
   810 F.Supp.2d 522, 562 (E.D.N.Y. 2011) ------------------------------------------------------ 4, 5

*Johnson v. Rowley*,
   569 F.3d 40, 43-44 (2d Cir. 2009) -------------------------------------------------------------- 9

*Kalb, Voorhis & Co. v American Financial Corp.*,
   8 F.3d 130, 132 (2d Cir 1993) ------------------------------------------------------------- 2, 3, 12

*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*,
   01 CIV 2946 (AGS), 2003 WL 262507, *4 n. 2 (S.D.N.Y. Feb. 7, 2003) -------------------- 4, 10

*Oscar v. BMW of N. Am., LLC*,
   09 CIV. 11 PAE, 2011 WL 6399505, *2 (S.D.N.Y. Dec. 20, 2011) ------------------------------ 11

*Panam Mgmt. Group, Inc. v. Pena*,
   08-CV-2258 JFB ARL, 2011 WL 3423338, *3 (E.D.N.Y. Aug. 4, 2011) -------------------- 3, 10

*Patel v. Contemporary Classics of Beverly Hills*,
   259 F.3d 123, 125-26 (2d Cir. 2001) ----------------------------------------------------------- 8, 9

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
   453 F. Supp. 2d 633, 683-89 (S.D.N.Y. 2006) --------------------------------------------------- 4

*Salahuddin v. Goord*,
   467 F.3d 263, 273 (2d Cir. 2006) --------------------------------------------------------------- 13

*Sonnenblick-Goldman Co. v. ITT Corp.*,
   912 F. Supp. 85, 88-89 (S.D.N.Y. 1996) -------------------------------------------------------- 3

*U.S. Bank, N.A. v. Byrd*,
   10-CV-3381 KAM RML, 2012 WL 580500 (E.D.N.Y. Feb. 22, 2012) --------------------------- 13

*Vuyst, USA, Inc. v. Europe Cosmetiques, Inc.*,
   11 CV 1491 VB, 2012 WL 246673, *4 (S.D.N.Y. Jan. 6, 2012) ---------------------------- 4, 9, 10

*Wood ex rel. U.S. v. Applied Research Associates, Inc.*,
   328 F. App'x 744, 750 (2d Cir. 2009) ---------------------------------------------------------- 11

*Woodward v. Morgenthau*,
   740 F. Supp. 2d 433, 441 (S.D.N.Y. 2010) ----------------------------------------------------- 10

**State Cases**

*Morris v. New York State Dept. of Taxation & Fin.,*
   623 N.E.2d 1157, 1160-61 (N.Y. 1993)------------------------------------------------------------------- 8

*Sweeney, Cohn, Stahl & Vaccaro v. Kane,*
   6 A.D.3d 72, 75 (Sup. Ct. App. Div. 2004)-------------------------------------------------------------- 3

*TNS Holdings, Inc. v. MKI Secs. Corp.,*
   703 N.E.2d 749, 751 (N.Y. 1998) -------------------------------------------------------------------------- 8

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ----------------------------------------------------------------------------------- 8
Fed. R. Civ. P. 12(d)----------------------------------------------------------------------------------------12
Fed. R. Civ. P. 16(b)(4) -----------------------------------------------------------------------------------11
Fed. R. Civ. P. 44.1 ---------------------------------------------------------------------------- 5, 6, 7, 8
Fed. R. Civ. P. 56(c)--------------------------------------------------------------------- 12, 13, 14, 15

**State Rules**

Federal Rule of Civil Procedure 12(c) --------------------------------------------------------------- 8

Pursuant to Local Civil Rule 7.1, Defendant China Pharmaceutical Group, Ltd. ("CPG") respectfully submits this Memorandum of Law in support of its Motion for Determination of Foreign Law and Judgment on the Pleadings or in the Alternative Summary Judgment.

