SUSMAN GODFREY L.L.P.
A REGISTERED LIMITED LIABILITY PARTNERSHIP
SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

| SUITE 5100 | SUITE 950 | SUITE 3800 | 15TH FLOOR |
| 901 MAIN STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE | 560 LEXINGTON AVENUE |
| DALLAS, TEXAS 75202-3775 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 | NEW YORK, NEW YORK 10022-6828 |
| (214) 754-1900 | (310) 789-3100 | (206) 516-3880 | (212) 336-8330 |

SHAWN L. RAYMOND
DIRECT DIAL (713) 653-7817

E-MAIL SRAYMOND@SUSMANGODFREY.COM

October 11, 2012

VIA ECF

The Honorable Brian M. Cogan
United Stated District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *In re: Vitamin C Antitrust Litigation* (06-MDL-1738)(BMC)(JO)—Joint Submission Regarding Plaintiffs' Motion to Compel

Dear Judge Cogan:

Pursuant to Your Honor's Individual Practice Rules and Local Civil Rule 37.2, Plaintiffs and Defendant China Pharmaceutical Group Ltd. ("CPG") jointly submit this letter regarding Plaintiffs' motion to compel CPG to conduct meaningful, rigorous searches for documents and information relevant to Plaintiffs' discovery requests in accordance with the Federal Rules of Civil Procedure.

After meet and confer efforts (described below), the parties have been unable to agree on whether CPG has met its burden of document production and information gathering pursuant to Plaintiffs' discovery requests. Plaintiffs therefore seek an order compelling CPG to cure the deficiencies in its document production and amend its discovery responses with any newly discovered documents within ten days of the Court's decision on this motion. CPG opposes Plaintiffs' motion.

**Plaintiffs' Position:** **CPG Has Failed to Conduct Adequate Searches of Documents Within Its Control and, Consequently, Has Not Provided a Complete Set of Responses to Plaintiffs' Discovery Requests**

Plaintiffs filed this lawsuit against CPG in January 2005. (No. 1:05-cv-453, Dkt. 1.) In 2005, CPG financial comptroller Mr. Chak Kin Man ("Eddie") apparently communicated orally to

October 11, 2012
Page 2

CPG's then-current employees and board members ("executive directors") that they were to retain any documents relevant to this pending litigation. (Ex. A, Chak Dep. at 13:13-14:3.) Mr. Chak did not ask any former CPG employees or board members to retain any of their responsive documents during this time period. (*Id.* at 63:21-25.)

Plaintiffs served CPG with its first request for documents in July 2006. CPG objected to thirty-three of the thirty-seven requests because they were related to merits discovery and CPG had pending a motion to dismiss for lack of personal jurisdiction. (Ex. B, CPG's Objections and Responses to Plaintiffs' First Request for Production of Documents.) Notwithstanding its objections, CPG was on notice of the categories of merits-related documents that would be responsive to Plaintiffs' requests if CPG's jurisdictional motion to dismiss were resolved in Plaintiffs' favor.

Separately, Plaintiffs served jurisdictional document requests in July 2006. CPG provided approximately 750 pages of jurisdictional discovery on August 21, 2006, and another 200 pages two months later (comprising CPG board minutes from 2001-2006, Weisheng board minutes in 2002-2003, and Weisheng financial reports to CPG). (Ex. C, Aug. 21, 2006 Letter from D. Mason to J. Southwick; Ex. D, Oct. 27, 2006 Letter from D. Mason to J. Southwick.)

After this Court ruled against CPG on its motion to dismiss for lack of jurisdiction in July 2012 (Dkt. 494), CPG served an amended response to Plaintiffs' first request for documents on August 14, 2012. (Ex. E, CPG's Amended Objections and Responses to Plaintiffs' First Request for Production of Documents.) CPG provided responsive documents for only two of Plaintiffs' thirty-seven document requests, a production totaling approximately 300 pages. (*Id.* at 15-18; Ex. F, Aug. 14, 2012 Letter from J. Hou to J. Southwick.) These two requests asked for CPG and Weisheng's financial statements and CPG's reports on export pricing, sales volume, manufacturing and U.S. sales of Vitamin C. (Ex. E, at 15-17.) For more than thirty of the remaining requests (comprising requests for organizational charts, communications among competitors, minutes and other documents relating to price-fixing in the Vitamin C market), CPG "located no documents responsive to this Request." (*Id.* at 6-15, 16, 18-24.)

