## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | 1:06-MD-01738 (BMC) (JO)<br><br>CV-05-453 |

### PLAINTIFFS' PROPOSED FINAL JURY INSTRUCTIONS

Pursuant to the Court's March 2, 2013 Order, Plaintiffs respectfully submit the following substantive proposed final jury instructions to be read at the conclusion of the evidence. Plaintiffs have omitted standard charges such as those on weighing of the evidence, evaluation of witness credibility, expert witnesses, and mechanism of jury deliberations. Plaintiffs reserve the right to supplement or amend the proposed instructions as appropriate.

Dated:  March 6, 2013

Respectfully submitted,

/s/ Michael D.Hausfeld
Michael D. Hausfeld
Brian A. Ratner
Brent W. Landau
Melinda R. Coolidge
HAUSFELD LLP
1700 K Street, NW Suite 650
Washington, DC 20006
Tel:  (202) 540-7200
Fax:  (202) 540-7201

/s/ James T. Southwick
James T. Southwick
Shawn L. Raymond
Katherine Kunz
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX  77002
Tel.:  (713) 651-9366
Fax:  (713) 654-6666

/s/ William A. Isaacson
William A. Isaacson
Tanya Chutkan
Jennifer Milici
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC  20015
Tel.:  (202) 237-2727
Fax:  (202) 237-6131

Alanna Rutherford (AR-0497)
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel:  (212) 446-2300
Fax:  (212) 446-2350

*Co-Lead Counsel for the Certified Direct Purchaser Damages Class and Injunction Class*

1

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 1:
CLASS ACTION AND CLASS DEFINITION**

This is a "class action."  A class action allows representative plaintiffs to sue on behalf of an entire group of plaintiffs who are similarly situated.  In this trial the plaintiff class consists of all persons or entities, or assignees of such persons or entities, who directly purchased vitamin C for delivery in the United States, other than pursuant to a contract containing an arbitration clause, from any of Defendants or their co-conspirators, other than Northeast Pharmaceutical (Group) Co. Ltd., between December 1, 2001 to June 30, 2006.  Excluded from the proposed class are all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates.

SOURCE:     Adapted from *In re Scrap Metal Antitrust Litig.,* Case No. 1:02 CV 0844 (N.D. Ohio 2006).

2

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 2:**
**BURDEN OF PROOF AND AFFIRMATIVE DEFENSE**

Plaintiffs must prove by a fair preponderance of the credible evidence that their claims are true.  The credible evidence means the testimony or exhibits that you find to be worthy to be believed.  A preponderance of the evidence means the greater part of such evidence.  That does not mean the greater number of witnesses or the greater length of time taken by either side.  The phrase refers to the quality of the evidence, that is, its convincing quality, the weight and the effect that it has on your minds.  The law requires that in order for the plaintiffs to prevail on a claim, the evidence that supports his or her claim must appeal to you as more nearly representing what took place than the evidence opposed to his or her claim.  If it does not, or it weighs so evenly that you are unable to say that there is a preponderance on either side, then you must decide the question in favor of the defendants.  It is only if the evidence favoring the plaintiffs' claim outweighs the evidence opposed to it that you can find in favor of plaintiffs.

Defendants assert the defense of foreign sovereign compulsion.   In order for this defense to apply, defendants must prove by a preponderance of the credible evidence that that they were compelled by the government of China to engage in conduct that violates the antitrust laws of the United States.  If you do not find that defendants have established their defense by a preponderance of the evidence, then they cannot avail themselves of this defense.  I will explain this defense to you in greater detail later on.

SOURCE:    Adapted from NEW YORK PATTERN JURY INSTRUCTIONS, PJI 1:23.

