**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE**<br>**VITAMIN C ANTITRUST LITIGATION**<br><br>This Document Relates To:<br><br>    *Animal Science Products, Inc., et al. v.*<br>    *Hebei Welcome Pharmaceutical Co., Ltd., et*<br>    *al.*, Case No. 1:05-CV-00453(BMC)(JO)<br>    (E.D.N.Y.) | **MASTER FILE 1:06-MDL-1738**<br>**(BMC)(JO)**<br><br><br>**DEFENDANTS' PROPOSED FINAL**<br>**JURY INSTRUCTIONS** |

In accordance with the Court's March 2, 2013 Order, Non-Settling Defendants Hebei Welcome Pharmaceutical Co. Ltd., Weisheng Pharmaceutical Co. Ltd., North China Pharmaceutical Group Corp. and China Pharmaceutical Group Corp., Ltd hereby respectfully submit their proposed final jury instructions.

These proposed jury instructions are based largely on the model jury instructions published by the federal circuit courts, as well as other model instructions such as the ABA Model Jury Instructions in Civil Antitrust Cases, and other legal authorities. The source authority is indicated following the end of each proposed instruction.

Defendants reserve the right to object to any jury instructions proposed by Plaintiffs, and to propose additional or amended instructions as permitted by the Court.

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1:**
**<u>DUTY OF THE JURY (END OF CASE)</u>**

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Source:  Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.1C (2007)

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2:**
**MULTIPLE DEFENDANTS AND NON-PARTIES**

Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiffs, all defendants are liable. Each defendant is entitled to a fair consideration of the evidence. No defendant is to be prejudiced should you find against any other.

Some of the instructions I will give you apply only to plaintiffs' claims against certain defendants. I will specify when instructions apply only to certain defendants. Otherwise, the instructions I give you apply to all claims.

In addition, you have heard testimony and seen evidence concerning the Chinese Government. The Chinese Government is not a defendant or otherwise a party in this case, and you are not being asked to judge the propriety of its conduct. Whether you agree or disagree with conduct undertaken by the Chinese Government is not relevant to your determination of any issue, and your opinion in this regard may not be considered by you in any way when determining the facts of this case.

Source:  Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 103:14 (6th ed. 2011)

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 3:**
**CORPORATE PARTIES**

A corporation is an artificial person under the law, and a corporation is entitled to the same fair consideration and impartial treatment in the courts as you would give an individual person or group of persons. You must not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Likewise, the fact that defendants are corporations of a foreign country, or owned, in part or whole, by a foreign government must not influence you against the defendants in any way. Chinese corporations are entitled to the same fair and conscientious consideration by you as any person or corporation from the United States. You may not discount the positions or credibility of any party on the basis of national origin. All parties—irrespective of nationality—are to be treated equally.

A corporation can act only through its agents, persons such as directors, officers, employees. And you are instructed that those individuals who are directors, officers, employees or other agents of a corporation, only when they represent that corporation, they make that corporation capable of agreeing with other persons or with other corporations represented by their officers, directors, employees and the like.

Acts done with the scope of a person's employment are acts done on behalf of a corporation and related to the performance of duties which such a person is generally authorized to perform.

Source: Fifth Circuit Pattern Civil Jury Instructions, Instr. 2.13 (2009); Jury Instructions (Sept. 28, 2006) from *In re: High Pressure Laminates Antitrust Litig*., 00-md-1368 (S.D.N.Y. 2006).

4

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 4:**
**OVERVIEW OF ANTITRUST CLAIM ELEMENTS**

The plaintiffs in this case allege that defendants violated United States antitrust law, and seek monetary damages from each defendant for alleged overcharges to direct purchasers of vitamin C shipped from China based on that claim.

Plaintiffs must prove three essential elements to prevail on their antitrust claim:

- The first element is voluntary and intentional entry into an agreement between or among at least two separate competitors to fix prices, restrict sales volume or restrict output.

- The second element is injury in fact as a direct and proximate result of the alleged agreement.

- The third element is proof of damages suffered in consequence of the first two elements in an amount that is ascertainable and not speculative.

