# EXHIBIT C

*This Document is filed under seal pursuant to the Protective Order of the Court dated March 14, 2007 [D.E. 133].*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br>VITAMIN C ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ANIMAL SCIENCE PRODUCTS, INC., *et al.*,<br><br>                 Plaintiffs,<br><br>   vs.<br><br>HEBEI WELCOME PHARMACEUTICAL CO., LTD., *et al.*,<br><br>                 Defendants. | MASTER FILE 1:06-MD-1738 (DGT)(JO)<br><br>CV-05-453 |

# DECLARATION OF LAWRENCE WU

Lawrence Wu hereby declares under penalty of perjury:

## I.   INTRODUCTION

1.   I am an economist and Senior Vice President at NERA Economic Consulting.  I am also currently a Visiting Scholar at the Stanford Institute for Economic Policy Research at Stanford University.  I received my B.A. from Stanford University and my Ph.D. from the University of Chicago, Graduate School of Business.  Prior to joining NERA, I was a staff economist in the Bureau of Economics at the Federal Trade Commission (FTC).  At the FTC, I analyzed the competitive effects of numerous proposed mergers and a variety of potentially anticompetitive conduct.

2.   I have analyzed and calculated damages in connection with alleged price fixing.  I also have analyzed the competitive implications of mergers and acquisitions, as well as a broad range of business practices in many retail, manufacturing, and service industries.  I have provided written and oral expert testimony on numerous occasions, which include testimony in

1

set collusively above competitive levels, after which there were periods of price wars in which prices were below costs.[4]

14. These empirical studies are consistent with the theoretical literature.  For example, in a seminal article by economists Edward Green and Robert Porter, the authors note, "When the considerations of imperfect information, which played a decisive role in [George] Stigler's theory [of cartels], are reintroduced [into models of cartel conduct], optimal incentive structures may involve episodic recourse to the kind of short run unprofitable conduct which would have been characterized as 'price wars' or 'punishment' previously."[5]  In another seminal article by economists Julio Rotemberg and Garth Saloner, the authors note that "When demand is relatively high and price is the strategic variable, the benefit to a single firm from undercutting the price that maximizes joint profits is larger."[6]  In this line of the literature, "price wars" are the product of increased incentives to cheat on a cartel during periods of high demand.

15. This is what I described in my report as the "waxing and waning" of the alleged cartel.[7]  As I stated in my report, the evidence in this case indicates that the alleged cartel waxed and waned over time.  For example, as I noted in my expert report, "after the initial outbreak of SARS and the rise in prices, 'cartel members began opportunistically reducing prices to obtain increased sales,' which is a period that the industry has '[l]abeled a price war.'"[8]  For these reasons, my regression analysis yields results that are reasonable and plausible.

**B.     The Pre-Cartel Period of Regulation Ended with Allegations about Dumping and the Chinese Government's Concerns that the Vitamin C Manufacturers Were Not Adhering to Government Regulations**

16. The plaintiffs claim that I have opined that the Chinese government's attempts to raise prices in the pre-cartel period led instead to lower prices and that this conclusion is

---

[4] Fabra, Natalia, and Juan Toro. "Price wars and collusion in the Spanish electricity market," *International Journal of Industrial Organization,* Vol. 23 (2005), pp. 155-181.

[5] Green, Edward J. and Robert H. Porter. "Noncooperative Collusion Under Imperfect Price Information," *Econometrica*, Vol. 52, No. 1 (1984), pp. 87-100.

[6] Rotemberg, Julio J. and Garth Saloner. "A Supergame-Theoretic Model of Price Wars during Boom," The American Economic Review, Vol. 76, No. 3 (Jun., 1986), pp. 390-407

[7] Wu Report, p. 6-7, 46-47.

[8] Wu Report, p. 6.  Also see Third Amended Complaint, ¶ 68.

6