# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | MASTER FILE 06-MD-1738 (BMC) (JO) |
| This Document Relates To: | **SETTLEMENT AGREEMENT** |
| ANIMAL SCIENCE PRODUCTS, INC. et al., | |
| Plaintiffs, | |
| v. | |
| HEBEI WELCOME PHARMACEUTICAL CO. LTD., et al., | |
| Defendants | |

This Settlement Agreement ("Agreement") is made and entered into by and between defendant Northeast Pharmaceutical Group Co., Ltd. ("NEPG") and the "Settling Plaintiff" (as defined in paragraph 1 below).

WHEREAS, the Settling Plaintiff alleges that NEPG participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of Vitamin C (as defined in paragraph 4 below) for delivery in the United States at artificially high levels in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

WHEREAS, the Settling Plaintiff has conducted an investigation into the facts and the law regarding the claims in the action entitled Animal Science Products, Inc. et al. v. Hebei Welcome Pharmaceutical Co Ltd. et al., 1:05 CV 00453 (BMC) (JO) (E.D.N.Y.) (the "Action") and has concluded that resolving its claim against NEPG according to the terms set forth below is in the best interest of the Settling Plaintiff and the Injunction Class (as defined in paragraph 2 below);

WHEREAS, Direct Purchaser Plaintiffs (including class representative The Ranis Company) previously dismissed their damages claims against NEPG, based upon provisions in NEPG's contracts with direct purchasers requiring arbitration of all disputes before CIETAC;

WHEREAS, the Settling Plaintiff purchased Vitamin C indirectly but also has asserted a claim for injunctive relief;

WHEREAS, NEPG has produced contemporaneous documents as well as proffered expected testimony which NEPG asserts indicate that NEPG is a state-owned enterprise actively supervised by the Peoples' Republic of China and that NEPG has been specifically compelled to adhere to directions of the Peoples' Republic of China with respect to the manufacture and sale of Vitamin C, and in this respect Settling Plaintiff acknowledges that NEPG is unlike any other defendant in the Action;

WHEREAS, Settling Plaintiff has determined that although it can contest NEPG's specific defense that it is subject to foreign sovereign compulsion, this Agreement is a fair resolution of the Action, and avoids the risk of litigating and not prevailing in the Action;

WHEREAS, NEPG, despite its belief that it is not liable for the claims asserted and that it has good and valid defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against NEPG in the Action by Settling Plaintiff, as more particularly set out below;

WHEREAS, NEPG and the Settling Plaintiff, through its counsel, have negotiated all of the terms and conditions of this Agreement at arm's length, and all terms, conditions and

exhibits in their exact form are material and necessary to this Agreement and have been relied upon by the parties in entering into this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to NEPG on the following terms and conditions, and incorporating the preceding clauses:

A. **Definitions**.

1. For purposes of this Agreement, "Settling Plaintiff" is defined to mean Animal Science Products, Inc.

2. For the purposes of this Agreement, the "Injunction Class" means the Injunction Class certified by the Court on January 26, 2012 (ECF No. 453) and modified on June 15, 2012 (ECF No. 488), defined as: All persons or entities, or assignees of such persons or entities, who purchased vitamin C manufactured by Defendants for delivery in the United States, other than pursuant to a contract with a Defendant containing an arbitration clause, from December 1, 2001 to the present, requiring injunctive relief against Defendants to end Defendants' antitrust violations.

3. For purposes of this Agreement, the terms "Defendant" or "Defendants" shall mean, respectively, each and all named defendants in the Action.

4. For purposes of this Agreement, "Vitamin C" or "Vitamin C Products" is defined to mean all products containing vitamin C, also known as ascorbic acid, either in its pure form or in combination with other substances.

5. "Releasees" shall refer only to NEPG, and to all of its respective past and present, direct and indirect, parents, subsidiaries and affiliates; the predecessors, successors and assigns of NEPG; and each and all of the present and former principals, partners, officers,

3

directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of any of the foregoing; but excluding any Defendants (other than NEPG) in the Action and any aspect of government in China.

6. "Injunction Releasors" shall refer to Animal Science Products, Inc., the Injunction Class, their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, corporate parents, subsidiaries, affiliates, corporate partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators, and assigns of any of the foregoing.

7. The "Settlement Amount" means $500,000 in United States currency.

8. The "Settlement Fund" shall refer to the payment made by NEPG pursuant to this Agreement, plus all accrued interest on the deposits.

