# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | MASTER FILE 06-MD-1738 (BMC) (JO) |
| This Document Relates To: | **SETTLEMENT AGREEMENT** |
| ANIMAL SCIENCE PRODUCTS, INC. et al., | |
| Plaintiffs, | |
| v. | |
| HEBEI WELCOME PHARMACEUTICAL CO. LTD., et al., | |
| Defendants | |

This Settlement Agreement ("Agreement") is made and entered into by and between defendants Weisheng Pharmaceutical Company, Ltd. and China Pharmaceutical Group, Ltd. ("Settling Defendants") and the "Settling Plaintiffs" (as defined in paragraph 1 below).

WHEREAS, the Settling Plaintiffs allege that Settling Defendants participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of Vitamin C (as defined in paragraph 6 below) for delivery in the United States at artificially high levels in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

WHEREAS, the Settling Plaintiffs have conducted an investigation into the facts and the law regarding the claims in the action entitled IN RE VITAMIN C ANTITRUST LITIGATION, 06-MD-1738 (BMC) (JO) (E.D.N.Y.) (the "Action") and have concluded that resolving their claims now against Settling Defendants according to the terms set forth below is in the best interest of the Settling Plaintiffs and the Certified Classes;

WHEREAS, the Settling Plaintiffs have determined that, although they believe they have successfully contested Settling Defendants' foreign sovereign compulsion defense at trial which commenced in this Court on February 25, 2013 ("Vitamin C Trial"), this Agreement is a fair resolution of the Action, and avoids the risk of an adverse jury verdict or protracted appeals;

WHEREAS, Settling Defendants, despite their belief that they are not liable for the claims asserted and that they have good and valid defenses thereto, have nevertheless agreed to enter into this Agreement now to avoid the risk of an adverse jury verdict and treble damage award for Settling Plaintiffs and the Certified Classes at the conclusion of the Vitamin C Trial; to avoid further expense, inconvenience, and the distraction of burdensome and protracted appeals; to obtain the releases, orders, and judgment contemplated by this Agreement; and to put to rest with finality all claims that have been asserted against Settling Defendants based on the allegations of the Action and the evidence submitted by Settling Plaintiffs at the Vitamin C Trial, as more particularly set out below; and

WHEREAS, Settling Defendants and the Settling Plaintiffs have negotiated all of the terms and conditions of this Agreement at arm's length, and all terms, conditions and exhibits in their exact form are material and necessary to this Agreement and have been relied upon by the parties in entering into this Agreement,

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to Settling Defendants on the following terms and conditions, and incorporating the preceding clauses:

2

A.  **Definitions**.

1.  For purposes of this Agreement, "Settling Plaintiffs" is defined to mean the Class Representative for the Damages Class, The Ranis Company, and the Class Representative for the Injunction Class, Animal Science Products, Inc.

2.  For the purposes of this Agreement, the "Damages Class" means the Damages Class certified by the Court on January 26, 2012 (ECF No. 453) and modified on June 15, 2012 (ECF No. 488), defined as: all persons or entities, or assignees of such person or entities, (but excluding all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates, and any person or entity that timely and validly elects to be excluded from the Damages Class) who directly purchased Vitamin C Products for delivery in the United States, other than pursuant to a contract containing an arbitration clause, from any Defendants or their co-conspirators, other than Northeast Pharmaceutical (Group) Co. Ltd., from December 1, 2001 to June 30, 2006.

3.  For the purposes of this Agreement, the "Injunction Class" means the Injunction Class certified by the Court on January 26, 2012 (ECF No. 453) and modified on June 15, 2012 (ECF No. 488), defined as: all persons or entities, or assignees of such persons or entities, (but excluding all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates) who purchased vitamin C manufactured by Defendants for delivery in the United States, other than pursuant to a contract with a Defendant containing an arbitration clause, from December 1, 2001 to the present, requiring injunctive relief against Defendants to end Defendants' antitrust violations.

4.  For the purposes of this Agreement, "Certified Classes" shall mean the Damages Class and the Injunction Class, collectively.

3

5.      For purposes of this Agreement, the terms "Defendant" or "Defendants" shall mean, respectively, each and all named defendants in the Action.

