# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | MASTER FILE 06-MD-1738 (BMC) (JO) |
|  | **SETTLEMENT AGREEMENT** |
| **This Document Relates To:** **ALL CASES** |  |

This Settlement Agreement ("Agreement") is made and entered into by and between defendant Northeast Pharmaceutical Group Co., Ltd. ("NEPG") and the "Settling Plaintiffs" (as defined in paragraph 1 below).

WHEREAS, the Settling Plaintiffs allege that NEPG participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of Vitamin C (as defined in paragraph 4 below) for delivery in the United States at artificially high levels in violation of certain state antitrust and consumer protection laws;

WHEREAS, the Settling Plaintiffs have conducted an investigation into the facts and the law regarding the claims in the indirect purchaser actions, collectively entitled IN RE VITAMIN C ANTITRUST LITIGATION, 06-MD-1738 (BMC) (JO) (E.D.N.Y.) (the "Action") and have concluded that resolving their claims against NEPG according to the terms set forth below is in the best interest of the Settling Plaintiffs and the Settlement Class;

WHEREAS, NEPG, despite its belief that it is not liable for the claims asserted and that it has good and valid defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this

Agreement, and to put to rest with finality all claims that have been or could have been asserted against NEPG based on the allegations of the Action, as more particularly set out below;

WHEREAS, NEPG and the Settling Plaintiffs have negotiated all of the terms and conditions of this Agreement at arm's length, and all terms and conditions are material and necessary to this Agreement and have been relied upon by the parties in entering into this Agreement; and

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to NEPG on the following terms and conditions, and incorporating the preceding clauses:

A.      **<u>Definitions</u>**.

1.      For purposes of this Agreement, "Settling Plaintiffs" is defined to mean Dennis Audette, Linda Philion, Melanie Farley, Richard Keane, Karen Haines, Gerard Shannon, Mark Schamel, Viviane Melo, Sandra Jeffreys, Dana Erichsen, Laurel Rose, Christine Poon, Linda Kohlenberg, Melissa Harris, Kaitlyn Johnson, Tausha Moeller, Lorene Culler, Dr. Carl Martin, D.V.M., Timothy Purdy, Ronald Kaufman, Jennifer Clark, Mark Kuchta, Kathleen Davis, Heather Rosene, Cory Rosene, Curt Badger, Follansbee Pharmacy, Diana Kitch, Stephanie Karol and Christopher Murphy.

2.      For the purposes of this Agreement, "Settling Jurisdictions" means California, New York, Arizona, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

3.      For purposes of this Agreement, the terms "Defendant" or "Defendants" shall mean, respectively, each and all named defendants in the Action.

- 2 -

4.       For purposes of this Agreement, "Vitamin C" is defined to mean raw vitamin C, also known as ascorbic acid, and "Vitamin C Products" means capsules or tablets containing Vitamin C used for pharmacological purposes.  To the extent that the definition of Vitamin C Products varies from the definition of vitamin C or vitamin C products in the Action or the claims of any representative plaintiff or class member, Co-Lead Counsel represent that all such non-pharmacological indirect claims shall be dismissed. Accordingly, at the appropriate time, Co-Lead Counsel shall seek leave to amend their claims in the Action.

5.       For the purposes of this Agreement, the "Settlement Class" means all persons or entities, (but excluding all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates, and any person or entity that timely and validly elects to be excluded from the Settlement Class) residing in a Settling Jurisdiction who indirectly purchased Vitamin C Products for use or consumption and not for resale from within one or more Settling Jurisdictions at any time from December 1, 2001 to June 30, 2006.

6.       "Releasees" shall refer only to NEPG, and to all of its respective past and present, direct and indirect, parents, subsidiaries and affiliates; the predecessors, successors and assigns of NEPG; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of any of the foregoing; but excluding any Defendants (other than NEPG) in the Action.

7.       "Releasors" shall refer to the Settling Plaintiffs, the Settlement Class, their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, corporate parents, subsidiaries, affiliates, corporate partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now,

affiliated, and the predecessors, successors, heirs, executives, administrators, and assigns of any of the foregoing.

       8.     The "Settlement Amount" means $500,000 (Five Hundred Thousand Dollars) in United States currency.

       9.     The "Settlement Fund" shall refer to the payments made by NEPG pursuant to this Agreement, plus all accrued interest on the deposits.

