IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | 1:06-MD-01738 |
| | (BMC) (JO) |
| This Document Relates To: | CV-05-453 |
| ANIMAL SCIENCE PRODUCTS, INC., et. al | |
| Plaintiffs, | |
| v. | |
| HEBEI WELCOME PHARMACEUTICAL CO., LTD., et. al. | |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF
INJUNCTION CLASS PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION

Injunction Class Plaintiffs, by undersigned counsel, respectfully submit this memorandum in support of their motion for a permanent injunction against Defendants Hebei Welcome Pharmaceutical Co., Ltd. and North China Pharmaceutical Group Corp.

## BACKGROUND

This Court previously certified two plaintiff classes: a Damages Class, consisting of direct purchasers of vitamin C, and an Injunction Class, consisting of direct and indirect purchasers of vitamin C. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012). Following a three-week trial, a jury found that Plaintiffs proved, by a preponderance of the evidence, that the defendants knowingly entered into an agreement or conspiracy with the purpose or predictable effect of fixing the price or limiting supply of vitamin C. The jury also found that Defendants did not prove, by a preponderance of the evidence, that they were actually compelled by the Government of China to enter into agreements fixing the price or limiting the supply of vitamin C and faced the prospect of penalties or sanctions for not complying with the directives or commands of the Chinese government in this regard. Special Verdict Form, ECF No. 675 (Mar. 14, 2013). The jury returned a verdict in favor of the Damages Class for $54.1 million, and the Court entered judgment for treble damages of $162.3 million. Minute Entry (Mar. 14, 2013); Judgment, ECF No. 676 (Mar. 14, 2013).

All but two Defendants – Hebei and North China – settled prior to verdict. Each settlement, in addition to monetary components, provides that the settling defendant will abide by any injunction enforcing Section 1 of the Sherman Act, should it be entered against a non-settling defendant. *See* Settlement Agreement with Aland (Jiangsu) Nutraceutical Co., Ltd., ECF No. 470-3 (May 21, 2013); Settlement Agreement with Northeast Pharmaceutical Group Co.,

Ltd., ECF No. 678-3 (Mar. 25, 2013); Settlement Agreement with Weisheng Pharmaceutical Co., Ltd. and China Pharmaceutical Group, Ltd., ECF No. 679-3 (Mar. 25, 2013).

## STATEMENT OF FACTS

Evidence admitted at trial established that after Plaintiffs filed their complaint in January 2005, Defendants continued meeting, exchanging information, and reaching agreements with one another. In November 2005, Wang Qiang of Aland wrote that the defendants "should not have any worry" about the lawsuit whether they won or lost, but that they should "do many things in a more hidden and smart way":

> This act of deciding production or prices based on coordination is a kind of monopoly whatever the reasons. However, I believe we should not have any worry since the Ministry of Commerce is a friend of the court in the lawsuit. If we won the lawsuit, it would be hard for foreigners to make more trouble. Even if we lost the case, government would take the foremost part of responsibility. After all, we need to do many things in a more hidden and smart way.

PX 259; *see also* PX 142 ("The recent antitrust lawsuit is unprecedented, but we shall not suspend the coordination mechanism of the VC industry in our country"); DTX 68 (noting that "the antitrust investigation was time-consuming" and that "[e]verybody must pay special attention to relevant matters on confidentiality"). Wang Qi also testified that after the lawsuit was filed, the defendants discussed the need to keep meetings confidential and to be more careful about what was written down. Wang, Day 2, Tr. 283:13-284:12. And Qiao Haili testified that, as a result of the lawsuit, any notes taken by meeting participants "would be torn apart." Qiao, Day 7, Tr. 1060:17-1061:8.

Eventually, with trial approaching, the meetings to discuss price subsided. At trial, Wang Qi of Aland testified that in the time since his 2008 deposition, his company had stopped meeting with competitors to discuss prices. Wang, Day 2, Tr. 381:2-8. He also testified that he would know if such communications were taking place. *Id.* at 381:6-8.