## INTRODUCTION AND BACKGROUND[1]

Plaintiffs in this litigation seek to hold CPG liable for the alleged price-fixing conduct of its wholly-owned subsidiary, Defendant Weisheng Pharmaceutical Co. Ltd. ("Weisheng"). To accomplish this end, Plaintiffs have argued that they can "pierce the corporate veil" of Weisheng to reach CPG as its shareholder under "alter ego" or "agency" theories recognized by U.S. law.[2]

Any such "veil-piercing," however, must be governed by Chinese law. As Plaintiffs concede, Weishing is incorporated under the law of the People's Republic of China, and it has long been established that the law of the state of incorporation applies to a claim of corporate veil piercing—even when the state of incorporation is foreign. As explained by the Second Circuit, this rule is founded on the basic principle that it is the local law of incorporation that protects the company's shareholders from liabilities and debts of the corporation, and it is thus up to the same local law to determine if that protection of the shareholder can be removed.

While Plaintiffs' Third Amended Class Action Complaint ("Complaint")[3] makes no allegations of corporate veil-piercing *at all*, to the extent they are pursuing such a claim, Plaintiffs were required to plead facts that could support a valid claim under Chinese Law. As demonstrated by the Expert Report of Professor Fu Jun submitted herewith, they cannot do so.

---

[1] Because CPG moves for summary judgment in the alternative to its motion for judgment on the pleadings, in accordance with Local Civil Rule 56.1 CPG submits herewith a statement of material facts as to which there is no genuine issue to be tried.

[2] *See, e.g.,* Plfs.' Opp. to CPG's Motion to Dismiss for Lack of Personal Jurisdiction, 14-17, April 17, 2008 [D.E. # 86]; Plfs.' Opp. to CPG's Motion for Summary Judgment, 17-21, October 16, 2009 [D.E. # 388].

[3] Filed December 2, 2008 [D.E.# 355].

To hold CPG liable as the parent shareholder under Chinese law, Plaintiffs must show (1) that CPG abused Weisheng's legal corporate status; (2) that CPG intended to evade debts by abusing the Weisheng's corporate status; (3) serious injury to the interests of a creditor of Weisheng; and (4) that CPG's abuse of Weisheng's corporate status caused the creditor's injury.  For multiple reasons—including the obvious reason that Plaintiffs are not "creditors" of either Weisheng or CPG—Plaintiffs cannot re-plead facts that would entitle them to relief under the applicable Chinese law.  Plaintiffs' claims against CPG should therefore be dismissed with prejudice.

Furthermore, while the Court need not look beyond the pleadings or applicable Chinese law to reach this conclusion, the result remains the same should the Court wish to do so.  For similar reasons, Plaintiffs are without any facts or evidence to prove each of the necessary elements of a veil-piercing type claim under Chinese law, nor could they discover any.  Plaintiffs therefore cannot raise a material issue of fact at trial, and CPG is alternatively entitled to summary judgment.

## ARGUMENT

## I. CHINESE LAW GOVERNS THE CORPORATE VEIL-PIERCING OF A CHINESE CORPORATION

It is well-settled under Second Circuit and under New York choice of law principles that "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders."  *Kalb, Voorhis & Co. v American Financial Corp.*, 8 F.3d 130, 132 (2d Cir 1993); *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F Supp. 2d 231, 240 (S.D.N.Y. 2006) ("the general rule is that the law of the state of incorporation determines when the corporate form will be disregarded.").  This is because "a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability," and "the state of incorporation has the greater interest in determining when and if that insulation is to be stripped

away."  *Kalb*, 8 F.3d at 132 (quoting *Soviet Pan Am Travel Effort v. Travel Committee, Inc.,* 756 F. Supp. 126, 131 (S.D.N.Y.1991)); *see also Sweeney, Cohn, Stahl & Vaccaro v. Kane*, 6 A.D.3d 72, 75 (Sup. Ct. App. Div. 2004) ("Ordinarily, the state of incorporation has the greatest interest in determining the extent of insulation that will be afforded to shareholders of corporations incorporated under its laws.").

Stated differently, because piercing the corporate veil is in essence "a state law claim" against a corporation's shareholders, "courts in the Second Circuit have applied the choice of law principles of the of the forum state, New York in this case, in order to determine which state's law governs a veil piercing claim."  *Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 88-89 (S.D.N.Y. 1996) ("Piercing the corporate veil is a state law claim") (applying NY choice of law rules); *In re Saba Enterprises, Inc.*, 421 B.R. 626, 648 (Bankr. S.D.N.Y. 2009).  New York law in turn dictates that the issue of whether the corporate veil can be pierced must be determined by "the law of the state of incorporation," due to the inherently strong interests of that state.  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir 1995) (affirming summary judgment for parent corporation); *Kalb*, 8 F.3d at 132; *see also* Restatement (Second) of Conflict of Laws § 307 (1971) ("The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts.").