On September 7, 2012, Plaintiffs served on CPG a revised merits discovery request, which asked CPG to produce documents it sent to or received from Defendants Weisheng, Hebei, Aland, Northeast Pharmaceutical and/or North China Pharmaceutical regarding any participation in or agreement to fix Vitamin C prices, any trade association involvement regarding sale of Vitamin C, any efforts to sell Vitamin C in the United States, and any comparison of Vitamin C prices. (Ex. G, Plaintiffs' Third Request for Production of Documents, at 8-10.) CPG responded on September 18, 2012 that it found no documents responsive to any of these requests. (Ex. H, Sept. 18, 2012 Email from A. Hou to S. Raymond; Ex. I, CPG Objections and Responses to Plaintiffs' Third Request for Documents.)

Plaintiffs deposed Mr. Chak Kin Man, in his capacity as CPG corporate representative, on September 26, 2012 on a variety of merits-related topics, including CPG's document retention

October 11, 2012
Page 3

policy and CPG's efforts to respond to Plaintiffs' written discovery requests. As set forth below, that deposition testimony makes clear that CPG's methodology for retaining, searching for, and producing documents responsive to Plaintiffs' requests was woefully inadequate.

<u>CPG Did Not Make Adequate Efforts to Search Files of Its Current and Former Employees.</u>

CPG has failed to properly search for and collect documents from its employees, which includes board members (called executive directors). As an initial matter, the document retention policy and litigation hold CPG put into place in March 2005, after it learned of the filing of this lawsuit, was *not in writing* – Mr. Chak communicated the document retention procedure to current employees *orally*. (*Id.* at 45:6-12.)

The 30(b)(6) deposition shows that CPG waited until 2012 to search for *any* merits-related discovery – seven years after CPG became aware of this litigation. (Ex. A at 70:14-18.) Mr. Chak left it up to whichever employees were working at CPG in 2012 to check their computers to see if any responsive documents existed – a process Mr. Chak oversaw with the assistance of another financial manager. (*Id.* at 24:4-10.) Mr. Chak's methodology was insufficiently specific: he asked employees whether they had "documents" but did not ask specifically about notes, agendas, memos or calendar entries that might also contain entries responsive to Plaintiffs' requests. (*Id.* at 29:13-30:3.)

To make matters worse, CPG retained no outside consultant to help with electronic discovery collection. (*Id.* at 51:12-14). No electronic search terms were run. (*Id.* at 51:15-18.) No hard drives were imaged. (*Id.* at 64:2-16.) No deleted documents were restored. (*Id.* at 69:9-11.) CPG's methodology in undertaking to search for responsive documents is typified in this exchange from Mr. Chak's September 2012 deposition as corporate representative:

> Q. Well, let me ask it this way: How were electronic files searched at CPG to see if there were documents responsive to plaintiffs' request?
>
> A. Just turn on the computer and see what kind of files are on it. (*Id.* at 50:13-17.)

No search terms were used to search computers, instead individuals took a "look at the names of files" and "[i]f necessary, [they] would open the file to take a look." (*Id.* at 51:19-23, 52:22-53:6.) With respect to searches for emails, Mr. Chak told employees "to look in the e-mail to see if there's anything relevant . . . . I only gave them a principal [sic] to follow." (*Id.* at 62:2-6.) Mr. Chak admitted that he is not knowledgeable about the recovery of electronic documents that a computer user may have deleted, and he admitted that CPG made no effort to recover deleted documents from its computers. (*Id.* at 69:1-11.) As an example of CPG's search methodology, Mr. Chak took it upon himself to search the office and computer of CPG Board Chairman Cai Dong Chen. To effectuate this search, Mr. Chak turned on Mr. Cai's computer and *looked* at file names and email subject headers to see if anything looked responsive to Plaintiffs' document