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 3:**
**U.S. ANTITRUST LAWS – PURPOSE AND APPLICATION**

The purpose of the U.S. antitrust laws is to preserve free and unfettered competition in the marketplace. The antitrust laws rest on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

Just as the acts of U.S. citizens in a foreign nation ordinarily are subject to the law of the country in which they occur, the acts of foreign citizens in the United States ordinarily are subject to U.S. law. The reach of the U.S. antitrust laws is not limited, however, to conduct and transactions that occur within the boundaries of the United States. Anticompetitive conduct that affects U.S. domestic or foreign commerce may violate the U.S. antitrust laws regardless of where such conduct occurs or the nationality of the parties involved.

SOURCE:      Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at A-2; U.S. Department of Justice Antitrust Enforcement Guidelines for International Operations, § 3.1.

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 4:
ELEMENTS OF THE OFFENSE – PRICE FIXING**

Plaintiffs claim that they were injured because defendants and certain of their competitors conspired to fix the prices or limit the supply of vitamin C for export to the United States.

Under the U.S. antitrust laws it is illegal for competitors, regardless of their size or amount of sales, to agree on the prices to be charged for their competing products. The U.S. antitrust laws also prohibit agreement among competitors that limits how much of a product one or more of them will produce.

An agreement between competing firms can violate this rule even if there is not an agreement on the exact price to be charged. For example, it is illegal for competing companies to agree on maximum or minimum prices, a range within which prices will fall, a formula to set prices, or a component of prices. It is also illegal for competitors to agree on a plan or scheme that will tend to stabilize prices.

Any agreement to fix or stabilize prices is illegal. It is also illegal for competitors to agree to limit the volume of supplies for sale or to limit production.

To prevail against a defendant, plaintiffs must prove as to that particular defendant each of the following elements by a preponderance of the evidence:

**First**, that an agreement to fix the price or limit the supply of vitamin C existed;

**Second**, that the defendant knowingly became a party to that agreement;

**Third**, that such agreement occurred in or affected interstate, import or foreign commerce and produced substantial intended effects in the United States; and

**Fourth**, that the agreement caused plaintiffs to suffer an injury to their business or property.

If you find the evidence is insufficient to prove any one or more of these elements as to any defendant, then you must find for that defendant and against plaintiffs on plaintiffs' claim.  If you find that the evidence is sufficient to prove all four elements as to any defendant, then you must find for plaintiffs and against that defendant on plaintiffs' claim.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at B-19-20; B-48-49; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012); *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 855 (7th Cir. 2012) (en banc).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 5:**
**ELEMENTS OF THE OFFENSE - CONSPIRACY**

As I instructed you, the plaintiffs must prove by a preponderance of the evidence that an agreement – or "conspiracy" – existed to fix the price or limit the supply of vitamin C, and that the defendants knowingly became members of that conspiracy. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which they would accomplish their purpose. The agreement itself may have been entirely unspoken. What the evidence must show to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement to accomplish a common purpose. It is the agreement to act together that constitutes the conspiracy. Whether the agreement succeeds or fails does not matter.

A conspiracy may vary in its membership from time to time. It may be formed without all parties coming to an agreement at the same time, such as where competitors, without previous agreement, separately accept invitations to participate in a plan to restrain trade. The agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose. It is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement.

Direct proof of an agreement may not be available. A conspiracy may be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an agreement from what you find the alleged members actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence

7

tends to exclude the possibility that the persons were acting independently.  If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

It is not necessary that the evidence show that all of the means or methods claimed by the plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; nor that all the persons alleged to be members of the conspiracy actually were members.  What the evidence must show is that the alleged conspiracy of two or more persons existed, that one or more of the means or methods alleged was used to carry out its purpose, and that defendants knowingly became members of the conspiracy.

In determining whether an agreement has been proved, you must view the evidence as a whole and not piecemeal.  In considering the evidence, you first should determine whether or not the alleged conspiracy existed.  If you conclude that the conspiracy did exist, you should next determine whether each defendant knowingly became a member of that conspiracy with the intent to further its purposes.