I will now provide you with further instructions concerning each of these elements, certain defenses, the positions of the parties and burdens of proof.

Source:  *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 131 (2d Cir. 2001) ("In order to prevail under § 1, a plaintiff must show that: (1) there was an agreement among . . . [the defendants] in restraint of trade, (2) [the plaintiffs was] injured as a direct and proximate result, and (3) its damages are capable of ascertainment and not speculative."); Plaintiffs Proposed Preliminary Jury Instruction (ECF No. 646, filed Feb. 21, 2013), Instr. No. 4 ("The plaintiffs must prove ... that defendants knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason."); ABA Model Jury Instructions in Civil Antitrust Cases B-2 (2005); Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 150:40 (6th ed. 2011); Jury Instructions (Sept. 28, 2006) from *In re: High Pressure Laminates Antitrust Litig.*, 00-md-1368 (S.D.N.Y. 2006).  S*ee also*, *e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 86-88 (D. Conn. 2009).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 5:
## AGREEMENT IN RESTRAINT OF TRADE

The first element of plaintiffs' antitrust claim is an agreement to fix prices, restrict sales or restrict volume or output of vitamin C.  Plaintiffs must prove by a preponderance of the evidence that each defendant knowingly joined in and participated in such agreement(s) restraining trade.  Knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

If you find that plaintiffs have not met their burden in this respect as to any defendant, that defendant cannot be liable and you must return a verdict in its favor.

If you find that plaintiffs have met their burden with respect to this element, plaintiffs still have the burden to prove the two remaining essential elements in order to establish their antitrust claims, namely that the agreements directly and proximately resulted in direct purchasers paying higher prices, and proof of damages in an amount that is not ascertainable in speculative.  I will provide you with further instructions on these elements, as well as the affirmative defense of compulsion on which defendants bear the burden of proof and which if proven is a complete defense, in a moment.

Source:  Plaintiffs Proposed Preliminary Jury Instruction (ECF No. 646), Instr. No. 4 ("The plaintiffs must prove ... that defendants knowingly became a member of that conspiracy; knowingly means voluntarily and intentionally, and not because of mistake or accident or other innocent reason."); ABA Model Jury Instructions in Civil Antitrust Cases B-2 (2005); Kevin F. O'Malley et al., *Federal Jury Practice and Instructions*, § 150:44, 150:45 (6th ed. 2011); *Wills Trucking, Inc. v. Baltimore and Ohio Railroad Company, et al*, 1999 U.S. App. LEXIS 9832, 1999-2 Trade Cas. (CCH) ¶ 72,566 (6th Cir. 1999); *United States v. A Lanoy Alston*, 974 F. 2d 1206, 1210 (9th Cir. 1992).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 6:**
**AGREEMENT BY CORPORATE PARENTS**

In order to hold a party liable as a party to an unlawful agreement, plaintiffs must show that the particular defendant entered into an agreement in violation of the antitrust laws. There must be some evidence both of actual knowledge of, and of participation in, the illegal scheme.

Defendants China Pharmaceutical Group, Ltd. and North China Pharmaceutical Group Corp.—the parent companies to Defendants Weisheng Pharmaceutical Co. and Hebei Welcome Pharmaceutical Co. Ltd, respectively—dispute plaintiffs' contentions that they participated in any discussions or agreements in respect of the matters at issue in this case.

I instruct you that as a general legal principle, a parent corporation is not liable for the acts of its subsidiaries. Each corporation is presumed to have a separate existence and it is presumed that a parent is a separate entity independent of its subsidiaries and not liable for the acts of a subsidiary's officers or employees.

It is entirely appropriate for directors or officers of a parent corporation to serve as directors or officers of a subsidiary, and that fact alone cannot serve to expose the parent corporation to liability for its subsidiary's acts. Directors and officers holding position with a parent and its subsidiary can and do "change hats" to represent the two corporations separately.

There is a general presumption that the directors wear their "subsidiary hats" and not their "parent hats" when acting for the subsidiary. For a parent company to be liable for the actions of an overlapping director, plaintiffs must prove that when a director or officer acted in respect to agreements or discussions concerning price or output restrictions, he or she was in fact acting so in his or her capacity as a representative of the parent corporation, as opposed to the subsidiary corporation.