9. "Co-Lead Counsel" shall refer to the following counsel for Settling Plaintiff and the Injunction Class:

> William A. Isaacson
> Boies, Schiller & Flexner LLP
> 5301 Wisconsin Avenue, NW, Suite 800
> Washington, DC  20015
>
> Michael D. Hausfeld
> Hausfeld LLP
> 1700 K Street, NW, Suite 650
> Washington, DC  20006
>
> James T. Southwick
> Susman Godfrey L.L.P.
> 1000 Louisiana, Suite 5100
> Houston, TX  77002

4

B. **Injunction and Certification of Documents**

10. NEPG agrees that notwithstanding any preliminary or final approval of this Agreement and settlement, if the Court enters injunctive relief against any non-settling Defendant, enjoining such Defendant and other persons acting or who claim to be acting in active concert or participation with such Defendant from violating Section 1 of the Sherman Act, 15 U.S.C. § 1, then NEPG will comply with such injunction.

11. NEPG further agrees to provide a declaration under Federal Rule of Evidence 902(12) certifying that certain of its documents produced in this case qualify as records of regularly conducted business activity.

C. **Approval of this Agreement and Dismissal of Claims Against NEPG**.

12. The Injunction Class and NEPG (collectively, the "Settling Parties"), and Co-Lead Counsel, respectively, shall use their best efforts to effectuate this Agreement and its purpose, and secure the prompt, complete, and final dismissal with prejudice of the Action as to Releasees, but not as to any party, person, or entity that is not a Releasee.

13. Settling Plaintiff shall submit to the Court a motion for preliminary approval of the settlement within 30 days of execution of this Agreement.

14. The Settling Parties shall jointly seek entry of an order and final judgment, the text of which the Settling Parties shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a) approving finally this settlement and its terms as being fair, reasonable and adequate settlements within the meaning of Rule 23 of the Federal Rules of Civil Procedure or other applicable law and directing consummation according to their terms;

(b) as to NEPG, that the Action be dismissed with prejudice and, except as provided for in this Agreement, without recovery of costs from NEPG;

5

(c) reserving exclusive jurisdiction over this settlement and this Agreement, including the administration and consummation of the settlements, to the United States District Court for the Eastern District of New York;

(d) determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to NEPG be final;

(e) approving the payment of attorneys' fees, costs and service awards as awarded by the Court out of the Settlement Fund.

15. Subject to the provisions of paragraph 27 below, this Agreement shall become final when the Court has entered an order and final judgment approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to NEPG against the Injunction Class and one of the following dates occurs: (a) if an appeal is taken, (i) the date of final affirmance on appeal of the order and final judgment, the expiration of the time for a petition for or a denial of a writ of *certiorari* to review the order and final judgment and, if *certiorari* is granted, the date of final affirmance of the order and final judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the order and final judgment or the final dismissal of any proceedings on *certiorari* to review the order and final judgment; or (b) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the order and final judgment. This Agreement shall be deemed executed as of the last date of signature by NEPG and Co-Lead Counsel, and Co-Lead Counsel shall give notice to NEPG within three (3) business days after this Agreement is deemed executed. Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times. As of the date of execution of this Agreement, the Settling Parties shall be bound by the

terms of this Agreement and this Agreement shall not be rescinded or terminated except in accordance with paragraph 27 of this Agreement.

16. Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents, and discussions associated with such negotiation, shall be deemed or construed to be an admission by, or form the basis of an estoppel by a third party against, any Releasees, or evidence of any violation of any statute or law or of any liability or wrongdoing by any Releasee, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by the Settling Plaintiff, and evidence thereof shall not be discoverable, or used in any way, directly or indirectly, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to carry out this Agreement by the Settling Plaintiff or NEPG, shall be referred to, offered into evidence, or received in evidence in any pending or future civil, criminal or administrative action or proceeding, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims (as defined in paragraph 17), or as otherwise required by law.

D. **Release, Discharge and Covenant Not to Sue – Injunction Releasors**.

17. In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 15 above, and in consideration of NEPG's agreement in paragraphs 10 and 21, Injunction Releasors shall release, acquit, and discharge their claims related to injunctive relief ("Released Claims") against NEPG.

18. In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 15 of this Agreement, Injunction Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual,

or otherwise in nature, whether directly, representatively, derivatively or in any other capacity that Releasees, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating to any act or omission of Injunction Releasors (or any of them) concerning the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims (the "Releasee-Released Claims"). Releasees shall not, after the date of this Agreement, seek to establish liability against any Injunction Releasor based, in whole or in part, upon any of the Releasee-Released Claims, or conduct at issue in the Releasee-Released Claims. The Injunction Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of Vitamin C Products purchasers with respect to the claims released in this paragraph.