6.      For purposes of this Agreement, "Vitamin C" or "Vitamin C Products" is defined to mean all products containing vitamin C, also known as ascorbic acid, either in its pure form or in combination with other substances.

7.      "Releasees" shall refer only to Settling Defendants, and to all of their respective past and present, direct and indirect, parents, subsidiaries and affiliates; the predecessors, successors and assigns of Settling Defendants; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of any of the foregoing; but excluding any Defendants (other than Settling Defendants) in the Action.

8.      "Damages Releasors" shall refer to The Ranis Company, the Damages Class, their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, corporate parents, subsidiaries, affiliates, corporate partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators, and assigns of any of the foregoing.

9.      "Injunction Releasors" shall refer to Animal Science Products, Inc., the Injunction Class, their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, corporate parents, subsidiaries, affiliates, corporate partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators, and assigns of any of the foregoing.

4

10.     The "Settlement Amount" means $22.5 million in United States currency.

11.     The "Settlement Fund" shall refer to the payments made by Settling

Defendants pursuant to this Agreement, plus all accrued interest on the deposits.

12.     "Co-Lead Counsel" shall refer to the following counsel for Plaintiff and

the Certified Classes:

William A. Isaacson
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC  20015

Michael D. Hausfeld
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC  20006

James T. Southwick
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, TX  77002

**B.     Approval of this Agreement and Dismissal of Claims Against Settling Defendants.**

13.     The Certified Classes and Settling Defendants (collectively, the "Settling

Parties"), and Co-Lead Counsel, respectively, shall use their best efforts to effectuate this

Agreement and its purpose, and secure the prompt, complete, and final dismissal with prejudice

of the Action as to Releasees, but not as to any party, person, or entity that is not a Releasee.

14.     Settling Plaintiffs shall submit to the Court a motion for preliminary

approval of the settlement within 30 days of execution of this Agreement.

15.     The Settling Parties agree that, subject to Court approval, notice of this

settlement shall be directed to the Certified Classes in a manner that constitutes valid, due and

sufficient notice and complies fully with the requirements of Federal Rule of Civil Procedure 23

and any other applicable law.  Settling Defendants are not responsible for separately paying any

notice or claims administration costs; and to the extent that notice, claims administration, or settlement administration costs are actually paid from the Settlement Fund, pursuant to a notice and claims administration plan approved by the Court, under no circumstances will such expenditures be refunded to Settling Defendants.

16.     The Settling Parties shall jointly seek entry of an order and final judgment, the text of which the Settling Parties shall agree upon.  The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     approving finally this settlement and its terms as being fair, reasonable and adequate settlements within the meaning of Rule 23 of the Federal Rules of Civil Procedure or other applicable law and directing consummation according to their terms;

(b)     as to Settling Defendants, that the Action be dismissed with prejudice and, except as provided for in this Agreement, without recovery of costs from Settling Defendants;

(c)     reserving exclusive jurisdiction over this settlement and this Agreement, including the administration and consummation of the settlements, to the United States District Court for the Eastern District of New York;

(d)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Settling Defendants be final;

(e)     requiring that Co-Lead Counsel shall file with the Clerk of the Court a record of the persons or entities who timely exclude themselves from the Action, and shall provide a copy of the record to counsel for Settling Defendants; and

(f)     approving the payment of attorneys' fees, costs and service awards as awarded by the Court out of the Settlement Fund.

17.     Subject to the provisions of paragraph 35 below, this Agreement shall become final when the Court has entered an order and final judgment approving this Agreement under Federal Rule of Civil Procedure 23(e) and/or applicable state laws and a final judgment dismissing the Action with prejudice as to Settling Defendants against the Certified Classes and one of the following dates occurs: (a) if an appeal is taken, (i) the date of final affirmance on appeal of the order and final judgment, the expiration of the time for a petition for or a denial of a writ of *certiorari* to review the order and final judgment and, if *certiorari* is granted, the date of final affirmance of the order and final judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the order and final judgment or the final dismissal of any proceedings on *certiorari* to review the order and final judgment; or (b) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the order and final judgment. This Agreement shall be deemed executed as of the last date of signature by Settling Defendants and Co-Lead Counsel, and Co-Lead Counsel shall give notice to Settling Defendants within three (3) business days after this Agreement is deemed executed. Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times. As of the date of execution of this Agreement, the Settling Parties shall be bound by the terms of this Agreement and this Agreement shall not be rescinded or terminated except in accordance with paragraph 35 of this Agreement.