       10.    "Co-Lead Counsel" shall refer to the following counsel for Plaintiff and the Settlement Class:

> R. Alexander Saveri
> SAVERI & SAVERI, INC.
> 706 Sansome Street
> San Francisco, CA 94111
>
> David Boies
> Timothy Battin
> STRAUS & BOIES LLP
> 4041 University Dr., 5th Floor
> Fairfax, VA  22030
>
> Daniel E. Gustafson
> Daniel C. Hedlund
> GUSTAFSON GLUEK PLLC
> Canadian Pacific Plaza
> 120 South Sixth Street, Suite 2600
> Minneapolis, MN  55402

**B.**    <u>**Approval of this Agreement and Dismissal of Claims Against NEPG**</u>.

       11.    The Settlement Class and NEPG (collectively, the "Settling Parties"), and Co-Lead Counsel, respectively, shall use their best efforts to effectuate this Agreement and its purpose, and secure the prompt, complete, and final dismissal with prejudice of the Action as to Releasees, but not as to any party, person, or entity that is not a Releasee.

- 4 -

12.     Settling Plaintiffs shall submit to the Court a motion for preliminary approval of the settlement within 30 days of execution of this Agreement.

13.     The Settling Parties agree that, subject to Court approval, notice of this settlement shall be directed to the Settlement Class in a manner that constitutes valid, due and sufficient notice, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and any other applicable law. The Settling Parties expressly agree that notice of this settlement may be combined with notice of settlement by a settling Defendant other than NEPG.  Settling Plaintiffs shall not be responsible for paying any notice costs related to this settlement, and any notice costs not paid by another settling Defendant as part of a combined notice shall be the responsibility of NEPG; and to the extent that notice, claims administration, or settlement administration costs are actually paid by NEPG, pursuant to a notice and claims administration plan approved by the Court, under no circumstances will such expenditures be refunded to NEPG.

14.     The Settling Parties shall jointly seek entry of an order and final judgment, the text of which the Settling Parties shall agree upon.  The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     approving finally this settlement and its terms as being fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing consummation according to its terms;

(b)     as to NEPG, that the Action be dismissed with prejudice and, except as provided for in this Agreement, without recovery of costs from NEPG;

- 5 -

(c)      reserving exclusive jurisdiction over this settlement and this Agreement, including the administration and consummation of the settlement, to the United States District Court for the Eastern District of New York;

(d)      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to NEPG be final;

(e)      requiring that Co-Lead Counsel shall file with the Clerk of the Court a record of the persons or entities who timely excluded themselves from the Action, and shall provide a copy of the record to counsel for NEPG;

(f)      approving the payment of attorneys' fees, costs and service awards as determined by the Court out of the Settlement Fund.

15.      Subject to the provisions of paragraph 29 below, this Agreement shall become final when the Court has entered an order and final judgment approving this Agreement under Federal Rule of Civil Procedure 23(e) and/or applicable state laws and a final judgment dismissing the Action with prejudice as to NEPG against the Settlement Class and one of the following dates occurs:  (a) if an appeal is taken, (i) the date of final affirmance on appeal of the order and final judgment, the expiration of the time for a petition for or a denial of a writ of *certiorari* to review the order and final judgment and, if *certiorari* is granted, the date of final affirmance of the order and final judgment following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the order and final judgment or the final dismissal of any proceedings on *certiorari* to review the order and final judgment; or (b) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the order and final judgment.  This Agreement shall be deemed executed as of the last date of signature by NEPG and Co-Lead Counsel, and Co-Lead Counsel shall give notice to NEPG within three (3) business

- 6 -

days after this Agreement is deemed executed.  Neither the provisions of Rule 60 of the Federal

Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in

determining the above-stated times.  As of the date of execution of this Agreement, the Settling

Parties shall be bound by the terms of this Agreement and this Agreement shall not be rescinded

or terminated except in accordance with paragraph 29 of this Agreement.

   16. Neither this Agreement (whether or not it should become final) nor the

final judgment, nor any and all negotiations, documents, and discussions associated with such

negotiation, shall be deemed or construed to be an admission by, or form the basis of an estoppel

by a third party against, any Releasees, or evidence of any violation of any statute or law or of

any liability or wrongdoing by any Releasee, or of the truth of any of the claims or allegations

contained in any complaint or any other pleading filed by the Settling Plaintiffs, and evidence

thereof shall not be discoverable, or used in any way, directly or indirectly, whether in the Action

or in any other action or proceeding.  Neither this Agreement, nor any of its terms and

provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to

carry out this Agreement by the Settling Plaintiffs or NEPG, shall be referred to, offered into

evidence, or received in evidence in any pending or future civil, criminal or administrative action

or proceeding, except in a proceeding to enforce this Agreement, or to defend against the

assertion of Released Claims (as defined in paragraph 18), or as otherwise required by law.