**ARGUMENT**

Section 16 of the Clayton Act provides for injunctive relief "against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings . . . ." 15 U.S.C. § 26. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) (seeing "no reason that *eBay* would not apply with equal force to an injunction in *any* type of case") (emphasis in original). Each of these requirements is met here.

The Supreme Court has directed district courts, in determining whether injunctive relief is warranted, to consider "the high purpose of enforcing the antitrust laws." *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 131 (1969).

**A. Plaintiffs Will Suffer An Irreparable Injury From Resumption of the Cartel**

Given the evidence at trial, in the absence of injunctive relief, the cartel is likely to resume once this lawsuit is over. The next time, Defendants would "do many things in a more hidden and smart way," PX 259, making the conspiracy more difficult to detect. *Int'l Salt Co. v. United States*, 332 U.S. 392, 400 (1947) ("The District Court is not obliged to assume, contrary to common experience, that a violator of the antitrust laws will relinquish the fruits of his

4

violation more completely than the court requires him to do. And advantages already in hand may be held by methods more subtle and informed, and more difficult to prove, than those which, in the first place, win a market").

As the Second Circuit has observed, "[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger*, 607 F.3d at 81. In particular, Section 16 of the Clayton Act "authorizes injunctive relief upon the demonstration of 'threatened' injury." *Zenith Radio Corp.*, 395 U.S. at 130 (citations omitted). A plaintiff "need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Id.*; *see also id.* at 131 ("Neither the relative quiescence of the pool during the litigation nor claims that objectionable conduct would cease with the judgment negated the threat to Zenith's foreign trade.").

It is well-recognized that "the commission of past illegal conduct is highly suggestive of the likelihood of future violations" and that "past violations may in certain circumstances justify an inference that a defendant is likely to violate the law in the future if not enjoined." *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). Here, there is even a greater reason for concern, in that Defendants contended throughout this litigation and trial – and still contend – that their actions were lawful. *See, e.g.*, Ex. 1, Song Shengxia, *Chinese Drug Firms to Fight US Fine*, Global Times (China), http://www.globaltimes.cn/content/768919.shtml (Mar. 18, 2013) ("In a statement sent to the Global Times Monday, NCPC said the ruling distorted the truth. In order to oppose US trade protectionism, the company will seek to protect its legitimate interests according to the law, the statement said. NCPC insisted that its pricing was in accordance with

Chinese laws to avoid vicious competition among exporters during the period of China's transition from a planned economy to a market economy").

Under these circumstances, a permanent injunction is appropriate. *See Conwood Co. L.P. v. United States Tobacco Co.*, No. 5:98-CV-108-R, 2000 U.S. Dist. LEXIS 12761, at *3 (W.D. Ky. Aug. 10, 2000) (holding that "a court-ordered permanent injunction is necessary" based upon "[t]he evidence at trial and the jury verdict" and the fact that "[i]n post-trial pleadings and public statements, UST refuses to admit that any of its business practices violate antitrust laws"); *Coleman v. Cannon Oil Co.*, 849 F. Supp. 1458, 1471-72 (M.D. Ala. 1993) (holding that "the threat of resumption of the conspiracy remains real" when the defendants "failed to acknowledge their wrong-doing" and testified "that they acted innocently").

By necessity, most of the evidence presented at trial was from an earlier time period. But "a permanent injunction almost by definition must rest on outdated facts, those facts presented at the earlier trial and developed through even earlier discovery." *In re Data Gen. Corp. Antitrust Litig.*, 1986 U.S. Dist. LEXIS 22076, at *13 (N.D. Cal. July 30, 1986). To hold otherwise "would mean the longer an antitrust defendant could prolong the proceedings the greater the likelihood of escaping injunctive sanctions for its conduct." *Id.* Even if Defendants have completely ceased their illegal conduct, they "ceased their illegal price-fixing activity only after this lawsuit was filed," and "[i]t was this litigation alone that brought an end to their illegal conduct." *Coleman*, 849 F. Supp. at 1471-72. As a result, "the likelihood of recidivism on their part is not only likely it is great." *Id.* at 1472.