Accordingly, even when the corporation that plaintiffs seek to pierce is foreign, the law of the foreign state of incorporation governs whether that corporation's shareholders can be held liable.  *See, e.g., Panam Mgmt. Group, Inc. v. Pena*, 08-CV-2258 JFB ARL, 2011 WL 3423338, *3 (E.D.N.Y. Aug. 4, 2011) ("The Court concludes that Panamanian law must apply to the issue of veil-piercing"; "it is apparent that [defendant] is incorporated in the Republic of Panama.");

*Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc.*, 11 CV 1491 VB, 2012 WL 246673, *4 (S.D.N.Y. Jan. 6, 2012) ("[Defendant] is incorporated in the province of Quebec, and therefore, Quebec law governs."); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, 01 CIV 2946 (AGS), 2003 WL 262507, *4 n. 2 (S.D.N.Y. Feb. 7, 2003) ("the law of [defendant's] state of incorporation (Norway) determines the extent of [shareholder's] liability"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 683-89 (S.D.N.Y. 2006) (applying law of Mauritius to veil piercing of corporation formed under Mauritius law, Dutch law to corporation formed under laws of The Netherlands, and English law to companies formed in England).

Here, it is undisputed that Weisheng is incorporated under the laws of the People's Republic of China, and that CPG is its shareholder.  *See* Compl. ¶ 14 ("Weisheng is a Chinese Corporation"); Plfs.' Opp. to CPG's Motion to Dismiss for Lack of Personal Jurisdiction at 1 ("CPG …owns 100% of its subsidiary and co-defendant Weisheng.").  Therefore, Chinese law governs whether Weisheng's corporate form can be disregarded and CPG, its shareholder, can be liable under a corporate veil-piercing theory.

## II.  CHINESE LAW DOES NOT PERMIT CORPORATE VEIL-PIERCING ABSENT EXCEPTIONAL  CIRCUMSTANCES IN WHICH THERE IS INTENT TO EVADE DEBTS AND A RESULTING INJURY TO A CREDITOR

As this Court has recognized, "[a] determination of foreign law is, like choice of law analysis, a preliminary matter to be resolved by the court."  *In re Vitamin C Antitrust Litig.*, 810 F.Supp.2d 522, 562 (E.D.N.Y. 2011).  Thus, the resolution of foreign law "must first be decided by the court before the case can go to trial before a jury." *Id.* at n.53.  As provided by Rule 44.1, the district court's determination is treated as a ruling on a question of law.  *Id.* at 561.  In determining foreign law, courts frequently rely on sources such as expert testimony and affidavits, although Rule 44.1 does not limit the court to such evidence.  *Id.*; Fed. R. Civ. P. 44.1

("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").[4]

As set forth in the Report of Professor Fu Jun, an expert in Chinese corporations and business law, Chinese law mandates that a corporation is to be recognized as having its own legal status, separate and independent from its shareholders. (Fu Rpt. ¶¶ 8-10; Appendix C-1 thereto at Article 3; C-2 at Articles 48, 106.) Under these basic principles of Chinese law, a corporation is itself liable for its debts or other civil liabilities, and liability can only reach the property that the corporation itself possesses. (*Id.*) Therefore, a shareholder is protected under Chinese law and generally cannot be liable for any debts or actions of the company. (*Id.*)

As an exception to this rule, Chinese law does provide for the legal principle of "negating the legal person status of companies" to hold a shareholder (or a parent company of a wholly-owned subsidiary) liable for the debts of the corporation—analogous to disregarding the corporate form or "piercing the corporate veil" in the United States. Under Chinese law, however, this principle can only be applied to "specific circumstances set forth by the law." (*Id.* at ¶ 12.) In particular, as Professor Fu has described, Chinese law requires that each of the following required elements must be satisfied: (1) the shareholder has abused the company's independent status; (2) the shareholder intended to evade debts by abusing the company's status;

---

[4] Rule 44.1 also provides that, "A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." In addition to this noticed motion, CPG has complied with this requirement by expressly asserting Chinese law in its Answer, filed on August 1, 2012. *See* Defendant CPG's Answer to Third Amended Class Action Complaint [D.E. 495] at 13 ("Plaintiffs' damages, if any were incurred, are due solely to the acts or omissions of other parties or individuals for which CPG has no responsibility or control, including under Chinese law….").