October 11, 2012
Page 4

requests. (*Id.* at 51:19-23.) Mr. Chak did not open every document and email saved on Mr. Chak's computer – nor did he use any search terms. Mr. Chak relied *solely on file names or email subject lines* to determine whether, in his opinion, a document or email was relevant or not. (*Id.* at 51:24-52:4.) Simply put, Mr. Chak lacked the technical or legal expertise necessary to oversee accurately a search of this magnitude. As a consequence of his ignorance of proper document retention and collection procedures, his unsophisticated and woefully inadequate electronic document methodology resulted in CPG's failure to produce a single responsive email to Plaintiffs' document requests.

CPG maintained no computer network server (*id.* at 57:11-14), nor were any backup tapes made of CPG computers from 2001 to 2005 (*id* at 58:2-22). Even if there had been a way to perform a central server search of CPG email, eleven of CPG's employees from the 2001-2006 period did not have CPG email addresses. (*Id.* at 60:4-61:20.) For those executive directors without CPG email addresses who were still with CPG in 2012, Mr. Chak, as he did with current employees, asked them to "go through their personal computer to look in the e-mail to see if there's anything relevant." (*Id.* at 62:2-4.) Compounding the problem, Mr. Chak did not ask executive directors who did not work in CPG's office (most of whom did not have CPG email accounts) to search their sent and deleted items folders on the computers they used for CPG business. (*Id.* at 57:3-9.) And to date, CPG has made no effort to search the computers of former CPG executive directors who were not issued CPG computers and did not have a CPG email account. (*Id.* at 63:21-25; 71:22-72:3.)

Case law supports granting a motion to compel where a party's efforts to respond to document requests lacked timeliness, diligence, breadth or thoroughness. *See M & T Mortg. Corp. v. Miller*, No. 02-CV-5410, 2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007) (finding party's "haphazard document retention policy" and willful destruction of documents rose to level of spoliation after granting prior motion to compel these documents); *Reino de Espana v. Am. Bureau of Shipping*, No. 03 CIV. 3573 LTS/RLE, 2006 WL 3208579 (S.D.N.Y. Nov. 3, 2006) (granting motion to compel against party who failed to place timely and adequate litigation hold and failed to engage in good-faith discovery efforts, resulting in production of sixty-two emails from search involving fifteen custodians and ninety-eight search terms.)

CPG should be compelled to engage in meaningful, good-faith search efforts for documents responsive to Plaintiffs' requests. What is remarkable here is not simply the inadequacy of the electronic searches, but that no electronic searches were done. Courts have made clear the process for electronic searches should include "careful thought," including transparency as to the search terms used. *See e.g., William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009) ("This Opinion should serve as a wake-up call to the Bar in this District about the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other electronically stored information ('ESI')."). Courts have also recognized that appropriate search terms require detailed input from ESI custodians themselves. *See, e.g., Am. Mfrs. Mut. Ins. Co.,*

October 11, 2012
Page 5

256 F.R.D. at 136 (noting the problem "of lawyers designing keyword searches in the dark, by the seat of the pants, without adequate ... *discussion with those who wrote the emails*" and explaining that "at a minimum [attorneys] must carefully craft the appropriate keywords, with *input from the ESI's custodians* as to the words and abbreviations they use") (emphases added). Courts have also concluded that robust search terms are possible only after a process that includes testing, refinement, and disclosure of results.[1] CPG, despite this, used no search terms whatsoever.

Moreover, given the complex mix of "computer technology, statistics, and linguistics" that governs whether search terms are successful, ESI specialists may be needed to assess search-term effectiveness. *Id.* at 262 ("Whether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics. ... Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread."); *Victor Stanley, Inc.*, 250 F.R.D. at 260 (D. Md. 2008) ("proper selection and implementation obviously involves technical, if not scientific knowledge"). Again, CPG (unlike its subsidiary Weisheng) failed to use any adequate technical help.