SOURCE:    Adapted from ABA Model Jury Instructions in Civil Antitrust Cases
              (2005) at B-2-4; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL
              No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

## PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 6:
## PARTICIPATION AND INTENT

Before you can find that defendants were members of the conspiracy alleged by plaintiffs, the evidence must show that defendants knowingly joined in the unlawful plan at its inception or at some later time with the intent to advance or further some object or purpose of the conspiracy.

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played.  Knowledge of the essential nature of the plan is enough.  On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that furthers some object or purpose of the conspiracy, such as by mistake or accident, does not thereby become a conspirator.

A person who knowingly joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he had been one of those who formed or began the conspiracy and participated in every part of it.

The membership of a defendant in a conspiracy must be based only on evidence of its own statements or conduct.  In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence of that defendant's statements and conduct, including any evidence of the defendant's knowledge or lack of knowledge, status, and participation in the events involved, and any other evidence of participation in the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators are binding on all of those whom you find were members of the conspiracy.  But actions or statements of any conspirator that were not done or made in furtherance of the

conspiracy, or that were done or made before its existence or after its termination, may be considered as evidence only against the person who made them.

Once a person is found by you to be a member of a conspiracy, he or she is presumed to remain a member and is responsible for all actions taken by all conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned or that the person has withdrawn from the conspiracy.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at B-13-15; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 7:**
**GOOD INTENT NOT A DEFENSE**

If you find that any of the defendants engaged in a price-fixing conspiracy, it is not a defense that a defendant acted with good motives or thought its conduct was legal, or that the conduct may have had some good results.

SOURCE:       ABA Model Jury Instructions in Civil Antitrust Cases (2005) at B-26.

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 8:**
**EVIDENCE OF COMPETITION**

Evidence that defendants actually engaged in price competition with each other in some manner has been admitted to assist you in deciding whether they entered into an agreement to fix prices.  If you find that defendants agreed to fix prices and/or limit supply of vitamin C, however, it is no defense that defendants actually competed in some respects with each other or that they did not eliminate all competition between them.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at B-28.

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 9:**
**REASONABLENESS OF PRICES NO EXCUSE**

The U.S. antitrust laws make agreements among competitors to fix prices unlawful, regardless of whether the prices that are fixed are reasonable.  Therefore, if you find that a price-fixing conspiracy existed, it does not matter whether the prices agreed upon were high or low or reasonable or unreasonable.

SOURCE:      Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at B-27.

### PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 10:
### CORPORATIONS

A corporation is a person, but it acts only through its agents.  A corporation's agents include its directors, officers, employees, or others acting on its behalf.  A corporation is not capable under the law of conspiring with its own agents or with its unincorporated divisions or its wholly-owned subsidiaries.  Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and the statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.  Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform.  Apparent authority is the authority that outsiders could reasonably believe the agent would have, judging from his position with the company, the responsibilities previously entrusted to him or his office, and the circumstances surrounding his past conduct.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his employment with apparent authority.

A corporation is entitled to the same fair trial as a private individual.  The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence.  All persons, including corporations, are equal before the law.

SOURCE:    Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at B-10-11; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 11:**
**ALTER EGO**

In this case, Plaintiffs claim that defendant Weisheng Pharmaceutical Co. Ltd. ("Weisheng") was an instrument or tool – what the law calls the alter ego – of its parent corporation, defendant China Pharmaceutical Ltd. ("CPG"), so that the separate status of defendant Weisheng should be disregarded and the parent corporation, defendant CPG, should also be held legally responsible for the acts and transactions of its subsidiary, Weisheng.

In most cases, the status of a subsidiary corporation as a separate legal entity apart from its parent corporation should be respected and preserved.  This rule is not absolute, however, and the separate status of a subsidiary corporation can be disregarded when the parent corporation so controls the operation of the subsidiary as to make the subsidiary a mere tool or instrumentality of the parent, and that control is used for the purpose of committing fraud or perpetrating the violation of a statutory or other legal duty.   In deciding whether Weisheng should be treated in this case as an alter ego of its parent corporation, CPG, you should consider:

(1)      The absence of corporate formalities;

(2)      The subsidiary's financial reliance on the parent;

(3)      Overlap in ownership, officers, directors, and personnel;

(4)      Common office space, address and telephone numbers of corporate entities;

(5)      The amount of business discretion displayed by the allegedly dominated corporation;

(6)      Whether the related corporations deal with the dominated corporation at arm's length;

(7)      Whether the corporations are treated as independent profit centers;

(8)     The payment or guarantee of debts of the dominated corporation by other

corporations in the group;

(9)     Whether the corporations in question had property that was used by other of the

corporations as if it were its own.