The plaintiffs bear the burden of proving that Defendants China Pharmaceutical Group, Ltd. and North China Pharmaceutical Group Corp. were parties to the agreements, and that officers or employees of these defendants specifically entered agreements restraining trade in their capacity as officers or employees of these particular defendants and not other entities.

Source:  *United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998) ("it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts"; it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"; "courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary"; "The [plaintiffs] would have to show that, despite the general presumption to the contrary, the officers and directors were acting in their capacities as [parent] officers and directors, and not as [subsidiary] officers and directors, when they committed those acts.")

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 7**:
**DEFENDANTS' AFFIRMATIVE DEFENSE—**
**FOREIGN SOVEREIGN COMPULSION**

Compulsion by a foreign government, if established, is an absolute defense to Plaintiffs' claims, regardless of whether you conclude there was agreement, or injury or damages.  All defendants assert this compulsion defense.

To establish this defense, defendants must prove that an authorized member of the offices or agencies of the Government of China compelled the defendants to enter into agreements setting prices and/or restricting output of vitamin C exported from China.  To be compelled, the defendants must have faced the prospect of penalties or sanctions for not complying with the directives or commands of the Chinese government.

You must determine whether there was government compulsion based on all the testimony and evidence in the case as to what the Chinese government directed through its offices or agents. A directive or command need not be cast in terms of a Biblical commandment "Thou shalt" or "Thou shall not," if the practical effect is the same.

You are to determine whether defendants have proven such government compulsion by a preponderance of the evidence, as I previously instructed you on that standard.

If you find that defendants have proven this defense, you must return a verdict in favor of all defendants.

Source:  *In re Vitamin C Antitrust Litig.*, 810 F. Supp. 2d 522, 544 (E.D.N.Y. 2011); *Trugman-Nash, Inc. et al. v. New Zealand Dairy Board, et al*., 954 F. Supp. 733 (S.D.N.Y. 1997); *Interamerican Refining Corp. v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291 (D. Del. 1970).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 8:
## <u>INJURY AND CAUSATION</u>

As I previously instructed you, plaintiffs must prove that they paid higher prices as a direct and "proximate result" of the agreements at issue.  Please keep in mind that, in the normal course of lawful competition, prices may increase, decrease, or remain the same for various different reasons.  There can only be a claim for damages if losses due to increased prices are in fact caused by anticompetitive practices.

An injury to a business or property, including in the form of paying higher prices, is the "proximate result" of an unlawful agreement restraining trade only when the agreement directly and in natural and continuous sequence produces, or contributes substantially to producing, such injury.  In other words, the agreements at issue must be a direct, substantial, and identifiable cause of the injury that the plaintiffs claim.

The chain of causation can be broken by an independent intervening cause.  If such an intervening cause proximately caused a price increase, then the increase did not directly result from defendants' alleged conduct.  For example, if a price change was caused by market conditions, or by supply or demand factors not in defendants' control, that can break a chain of causation.  Market factors that drive prices above price levels set by agreement can break the chain of causation because the price is then driven by the market.  If you find that the plaintiffs' injury was proximately caused by something other than the alleged agreement, then you must find that the plaintiffs have failed to prove that they are entitled to recover damages from defendants, and you must return a verdict in favor of defendants.

If, on the other hand, you find that the agreements at issue directly and proximately resulted in the plaintiffs paying higher prices than they otherwise would have paid for their vitamin C purchases during the relevant claims period, and the agreements were not compelled,

you must move on to the third element and determine the issue of damages, as I will further

instruct you.

Sources:  Eleventh Circuit Pattern Civil Jury Instructions, § III., 3.1 (B)(4) (2005); Kevin F.
O'Malley et al., *Federal Jury Practice and Instructions*, §§ 120:64, 150:70 (6th ed. 2011); ABA,
Model Jury Instructions in Civil Antitrust Cases (2005 Edition), F-3; Jury Instructions (Sept. 28,
2006) from *In re: High Pressure Laminates Antitrust Litig.*, 00-md-1368 (S.D.N.Y. 2006).  S*ee
also*, *e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 86-
88 (D. Conn. 2009).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 9:**
**INDIRECT LIABILITY CLAIM—**
**<u>SUBSIDIARY AS ALTER EGO OF PARENT CORPORATION</u>**

In this case the plaintiffs claim that subsidiary corporation Weisheng Pharmaceutical Co.