19. In addition to the provisions of paragraphs 17 and 18 of this Agreement, Injunction Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code (except for their right to seek damages), which states:

> **CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.**
>
> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;**

or by any law of any state or territory of the United States or the District of Columbia, or by any principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Injunction Releasor and Releasee may hereafter discover facts other than or

8

different from those which he, she or it knows or believes to be true with respect to the claims that are the subject of the provisions of paragraphs 17 and 18 of this Agreement, but each Injunction Releasor and Releasee hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject of the provisions of paragraphs 17 and 18 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts, except for their right to seek damages against NEPG.

20. The release, discharge, and covenant not to sue set forth in paragraphs 17 and 18 of this Agreement do not include respective claims by any of the Injunction Releasors or any of the Releasees other than the claims set forth therein and do not include other claims, such as those solely arising out of product liability, contract or warranty claims in the ordinary course of business, or for damages under state law as asserted in other existing actions in In re Vitamin C Antitrust Litigation, MDL 1738.

E. **Settlement Amount**

21. Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, within sixty (60) days of full execution of this Agreement, NEPG shall pay a total of $500,000 into the Settlement Fund, which shall be held in an escrow account ("Escrow Account"), described further in paragraph 22.

22. <u>Escrow Account</u>

(a) The Escrow Account referenced in paragraphs 21 and 22 will be established at Citibank ("Escrow Agent") subject to escrow instructions as agreed by the Settling Parties. Such Escrow Account and any subsequently established escrow accounts are to be administered under the Court's continuing supervision and control.

9

(b) The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c) All funds held in the Escrow Account shall be deemed and considered to be in the Court's custody, and shall remain subject to the jurisdiction of the Court, until such funds shall be distributed pursuant to this Agreement or further order(s) of the Court and only the settlement made by this Agreement becoming final and not subject to further appeal, excepting only as to direct disbursements as may be authorized by the Court.

(d) The Settling Parties agree to treat the Settlement Fund as being at all times one or more "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1 and to refrain from taking any action inconsistent with such treatment.

(e) For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be a third party retained by the Co-Lead Counsel ("Administrator") and shall promptly take all steps necessary so that the Settlement Fund qualifies as one or more "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1. These steps include, without limitation, the following:

(i) the Administrator shall timely and properly prepare a statement fulfilling the requirements of Treas. Reg. § 1.468B-3(e) on behalf of NEPG; and

(ii) the Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including

without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described below) shall be consistent with the provisions of paragraph 22(d).

(f) All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes"); (ii) taxes, interest, penalties, or other tax detriments that may be imposed upon NEPG or any other Releasee with respect to (A) any income earned by the Settlement Fund or (B) the receipt of any payment under this paragraph 22(f)(ii), in each case for any period during which the Settlement Fund does not qualify as one or more "qualified settlement funds" for federal or state income tax purposes ("Tax Detriments"); and (iii) expenses and costs incurred in connection with the operation and implementation of paragraphs 22(d) through 22(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in paragraph 22(e) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g) Neither NEPG nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes, Tax Detriments or the Tax Expenses. Taxes, Tax Detriments and Tax Expenses shall be timely paid by the Administrator out of the Settlement Fund without prior order from the Court and the Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes, Tax Detriments and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither NEPG nor any other Releasee is responsible, nor shall they have any liability, therefor. Settling Parties agree to

cooperate with the Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of paragraphs 22(d) through 22(g).

23. Payment of Expenses

NEPG agrees that, subject to Court approval, any costs incurred in providing any notice of the proposed settlement to the Injunction Class, and any past or future litigation expenses award by the Court may be paid from the Settlement Fund, which amounts shall not be recoverable by NEPG in the event that this Agreement does not become final, is terminated by NEPG, or is rescinded by either party. Other than as set forth in this paragraph 23 and paragraph 28, neither NEPG nor any of the other Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including, without limitation, attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

F. **The Settlement Fund**

24. After this Agreement becomes final within the meaning of paragraph 15, the Settlement Fund shall be distributed as approved by the Court. Neither NEPG nor any other Releasee under this Agreement shall have any responsibility for, interest in, or liability with respect to, or shall file any opposition to, the proposed or actual plan(s) for distribution of the Settlement Fund.

25. With court approval, the Settlement Fund shall be used to pay Co-Lead Counsel's attorneys' fees, and to reimburse costs and expenses (whether already incurred or expected to be incurred). NEPG shall take no position on any application for attorneys' fees, or reimbursement of costs and expenses. After the entry of any order awarding attorneys' fees, or

reimbursement of costs and expenses, the Escrow Agent may, pursuant to paragraph 22, establish and maintain sub-accounts to hold such awards for payment.