18.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents, and discussions associated with such negotiation, shall be deemed or construed to be an admission by, or form the basis of an estoppel by a third party against, any Releasees, or evidence of any violation of any statute or law or of

7

any liability or wrongdoing by any Releasee, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by the Settling Plaintiffs, and evidence thereof shall not be discoverable, or used in any way, directly or indirectly, whether in the Action or in any other action or proceeding.  Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to carry out this Agreement by the Settling Plaintiffs or Settling Defendants, shall be referred to, offered into evidence, or received in evidence in any pending or future civil, criminal or administrative action or proceeding, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims (as defined in paragraph 19), or as otherwise required by law.

C.       **Release, Discharge and Covenant Not to Sue – Damages Releasors**.

        19.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 17 above, and in consideration of payment of the Settlement Fund, Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any person or entity has objected to the settlement or makes a claim upon or participates in the Settlement Fund), whether directly, representatively, derivatively or in any other capacity that Damages Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating to any act or omission of Releasees (or any of them) concerning the pricing, production, development, marketing, sale or distribution of Vitamin C Products during the period from the beginning of time to the present, including claims based on the conduct alleged and causes of

8

action asserted, or that could have been asserted, in complaints filed in the Action by the Settling Plaintiffs, including, without limitation, any claims arising under any federal or state antitrust, unjust enrichment, unfair competition, or trade practice statutory or common law, or consumer protection law (to the extent that a consumer protection claim would be based on allegations of an antitrust or unfair competition violation) (the "Released Claims"). Damages Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims. The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of entities that purchased Vitamin C Products with respect to the claims released in this paragraph.

20.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 17 of this Agreement, and in consideration of payment of the Settlement Fund as specified in paragraphs 28, 30 and 34 of this Agreement, and for other valuable consideration, Damages Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, whether directly, representatively, derivatively or in any other capacity that Releasees, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating to any act or omission of Damages Releasors (or any of them) concerning the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims (the

9

"Releasee-Released Claims"). Releasees shall not, after the date of this Agreement, seek to establish liability against any Damages Releasor based, in whole or in part, upon any of the Releasee-Released Claims, or conduct at issue in the Releasee-Released Claims. The Damages Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of Vitamin C Products purchasers with respect to the claims released in this paragraph.

21.     In addition to the provisions of paragraphs 19 and 20 of this Agreement, Damages Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

**CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;**

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Damages Releasor and Releasee may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims that are the subject of the provisions of paragraphs 19 and 20 of this Agreement, but each Damages Releasor and Releasee hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject of the provisions of paragraphs 19 or 20 of this Agreement,

10

whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

22.     The release, discharge, and covenant not to sue set forth in paragraphs 19 and 20 of this Agreement do not include respective claims by any of the Damages Releasors or any of the Releasees other than the claims set forth therein and do not include other claims, such as those solely arising out of product liability, contract or warranty claims in the ordinary course of business.

**D.     Partial Release, Discharge and Covenant Not to Sue – Injunction Releasors.**

23.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 17 above, and in consideration of Settling Defendants' agreement in paragraph 27, Injunction Releasors shall release, acquit, and discharge their claims related to injunctive relief against Settling Defendants.

24.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 17 of this Agreement, Injunction Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, whether directly, representatively, derivatively or in any other capacity that Releasees, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating to any act or omission of Injunction Releasors (or any of them) concerning the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims (the "Releasee-Released Claims"). Releasees shall not, after the date of this Agreement, seek to establish liability against any Injunction Releasor based, in whole or in part,

11

upon any of the Releasee-Released Claims, or conduct at issue in the Releasee-Released Claims. The Injunction Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of Vitamin C Products purchasers with respect to the claims released in this paragraph.

        25.    In addition to the provisions of paragraphs 23 and 24 of this Agreement, Injunction Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code (except for their right to seek damages), which states:

**CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;**

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Injunction Releasor and Releasee may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims that are the subject of the provisions of paragraphs 23 and 24 of this Agreement, but each Injunction Releasor and Releasee hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject of the provisions of paragraphs 23 and 24 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts, except for their right to seek damages against Settling Defendants.