   17. NEPG agrees that notwithstanding any preliminary or final approval of

this Agreement and settlement, for purposes of a trial against another Defendant, NEPG shall be

treated as if it remains a defendant in the Action until such time as the Action is tried or settled as

to all Defendants.  This provision does not give the Court any authority or jurisdiction over

NEPG beyond that which it would have if NEPG remained a Defendant in the Action, and

applies solely to the instance in which the Settling Plaintiffs bring the Action to trial against another Defendant.

C.      **Release, Discharge and Covenant Not to Sue**

18.      In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 15 above, and in consideration of payment of the Settlement Fund, Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any person or entity has objected to the settlement or makes a claim upon or participates in the Settlement Fund), whether directly, representatively, derivatively or in any other capacity that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating to any act or omission of Releasees (or any of them) concerning the pricing, production, development, marketing, sale or distribution of Vitamin C during the period from the beginning of time to the present, including claims based on the conduct alleged and causes of action asserted, or that could have been asserted, in complaints filed in the Action by the Settling Plaintiffs, including, without limitation, any claims arising under any federal or state antitrust, unjust enrichment, unfair competition, or trade practice statutory or common law, or consumer protection law (to the extent that a consumer protection claim would be based on allegations of an antitrust or unfair competition violation) (the "Released Claims").  Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims.  The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing

- 8 -

any action from being initiated or maintained in any case sought to be prosecuted on behalf of entities that indirectly purchased Vitamin C Products with respect to the claims released in this paragraph.

19.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 15 of this Agreement, and in consideration of payment of the Settlement Fund as specified in paragraphs 22 and 24 of this Agreement, and for other valuable consideration, Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, whether directly, representatively, derivatively or in any other capacity that Releasees, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected and unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating to any act or omission of Releasors (or any of them) concerning the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims (the "Releasee-Released Claims"). Releasees shall not, after the date of this Agreement, seek to establish liability against any Releasor based, in whole or in part, upon any of the Releasee-Released Claims, or conduct at issue in the Releasee-Released Claims.  The Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of indirect purchasers of Vitamin C Products with respect to the claims released in this paragraph.

20.     In addition to the provisions of paragraphs 18 and 19 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

**CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;**

or by any law of any state or territory of the United States or District of Columbia, or by principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Releasor and Releasee may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims that are the subject of the provisions of paragraphs 18 and 19 of this Agreement, but each Releasor and Releasee hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject of the provisions of paragraphs 18 or 19 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

21.     The release, discharge, and covenant not to sue set forth in paragraphs 18 and 19 of this Agreement do not include respective claims by any of the Releasors or any of the Releasees other than the claims set forth therein and do not include other claims, such as those arising out of product liability, personal injury, contract or warranty claims in the ordinary course of business.

- 10 -

**D.**     **Settlement Amount**

22.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, NEPG shall pay a total of $500,000 into the Settlement Fund, which shall be held in an escrow account ("Escrow Account"), described further in paragraph 23. Payment of $500,000 shall be made within 60 days of full execution of the Agreement;

23.     Escrow Account

(a)     The Escrow Account referenced in paragraph 22 will be established at Citibank ("Escrow Agent") subject to escrow instructions as agreed by the Settling Parties.  Such Escrow Account and any subsequently established escrow accounts are to be administered under the Court's continuing supervision and control.

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or money market funds invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in the Court's custody, and shall remain subject to the jurisdiction of the Court, until such funds shall be distributed pursuant to this Agreement or further order(s) of the Court and only upon the settlement made by this Agreement becoming final and not subject to further appeal, excepting only as to direct disbursements as may be authorized by the Court.

(d)     The Settling Parties agree to treat the Settlement Fund as being at all times one or more "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1 and to refrain from taking any action inconsistent with such treatment.

(e)     For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be a third party retained by the Co-Lead Counsel ("Administrator") and shall promptly take all steps necessary so that the Settlement Fund qualifies as one or more "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1.  These steps include, without limitation, the following:

(i)     the Administrator shall timely and properly prepare a statement fulfilling the requirements of Treas. Reg. § 1.468B-3(e) on behalf of NEPG; and

(ii)     the Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)).  Such returns (as well as the election described below) shall be consistent with the provisions of paragraph 23(d).