### B. Monetary Damages Would Be Inadequate

Injunctive relief is appropriate even though Plaintiffs have obtained a judgment of damages for their past injuries and even though they could, in theory, bring a future lawsuit upon Defendants' resumption of their cartel. This is so for three reasons.

First, the available remedies of treble damages and injunctive relief are complementary, not mutually exclusive. *Zenith*, 395 U.S. at 130-31 ("Moreover, the purpose of giving private parties treble-damage and injunctive remedies was not merely to provide private relief, but was to serve as well the high purpose of enforcing the antitrust laws"). Upon finding a conspiracy, a court "has the duty to compel action by the conspirators that will, so far as practicable, cure the ill effects of the illegal conduct, and assure the public freedom from its continuance. . . . The conspirators should, so far as practicable, be denied future benefits from their forbidden conduct." *United States v. United States Gypsum Co.*, 340 U.S. 76, 88-89 (1950). Thus, courts can and do issue permanent injunctions following awards of treble damages. *See, e.g.*, *Brown v. Pro Football*, 821 F. Supp. 20, 24 (D.D.C. 1993) (entering permanent injunction after awarding $30 million in damages when the defendants "refuse[d] to disclaim the possibility of future price-fixing"); *Conwood*, 2000 U.S. Dist. LEXIS 12761, at *4-5 (entering permanent injunction after judgment of $1.05 billion in trebled damages); *Conwood Co., L.P. v. United States Tobacco Co.*, Case No. 98-108, ECF No. 363 (W.D. Ky. Mar. 29, 2000) (entering judgment of $1.05 billion in trebled damages).[1]

---

[1] While there is limited authority from outside this Circuit suggesting that, for purposes of ruling on requests for *preliminary* injunctions, treble damages may be an adequate remedy for antitrust violations under certain circumstances, *e.g.*, *Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 277 (1st Cir. 1981), the Second Circuit has expressly declined to decide this issue. *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 324 n.5 (2d Cir. 1969) ("We find it unnecessary to decide whether, if [the plaintiff] had shown a reasonable chance of ultimate success, the availability of treble damages constitutes an adequate remedy at law, and therefore is

7

Second, the length of this litigation – now over eight years, not including post-trial motions and appeals yet to come – demonstrates why the possibility of future money damages is inadequate. It would take significant time for the plaintiffs to be made whole for new injuries. And the prospect of Defendants' taking actions "in a more hidden and smart way" going forward will only make proof more difficult in a future lawsuit.

Third, only the direct purchaser plaintiffs have a federal claim for damages. *Ill. Brick Co. v. Ill.*, 431 U.S. 720 (U.S. 1977). The Injunction Class includes intermediate indirect purchasers (those which buy from direct purchasers and resell downstream) and consumers. While some consumers (but not intermediate indirect purchasers) have brought their own damages claims under certain state laws, consumers in only 20 states and the District of Columbia are included and their lawsuits have been stayed. Joint Status Report, ECF No. 681 (Mar. 25, 2013); Stipulation of All Counsel and [Proposed] Order Regarding a Stay of the Indirect Purchaser Actions, ECF No. 340 (Nov. 11, 2008). At a minimum, damages cannot be an adequate remedy for class members who have not asserted, or who cannot assert, a claim seeking such damages. These class members require injunctive relief. *See Cargill, Inc. v. Monfort of Colo.*, 479 U.S. 104, 111-12 (1986) (indirect purchasers suffering antitrust injury are entitled to injunctive relief under section 16 of the Clayton Act); *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 52 n. 14 (2d Cir. 2010) (same); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 214 n. 24 (4th Cir. 2002) (citing cases).