(3) serious injury to the interests of a creditor to the company; and (4) the existence of a causal relationship between the shareholder's abuse and the injury to the creditor.  (*Id.* ¶¶ 5, 11-16.)

Thus, the principle under Chinese law is designed to protect "*creditors*" from circumstances in which "the shareholders of a company *evade[] the payment of its debts* by abusing the independent status of legal person or the shareholder's limited liabilities."  (*Id.* ¶ 11 (quoting Company Law of The People's Republic of China, Article 20) (emphasis added).)  In multiple respects, Chinese law does not permit a company's status to be negated in some circumstances where a U.S. court might permit the corporate forms to be disregarded.  In particular, the doctrine under Chinese law only applies to creditors injured by abuse of corporate status, and requires a subjective intent to evade debts.  The following will provide a brief discussion of the foregoing elements in greater detail, as set forth by Professor Fu.

**A.  The Shareholder Must Have "Abused the Company's Independent Status"**

Under the first element, the Supreme People's Court of China has specified, through judicial decisions and interpretations, circumstances that constitute shareholder abuse of a corporation's independent legal status. These circumstances include: capital withdrawal for diversion, commingling of property, commingling of business, inappropriate liquidation, rejection of liquidation,[5] and "interfere[ence] with the company's business in such an arbitrary manner which in effect leaves the company's existence in name only and deprives the company's actual existence."  (*Id.* ¶ 13.)  Because the essence of corporate independence under Chinese law

---

[5] "Inappropriate liquidation and rejection of liquidation" refers to improper conduct or delay in the performance of shareholder obligations concerning liquidation of assets or dissolution the company.  (*See* Fu Rpt. at 5 n. 3, & Appendix C-4 thereto (Provisions of the Supreme People's Court on Several Issues Concerning the Application of the Company Law (II), Article 18) (addressing "delay in the performance of obligations of shareholders" resulting in "an impossibility of the relevant liquidation work for the company," to the detriment of a creditor), (Article 19) (addressing loss caused by improper disposition of property upon "dissolution of the company").

is that a company has its own property and carries responsibility independently to the extent of its property, the "core criteria" for determining whether a company's independent identity has been abused is whether there has been a commingling of property and assets. (*Id.* at ¶ 13(c)).

### B.  The Shareholder Must Have Intended to Evade Debts

Since the principle of negating a Chinese company's legal status is primarily designed to protect the interests of creditors, Chinese law also requires the "intent to evade debts."  (*Id.* at ¶¶ 5(a), 11, 12, 14.)   Thus, in addition to abuse of the corporate status, there is a "subjective requirement" under which "the shareholders must have the inten[ded] to deliberately evade debts." (*Id.* at ¶ 14.)   In other words, "the shareholders' abuse of corporate independent status must be *for the purpose of* evading corporate debts."  (*Id.*) (emphasis added).

### C.  Serious Injury Must Have Resulted to a Creditor of the Company

The third required element, "serious injury to the interests of the company's creditors," is regarded as the "outcome-based requirement" for negating a corporation's independent status under Chinese law.  (*Id.* at ¶¶ 5(a), 11, 12, 15.)   Under this requirement, the shareholders' abuse of corporate independent status "must have objectively inflicted serious damage to the interests of a creditor" for it to be actionable.  (*Id.* at ¶ 15.)   This element, in conjunction with the second and fourth elements, makes it clear that only injured *creditors* can attack a company's independent legal status to recover the shareholder.   (*See id.* at ¶¶ 11, 15, 29, 30.)  Creditors are those persons or entities owed "existing and determined" financial obligations by the company. (*Id.* ¶ 15).[6]

---

[6] *Accord.* Blacks Law Dictionary 424 (9th ed. 2004) (defining "creditor" as  "1. One to whom a debt is owed; … 2. A person or entity with a definite legal claim against another, esp. a claim that is capable of adjustment and liquidation.").