<u>CPG's Lack of Responsive Documents Is Not Credible, Given Their Role in Overseeing Weisheng's Operations.</u>

This failure to conduct basic discovery is even more problematic because, as Mr. Chak testified, anyone who served as a CPG executive director constituted CPG's management and, therefore, had the authority to control CPG's overall investment in Weisheng – CPG's wholly owned subsidiary who also is a defendant in this lawsuit. (Ex. A, at 107:17-25.) As executive directors, these individuals had knowledge of (and responsibility over) what Weisheng was doing in connection with its participation in the Vitamin C price fixing conspiracy, but CPG has not produced any documents responsive to Plaintiffs' requests.

Mr. Chak also testified that CPG's auditor, Deloitte, may have asked Weisheng why Vitamin C prices were fluctuating as part of its audit of CPG's financials. (*Id.* at 123:11-17.) Any such conversation should have been reflected in Deloitte's audit work papers, over which CPG has control as the entity requesting the audit. (*Id.* at 123:22-124:7; *see also R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010) ("Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue

---

[1] *See id.* ("the proposed methodology must be quality control tested to assure accuracy in retrieval and elimination of 'false positives.'"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008) ("The implementation of the methodology selected should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented."); *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007) ("Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness").

October 11, 2012
Page 6

of its relationship with the party in possession of the evidence.")). CPG has not asked Deloitte to see whether it has relevant, responsive documents. (Ex. A, at 124:9-13.)

Furthermore, Mr. Chak testified about audit committee reports referenced in CPG's Audit Committee minutes. (*Id.* at 123:5-10.) But CPG has not produced any audit committee reports, and should do so immediately. CPG's methods of searching are entirely inappropriate for a case involving complex parties with copious electronic documents. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("In short, it is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.").

Even though every former CPG executive director from the 2001-2006 time period may possess relevant information, including documents, regarding CPG's management of Weisheng, Mr. Chak did not communicate CPG's oral document retention policy and litigation hold to *any* of CPG's ex-employees or executive directors who had been with CPG for some portion of the damages period. (Ex. A, at 13:21-14:3; 45:6-12.) As a result, CPG cannot confirm whether any of these individuals kept or destroyed any documents responsive to Plaintiffs' requests.[2] (*Id.* at 38:16-24; 39:14-17; 43:6-10.)

CPG should have, at a minimum, contacted its former executives and asked whether they still possessed any documents responsive to Plaintiffs' requests. *See Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005) ("Analyzing the practical ability of corporations to obtain work-related documents from former employees, courts insist that corporations, at the very least, *ask* their former employees to cooperate before asserting that they have no control over documents in the former employees' possession."); *S.E.C. v. Strauss*, No. 09 CIV. 4150, 2009 WL 3459204, at *7 (S.D.N.Y. Oct. 28, 2009) ("a party has control over material that it has the practical ability to obtain"); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("Under Rule 34, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."). CPG has done no such thing.

In short, CPG's document retention, collection and production procedures have been completely inadequate. CPG needed to employ outside electronic discovery professionals (as Weisheng did), search terms, and hard drive imaging to be sure that all relevant documents were gathered from internal computers – rather than simply taking cursory looks at file names. It did none of that. CPG also needed to make efforts to contact former employees/board members who contributed to the management of CPG's Weisheng investment to collect and gather any relevant

---

[2] In fact, CPG admitted that the computers issued to former board members Mr. Ding and Mr. Wang may have been "disposed of" but CPG has provided no information as to why or how these laptops were lost. (*Id.* at 65:20-25; 66:13-21.)

documents they might have. It did not do any of that, either. Plaintiffs respectfully request the Court compel CPG to complete these searches immediately and properly so that Plaintiffs may receive all relevant documents to which they are entitled and in time to use any relevant documents at trial.