(10)     Any other factor disclosed by the evidence tending to show that the subsidiary

was or was not operated as an entity separate and apart from its parent.

You should consider all these factors.  No one factor is determinative.

SOURCE:     Adapted from *In re Vitamin C Antitrust Litigation*, Case No. 1:06-md-01738-BMC-JO Memorandum Decision and Order (Doc. 494), filed July 18, 2012; ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CIVIL CASES) § 1.10.5.2 (2005); *In re Vebeliunas*, 332 F.3d 85, 91 n.3 (2d Cir. 2003).

**PLAINTIFFS' PROPOSED INSTRUCTION NO. 12:**
**AGENCY**

In general, agents of a corporation may bind the corporation by their acts and declarations made while acting within the scope of the authority delegated to them by the corporation. Whether acting on his own behalf or for another, an agent who violates the law is answerable to any injured party for the consequences.

Authority to act for a corporation in a particular matter, or in a particular way or manner, may be inferred from the surrounding facts and circumstances shown by the evidence in the case. That is to say, authority to act for a corporation, like any other fact or issue in a civil case, need not be established by direct evidence, but may be established by indirect or circumstantial evidence.

Plaintiffs claim that Weisheng Pharmaceutical Co. Ltd. ("Weisheng") was acting as the agent of China Pharmaceutical Ltd. ("CPG").  CPG denies that Weisheng was acting as its agent. If you find that Weisheng was the agent of CPG and was active within the scope its authority, then any act or omission of Weisheng was the act or omission of CPG.


SOURCE:    Adapted from 3 KEVIN F. O'MALLEY ET AL, FEDERAL JURY PRACTICE & INSTRUCTIONS – CIVIL § 108.05 (6th ed. 2012); MANUAL OF MODEL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT, INSTRUCTION NO. 9.01 (2011); 3 AM. JUR. 2D (AGENCY) § 298; *American Society of Mechanical Engineers v. Hyrdolevel Corp.*, 456 U.S. 556 n.11 (1982).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 13:**
**SUBSTANTIAL INTENDED EFFECT ON IMPORT OR FOREIGN COMMERCE**

U.S. antitrust law applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States.

To show that foreign conduct was meant to produce some substantial effect, the plaintiffs must establish by a preponderance of the evidence that a defendant knowingly entered into an express or tacit agreement intending to produce a substantial effect in the United States.

The plaintiffs must also meet their burden of proving that the alleged agreement between defendants and their alleged co-conspirators in fact produced a "substantial" effect on the United States market.

An effect is substantial if it had a significant and material impact on the vitamin C market. That means the defendants' allegedly unlawful activity must have significantly affected the United States vitamin C market and the effect was more than speculative, insubstantial or remote.

SOURCE:   Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012); *United States v. Nippon Paper Industries Co., Ltd.*, Crim. No. 95-10388-NG (D. Mass. July 1, 1998) (Hon. Nancy Gertner).

## PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 14:
## IMPORT COMMERCE

The U.S. antitrust laws apply to conduct involving import trade or commerce with foreign nations.  An "import" is a product or service that has been brought into the United States from abroad. In determining whether the defendants' conduct involved import trade or commerce, the relevant inquiry is whether the alleged anticompetitive behavior was directed at an import market.  However, it is not necessary that the defendants themselves functioned as the physical importers of goods.

The plaintiffs allege that the defendants and their co-conspirators participated in meetings and conversations in China and elsewhere in which the price, volume of sales, and exports to the United States were discussed and agreed upon. And as I previously instructed you, the plaintiff class in this case consists only of those who directly purchased vitamin C for delivery in the United States.