Ltd. (Weisheng") was a mere instrument or tool—what the law calls an alter ego—of its parent

corporation, Defendant China Pharmaceutical Group, Ltd.  Based on this theory, Plaintiffs assert

that the separate status of the subsidiary Weisheng should be disregarded and the parent

corporation China Pharmaceutical Group Ltd. should be held legally responsible for the acts and

transactions of Weisheng.

Under our free enterprise economic system, the law permits, even encourages, the

formation of corporations as a means of attracting investments by stockholders, including other

corporations, which can invest money in the subsidiary corporate enterprise without risking

liability on its own part for the corporate acts and transactions of its subsidiary.  In most cases,

therefore, the status of a subsidiary corporation as a separate legal entity apart from its parent

corporation must be respected and preserved.

This rule is not absolute, however.  Under extraordinary circumstances, a parent

corporate entity can be liable for the acts of a separate, related entity.  To be liable in this

manner, plaintiffs must prove that the parent company so dominated and disregarded the

subsidiary's corporate form that the subsidiary was actually carrying on the parent entity's

business instead of its own.

In deciding whether the parent company defendants should be treated in this case as the

alter ego of their subsidiaries, you should consider the following factors:

> (1) the absence of corporate formalities, such as the issuance of stock, election of
> directors, keeping of corporate records and the like;

> (2) inadequate capitalization or funding of the subsidiary;

(3)  whether funds of the separate corporate entities were intermingled;

(4)  overlap in ownership, officers, directors, and personnel;

(5)  common office space, address and telephone numbers of corporate entities;

(6)  the amount of business discretion displayed by the allegedly dominated corporation;

(7)  whether the related corporations deal with the dominated corporation at arms length;

(8)  whether the corporations are treated as independent profit centers,

(9)  the payment or guarantee of debts of the subsidiary corporation by other corporations in the group, and

(10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

You should consider all of these factors.  No one factor is determinative.

Further, it is entirely appropriate under the law for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not expose the parent corporation to liability for its subsidiary's acts.

It is likewise entirely appropriate for parent companies to monitor a subsidiary's performance, and that does not make a parent liable for or a participant in the subsidiary's acts. Evidence that a subsidiary makes reports to its parent company, or evidence that a subsidiary's top officers report to its parent company, does not destroy the legally separate nature of parent and subsidiary.

In addition, the practice of identifying a subsidiary's products with the name or logos of the parent in promotional or marketing materials is a frequently used marketing strategy which, given the understandings of the marketplace, does not disrespect the separate corporate forms.

It is also permissible for a parent company to monitor litigation involving a subsidiary or even control or direct the defense of a litigation without making the parent liable for the acts of the subsidiary at issue in the litigation.