26. (a) The procedure for and the allowance or disallowance by the Court of the petitions for awards of attorneys' fees and the reimbursement of costs and expenses is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Agreement, and any order or proceeding relating to the fee application(s) or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement. Except as expressly provided in this Agreement, neither NEPG nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability with respect to any payment to Co-Lead Counsel of any fee or expense award in the Action. Neither NEPG nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Co-Lead Counsel, and/or any other person or entity who may assert some claim thereto, of any fee award that the Court may make in the Action.

(b.) Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any filed objections to the Agreement, to any award of attorneys' fees and expenses, or to any actual, or potential for, appeal therefrom, or collateral attack on the Agreement or any part of it, subject to Co-Lead Class Counsel's obligation to make a full repayment to the Settlement Fund (except as provided in paragraphs 23 and 28) if this Agreement does not become final pursuant to paragraph 15 of this Agreement, if the Court does not enter final judgment provided for in paragraph 15, or if this Agreement is rescinded pursuant to paragraph 27 of this Agreement, or to

make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or cost award is reduced or reversed.

G. **Rescission If This Agreement Is Not Approved or Final Judgment Is Not Entered**.

27. If the Court refuses to approve this Agreement, or any material part of either of this agreement, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 15 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then within 30 days thereafter, NEPG and the Settling Plaintiff shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made by the rescinding party to counsel to either Settling Plaintiff or NEPG, as the case may be. A modification or reversal on appeal of any amount of the fees for Co-Lead Counsel shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

28. In the event that this Agreement does not become final, then this Agreement shall be of no force or effect (except for this paragraph and paragraph 15) and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account(s), including all interest earned on such accounts, shall be returned forthwith to NEPG less only disbursements made pursuant to Court order in accordance with this Agreement. The Settling Parties expressly reserve all of their rights if this Agreement does not become final. Further, and in any event, the Settling Parties agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with its negotiation, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by NEPG or Releasees, or of the truth of any of the claims or allegations

contained in the complaints or any other pleadings filed by the Settling Plaintiff in the Action, and evidence thereof shall not be discoverable or used in any way, directly or indirectly, whether in the Action or in any other action or proceeding.

**H.    Miscellaneous**

29.    This Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

30.    This Agreement does not settle or compromise any claim by the Injunction Class against any Defendant or alleged co-conspirator other than NEPG and Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Injunction Class.

31.    Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, (i) the validity of any claim or defense; or (ii) the appropriateness or inappropriateness of any class or other representational capacity, whether contemporaneously with this Agreement or at any time in the future.

32.    The United States District Court for the Eastern District of New York shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Settling Parties.  This Agreement shall be construed according to the laws of the State of New York without regard to its choice of law or conflict of laws principles.

33. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Animal Science Products, Inc. or the Injunction Class shall be binding upon the Injunction Releasors. The Releasees (other than NEPG, which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

34. This Agreement may be executed in counterparts by the Settling Plaintiff and NEPG, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

35. Neither the Settling Plaintiff nor NEPG shall be considered to be the drafters of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafters of this Agreement.

36. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

37. Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

38. The Settling Parties and their counsel agree to do anything reasonably necessary to effectuate the performance of, and uphold the validity and enforceability of, this Agreement.

39. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Settling Parties he or she represents, subject to Court approval.

Agreed:

Dated: 2/22/13      GREENBERG TRAURIG, LLP

By: *James Dan Serota*
JAMES I. SEROTA
SCOTT MARTIN
Attorneys for Defendant
NORTHEAST PHARMACEUTICAL
GROUP CO., LTD.

Dated: _____      BOIES, SCHILLER & FLEXNER LLP

By: _____
William A. Isaacson
Plaintiffs' Co-Lead Counsel

Dated: _____      HAUSFELD LLP

By: _____
Michael D. Hausfeld
Plaintiffs' Co-Lead Counsel

Dated: _____      SUSMAN GODFREY, LLP

By: _____
James T. Southwick
Plaintiffs' Co-Lead Counsel

18

Agreed:

Dated: _____  GREENBERG TRAURIG, LLP

By: _____
JAMES I. SEROTA
SCOTT MARTIN
Attorneys for Defendant
NORTHEAST PHARMACEUTICAL
GROUP CO., LTD.

Dated: 2/22/13   BOIES, SCHILLER & FLEXNER LLP

By: _____ [signature]
William A. Isaacson
Plaintiffs' Co-Lead Counsel

Dated: 2/22/13   HAUSFELD LLP

By: _____ [signature]
Michael D. Hausfeld
Plaintiffs' Co-Lead Counsel

Dated: Feb 22, 2013   SUSMAN GODFREY, LLP

By: _____ [signature]
James T. Southwick
Plaintiffs' Co-Lead Counsel