26.     The release, discharge, and covenant not to sue set forth in paragraphs 23 and 24 of this Agreement do not include respective claims by any of the Injunction Releasors or any of the Releasees other than the claims set forth therein and do not include other claims, such as those solely arising out of product liability, contract or warranty claims in the ordinary course of business.

27.     Settling Defendants agree that notwithstanding any preliminary or final approval of this Agreement and settlement, if the Court enters injunctive relief against any non-settling Defendant, enjoining such Defendant and other persons acting or who claim to be acting in active concert or participation with such Defendant from violating Section 1 of the Sherman Act, 15 U.S.C. § 1, then Settling Defendants will comply with such injunction.

E.     <u>Settlement Amount</u>

28.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Settling Defendants shall pay a total of $22,500,000 into the Settlement Fund, which shall be held in an escrow account ("Escrow Account"), described further in paragraph 29.  Payments shall be made on the following schedule:

- $20,000,000 shall be paid within 40 days of full execution of the Agreement; and

- $2,500,000 shall be paid within 365 days of the final judgment approving this Agreement.

29.     <u>Escrow Account</u>

(a)     The Escrow Account referenced in paragraph 28 will be established at Citibank ("Escrow Agent") subject to escrow instructions as agreed by the Settling Parties.  Such Escrow Account and any subsequently established escrow accounts are to be administered under the Court's continuing supervision and control.

13

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in the Court's custody, and shall remain subject to the jurisdiction of the Court, until such funds shall be distributed pursuant to this Agreement or further order(s) of the Court and only the settlement made by this Agreement becoming final and not subject to further appeal, excepting only as to direct disbursements as may be authorized by the Court.

(d)     The Settling Parties agree to treat the Settlement Fund as being at all times one or more "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1 and to refrain from taking any action inconsistent with such treatment.

(e)     For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be a third party retained by the Co-Lead Counsel ("Administrator") and shall promptly take all steps necessary so that the Settlement Fund qualifies as one or more "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1.  These steps include, without limitation, the following:

(i)     the Administrator shall timely and properly prepare a statement fulfilling the requirements of Treas. Reg. § 1.468B-3(e) on behalf of Settling Defendants; and

(ii)    the Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including

14

without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described below) shall be consistent with the provisions of paragraph 29(d).

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes"); (ii) taxes, interest, penalties, or other tax detriments that may be imposed upon Settling Defendants or any other Releasee with respect to (A) any income earned by the Settlement Fund or (B) the receipt of any payment under this paragraph 29(f)(ii), in each case for any period during which the Settlement Fund does not qualify as one or more "qualified settlement funds" for federal or state income tax purposes ("Tax Detriments"); and (iii) expenses and costs incurred in connection with the operation and implementation of paragraphs 29(d) through 29(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in paragraph 29(e) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Settling Defendants nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes, Tax Detriments or the Tax Expenses.  Taxes, Tax Detriments and Tax Expenses shall be timely paid by the Administrator out of the Settlement Fund without prior order from the Court and the Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes, Tax Detriments and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  Neither Settling Defendants nor any other Releasee is responsible, nor shall they have any liability, therefor.  Settling Parties agree to cooperate with the Administrator, each other, and their tax

15

attorneys and accountants to the extent reasonably necessary to carry out the provisions of paragraphs 29(d) through 29(g).

30.   Payment of Expenses

Settling Defendants agree that, subject to Court approval, any costs incurred in providing any notice of the proposed settlement to the Certified Classes, in claims administration, and any past or future litigation expenses award by the Court may be paid from the Settlement Fund, which amounts shall not be recoverable by Settling Defendants in the event that this Agreement does not become final, is terminated by Settling Defendants, or is rescinded by either party.  Other than as set forth in this paragraph 30 and paragraph 36, neither Settling Defendants nor any of the other Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including, without limitation, attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, the Vitamin C Trial, appeals, the negotiation of other settlements, or for class administration.

F.   **The Settlement Fund**

31.   Damages Releasors shall look solely to the Settlement Fund for settlement and satisfaction against Releasees of all Released Claims, and shall have no other recovery against Settling Defendants or any other Releasee.