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes"); (ii) taxes, interest, penalties, or other tax detriments that may be imposed upon NEPG or any other Releasee with respect to (A) any income earned by the Settlement Fund or (B) the receipt of any payment under this paragraph 23(f), in each case for any period during which the Settlement Fund does not qualify as one or more "qualified settlement funds" for federal or state income tax purposes ("Tax Detriments"); and (iii) expenses and costs incurred in connection with the operation and implementation of paragraphs 24(d) through 24(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or

failing to file) the returns described in paragraph 23(e)(ii) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither NEPG nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes, Tax Detriments or the Tax Expenses.  Taxes, Tax Detriments and Tax Expenses shall be timely paid by the Administrator out of the Settlement Fund without prior order from the Court and the Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes, Tax Detriments and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  Neither NEPG nor any other Releasee is responsible, nor shall they have any liability, therefor.  Settling Parties agree to cooperate with the Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of paragraphs 24(d) through 24(g).

24.     <u>Payment of Expenses</u>

NEPG agrees that, subject to Court approval, any costs incurred in providing any notice of the proposed settlement to the Settlement Class, in claims administration, and any past or future litigation expenses award by the Court may be paid from the Settlement Fund, which amounts shall not be recoverable by NEPG in the event that this Agreement does not become final, is terminated by NEPG, or is rescinded by either party.  Other than as set forth in this paragraph 24 and paragraph 30, neither NEPG nor any of the other Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including, without limitation, attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before

- 13 -

the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for

class administration and costs

E.       **The Settlement Fund**

        25.     Releasors shall look solely to the Settlement Fund for settlement and

satisfaction against Releasees of all Released Claims, and shall have no other recovery against

NEPG or any other Releasee.

        26.     After this Agreement becomes final within the meaning of paragraph 15,

the Settlement Fund shall be distributed as approved by the Court.  Neither NEPG nor any other

Releasee under this Agreement shall have any responsibility for, interest in, or liability with

respect to, or shall file any opposition to, the proposed or actual plan(s) for distribution of the

Settlement Fund among the Settlement Class and/or any other person or entity who may assert

some claim to the Settlement Fund.

        27.     It is contemplated that Co-Lead Counsel will seek attorneys' fees award(s)

and reimbursement of costs and expenses (whether already incurred or expected to be incurred).

NEPG shall take no position on any application for attorneys' fees, reimbursement of costs and

expenses or representative plaintiff service awards.  After the entry of any order awarding

attorneys' fees, reimbursement of costs and expenses, or representative plaintiff service awards,

the Escrow Agent may, pursuant to paragraph 23, establish and maintain sub-accounts to hold

such awards for payment.

        28.    (a)     The procedure for and the allowance or disallowance by the Court

of the petitions for awards of attorneys' fees, the reimbursement of costs and expenses and any

award of service awards to the representative plaintiffs is to be considered by the Court

separately from the Court's consideration of the fairness, reasonableness and adequacy of the

Agreement, and any order or proceeding relating to the fee application(s) or any appeal from any

- 14 -

such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.  Except as expressly provided in this Agreement, neither NEPG nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability with respect to any payment to Co-Lead Counsel of any fee or expense award in the Action.  Neither NEPG nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Co-Lead Counsel, and/or any other person or entity who may assert some claim thereto, of any fee award that the Court may make in the Action.

(b)      Attorneys' fees and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of (i) any filed objections to the Agreement, to any award of attorneys' fees and expenses or to any service award, or (ii) any actual, or potential for, appeal therefrom or collateral attack on the Agreement or any part of it. Any such award of attorneys' fees and expenses shall be subject to Co-Lead Class Counsel's obligation (i) to make a full repayment to the Settlement Fund (except as provided in Paragraph 24 and 30) if this Agreement does not become final pursuant to paragraph 15 of this Agreement, if the Court does not enter final judgment provided for in paragraph 15, or if this Agreement is rescinded pursuant to paragraph 29 of this Agreement; and (ii) to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or cost award is reduced or reversed.