### C. Equitable Remedies Are Warranted Considering the Balance of Hardships

Because a jury has determined that Defendants violated the antitrust laws, and because of the threat that Defendants will resume their cartel, the balance of hardships supports issuance of

---

in itself a sufficient ground upon which to deny the injunctive relief"). Moreover, this is a request for a permanent injunction following a jury verdict against Defendants.

a permanent injunction barring future agreements to fix prices or limit supply. *Nat'l Soc. of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697 (1978) ("Having found the Society guilty of a violation of the Sherman Act, the District Court was empowered to fashion appropriate restraints on the Society's future activities both to avoid a recurrence of the violation and to eliminate its consequences"); *Data Gen.*, 1986 U.S. Dist. LEXIS 22076, at *10 (holding that the "broad remedial purposes" of the antitrust laws "include not only eradicating the consequences of the illegal conduct, but preventing its recurrence in similar form"); *H.L. Moore Drug Exch., Div. of/and Levitt Indus., Inc. v. Eli Lilly & Co.*, No. 76-Civ.-2817, 1980 U.S. Dist. LEXIS 15158, at *3 (S.D.N.Y. 1980) (recognizing that "antitrust violations should be enjoined" and holding that "[a] permanent injunction against future violations is appropriate in order to enforce the antitrust laws").

The standard is "whether the relief represents a reasonable method of eliminating the consequences of the illegal conduct." *Nat'l Soc.*, 435 U.S. at 698. As this Court has held, it would be "indisputably permissible" for the Court to "enjoin private companies from engaging in behavior that takes place on foreign soil but is directed toward the United States. *In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 77296, at *13 (E.D.N.Y. June 21, 2012); *see also Nat'l Soc.*, 435 U.S. at 697 (noting that "an injunction against price fixing abridges the freedom of businessmen to talk to one another about prices"); *United States v. Burlington Indus., Inc.*, 64 Civ. Action No. 3090, 1966 U.S. Dist. LEXIS 10188 (S.D.N.Y. Sept. 15, 1966) (enjoining defendant from entering into any agreement to fix prices). Such an injunction is appropriate under the circumstances here.

9

### D. The Public Interest Would Not Be Disserved by a Permanent Injunction

The Supreme Court has explained that although "treble-damage cases . . . are brought for private ends," they "also serve the public interest in that 'they effectively pry open to competition a market that has been closed by defendants' illegal restraints.'" *Zenith*, 395 U.S. at 133 (quoting *Int'l Salt Co.* v. *United States*, 332 U.S. 392, 400 (1947)); *see also Int'l Salt*, 332 U.S. at 401 ("In an equity suit, the end to be served is not punishment of past transgression, nor is it merely to end specific illegal practices. A public interest served by such civil suits is that they effectively pry open to competition a market that has been closed by defendants' illegal restraints. If this decree accomplishes less than that, the Government has won a lawsuit and lost a cause"). The public has an important interest in the free and open competition promoted by the antitrust laws and would not be disserved by a permanent injunction preventing adjudged price-fixers from resuming their illegal cartel.

### CONCLUSION

For the foregoing reasons, the Court should permanently enjoin Defendants from entering into any agreements to fix prices or limit supply of vitamin C.

Dated: April 12, 2013                                              Respectfully submitted,

/s/ Michael D. Hausfeld_____          /s/ William A. Isaacson_____
Michael D. Hausfeld                                              William A. Isaacson
Brian A. Ratner                                                        Tanya Chutkan
Brent W. Landau                                                    Jennifer Milici
Melinda R. Coolidge                                              BOIES, SCHILLER & FLEXNER LLP
HAUSFELD LLP                                                     5301 Wisconsin Avenue, NW, Suite 800
1700 K Street, NW Suite 650                                Washington, DC  20015
Washington, DC 20006                                         Tel.:  (202) 237-2727
Tel:  (202) 540-7200                                              Fax:  (202) 237-6131
Fax:  (202) 540-7201

| | |
|---|---|
| */s/ James T. Southwick*_____ | |
| James T. Southwick | Alanna Rutherford (AR-0497) |
| Shawn L. Raymond | BOIES, SCHILLER & FLEXNER LLP |
| Katherine Kunz | 575 Lexington Avenue, 7th Floor |
| SUSMAN GODFREY L.L.P. | New York, New York 10022 |
| 1000 Louisiana, Suite 5100 | Tel:  (212) 446-2300 |
| Houston, TX  77002 | Fax:  (212) 446-2350 |
| Tel.:  (713) 651-9366 | |
| Fax:  (713) 654-6666 | |

*Co-Lead Counsel for the Certified Direct Purchaser Damages Class and Injunction Class*