**D. There Must Be a Causal Relationship Between the Shareholder's Abuse and the Injury to the Creditor**

Finally, Chinese law maintains a causation requirement for holding shareholder's liable for corporate debts.  That is, the shareholder's abuse of the company's independent status must have caused the injury to the creditor's interest.  Thus, there must be "causal relationship" between the alleged abusive acts of the shareholder and the serious harm that the creditor claims to have suffered.  (*Id.* at ¶¶ 5(a), 11, 12, 16.) [7]

**III. PLAINTIFFS' COMPLAINT DOES NOT ASSERT A CORPORATE VEIL-PIERCING CLAIM AGAINST CPG,  NOR DOES IT ALLEGE ANY FACTS THAT COULD SUPPORT ONE UNDER CHINESE LAW**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "after the pleadings are closed."  The pleadings are considered "closed" for purposes of Rule 12 when the defendant has filed an answer to the complaint.  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 125-26 (2d Cir. 2001); *In re Crazy Eddie Sec. Litig.*, 747 F. Supp. 850, 854 (E.D.N.Y. 1990).  CPG filed its Answer to Plaintiffs' Third Amended Class Action Complaint ("Complaint") on August 1, 2012 [D.E. 495].  Thus, a motion for judgment on the pleadings is now ripe.

In deciding a Rule 12(c) motion, the court is to employ "the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)."  *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010).  Thus, "[t]o survive a Rule 12(c) motion, [plaintiffs'] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

---

[7] This requirement can be analogized to a similar requirement of New York veil-piercing law. Under New York law, it is not sufficient to show that "the owners exercised complete domination of the corporation in respect to the transaction attacked"—plaintiffs must also show that "such domination *was used to commit a fraud or wrong against the plaintiff which resulted in plaintiffs' injury*."  *Morris v. New York State Dept. of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993) (emphasis added); *see also TNS Holdings, Inc. v. MKI Secs. Corp.*, 703 N.E.2d 749, 751 (N.Y. 1998).

*Id.* (quoting Johnson v. Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009)).  "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also* First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) ("conclusions of law or unwarranted deductions of fact are not admitted.").  The motion is to be granted if the court is satisfied that the complaint states no set of facts that would entitle the plaintiff to relief. *Patel*, 259 F.3d at 126.

### A.  Plaintiffs Failed to Allege A Valid Veil-Piercing Claim Against CPG

It is well-established that a claim for recovery based on corporate veil-piercing must be pleaded in plaintiffs' complaint, and facts must be alleged that can adequately support the applicable elements of such a claim.  *See, e.g., In re Currency Conversion Fee Antitrust Litig*., 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability."); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) ("[Plaintiff]'s veil-piercing allegations are conclusory and, therefore, fail to satisfy … Rule 8(a) pleading requirements."); *In re Sunbeam Corp.*, 284 B.R. 355, 366 (Bankr. S.D.N.Y. 2002) ("it is not sufficient, at the pleading stage, to make conclusory allegations of control."); *Nelly de Vuyst*, 2012 WL 246673 at *5 (dismissing veil piercing claim because plaintiffs' allegations "consist of conclusory allegations without sufficiently specific statements" to support the required elements).

Here, Plaintiffs' Complaint does not assert a corporate veil-piercing claim against CPG. Indeed, the Complaint makes no mention of veil-piercing, its elements, or any other theory of indirect liability.  (*See generally* Complaint.)  Rather, in the section labeled "Parties," Plaintiffs make a single conclusory statement that "China Pharmaceutical owns, controls and dominates its

affiliates Weisheng and Shijiazhuang."  (Compl. ¶ 16).  Nowhere in the Complaint do Plaintiffs attempt to plead facts that could support this conclusion, let alone the elements of a proper veil-piercing claim under any law.  As the authorities above make clear, Plaintiffs' singular and conclusory allegation of "control" cannot suffice.  Accordingly, Plaintiffs have failed to plead a valid veil-piercing claim against CPG.