Based on the significant amount of time that has passed since 2005, when CPG announced its litigation hold, mere memory of current CPG employees and executive directors seven years later cannot be relied upon to supplement Plaintiffs' discovery requests. Instead, Plaintiffs request CPG engage in a thorough and electronic-search-driven methodology to produce documents responsive to Plaintiffs' requests. Specifically, Plaintiffs request the Court:

- compel CPG to hire an outside electronic discovery specialist to undertake another search of CPG's files for responsive documents, as described below;

- compel CPG's electronic discovery specialist to employ search terms to search electronically for responsive documents in any files maintained on CPG's system;

- compel CPG's electronic discovery specialist to employ the same search terms used on CPG's internal files to search files and email of CPG employees or executive directors who do not possess a CPG email address;

- compel CPG to contact all former employees and executive directors regarding Plaintiffs' discovery requests and (a) confirm whether emails and documents have been destroyed, (b) perform a meaningful search for documents, and (c) produce responsive documents immediately; and

- compel CPG to complete all searches and production within ten days of this Court's Order.

**CPG's Position:** **Plaintiffs Have Failed to Satisfy Their Burden of Proof that CPG's Searches Were Inadequate and that CPG's Production Was Deficient**

This motion seeks to compel from CPG, an investment holding company with only five employees, further responses to unspecified document requests, despite the fact that CPG has already produced all responsive documents in its files. Plaintiffs' motion is based on the incorrect assumption, without the support of any legal authorities, that an outside electronic discovery specialist and search terms are required by the Federal Rule of Civil Procedure (even when, as here, the responding party has only five employees and no centralized server), and that Plaintiffs can satisfy their burden by simply *speculating* that additional information responsive to their requests might have existed. Plaintiffs also seek to require CPG to contact its former employees and executive directors, who were required to return their company files and properties to CPG upon their departure. Plaintiffs have made no attempt to establish that such former employees and directors are reasonably likely to have information responsive to their

October 11, 2012
Page 8

requests or that any additional files of such individuals, if any, are within CPG's control. Plaintiffs' motion has no merit and should be denied. *See Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F. 3d 1250, 1254. (7th Cir. 1995) (Courts should deny motions to compel that will not aid in "the exploration of a material issue.")

As an initial matter, Plaintiffs failed to comply with Local Rule 37.1, which requires a party filing a motion to compel under Fed. R. Civ. P. 37 "specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed." Furthermore, "[t]he motion or application shall also set forth the grounds upon which the moving party is entitled to prevail as to each request or response." Local Rule 37.1. Plaintiffs have not identified any specific discovery request they seek to address. Nor have they cited any cases in support of their assertions electronic discovery expert and electronic search terms are mandatory and standard in responding to discovery requests.

To the contrary, courts have held that the law imposes no such requirements. In *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, for example, the court held that defendants had no obligation under the Federal Rules to conduct "systemwide keyword searches" to identify responsive electronic documents. 244 F.R.D. 614, 627-28 (D. Colo. 2007). Rather, "in the typical case, responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronic data and documents."[3] *Id.* Under Rule 26, a party is obligated to make a reasonable effort to search for and produce documents responsive to the opposing party's document requests. *See* Fed.R.Civ.P. 26(g) Advisory Comm. Notes (1983 Amendment). "Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances[,]" and "[t]his standard is heavily dependent on the circumstances of each case." *Id.* The search conducted here by CPG was entirely reasonable under the circumstances.

<u>CPG Has Five Employees and Has Never Manufactured or Sold or Distributed Vitamin C</u>

Plaintiffs have made no efforts to show what additional documents CPG could have produced in response to their document requests. There are none.

As CPG has previously noted on several occasions,[4] CPG is not a vitamin C manufacturer and has never engaged in vitamin C production, sales, or marketing. (*See also* CPG Ex. 1, Chak

---

[3] In fact, in one of the cases Plaintiffs cited, the court noted, while keyword searches have recognized as appropriate and helpful for ESI search, there are "well-know[n] limitations and risks associated with them." *William A. Gross Construction Associates, Inc. v. American Manufacturers Mutal Insurance Co.*, 256 F.R.D. 134, 135 (2009).