It does not matter whether some of the transactions at issue took place overseas with foreign parties, so long as the intent and result of those transactions was the direct import of vitamin C into the United States.  Even if the defendants sometimes contracted with foreign entities, their conduct involved import commerce if the defendants knew, by the terms of their contracts or otherwise, that the vitamin C was to be delivered directly to the United States.

SOURCE:   Adapted from *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 165067 (E.D.N.Y. Nov. 16, 2012); *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845, 854 (7th Cir. 2012) (en banc); *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 467-68, 470 (3d Cir. 2011); *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002); *Turicentro S.A. v. Am. Airlines*, 303 F.3d 293, 303 (3d Cir. 2002).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 15:**
**FOREIGN COMMERCE**

The U.S. antitrust laws also apply to conduct that affects foreign commerce, even if it did not involve import commerce, so long as the conduct had a direct, substantial, and reasonably foreseeable effect on commerce within the United States.  It is not necessary that the defendants' conduct occur within the United States.  It is necessary, however, that the effect of the defendants' conduct be felt by persons or businesses within the United States.  It also is necessary that the effect within the United States be more than indirect, remote, or unpredictable.  And as I previously instructed you, the plaintiff class in this case consists only of those who directly purchased vitamin C for delivery in the United States.

In determining whether the effect within the United States of the defendants' conduct was reasonably foreseeable, you may consider a number of factors, including the defendants' intent, the likely or probably consequences of the defendants' conduct, and the geographic target of the defendants' conduct.  No one factor, however, is conclusive on this issue.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at A-15-16; *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 165067 (E.D.N.Y. Nov. 16, 2012); *Turicentro S.A. v. Am. Airlines*, 303 F.3d 293, 305 (3d Cir. 2002).

## PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 16:
## ANTITRUST INJURY

If you find that a defendant has violated the U.S. antitrust laws as alleged by plaintiffs, then you must decide if plaintiffs are entitled to recover damages from that defendant.

Plaintiffs are entitled to recover damages for injuries to their business or property if they can establish three elements of injury and causation:

**First**, that the plaintiff class was in fact injured as a result of defendant's alleged violation of the antitrust laws;

**Second**, that defendant's alleged illegal conduct was a material cause of plaintiffs' injuries; and

**Third**, that plaintiffs' injuries are injuries of the type that the antitrust laws were intended to prevent.

The first element is sometimes referred to as "injury in fact," or fact of damage.  For plaintiffs to establish that they are entitled to recover damages, they must prove that the plaintiff class was injured as a result of defendants' alleged violation of the antitrust laws.  Higher prices that were paid as a result of a price fixing conspiracy or agreement to limit supply are a type of injury under the U.S. antitrust laws.  Proving the fact of damage does not require plaintiffs to prove the dollar value of the injury.  It requires only that they prove that they were in fact injured by defendants' alleged antitrust violation.

If you find that plaintiffs have established that they were in fact injured, you may then consider the amount of their damages.  It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiffs have established that they were in fact injured.

21

As to the second element, plaintiffs must also offer evidence that establishes as a matter of fact and with a fair degree of certainty that defendants' alleged illegal conduct was a material cause of their injuries.  This means that plaintiffs must prove that some damage occurred to them as a result of defendants' alleged antitrust violation, and not some other cause.  Plaintiffs are not required to prove that defendants' alleged antitrust violation was the sole cause of their injuries; nor do plaintiffs need to eliminate all other possible causes of injury.  It is enough if plaintiffs have proved that the alleged antitrust violation was a material cause of their injuries.  However, if you find that plaintiffs' injuries were caused primarily by something other than the alleged antitrust violation, then you must find that plaintiffs have failed to prove that they are entitled to recover damages.