Sources:  Eleventh Circuit Pattern Civil Jury Instructions, § FI 1.10.5.2 (2005); *United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998) (holding "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts," and finding that "monitoring a subsidiary's performance" is "consistent with the parent's investor status" and constitutes "[a]ppropriate parental involvement."); *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir.1996) ("a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances"); *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980) ("[Parent] must have used [subsidiary] to perpetrate a fraud or have so dominated and disregarded [subsidiary's] corporate form that [subsidiary] primarily transacted [parents] personal business rather than its own corporate business."); *In re Vebeliunas*, 332 F.3d 85, 91 & n.3 (2d Cir. 2003) (cited in the Court's July 17, 2012 Memorandum Decision and Order, at 22, as providing the veil-piercing factors in the Second Circuit.); *Fletcher v. Atex, Inc*., 68 F.3d 1451, 1458-60 (2d Cir. 1995) ("the district court properly rejected the plaintiffs' argument that the descriptions of the relationship between [subsidiary] and [parent] and the presence of the [parent] logo in [subsidiary's] promotional literature justify piercing the corporate veil."; holding subsidiary was not alter ego of parent despite parent's exertion of control over subsidiary's major expenditures, stock sales, and sale of assets to a third party, and parent's "dominating presence" on subsidiary's board of directors); *Acushnet River & New Bedford Harbor: Proceedings re: Alleged PCB Pollution*, 675 F. Supp. 22, 34-5 (D. Mass. 1987) ("The quarterly and annual reports made to [parent] do not represent an untoward intrusion by the owner into the corporate enterprise.  The right of shareholders to remain informed is similarly recognized in many public and closely held corporations."; "The practice of identifying a subsidiary's products with the name of the parent is a frequently used marketing strategy which, given the understandings of the marketplace, does not imply a disrespect for separateness.); *Avery Dennison Corp. v. UCB SA*, 1997 U.S. Dist. LEXIS  11504, at *8 (N.D. Ill July 28, 1997) (concluding that subsidiary and parent maintained corporate separateness, despite commonality of some corporate officers and directors, and parent company's control over the subsidiary's litigation).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 10:**
**EFFECT OF INSTRUCTION AS TO DAMAGES**

I am now going to instruct you on the issue of damages. The fact that I am giving you instructions concerning the issue of plaintiffs' damages does not mean that I believe the plaintiffs should, or should not, prevail in this case.

If, for any reason, you reach a verdict for the defendant on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.  Similarly, if for any reason, you reach a verdict for the defendant on the issue of injury or causation, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.

Instructions as to the measure of damages are given for your guidance in the event you should find in favor of the plaintiffs based on a preponderance of the evidence in accordance with the other instructions I have given you. You should only consider calculating damages if you first find that defendants violated the antitrust laws, that there is no defense of compulsion, and that this violation directly caused injury to plaintiffs.

Source:  ABA Model Jury Instructions in Civ. Antitrust Cases, F-11 (2005)

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 11:**
**DAMAGES—INTRODUCTION AND PURPOSE**

If you find that defendants did not prove their affirmative defense of government compulsion, and plaintiffs proved that Defendants' agreements concerning prices and/our output caused injury to plaintiffs in accordance with my prior instructions and that their conduct was not compelled, then you must determine the amount of damages, if any, plaintiffs are entitled to recover. The law provides that plaintiffs should be fairly compensated for all damages to their business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred. The law does not permit you to award damages to punish a wrongdoer - what we sometimes refer to as punitive damages - or to deter defendants from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation. You are also not permitted to award to the plaintiff an amount for attorneys fees or the costs of maintaining this lawsuit. Antitrust damages are compensatory only. In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

Source: ABA Model Jury Instructions in Civ. Antitrust Cases, F-12 (2005).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 12:
## DAMAGES—SPECULATION NOT PERMITTED

Plaintiffs' damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by the plaintiffs.  If plaintiffs establish with reasonable probability the existence of an injury proximately caused by the defendants' antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, plaintiffs should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.

The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates. Plaintiffs must prove the reasonableness of each of the assumptions upon which the damages calculation is based. If you find that plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then your verdict must be for defendants. If you find that plaintiffs have provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Source:  ABA Model Jury Instructions in Civ. Antitrust Cases, F-15 (2005)

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 13:**
**DAMAGES—CAUSATION AND DISAGGREGATION**

If you find that defendants violated the antitrust laws and did not prove their affirmative defense of government compulsion, and that plaintiffs were directly injured by that violation, plaintiffs are entitled to recover for such injury that was the direct and proximate result of the unlawful acts of defendant, as I have previously instructed you. Plaintiffs are not entitled to recover for injury that resulted from other causes.

Plaintiffs claim that they suffered injury because they paid increased prices for vitamin C as a result of defendants' alleged antitrust violation. In the normal course of business activity, prices might rise for a variety of factors that have nothing to do with the antitrust laws. For example, prices may rise because producers' costs rose, demand for a product increased due to shortage or other causes, changing technology made a product more valuable to consumers, the sellers engaged in lawful follow-the-leader pricing behavior, or the marketplace otherwise changed to allow producers to raise prices independent of any antitrust violation.