32.   After this Agreement becomes final within the meaning of paragraph 17, the Settlement Fund shall be distributed as approved by the Court.  Neither Settling Defendants nor any other Releasee under this Agreement shall have any responsibility for, interest in, or liability with respect to, or shall file any opposition to, the proposed or actual plan(s) for distribution of the Settlement Fund among the Damages Class and/or any other person or entity who may assert some claim to the Settlement Fund.

16

33.     It is contemplated that Co-Lead Counsel will seek attorneys' fees award(s), reimbursement of costs and expenses (whether already incurred or expected to be incurred), and service awards to the representative plaintiffs.  Settling Defendants shall take no position on any application for attorneys' fees, reimbursement of costs and expenses, or representative plaintiff service awards.  After the entry of any order awarding attorneys' fees, reimbursement of costs and expenses, or representative plaintiff service awards, the Escrow Agent may, pursuant to paragraph 29, establish and maintain sub-accounts to hold such awards for payment.

34.     (a)     The procedure for and the allowance or disallowance by the Court of the petitions for awards of attorneys' fees, the reimbursement of costs and expenses and any award of service awards to the representative plaintiffs is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Agreement, and any order or proceeding relating to the fee application(s) or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.  Except as expressly provided in this Agreement, neither Settling Defendants nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability with respect to any payment to Co-Lead Counsel of any fee or expense award in the Action.  Neither Settling Defendants nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Co-Lead Counsel, and/or any other person or entity who may assert some claim thereto, of any fee award that the Court may make in the Action.

(b)     Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any filed

17

objections to the Agreement, to any award of attorneys' fees and expenses or to any service

award, or to any actual, or potential for, appeal therefrom, or collateral attack on the Agreement

or any part of it, subject to Co-Lead Class Counsel's obligation to make a full repayment to the

Settlement Fund (except as provided in Paragraph 30 and 36) if this Agreement does not become

final pursuant to paragraph 17 of this Agreement, if the Court does not enter final judgment

provided for in paragraph 17, or if this Agreement is rescinded pursuant to paragraph 35 of this

Agreement, or to make appropriate refunds or repayments to the Settlement Fund, if and when,

as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the

fee or cost award is reduced or reversed.

        (c)    The amount of attorneys' fees and expenses payable from the

Settlement Fund at any particular point in time shall be no greater than the fraction of the

$22,500,000 USD plus interest that Settling Defendants shall have paid into the Escrow Account

as of the particular point in time that payment is to be made.

**G.**    **Rescission If This Agreement Is Not Approved or Final Judgment Is Not Entered.**

        35.    If the Court refuses to approve this Agreement, or any material part of this

Agreement, or if such approval is materially modified or set aside on appeal, or if the Court does

not enter the final judgment provided for in paragraph 17 of this Agreement, or if the Court

enters the final judgment and appellate review is sought, and on such review, such final

judgment is not affirmed in its entirety, then within 30 days thereafter, Settling Defendants and

the Settling Plaintiffs shall each, in their sole discretion, have the option to rescind this

Agreement in its entirety.  Written notice of the exercise of any such right to rescind shall be

made by the rescinding party to counsel to either Settling Plaintiffs or Settling Defendants, as the

case may be.  A modification or reversal on appeal of any amount of the fees for Co-Lead

Counsel shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

36.      In the event that this Agreement does not become final, then this Agreement shall be of no force or effect (except for this paragraph and paragraph 18) and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account(s), including all interest earned on such accounts, shall be returned forthwith to Settling Defendants less only disbursements made pursuant to Court order in accordance with this Agreement. The Settling Parties expressly reserve all of their rights if this Agreement does not become final. Further, and in any event, the Settling Parties agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with its negotiation, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Settling Defendants or Releasees, or of the truth of any of the claims or allegations contained in the complaints or any other pleadings filed by the Settling Plaintiffs in the Action, and evidence thereof shall not be discoverable or used in any way, directly or indirectly, whether in the Action or in any other action or proceeding.

**H.    Miscellaneous**

37.      This Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

38.      The Parties to this Agreement contemplate and agree that, prior to final approval of the Agreement, as provided for in paragraph 17 of this Agreement, appropriate notice (1) of the settlement; (2) of a hearing at which the Court will consider the approval of this Agreement; and (3) that persons or entities may be permitted to object to the Agreement, will be given to the Damages Class.