## F.      **Rescission If This Agreement Is Not Approved or Final Judgment Is Not Entered**.

29.      If the Court refuses to approve this Agreement, or any material part of this agreement, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 15 of this Agreement, or if the Court

enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then within 30 days thereafter, NEPG and the Settling Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made by the rescinding party to counsel of either Settling Plaintiffs or NEPG, as the case may be. A modification or reversal on appeal of any amount of the fees for Co-Lead Counsel shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

30. In the event that this Agreement does not become final, then this Agreement shall be of no force or effect (except for this paragraph and paragraph 16) and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account(s), including all interest earned on such accounts, shall be returned forthwith to NEPG less only disbursements made pursuant to Court order in accordance with this Agreement. The Settling Parties expressly reserve all of their rights if this Agreement does not become final. Further, and in any event, the Settling Parties agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with its negotiation, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by NEPG or Releasees, or of the truth of any of the claims or allegations contained in the complaints or any other pleadings filed by the Settling Plaintiffs in the Action, and evidence thereof shall not be discoverable or used in any way, directly or indirectly, whether in the Action or in any other action or proceeding.

**G. Miscellaneous**

31. This Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

32.     The Parties to this Agreement contemplate and agree that, prior to final approval of the Agreement, as provided for in paragraph 15 of this Agreement, appropriate notice (1) of the settlement; (2) of a hearing at which the Court will consider the approval of this Agreement; and (3) that persons or entities may be permitted to exclude themselves from, or to object to, the Agreement, will be given to the Settlement Class.

33.     This Agreement does not settle or compromise any claim by the Settlement Class against any Defendant or alleged co-conspirator other than NEPG and Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by the Settlement Class.

34.     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement, is or may be deemed to be or may be used as an admission of, or evidence of, (i) the validity of any claim or defense; or (ii) the appropriateness or inappropriateness of any class or other representational capacity, whether contemporaneously with this Agreement or at any time in the future.

35.     The United States District Court for the Eastern District of New York shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Settling Parties.  This Agreement shall be construed according to the laws of the State of New York without regard to its choice of law or conflict of laws principles.

36.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.  Without limiting the generality of the foregoing,

- 17 -

each and every covenant and agreement made herein by the Settling Plaintiffs or the Settlement

Class shall be binding upon the Releasors.  The Releasees (other than NEPG, which is a party

hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms

applicable to them.

37.     This Agreement may be executed in counterparts by the Settling Plaintiffs

and NEPG, and a facsimile signature shall be deemed an original signature for purposes of

executing this Agreement.

38.     This Agreement constitutes the entire, complete and integrated agreement

between the Settling Parties pertaining to the settlement of the Action against NEPG.

39.     Neither the Settling Plaintiffs nor NEPG shall be considered to be the

drafters of this Agreement or any of its provisions for the purpose of any statute, case law, or rule

of interpretation or construction that would or might cause any provision to be construed against

the drafters of this Agreement.

40.     The descriptive headings of any paragraphs or sections of this Agreement

are inserted for convenience only and do not constitute a part of this Agreement.

41.     Where this Agreement requires either party to provide notice or any other

communication or document to the other, such notice shall be in writing, and such notice,

communication, or document shall be provided by facsimile or letter by overnight delivery to the

undersigned counsel of record for the party to whom notice is being provided.

42.     The Settling Parties and their counsel agree to do anything reasonably

necessary to effectuate the performance of, and uphold the validity and enforceability of, this

Agreement.

43.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Settling Parties he or she represents, subject to Court approval.

Agreed:

Dated: 2/22/13                           GREENBERG TRAURIG, LLP

                                         By: _James Ian Serota_____
                                              JAMES I. SEROTA
                                              Attorneys for Defendant
                                              NORTHEAST
                                         PHARMACEUTICAL GROUP CO., LTD.




Dated: _____          _____
                                  R. Alexander Saveri
                                  Saveri & Saveri, Inc.




Dated: _____          _____
                                  Timothy Battin
                                  Straus & Boies




Dated: _____          _____
                                  Daniel C. Hedlund
                                  GUSTAFSON GLUEK PLLC




- 20 -

Agreed:

Dated: _____     GREENBERG TRAURIG, LLP

                                By: _____
                                        JAMES I. SEROTA
                                      Attorneys for Defendant
                                         NORTHEAST
                                PHARMACEUTICAL GROUP CO., LTD.

Dated: 2/28/13        _____
                      R. Alexander Saveri
                      Saveri & Saveri, Inc.

Dated: 2/22/2013      _____
                      Timothy Battin
                      Straus & Boies, LLP

Dated: 2/22/13        _____
                      Daniel C. Hedlund
                      GUSTAFSON GLUEK PLLC

- 20 -

*NY 242813164v1*