Moreover, even had Plaintiffs alleged some form of veil-piercing in their Complaint, their failure to allege any facts that could support such a claim under Chinese law is fatal.  As explained above, because Weisheng is incorporated in China, Plaintiffs were required to plead factual allegations sufficient to support each of the required elements under Chinese law.  *See, e.g., Panam Mgmt. Group,* 2011 WL 3423338, *5  ("Plaintiff has failed to allege conduct that rises to the level of abuse of the corporate form as required under Panamanian law to pierce the corporate veil."); *Nelly de Vuyst*, 2012 WL 246673, *5 (dismissing veil-piercing claim because "[t]here are no allegations in the complaint alleging [defendant] performed any action which would warrant holding it liable" under applicable law of Quebec); *Kingdom 5-KR-41*, 2003 WL 262507, *4 (dismissing veil piercing cross-claims because the complaint allegations "do not warrant piercing the corporate veil" under Norwegian law).  Plaintiffs have failed to do so, and CPG is therefore entitled to judgment on any such claim of veil-piercing against it.

### B. Amending the Complaint Would be Futile Because Plaintiffs Are Not Creditors and Thus Cannot Succeed in Holding CPG Liable for Debts Owed by Weisheng Under Chinese Law

"[W]here a plaintiff is unable to allege any facts sufficient to support its claim, a complaint should be dismissed with prejudice."  *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 441 (S.D.N.Y. 2010) (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  Thus, leave to amend the pleading is denied when the defects in Plaintiffs' complaint are incurable, and amendment would be futile. Wood ex rel. U.S. v. Applied Research Associates,

Inc., 328 F. App'x 744, 750 (2d Cir. 2009); Farbstein v. Hicksville Pub. Library, 323 F. Supp. 2d 414, 421-22 (E.D.N.Y. 2004) (denying leave to amend).[8]

Plaintiffs here cannot possibly prevail on a veil-piercing claim under the applicable law of China because they are not *creditors* of the corporation as the law requires, and thus cannot prove each of the required elements. *See* § II., *supra*. As stated by Professor Fu, Plaintiffs were not owed any "existing and determined financial obligations," and thus "are not creditors of Weisheng or CPG." (Fu Rpt. ¶ 29). They therefore are not a proper party to a veil-piercing action under Chinese law. (*See id.*) Stated differently, because they do not claim to be creditors at any time during the alleged abuse of corporate forms, Plaintiffs cannot prove that Weisheng's corporate form was abused "for *the purpose of evading corporate debts*"; that there was "serious damage *to a creditor's interest*"; or that the alleged abuse of the corporate status bears a "*causal relationship*" *to the harm of the creditor*. (*Id.* at ¶¶ 11-12, 14-16; 28-30 (emphasis added)).

Moreover, even if Plaintiffs could somehow be considered creditors of Weisheng, they cannot demonstrate that their interest as a creditor has been in any way injured by the legal protection afforded to CPG as a shareholder, and that there is thus a need for the Court to negate that protection. Likewise, even if mere potential or undetermined future damages owed to Plaintiffs from Weisheng's alleged price-fixing activities could suffice (which they cannot),

---

[8] Furthermore, when, as here, a pre-trial order provided a deadline for the amendment of the pleadings, Rule 16 requires that the party seeking to amend also demonstrate "good cause" for an untimely amendment. Fed. R. Civ. P. 16(b)(4); *Holmes v. Grubman,* 568 F.3d 329, 334–35 (2d Cir. 2009). The Court's Pre-Trial Order 2 [D.E. 24-1], imposed a deadline of November 1, 2006 for the amendment of pleadings. Under this rule, "good cause" requires the proponent of amendment to show that "despite having exercised diligence, the applicable deadline could not have been reasonably met." *Oscar v. BMW of N. Am., LLC*, 09 CIV. 11 PAE, 2011 WL 6399505, *2 (S.D.N.Y. Dec. 20, 2011). Plaintiffs can state no such good cause why they did not previously amend their complaint to plead a veil-piercing claim.

these potential antitrust liabilities plainly have no causal relationship to any alleged abuse of Weisheng's corporate status.  (*Id.* at ¶¶ 15, 29, 30).