[4] See, e.g., CPG's Motion to Dismiss for Lack of Personal Jurisdiction, at 1-2 [D.E. # 287] and attached Yue Jin Decl. in Support, ¶2 [D.E.287-2]; CPG's Motion for Summary Judgment, at 2 [D.E. #387-1]; Decl. of Cai Dong Chen in Support of CPG's Motion for Protective Order, ¶2 [D.E.279-2]; CPG's Amended Objections and Responses to Plaintiffs' First Set of Request for Document Production (Plfs. Ex. E.); and CPG's Objections and Responses to Plaintiffs' Third Set of Request for Document Production (Plfs. Ex. I.).

October 11, 2012
Page 9

Dep. 102:9-11.)[5] Rather, it is an investment holding company, having only a five employees. (*Id.* at 99:17-24.) Because of its small size, CPG has no email server or centralized document server.  (*See id.* at 18:10-12; 22:18-23.)  Plaintiffs' First Set of Requests for Document Production and Third Set of Requests for Document Production were primarily directed at documents concerning vitamin C sales, marketing and production, in which CPG was not involved.[6]  (*See* Plfs. Ex. B and Ex. G.)  Plaintiffs complain CPG did not produce any "organizational charts [involved in any activity relating to the manufacture, marketing, sale, pricing or distribution of vitamin C], communications among competitors, minutes and other documents relating to price-fixing in the vitamin C market" in response to their Request. (*See* Plfs. Statement at p. 2.)  While true, this is because CPG does not engage in the manufacture, marketing, sale, pricing or distribution of vitamin C or participate in Chamber meetings.  (*See* CPG's Amended Objections and Responses to Plaintiffs' First Set of Request for Document Production (Plfs. Ex. E).)

Mr. Eddie Chak, CPG's corporate representative, traveled from Hong Kong to the United States for his deposition and provided the details of CPG's efforts to retain and search for information responsive to Plaintiffs' request in his deposition. These efforts are detailed in CPG Ex. 2, Hou email to Plaintiffs dated September 28, 2012. As set forth in greater detail below, there is no indication that CPG's discovery efforts were deficient or improper.

<u>CPG Conducted Reasonable Searches of the Files of Its Relevant Custodians[7]</u>

Plaintiffs misstate Mr. Chak's deposition testimony about CPG's document preservation efforts. Mr. Chak testified when CPG established the document retention policy after the commencement of this litigation, he notified each of the board members separately. (Chak Dep. 14: 4-23.) After this litigation commenced in 2005, CPG instructed all its employees and board members to preserve relevant documents. (*Id.* at 12:18-13:3; 14: 4-16.) Mr. Chak personally discussed with each employee and board member the document preservation policy, and he reminded them repeatedly about this obligation. (*Id.* at 13:23-14:3; 14:17-23.) Notification in writing is unnecessary in consideration of the size of CPG's office. (*Id.* at 13:23-14:3.)

Plaintiffs also misstate Mr. Chak's deposition testimony about CPG's search efforts. CPG commenced searching for responsive documents after it received Plaintiffs' requests the first time in 2008, including specifically documents concerning communications related to Weisheng and the Chamber in 2008. (*Id.* at 25:5-17.) While Mr. Chak did not recall (more than four years later) what specific categories of documents he asked the executive directors about, he did ask

---

[5] All excerpts of Mr. Eddie Chak's deposition testimony cited in CPG's Statement are attached hereto as CPG Ex. 2.

[6] Plaintiffs' Third Set of Requests for Document Production is essentially a revamped version of their First Set of Requests. *See* CPG's Objection and Reponses to Plaintiffs' Third Set of Requests for Document Production (Plfs' Ex. I).

[7] CPG objects to Plaintiffs characterizing its board members as employees. *See* Plaintiffs' Statement at p.3.