To prove the final element, plaintiffs must establish that their injuries are the type of injuries that the antitrust laws were intended to prevent.  This is sometimes referred to as antitrust injury.  If plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then plaintiffs' injuries are antitrust injuries.  Higher prices that were paid as a result of price fixing or agreement to limit supply are one type of antitrust injury.  On the other hand, if plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then plaintiffs' injuries are not antitrust injuries and plaintiffs may not recover damages for those injuries under the antitrust laws.  You should bear in mind that businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against -- such as where a competitor offers better products or services or where a competitor is more efficient and can charge lower prices and still earn a profit -- and the antitrust

laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.

If plaintiffs can establish that they were in fact injured by defendants' conduct, that defendants' allegedly illegal conduct was a material cause of plaintiffs' injuries, and that their injuries were the type that the antitrust laws were intended to prevent, then plaintiffs are entitled to recover damages for their injuries to their business or property.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at F-2-5; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 17:**
**ANTITRUST DAMAGES – INTRODUCTION AND PURPOSE**

If you find that defendants violated the antitrust laws and that this violation caused injury to the plaintiff class, then you must determine the amount of damages for the plaintiff class.  The law provides that plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred.  The law does not permit you to award damages to punish a wrongdoer — what we sometimes refer to as punitive damages — or to deter defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to plaintiffs an amount for attorneys' fees or the costs of maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are designed to compensate plaintiffs for the particular injuries they suffered as a result of the alleged violation of the law.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases
            (2005) at F-12; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL
            No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

24

## PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 18:
## DAMAGES — SPECULATION NOT PERMITTED

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to the alleged antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

It may be difficult for you to determine the precise amount of damage suffered by the plaintiffs.  If plaintiffs established with reasonable probability the existence of an injury proximately caused by defendants' antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, nonspeculative assumptions and estimates.  Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based.  If you find that plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then your verdict must be for defendants.  If you find that plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at F-15-16; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 19:**
**DAMAGES FOR PURCHASERS – CLASS DAMAGES**

Plaintiffs are seeking to recover damages on behalf of a class of purchasers that consists of all persons or entities, or assignees of such persons or entities, who directly purchased vitamin C for delivery in the United States, other than pursuant to a contract containing an arbitration clause, from any of defendants or their co-conspirators, other than Northeast Pharmaceutical (Group) Co. Ltd., between December 1, 2001 to June 30, 2006.  To award damages for the class, you need not determine the overcharge paid by each class member with precision.  It is sufficient for you to estimate the overcharge paid by class members, as long as the estimate is based on evidence and reasonable inferences.  You may not, however, engage in guesswork or speculation.  If damages can only be ascertained through guesswork or speculation, you may not award damages.

Plaintiffs claim that the class members were harmed because they paid higher prices for vitamin C than they would have paid in the absence of the alleged price-fixing conspiracy.  A proper method of calculating such damages is to award the difference between the prices actually paid for these products and the prices which would have been paid in the absence of the agreement to fix prices.

SOURCE:     Adapted from ABA Model Jury Instructions in Civil Antitrust Cases (2005) at F-26; *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 20:**
**DAMAGES – JOINT CONSPIRATOR LIABILITY**

Each participant in a conspiracy which violates the antitrust laws is "jointly and severally" liable for all the damages resulting from the conspiracy.  This means that each conspirator is fully liable for all of the damages caused by acts of any other member of the conspiracy done pursuant to, or in furtherance of, the conspiracy during the time it was a member.

If you find that a defendant participated in the conspiracy alleged by plaintiffs and that plaintiffs are entitled to damages based on the other instructions in this case, then that defendant is liable for all damages caused by the conspiracy during the time it was a member, including all overcharges on purchases of vitamin C that are part of the claims here made by the plaintiffs from all conspirators, not just the overcharges on vitamin C purchased from that defendant.

SOURCE:     Adapted from *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, Misc. M 07-1827 (N.D. Cal. 2012).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 21:**
**FOREIGN SOVEREIGN COMPULSTION**

If you find that plaintiffs have proven their claims, and after you have determined the

amount of damages, you should then consider whether the defendants have proven their

affirmative defense of foreign sovereign compulsion.