Plaintiffs bear the burden of showing that their injuries were caused by defendants' alleged antitrust violation - as opposed to any other factors, such as those that I just described to you. If you find that plaintiffs' alleged injuries were caused by factors other than defendants' alleged antitrust violation, then you must return a verdict for defendants. If you find that plaintiffs alleged injuries were caused in part by defendants' alleged antitrust violation and in part by other factors, then you may award damages only for that portion of plaintiffs' alleged injuries that were caused by defendants' alleged antitrust violation.  For example, if you find that prices rose due to market conditions or other factors outside defendants' control and not connected to any agreement, defendants are not liable for such price increases.

Plaintiffs bear the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no reasonable basis to apportion plaintiffs' alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all. If you find that plaintiffs have proven with reasonable certainty the amount of damage caused by defendants' alleged antitrust violation, then you must return a verdict for the plaintiffs.

Source:  ABA Model Jury Instructions in Civ. Antitrust Cases, F-18 (2005)

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 14:**
**DAMAGES MEASUREMENT METHODOLOGY; EXPERTS**

Plaintiffs claim that they were harmed because they paid higher prices for vitamin C than they would have paid in the absence of defendants' alleged violation of the antitrust laws. If you have determined that there was an unlawful agreement among competitors to fix prices or restrict output that caused some injury to plaintiffs, you must now consider the extent of plaintiffs' damages. A proper method of calculating those damages is to award plaintiffs the difference between the prices it actually paid for vitamin C and the prices they would have paid in the absence of the agreement to fix prices or restrict output.

Plaintiffs have proffered the testimony of Dr. Douglas Bernheim who proposes a methodology to calculate damages based on market conditions before 2002 and after 2005. defendants have proffered the testimony of Dr. Lawrence Wu who critiques Dr. Bernheim's selection of the pre-2002 time period and several aspects of his methodology including the treatment of epidemic factors.

An expert is entitled to use reasonable methodology provided it is not speculative or guesswork and, if it is not, it is up to you to assess the reliability and credibility of their testimony.  In considering the experts' testimony as to damages, you have a right, if you find that an expert's figure of damages is incorrect or has been exaggerated, to adjust that figure reasonably and fairly in your judgment as jurors, in accordance with your view of the entire evidence in the trial.

The final damages figure to be awarded will be stated by you in [dollars] during the class period, that is, December 1, 2001 to June 30, 2006.  As I stated earlier, such a determination

must be supported by credible evidence of damages and a fair basis for that amount, or no

damages can be awarded.

Source:  ABA Model Jury Instructions in Civ. Antitrust Cases, F-22 (2005); Jury Instructions (Sept. 28, 2006) from *In re: High Pressure Laminates Antitrust Litig.*, 00-md-1368 (S.D.N.Y. 2006).

**DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 15:**
**DAMAGES—CLASS DAMAGES**

Plaintiffs are seeking to recover damages on behalf of a class of purchasers that includes persons or entities who purchased Vitamin C for delivery in the United States, other than pursuant to a contract containing an arbitration clause, directly from one of the defendants or an alleged co-conspirators, other than Defendant Northeast Pharmaceutical (Group) Co. Ltd., from December 1, 2001 to June 30, 2006. To award damages for the class, you need not determine the overcharge paid by each class member with precision. It is sufficient for you to determine the average overcharge paid by each class member or estimate the overcharge paid by each class member, as long as the average or estimate is based on credible evidence and a fair basis for that amount.

You may not, however, engage in guesswork or speculation. If damages can only be ascertained through guesswork or speculation, you may not award damages. For example, if there is no evidence whether seller had arbitration clauses in their sales contracts, then you may not guess about that and may not award damages based on those sales.

Source:  ABA Model Jury Instructions in Civ. Antitrust Cases, F-26 (2005)

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 16:
## <u>DELIBERATIONS</u>

When you retire to the jury room to deliberate, you may take with you these instructions your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest

convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone like Blackberries or iPhones, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, MySpace, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous. A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do

not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

Source:  Third Circuit Manual of Model Civil Jury Instructions, Instr. 3.1 (2011)