19

39.     This Agreement does not settle or compromise any claim by the Certified Classes against any Defendant or alleged co-conspirator other than Settling Defendants and Releasees. All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Certified Classes.

40.     If the Court enters final judgment for $54.1 million or more following trial against Defendant Hebei Welcome Pharmaceutical Company, Ltd. (jointly or severally), then the Damages Class agrees that it will not settle with Defendant Hebei Welcome Pharmaceutical Company, Ltd. (individually or together with North China Pharmaceutical Group Corp.) for an amount less than $22.5 million within 180 days after entry of such final judgment.

41.     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, (i) the validity of any claim or defense; or (ii) the appropriateness or inappropriateness of any class or other representational capacity, whether contemporaneously with this Agreement or at any time in the future.

42.     The United States District Court for the Eastern District of New York shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Settling Parties. This Agreement shall be construed according to the laws of the State of New York without regard to its choice of law or conflict of laws principles.

43.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties. Without limiting the generality of the foregoing,

20

each and every covenant and agreement made herein by The Ranis Company or the Damages Class shall be binding upon the Damages Releasors. Each and every covenant and agreement made herein by Animal Science Products, Inc. or the Injunction Class shall be binding upon the Injunction Releasors. The Releasees (other than Settling Defendants, which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

44.     This Agreement may be executed in counterparts by the Settling Plaintiffs and Settling Defendants, and a facsimile or electronic signature shall be deemed an original signature for purposes of executing this Agreement.

45.     Neither the Settling Plaintiffs nor Settling Defendants shall be considered to be the drafters of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafters of this Agreement.

46.     The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

47.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

48.     The Settling Parties and their counsel agree to do anything reasonably necessary to effectuate the performance of, and uphold the validity and enforceability of, this Agreement.

49.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Settling Parties he or she represents, subject to Court approval.

Agreed:

Dated: _March 14, 2013_     ZELLE HOFMANN VOELBEL & MASON LLP

By: _____

                           Daniel S. Mason
                   Attorneys for Defendants
WEISHENG PHARMACEUTICAL (SHIJIAZHUANG)
                      COMPANY, LTD.
                         and
          CHINA PHARMACEUTICAL GROUP, LTD.

Dated: _____     _____

                          Name:
                          Title:
                          Weisheng Pharmaceutical (Shijiazhuang) Co. Ltd.

Dated: _____     _____

                          Name:
                          Title:
                          China Pharmaceutical Group, Ltd

Agreed:

Dated: _____          ZELLE HOFMANN VOELBEL & MASON LLP

                                  By: _____
                                              Daniel S. Mason
                                          Attorneys for Defendants
                                  WEISHENG PHARMACEUTICAL (SHIJIAZHUANG)
                                              COMPANY, LTD.
                                                   and
                                  CHINA PHARMACEUTICAL GROUP, LTD.

Dated: 2013, 03, 15          _____（总经理）_____
                                  Name:
                                  Title:
                                  Weisheng Pharmaceutical (Shijiazhuang) Co. Ltd.


Dated: _____          _____
                                  Name:
                                  Title:
                                  China Pharmaceutical Group, Ltd.

23

Agreed:

Dated: _____        ZELLE HOFMANN VOELBEL & MASON LLP


By: _____

Daniel S. Mason
Attorneys for Defendants
WEISHENG PHARMACEUTICAL (SHIJIAZHUANG)
COMPANY, LTD.
and
CHINA PHARMACEUTICAL GROUP, LTD.


Dated: _____        _____

Name:
Title:
Weisheng Pharmaceutical (Shijiazhuang) Co. Ltd.


Dated: _15 · 3 · 2013_        _____

Name:   CHAK KIN MAN
Title:   EXECUTIVE DIRECTOR
China Pharmaceutical Group, Ltd.

23

Dated: 3/15/13

BOIES, SCHILLER & FLEXNER LLP

By: William A. Isaacson / BAR
William A. Isaacson
Plaintiffs' Co-Lead Counsel

Dated: 3/15/13

HAUSFELD LLP

By: Michael D. Hausfeld
Plaintiffs' Co-Lead Counsel

Dated: 3/15/13

SUSMAN GODFREY, L.L.P.

By: James T. Southwick / BAR
James T. Southwick
Plaintiffs' Co-Lead Counsel

24