Therefore, for multiple reasons, the failures in Plaintiffs Complaint with respect to a veil-piercing claim against CPG cannot be cured, and any such veil-piercing claims against CPG should be dismissed from this action with prejudice.  *See, e.g., Kalb*, 8 F.3d at 132 (affirming district court's dismissal of veil-piercing claim with prejudice where it could not succeed under the local law of the state of incorporation); *EED Holdings*, 228 F.R.D. at 512 (dismissing plaintiffs' veil-piecing claims with prejudice where plaintiff could not state any new facts to support the "causation element—*i.e.* the use of domination to cause the injury," as required by the applicable law).

## IV. PLAINTIFFS HAVE NO EVIDENCE TO SUPPORT A VEIL-PIERCING CLAIM AGAINST CPG UNDER CHINESE LAW

Defendants respectfully submit that the Court need not look beyond the pleadings here, as it can easily dispose of Plaintiffs' purported veil-piercing claim based on the failures of Plaintiffs' Complaint and their inability to re-plead the requisite facts, as discussed above.  But should the Court wish to look beyond the pleadings, the conclusion remains the same.  As a matter of law, Plaintiffs cannot prevail on a corporate veil-piercing type claim against CPG under the applicable Chinese law.

If a court finds it necessary to consider factual matters outside the pleadings, a motion for judgment on the pleadings may be converted into a motion for summary judgment. *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(d). Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party need only point to "an absence of evidence" that could support the nonmoving party's case

in order to satisfy its initial burden. *U.S. Bank, N.A. v. Byrd*, 10-CV-3381 KAM RML, 2012 WL 580500 (E.D.N.Y. Feb. 22, 2012) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The nonmoving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). Thus, the nonmoving party is required to set forth competent, admissible evidence that could reasonably support its claims at trial, and cannot rest on allegations in the pleadings. *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006); *A.M. ex rel. J.M. v. NYC Dept. of Educ.*, 840 F. Supp. 2d 660, 674 (E.D.N.Y. 2012); Fed. R. Civ. P. 56(c).

For all of the same reasons set forth above, Plaintiffs are without facts or evidence that could support any of the requirements of a veil-piercing claim under Chinese law, nor do any such facts or evidence exist.   To prevail, Plaintiffs must prove each of the following:  (1) that CPG has abused Weisheng's legal corporate status; (2) that CPG intended to evade debts by abusing the Weisheng's corporate status; (3) serious injury to the interests of a creditor to Weisheng; and (4) that CPG's abuse of Weisheng's corporate status caused the creditor's injury. (*See* § II., *supra*; Fu Rpt ¶¶ 5, 11-16.)  Plaintiffs cannot do so.

## A. Plaintiffs are Without Any Evidence to Prove That CPG Abused Weisheng's Corporate Status Under Chinese Law

Under the first element, Plaintiffs are required to show that CPG, as a shareholder of Weisheng, "abused the company's independent legal status."  As set forth by Professor Fu, the Supreme People's Court of China has specified, through judicial decisions and interpretations, circumstances that constitute such shareholder abuse of corporate formalities.   "These circumstances include: registered capital withdrawal for diversion, commingling of property, commingling of business, inappropriate liquidation and rejection of liquidation." (Fu. Rpt. ¶ 13,

13

*see also* ¶ 5(b)).[9]   In addition, because "the essence of corporate independence under Chinese law is that a company has its own property and carries responsibility independently to the extent of its property," the Supreme People's Court of China has emphasized that commingling of property and assets is the core criteria for determining whether a company's independent identity has been abused.  (*Id.* ¶13(c).).

As Professor Fu has concluded, CPG could not have abused Weisheng's corporate status as a matter of Chinese law because there is nothing to suggest that it "engaged in improper capital withdrawal or flight, commingling of property, commingling of business, inappropriate liquidation or rejection of liquidation."  (*Id.* ¶¶ 27, 32).  CPG and Weisheng each properly kept their own separate financial records and accounts, and there is no evidence to the contrary.  (*See id.* ¶ 27 (b)).