2439928v1/008808

for "all the documents" from them. (*Id.* at 29:13-30:3.) When CPG received Plaintiffs' renewed First Set of document requests and the Third Set of document requests in 2012, CPG searched for responsive documents again. (*Id.* at 70:10-22.) Mr. Chak personally supervised CPG's search efforts. (*Id.* at 50:18-22. He reviewed files in CPG's Chairman's computer, including emails and documents in the "deleted" folders. (*Id.* at 51:7-11; 52:12-21.) These efforts were both reasonable and adequate. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-218 (2003) (noting that parties should identify "those employees likely to have relevant information- the 'key players' in the case.")

As Mr. Chak noted, it is CPG's policy that all company files and properties be returned to CPG when an employee or an executive director is no longer associated with CPG. (*See e.g., id.* at 35:22-36:18; 44:15-45:5; 48:12-19; 49:5-14.) Therefore, such files would be kept with CPG and subject to review for responsive documents.

Plaintiffs have made no attempt to establish that any CPG former directors and former employees are reasonably likely to have any information responsive to their requests that was not already reviewed by CPG for production. Plaintiffs assert, without any factual basis, that "every former CPG executive director from the 2001-2006 time period *may* possess relevant information, regarding CPG's management of Weisheng." (Plfs. Statement at p. 6, emphasis added.) Plaintiffs' speculation is without merit. The fact that a company invests in a company manufacturing and selling vitamin C does not mean that everyone of its board members has information responsive to Plaintiffs' requests.[8] (*See* Chak Dep. 40:15-21.) Furthermore, several former employees Plaintiffs asked about in Mr. Chak's deposition had only ministerial and secretarial positions and were no longer in contact with CPG. (*See e.g., id.* at 42:19-43:10; 45:14-18; 45:23-24; 47:5-10; 54:12-55:5.)

CPG also notes, while Plaintiffs complain about potential documents in the possession of *former* directors and employees, such documents are not within the possession, custody or control of CPG, as required by Rule 34. *Miniace v. Pac. Maritme Ass'n*, 2006 WL 335389, *2 (N.D. Cal. Feb. 13, 2006) (denying motion to compel production of documents in the possession of former members of Board of Directors of Defendant because Plaintiffs could make no showing "as to the degree of control [Defendant] exercises over its former directors" and therefore could not satisfy its burden as the requesting party of "proving that the other party has control over the documents") (citing *Golden Trade v. Lee Apparel Co.,* 143 F.R.D. 514, 525 n. 7 (S.D.N.Y.1992)).

---

[8] As an example, CPG's former executive director Ding Er Gang is not a relevant custodian. Wang Xian Jun resigned from CPG's board in 2002, long before this litigation commenced. Plaintiffs offered no evidence suggesting they might have information responsive to Plaintiffs' requests.

October 11, 2012
Page 11

<u>Plaintiffs' Speculation about Existence of Responsive Documents Is Insufficient to Support a Motion to Compel</u>

Plaintiffs' assertion that CPG's lack of responsive documents is "not credible" is more speculation and has no factual basis. (Plfs' Statement at p. 5.) Even if CPG's board members "monitor" CPG's overall investment in Weisheng, among many of its other subsidiaries, that does not automatically mean CPG has documents relating to all Weisheng's daily activities. Indeed, Plaintiffs have not shown any facts that suggest otherwise.

Plaintiffs' assertion that the audit working files of Deloitte, a third party, would contain information responsive to Plaintiffs' requests is again speculation.[9] The audit Deloitte provided was a consolidated audit of all CPG's investment holdings. (Chak Dep. 123: 18-25.) Deloitte's audit reports were to identify issues of compliance with rules and regulations; they do not address any individual subsidiary's business circumstances. (*Id.* at 122: 14-25.) Mr. Chak did review the audit reports provided to CPG but found no information responsive to Plaintiffs' requests. (*Id.* at 122: 5-10.) Consistent with Mr. Chak's testimony, in the two CPG Audit Committee Minutes Plaintiffs examined Mr. Chak on, the statements by Deloitte's representative concern CPG's "rate of return" and a footnote to CPG's consolidated financial statement. (CPG Exs. 3 and 4, Chak Dep. Ex. 267 and Ex. 268.) They do not suggest in any way that that Deloitte has responsive information.