Defendants argue that they were compelled by the Chinese government to fix prices and

control supply.   For the defense to apply here, a defendant must prove – by a preponderance of

the evidence – that it was compelled by a foreign government to engage in conduct that violates

the antitrust laws of the United States.

A defendant is "compelled" by a foreign government where it faces the imposition of

penal or other severe sanctions for refusing to comply with a foreign government's command or

where the refusal to comply with the command of a foreign government would be futile.  The

defense only applies here if the defendant was compelled by a foreign government to reach price

and volume agreements in violation of the antitrust laws of the United States.

Governmental enforcement, or government facilitation, of already existing voluntary

agreements are not sufficient to prove that the parties were compelled to enter the agreements in

the first place.

It is not a defense that defendants' own conduct was merely approved of or aided by

government action.  It is also no defense that defendants' acts and decisions were permitted by

the Chinese government.

The foreign sovereign compulsion defense is not available for conduct going beyond

what the foreign government compelled. For example, if a foreign government ordered

companies to jointly set prices high enough to cover the costs of production, the sovereign

compulsion defense would apply only as to an agreement among those companies concerning at-

28

cost pricing.  If those same companies also reached agreements to set prices above costs, or

reached agreements on output limitations, those agreements would exceed the scope of the

government's compulsion and the foreign sovereign compulsion doctrine would not apply as to

those agreements.

SOURCE:     Adapted from *In re Vitamin C Antitrust Litigation*, Case No. 1:06-md-01738-
            BMC-JO, Memorandum Decision and Order (Doc. 440), dated September 6,
            2011; Antitrust Guidelines §3.32; *Continental Ore Co. v. Union Carbide &
            Carbon Corp.*, 370 U.S. 690, 705 (1962); *United States v. Sisal Sales Corp.*, 274
            U.S. 268, 276 (1927); *Williams v. Curtis-Wright Corp.*, 694 F.2d 300, 303 (3d
            Cir. 1982); *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1297-98
            (3d Cir. 1979).

**PLAINTIFFS' PROPOSED FINAL INSTRUCTION NO. 22:**
**CHINESE LAW**

In assessing the foreign sovereign compulsion defense, you may also consider the following about written Chinese law.  You have heard testimony concerning the Chamber of Commerce of Medicine & Health Products Importers & Exporters and other Chambers of Commerce in China.  You have also heard testimony about Verification and Chop.  You may consider that under Chinese law the Chamber of Commerce was delegated by the Ministry of Commerce in 2002 with the authority to grant and deny chops in some circumstances for the export of Vitamin C and other products.

You may also consider that under written Chinese law, the Chinese Ministry of Commerce holds a special supervisory role over the Chamber of Commerce.  Although you may consider this point of Chinese law in examining the facts in this case, it does not, standing alone, establish compulsion by the Chinese government to reach agreements on price or output.

I instruct you that during the relevant time period, written Chinese law did not require membership in the Chamber or in the Vitamin C Subcommittee of the Chamber as a condition to export vitamin C.  Pursuant to written Chinese law, non-members had the right to export. Furthermore, pursuant to Chinese law, in conducting verification and chop, the Chamber was required to give the contracts of non-members the same treatment as those of members.

While you may consider these provisions of Chinese law, I instruct you that written Chinese law did not direct vitamin C companies to reach any agreements on price or supply. With regards to verification and chop, written Chinese law also stated that to receive a chop, a contract had to comply with the industry-agreed minimum price.  Compliance with industry agreed output restrictions was not required to receive a chop.

My instructions are about written Chinese law.  It is up to you the jury to decide whether the evidence shows that defendants were compelled by the Chinese government to fix prices or limit supply.

SOURCE:     Adapted from *In re Vitamin C Antitrust Litigation*, Case No. 1:06-md-01738-BMC-JO, Memorandum Decision and Order (Doc. 440), dated September 6, 2011.

31