Plaintiffs have previously argued in this litigation that Weisheng's corporate status should be disregarded because of the following alleged conduct:  CPG helped finance expansion projects of Weisheng, its wholly-owned subsidiary; Weisheng and CPG have had overlapping directors; as the sole shareholder, CPG selects Weisheng's directors; CPG has approved and supervised business decisions and projects; Weisheng did not hold regular board meetings; CPG and Weisheng file consolidated financial reports; and CPG pledged its equity interest in Weisheng as collateral to secure a bank loan.[10]

As Professor Fu explains, however, none of this alleged conduct can even be considered relevant to veil-piercing under Chinese law.  (*Id.* ¶¶ 5(c), 17-27, 33).  In fact, each of these

---

[9] "Inappropriate liquidation and rejection of liquidation" refers to improper conduct or delay in the performance of shareholder obligations concerning liquidation of assets or dissolution the company.  (*Id.* at n.3.)  These considerations pertaining to improper liquidation or dissolution have no applicability here.

[10] *See* Plfs.' Opp. to CPG's Motion to Dismiss for Lack of Personal Jurisdiction, 6-7, 14-17; Plfs.' Opp. to CPG's Motion for Summary Judgment, at 7-8, 17-21.

14

practices are expressly authorized, and in some instances required, by Chinese law; and they each reflect "common business practice" of Chinese companies.  (*Id.*)  CPG, therefore, could not be found to have abused Weisheng's corporate status under Chinese law. (*Id.* at ¶¶ 33-34).

### B. Plaintiffs are Without Any Evidence to Prove Each of the Remaining Elements: Intent to Evade Debts, Serious Injury to a Creditor, and Causation

As previously discussed, Plaintiffs cannot demonstrate the remaining elements required to negate Weisheng's corporate form under Chinese law because Plaintiffs are not "creditors" of either Weisheng or CPG, and never have been.  They therefore cannot possibly have evidence to prove that Weisheng's corporate form was abused "for *the purpose of evading corporate debts*"; that there was "serious damage *to a creditor's interest*"; or that the alleged abuse of the corporate status has a "*causal relationship*" *to the harm of the creditor.*  (*See* III.B., *supra*.).

There is thus no genuine issue of material fact as to a corporate veil-piercing claim against CPG, and CPG is entitled to judgment as a matter of law. *See Fletcher*, 68 F.3d 1451, 1456 (2d Cir. 1995) (affirming summary judgment for parent corporation on veil-piercing claim).

## V.  TO THE EXTENT PLAINTIFFS CONTINUE TO ASSERT THAT CPG CAN BE DIRECTLY LIABLE, THEIR CLAIMS ARE PRECLUDED BY THE COURT'S ORDER GRANTING JPSC AMERICA'S MOTION FOR SUMMARY JUDGMENT

Without a valid veil-piercing claim, Plaintiffs' case against CPG is limited to direct liability for CPG's own alleged participation in the claimed price-fixing conspiracy.  Plaintiffs are without any evidence, however, that CPG had any such involvement in the conspiracy.

Plaintiffs have previously argued that, if an executive or director who held positions at both a parent and subsidiary entity participated in meetings and agreements, it is reasonable to infer that both entities could be liable for that conduct.  But the Court has since rejected this tenuous theory of liability.  (*See* Memorandum Decision and Order [D.E. 452], 4-8, Dec. 27, 2011 (granting JSPC America, Inc.'s motion for summary judgment).)  Thus, whether or not any

overlapping directors or executives participated on behalf of Weisheng (the subsidiary) is irrelevant to whether CPG (the parent) can be liable.  (*See id.*)  There must be evidence that each company was independently a party to the agreement.  (*Id.*)

Because there is no evidence demonstrating that anyone participated in the alleged conspiracy on behalf of CPG, CPG cannot be directly liable as a matter of law.

**CONCLUSION**

Based on the forgoing analysis, the applicable Chinese law precludes Plaintiffs' claims of corporate veil-piercing against CPG, and CPG is therefore entitled to judgment on the pleadings. Alternatively, the Court should enter summary judgment in favor of CPG.

Dated:  September 28, 2012                    Respectfully Submitted,

                                                            ZELLE HOFMANN VOELBEL & MASON LLP


By:  */s/ Daniel S. Mason*
    Daniel S. Mason
    Jiangxiao Athena Hou
    Eric W. Buetzow
    44 Montgomery Street, Suite 3400
    San Francisco, California 94104
    Tel:  415-693-0700
    Fax:  415-693-0770

    *Attorneys for Defendant*
    *China Pharmaceutical Group, Ltd.*

3237094v4                                    16