Moreover, Plaintiffs have not satisfied their burden to show that the working files of Deloitte are in CPG's control. "Ultimately … "[i]n the face of a denial by a party that it has possession, custody or control of documents, the [requesting] party must make an adequate showing to overcome this assertion." *Cache La Poudre Feeds,* 244 F.R.D. 614 at 627 (quoting *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.,* 222 F.R.D. 594, 598 (E.D. Wis. 2004)).

For the reasons set forth above, CPG respectfully requests the Court deny Plaintiffs' motion.

**Plaintiffs' Reply Statement:**

CPG asserts that Plaintiffs have failed to follow Local Rule 37.1, which requests that a party "specify and quote or set forth verbatim in the motion papers each discovery request and response." Here, CPG's blatant disregard for all but two of Plaintiffs' discovery requests makes listing them verbatim within Plaintiffs' brief impracticable and less helpful than attaching the full set of requests. The Court may reference all of the discovery requests at issue at Exhibits E and I. The grounds upon which Plaintiffs are entitled to prevail are the same for each delinquent

---

[9] CPG produced its audit committee minutes as a part of CPG's jurisdictional discovery. Any dispute with respect to CPG's response to the jurisdictional discovery is rendered moot by the Court's ruling on CPG's jurisdictional motion. Plaintiffs did not specify which merits related document request Deloitte's working files may contain information responsive to.

2439928v1/008808

request: CPG has failed to demonstrate that it has undertaken a good-faith effort to search for documents responsive to these requests.

Furthermore, CPG claims throughout its response that it has no documents responsive to any of Plaintiffs' requests, but in so doing, CPG assumes the very issue before the Court: namely, that CPG has no documents *because it has not undertaken appropriate search methodologies for these documents*. CPG has not run reasonable searches on its computers – CPG's corporate representative merely eyeballed electronic document file names, only opening files "to take a look" "if necessary." (Ex. A at 51:19-23.) CPG has not spoken to a single former board member to determine *if* they have responsive documents. CPG insists that its search was "reasonable under the circumstances" (CPG Resp. at 8), but CPG's dearth of responsive documents pursuant to the search methods it employed belies this assertion of reasonableness. A "reasonable" search would produce more than three hundred pages of documents relevant to the merits of this case from a sophisticated corporation like CPG. CPG's argument is really that it does not have to actually conduct electronic searches and may simply eyeball files.

CPG is forcing Plaintiffs to ask the Court for relief for what should be common sense to any sophisticated party involved in litigation: to undertake appropriate electronic search methodology to ensure that responsive documents are found and produced. Plaintiffs respectfully request that the Court compel CPG to search its files rigorously, in good faith, and under the auspices of proper electronic search methodologies, as described above.

**Meet and Confer Statement:**

Pursuant to Local Civil Rule 37.3 and Fed. R. Cv. Proc. 37(a)(1), the parties submit that they have extensively met and conferred in good faith concerning CPG's document production and have been unable to resolve this dispute. Since Plaintiffs' deposition of CPG's corporate representative Mr. Chak on September 26, 2012, the parties have exchanged email communications on the topic, attached hereto as Exhibit J. On Monday, October 1, 2012 at 3:30 p.m. CDT, counsel for Plaintiffs and CPG held a conference call in further attempt to resolve the dispute without court intervention. Attorneys Shawn Raymond and Katherine Kunz participated on behalf of Plaintiffs, and Athena Hou and Eric Buetzow participated in the call on behalf of CPG. The call lasted approximately 15 minutes. After discussing the issues presented herein, counsel on both sides concluded that the parties' disagreement required resolution by the Court.

Respectfully submitted,

*/s/ Shawn L. Raymond*
Shawn L. Raymond
Susman Godfrey LLP
Counsel for Plaintiffs

2439928v1/008808

October 11, 2012
Page 13


*/s/ Athena Hou*

Athena Hou
Zelle Hofmann Voelbel & Mason LLP
Counsel for Defendant China Pharmaceutical Group Co. Ltd.


cc:     Counsel of record