UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

                                                    )
In re VITAMIN C ANTITRUST                           )    1:06-MD-01738
LITIGATION                                          )    (BMC) (JO)
_____)
                                                    )
                                                    )
THIS DOCUMENT RELATES TO:                           )
                                                    )
ANIMAL SCIENCE PRODUCTS, INC.,                      )
et al.                                              )
                                                    )
Plaintiffs,                                         )    CV-05-453
v.                                                  )
                                                    )
HEBEI WELCOME                                       )
PHARMACEUTICAL CO. LTD., et al.                     )
                                                    )
Defendants.                                         )
_____)

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S APPLICATION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

# Table of Contents

Introduction ........................................................................................................... 1

Argument .............................................................................................................. 4

    1.    The Requested Fee Award from the CPG and Weisheng Settlement Is
        Fair and Reasonable ................................................................................. 4

        a.    The Requested Fee Is Fair as a Percentage of the Settlement
                Fund and in Relation to Class Counsel's Lodestar ..................................... 5

        b.    The Requested Fee Is Fair and Reasonable In Light of the
                Goldberger Factors ................................................................................. 7

                1)    Time and Labor of Class Counsel ................................................. 8

                2)    The Litigation's Complexities and Magnitude ............................ 10

                3)    The Risks of the Litigation ........................................................ 11

                4)    Quality of Representation ............................................................ 13

                5)    Relationship Between the Requested Fees and the
                        Settlement ................................................................................. 13

                6)    Public Policy Considerations ...................................................... 14

    2.    Class Counsel Should Be Awarded the NEPG Settlement Funds as
        Fees ...................................................................................................... 14

    3.    Class Counsel's Fee Request Is Reasonable in Relation to the Net
        Lodestar ............................................................................................... 15

    4.    Reimbursement of Requested Expenses Should Be Awarded ............................. 16

    5.    Proportional Payment as CPG and Weisheng Fund the Settlement .................... 18

Conclusion ........................................................................................................... 19

# Table of Authorities

## Cases

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*,
    481 F.2d 1045 (2d Cir. 1973) ........................................................................................... 14

*Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*,
    No. 96 Civ. 0583, 2002 WL 1315603 (S.D.N.Y. June 17, 2002) ...................................... 5

*F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*,
    476 F. Supp. 203 (S.D.N.Y. 1979) ..................................................................................... 3

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ..................................................................................... 13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ........................................................................................ passim

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 15

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-md-1775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ............................ 5, 6, 14, 16

*In re Allstar Inns Sec. Litig.*,
    No. CIV-A-88CIV9282 (PKL), 1991 WL 352491 (S.D.N.Y. Nov. 20, 1991) ................... 14

*In re Arakis Energy Com. Sec. Litig.*,
    No. 95 CV 3421, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ........................................ 16

*In re Ashanti Goldfields Sec. Litig.*,
    No. 00-CV-717, 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ..................................... 4, 16

*In re Blech Sec. Lit.*,
    No. 94 Civ. 7696, 2000 WL 661680 (S.D.N.Y. May 19, 2000) ....................................... 16

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98 CV 4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001) ........................................ 16

*In re Elan Sec. Litig.*,
    385 F. Supp. 2d 363 (S.D.N.Y. 2005) ............................................................................... 11

*In re Fine Host Corp. Sec. Litig.*,
    No. MDL 1241, 2000 WL 33116538 (D. Conn. Nov. 8, 2008) ........................................ 16

*In re Lloyd's Am. Trust Fund Litig.*,
    No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26 2002) ........................... 6, 7, 13, 16

*In re Towers Fin. Corp. Noteholders Litig.*,
 No. 93 Civ. 810, 1996 WL 393213 (S.D.N.Y. Feb. 28, 1996) ................................. 16

*In re Visa Check/Mastermoney Antitrust Litig.*,
 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ............................................................. 14, 18

*In re Vitamins Antitrust Litig.*,
 No. 99-mc-197, 2001 WL 34312839 (D.D.C. July 16, 2001) ............................. 6, 14

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................. 14

*LeBlanc-Stemberg v. Fletcher*,
 143 F.3d 748 (2d Cir. 1998) .................................................................................. 2

*Maley v. Del Global Techs.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 6

*Masters v. Wilhelmina Model Agency, Inc.*,
 473 F.3d 423 (2d Cir. 2007) ................................................................................. 5

*Park v. The Thomson Corp.*,
 No. 05 CIV. 2931, 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) ........................... 10

*Van Oss v. New York*,
 No. 10 CIV. 7524, 2012 WL 2550959 (S.D.N.Y. July 2, 2012) ............................. 15

*Wallace v. Fox*,
 7 F. Supp. 2d 132 (D. Conn. 1998) ...................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ....................................................................... 5, 13, 14

**Statutes**

15 U.S.C. § 26 ................................................................................................... 3

**Other Authorities**

Conte & Newberg, Newberg on Class Actions, §14:6 (4th ed. 2002) ........................... 6

**Introduction**

Counsel for the Direct Purchaser Damages Class and Injunction Class ("Class Counsel") respectfully request an award of fees and costs from the settlements with Defendants China Pharmaceutical Group Ltd. ("CPG"), Weisheng Pharmaceutical Company, Ltd. ("Weisheng"), and Northeast Pharmaceutical Group Co., Ltd. ("NEPG"). Class Counsel requests that 35% of the CPG/Weisheng settlement of $22.5 million ($7,875,000) and the $500,000 cash component of the NEPG settlement be awarded as fees, plus expenses. This request for a total of $8.375 million in fees, plus $1.59 million in expenses, is reasonable considering the circumstances of the case and well within the bounds established by the Second Circuit.

These are the second and third settlements in this case involving cash payments from the settling defendants. When combined with the Aland Nutraceutical Co. Ltd. ("Aland") settlement in 2012, Class Counsel has recovered $32 million for the Direct Purchaser Damages Class, representing 59% of the class's losses to vitamin C overcharges. The Injunction Class has agreements from three defendants to adhere to any injunction the Court orders. These are excellent results by any measure and were reached only by pressing the case through to trial.

These settlements are the result of years of work and significant financial risk to Class Counsel. Only after Class Counsel defeated multiple rounds of dispositive motions, conducted full discovery, and successfully certified the Damages and Injunction classes, did Aland settle the claims against it for $9.5 million in May 2012. The Court's October 23, 2012 order awarded Class Counsel $2.5 million in expenses and $1.2 million in attorneys' fees from the Aland settlement. ECF No. 560.

The settlement with CPG and Weisheng required just short of a full trial on the merits, and confers a great benefit on the Damages Class. The $22.5 million settlement represents 41.6% percent of the $54.1 million loss found by the jury. Unlike the jury verdict, which must

1

survive post-trial briefing and appeal, the funds from this settlement will be available to the class upon court approval, currently set for hearing on August 29, 2013. The NEPG settlement also provides the Injunction Class with substantial benefits, including the same injunctive relief and $500,000 to cover attorneys' fees and expenses. This is significant given that NEPG was only a defendant for injunction purposes, not for damages.

During the eight years since filing the original complaint, Class Counsel logged 28,207 hours valued at $14,053,992 using current hourly rates,[1] for which it has recovered only $1.2 million to date. *See* the accompanying declarations of James T. Southwick, Tanya S. Chutkan, and Michael D. Hausfeld. This fee request for 35 percent of the CPG/ Weisheng settlement fund ($7,875,000), plus the NEPG funds, for a total fee of $8.375 million, is within the percentage range awarded to counsel in successful common fund cases and still leaves Class Counsel with less than its lodestar. The following table breaks out the lodestar by law firm:

| Class Counsel Lodestar | | |
|---|---|---|
| Firm | Hours | Lodestar - Current Rates |
| Susman Godfrey LLP | 7,585.00 | $3,457,708.00 |
| Boies Schiller & Flexner LLP | 12,677.00 | $7,358,883.00 |
| Hausfeld LLP | 4,064.95 | $1,824,056.00 |
| Cohen Milstein Sellers & Toll PLLC | 3,880.50 | $1,413,345.00 |
| Totals | 28,207.45 | $14,053,992.00 |

An additional payment of the $500,000 cash component of the NEPG settlement is also warranted as fees for class counsel. Injunction Class Counsel have achieved significant success

---

[1] Second Circuit law expressly permits use of current hourly rates when calculating lodestar. *See, e.g., LeBlanc-Stemberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). Class Counsel's May 16, 2003 brief concerning fee-shifting under the Clayton Act used current hourly rates. Class Counsel's August 31, 2012 brief requesting fees from the Aland settlement used historic rates. Because the law expressly permits use of current rates, and for the sake of consistency with the more recent Clayton Act filing, this brief uses current rates. However, even using historic rates, Class Counsel's combined $11,842,073 lodestar would still be large enough to warrant the recovery Class Counsel requests.

in the settlements to date by securing the agreement of settling defendants to comply with an injunction ordered by the Court.  Injunction Class Counsel therefore have a claim for fees under the antitrust laws based on the contention that they are prevailing parties.  15 U.S.C. § 26; *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 476 F. Supp. 203, 207 (S.D.N.Y. 1979) (granting award of attorneys' fees to Clayton Act injunction plaintiff who received injunction and therefore "substantially prevailed").  The cash component of $500,000 is a reasonable fee request for such a claim.  Further, a payment of such fees advances the effort to win the ultimate injunction by compensating counsel for a fraction of the risk incurred in pursuing this case.

Each Class Counsel firm incurred direct expenses and contributed to a Litigation Fund that paid additional expenses incurred in this litigation.  During the eight years since filing the original complaint, Class Counsel spent $4,153,908.75 in cash to pay for case expenses, of which $1,591,358.94 has not been reimbursed. Class Counsel's unreimbursed individual and Litigation Fund expenses are broken down by category in the chart below:

| Class Counsel Expenses | | | | |
|---|---|---|---|---|
| | Litigation Fund 2 | Additional Expenses - BSF | Additional Expenses - HLLP | Additional Expenses - SG |
| Expert witness fees | $1,135,594.25 | | | $3,457.50 |
| Translation and review of documents | $18,629.74 | | | |
| Depositions | $10,585.77 | | | |
| Attorney travel | | $22,111.85 | $18,037.18 | $183,418.63 |
| Outside photocopy services | $59,898.70 | $984.49 | | $744.33 |
| Messenger and delivery services | $5,412.82 | $1,643.46 | $2,831.15 | $2,877.69 |
| In-house photocopying | | $1,994.40 | $5,925.24 | $7,032.20 |
| Research services | | $49,765.42 | $11,838.97 | $13,733.10 |
| Court Transcripts | $24,945.89 | | | $9,568.40 |
| Telephone and conference services | | $258.97 | $61.76 | $7.03 |
| Sub-totals | $1,255,067.17 | $76,758.59 | $38,694.30 | $220,838.88 |
| Total Expenses | $1,591,358.94 | | | |

3

Through the Court-approved notice program, class members have already been apprised that "Class Counsel will ask the Court for up to 35% of the $22.5 million Direct Purchaser Damages Class Settlement Fund . . . , plus expenses.  In addition, Class Counsel will ask the Court to approve the $500,000 that NEPG agreed to pay towards the fees and expenses of the Injunction Class."  Southwick Decl. Exhibit 4, Detailed Notice, ¶ 27.

Both the CPG/Weisheng and NEPG settlement agreements permit use of settlement funds to pay the cost of providing notice to the class and third-party administration.  Southwick Decl. Ex. 2, CPG and Weisheng Settlement Agreement ¶ 15; Southwick Decl. Ex. 3, NEPG Settlement Agreement ¶ 23.  Those notice and administration costs are not yet fully incurred and therefore are not included in this request.  Class Counsel will file a separate request in the future for payment of the notice and administration costs.

## Argument

### 1.

### The Requested Fee Award from the CPG and Weisheng Settlement Is Fair and Reasonable

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  As this Court noted in its October 23, 2012 order approving the award of fees and costs from the Aland settlement, "where a class action settlement creates a common fund the plaintiffs' attorneys 'are entitled to a reasonable fee—set by the court—to be taken from the fund.'" *In re Ashanti Goldfields Sec. Litig.*, No. 00-CV-717, 2005 WL 3050284, at *2 (E.D.N.Y. Nov. 15, 2005) (*quoting Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).  Class Counsel's request of 35% of the CPG and Weisheng settlement in fees is entirely reasonable under the circumstances of the case.

4

While the Second Circuit permits courts assessing a request for fees from a common fund to use either the percentage of the recovery method or the lodestar method, or both, the trend is to use the percentage of the recovery method with a lodestar cross-check. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2011 WL 2909162, at *5 (E.D.N.Y. July 15, 2011).   Regardless of which method is chosen, the Court must assess the fairness and reasonableness of the request in light of the *Goldberger* factors:

(1) the time and labor expended by counsel;

(2) the magnitude and complexities of the litigation;

(3) the risk of the litigation;

(4) the quality of representation;

(5) the requested fee in relation to the settlement; and

(6) public policy considerations.

*Wal-Mart*, 396 F.2d at 121; *Goldberger*, 209 F.3d at 50.   These factors are discussed in more detail below, and each favors the fee award requested by Class Counsel.

## a. <u>The Requested Fee Is Fair as a Percentage of the Settlement Fund and in Relation to Class Counsel's Lodestar</u>

When assessing requests for attorneys' fees from a common fund, courts in the Second Circuit often favor the percentage method, whereby the court "sets some percentage of the recovery as a fee."   *See Wal-Mart*, 396 F.3d at 121 ("The trend in this Circuit is toward the percentage method."); *Air Cargo*, 2011 WL 2909162, at *5 ("the trend . . . in the Second Circuit appears to be the utilization of the percentage method") (quoting *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)).

5

The Second Circuit also recognizes the lodestar method for determining the reasonableness of fees requested by counsel from a common fund. *Goldberger*, 209 F.3d at 47. Using the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.*

Courts in the Second Circuit often award attorneys' fees as a percentage of a common fund and use the hours submitted by counsel as a "cross-check" on the reasonableness of the requested percentage. *See Air Cargo*, 2011 WL 2909162, at *5. This Court followed that approach in approving Class Counsel's Aland settlement fee request, noting that the percentage of the fund sought was low (12%) and only "a fraction of its lodestar." ECF No. 560 at 18.

"Usually 50 percent of the fund is the upper limit of a reasonable fee award from a common fund, in order to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented." Conte & Newberg, Newberg on Class Actions, §14:6, p. 550-51 (4th ed. 2002); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26 2002) (citing cases and stating that "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.*, where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund"); *Maley v. Del Global Techs.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding 33.3% of an $11.5 million settlement fund as fees, plus $200,371 in expenses, and noting that "courts in this Circuit have awarded fees ranging from 15% to 50% of the settlement fund"); *In re Vitamins Antitrust Litig.*, No. 99-mc-197, 2001

6

WL 34312839, at *10 (D.D.C. July 16, 2001) (approving award of 34 percent of settlement fund as fees alone, before expenses were awarded).

This request for 35% of the CPG/Weisheng settlement fund as fees is within the range commonly granted, and the requested fee is still well below Class Counsel's lodestar.  As indicated by the table above, the total hours billed by the lawyers and paralegals at SG, BSF, HLLP, and CMHT is 28,207, with a value, using current hourly rates, of $14,053,992.  To date, only $1.2 million of that amount has been reimbursed from the prior Aland settlement.  The requested $7,875,000 from the CPG/Weisheng settlement fee is only 61% of Class Counsel's unreimbursed lodestar.  Courts often award fees that are a multiple of the lodestar; here, the request is only a fraction of the lodestar.  *Lloyd's*, 2002 WL 31663577, at *27 ("This Court approved a multiplier of approximately 3.97 in *In re Nasdaq*, 187 F.R.D. at 489, noting the Honorable Leonard B. Sand's observation that '[i]n recent years multipliers of between 3 and 4.5 have become common.'").

**b.** **The Requested Fee Is Fair and Reasonable In Light of the *Goldberger* Factors**

Beyond considering just the percentage of the recovery or the lodestar, courts assessing a request for fees from a common fund must consider whether the fee is reasonable in light of the following circumstances:

(1) the time and labor expended by counsel;

(2) the magnitude and complexities of litigation;

(3) the risk of the litigation;

(4) the quality of representation;

(5) the requested fee in relation to the settlement; and

(6) the public policy considerations.

7

*Goldberger*, 209 F.3d at 43.  "It bears emphasis that whether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances. What constitutes a reasonable fee is properly committed to the sound discretion of the district court."  *Goldberger*, 209 F.3d at 47.  This Court reviewed the *Goldberger* factors with regard to Class Counsel's Aland settlement fee request and found that "most of the *Goldberger* factors do not require much discussion.  The first, second, third, fourth, and sixth factors all support a finding that award of fees to counsel for the certified classes is reasonable."  ECF No. 560 at 16-18.  For the same reasons, applying the *Goldberger* factors to the instant fee request demonstrates that the request is reasonable under the circumstances.

     *1)*   *Time and Labor of Class Counsel*

Class Counsel spent more than 28,000 hours pursuing this litigation over the past 8 years. That work includes:

- Investigating the cartel before filing the complaint;

- Taking jurisdictional discovery and defeating several motions to dismiss for lack of personal jurisdiction;

- Filing voluminous oppositions to the Defendants' motions to dismiss the case for failure to state a claim.  These motions were supported by substantial filings from the Chinese Ministry of Commerce purporting to act as *amicus curiae*;

- Conducting full discovery on the merits from the manufacturing defendants, with multiple rounds of document requests, interrogatories, and associated discovery motions before Judge Orenstein;

- Preparing for, traveling to, and taking or defending 30 depositions, including 20 defense fact witnesses, many of whom testified in Chinese, in New York, Hong Kong, and several cities in between, including Chicago and San Francisco;

- Defending three class representative depositions;

- Reviewing more than 164,000 pages of documents produced by Defendants, many of which were in Chinese and required the use of various translation software, databases, retention of native Chinese speakers, and certified translators;

- Briefing and defeating multiple summary judgment motions, including a multi-defendant motion again supported by substantial filings from the Chinese Ministry of Commerce;

- Successfully moving to certify a class of direct purchasers of vitamin C for delivery in the United States and an injunction class;

- Negotiating arms'-length settlement with Aland, NEPG, CPG and Weisheng and moving for approval of the settlements;

- Retaining and working with a class notice consultant to develop and implement the extensive, Court-approved direct mail and publication program to provide notice to class members of the class certification order and the Aland settlement;

- Continuing to take merits discovery into 2013 from two defendants whose motions to dismiss were denied in 2012;

- Working with several expert witnesses and consulting firms to prepare reports concerning Chinese law and the World Trade Organization, calculating damages to class members, and analyzing Defendants' sales and determining which are subject to arbitration clauses;

- Deposing Defendants' expert economist and defending the deposition of Plaintiffs' expert economist;

- Deposing a former official of the Chamber of Commerce of Medicines and Health Products Importers and Exporters;

- Opposing and defeating dispositive motions from CPG, Weisheng, Hebei Welcome and North China Pharmaceutical Group Corp; and

- Preparing for and conducting a twelve-day trial, at the conclusion of which Plaintiffs were awarded full damages against defendants Hebei Welcome and North China Pharmaceutical Group Corp.

*See* Decls. of Southwick, Chutkan, and Hausfeld.

"[L]engthy and intensive" discovery, briefing and arguing dispositive motions, settlement discussions are all "significant" outlays of time and labor for class counsel in an antitrust matter. *Park v. The Thomson Corp.*, No. 05 CIV. 2931, 2008 WL 4684232, at *6 (S.D.N.Y. Oct. 22, 2008). Class Counsel spent years and thousands of hours moving this case to trial. The $7,875,000 fee requested is entirely reasonable in light of the time and labor expended by Class Counsel.

### 2)   *The Litigation's Complexities and Magnitude*

As the Court noted in its order approving the Aland settlement, "This action, like most antitrust actions, is complex. Counsel spent over 20,000 hours prosecuting this case over seven years, including engaging in complex discovery and motion practice." ECF No. 560 at 17. In addition to the complexity inherent to horizontal conspiracy claims, the Defendants presented, and continue to press, a novel set Chinese law issues that required Class Counsel to:

- Identify and analyze the structure and nature of several entities peculiar to China – the Chamber and its vitamin C subcommittee;

- Identify and analyze the regulatory regimes that applied to the manufacture and export of vitamin C in China as those structures changed over the roughly ten year period relevant to the case;

- Investigate and argue the scope and application of three U.S. legal doctrines – foreign sovereign compulsion, act of state, and international comity among nations – none of which typically drive the defense of antitrust price-fixing cases and therefore required additional research and argument; and

- Gather evidence and expert testimony concerning other actions of the Chinese government that challenge the view of Chinese law presented by the Defendants and the Ministry.

The considerable complexity of this class action warrants the award Class Counsel requests.

### 3) The Risks of the Litigation

Litigation risk is "perhaps the foremost factor to be considered in determining" an appropriate fee award. *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005). "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. As this Court previously noted, "counsel faced substantial risks in litigating this action, especially on a contingent fee basis." ECF No. 560 at 17. This case presented significantly greater risk than most cartel cases, all of which were present at its inception or were manifested very shortly thereafter.

- <u>First</u>, the case presented the unique defenses concerning Chinese law and whether the Defendants were compelled to act in violation of U.S. laws.

- <u>Second</u>, this case has proceeded solely as a private enforcement action. Class Counsel have not piggy-backed off a Department of Justice investigation or any investigation by foreign governments. There are no guilty pleas or troves of documents collected by federal prosecutors for Class Counsel to lean upon.

- <u>Third</u>, the case was necessarily one in which high costs would be incurred because the witnesses were largely in China and the documentary record from the Defendants would be in Chinese. Hence, the case presented itself as requiring potentially significant cost of travel to Asia for depositions and to translate discovery materials from the Chinese into English (even though ultimately Class Counsel succeeded in persuading the Court that some depositions should take place in New York). All of these factors presaged considerable labor and cost that would be entirely at risk throughout the case.

- <u>Fourth</u>, as with most class actions, the case is being handled on a pure contingent fee basis with no payment to Class Counsel without success for the class.

- <u>Fifth</u>, the case is a class action, which adds another layer of legal complexity, cost, and time. A review of the daily federal case digests reveals how frequently motions for class certification are denied.

- <u>Sixth</u>, as with many cartel claims, Class Counsel demonstrated not only that a conspiracy existed, but also that the conspiracy caused antitrust impact and damages to class members, measurable by reference to prices that would have existed "but for"

the conspiracy.  This is an expensive undertaking that has required nearly $2.8 million in expert witness costs to demonstrate.

- <u>Seventh</u>, even though Plaintiffs successfully navigated the pre-trial proceedings and obtained a jury finding of liability against Hebei Welcome and North China Pharmaceutical Group Corp. at trial, Class Counsel faces the risks associated with appeal.

Many of these factors are recognized by the courts as heightening the risk counsel faces. *See Goldberger*, 209 F.3d at 53-54 (including whether "groundbreaking" legal issues loomed, whether federal authorities had done the "spadework," and the risk of non-payment by defendants as appropriate factors in determining the level of risk counsel faced); *Wal-Mart,* 396 F.3d at 122 (lack of preceding government enforcement action increases risk of private suit).  In this case, Class Counsel has borne an extremely high level of risk, indeed, a level of risk that warrants a much higher award of fees than is being sought from the settlement fund.

### 4) *Quality of Representation*

The quality of representation is best measured by results achieved.  *See Goldberger*, 209 F.3d at 55.  Class Counsel's success thus far in this case on the many contested issues, culminating in the successful trial, played a significant role in bringing NEPG, CPG and Weisheng to the settlement table.

### 5) *Relationship Between the Requested Fees and the Settlement*

The fee sought on this motion is 35% of the settlement fund, which is within the Court's discretion to award because: (a) it is the amount stated in the notice sent to class members, from whom no objection has yet been received; and (b) is easily within the range noted by other courts as fair and reasonable.  *See, e.g., Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (finding award of attorneys' fees reasonable at 38% of common settlement fund); *Lloyd's*,

13

2002 WL 31663577, at *26 ("[I]n this district alone, there are scores of common fund cases where fees alone . . . were awarded in the range of 33-1/3% of the settlement fund"); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *10 (approving fee award of 34% of $365 million fund); *In re Allstar Inns Sec. Litig.*, No. CIV-A-88CIV9282 (PKL), 1991 WL 352491, at *3 (S.D.N.Y. Nov. 20, 1991) (approving award for 35% of settlement fund).

       6)   *Public Policy Considerations*

Public policy concerns favor the award of reasonable attorneys' fees in antitrust class actions. "In the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced, since the claims of individual litigants, when taken separately, often hardly justify the expense of litigation." *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.,* 481 F.2d 1045, 1050 (2d Cir. 1973); *see also Air Cargo*, 2011 WL 2909162, at *6 (public policy favors an adequate award but should not provide a windfall); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) (noting that it is necessary to provide appropriate financial incentives to well qualified plaintiffs' counsel); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ("The fees awarded must be reasonable, but they must also serve as an inducement for lawyers to make similar efforts in the future."), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005).

**2.**

**<u>Class Counsel Should Be Awarded the NEPG Settlement Funds as Fees</u>**

NEPG sold its vitamin C pursuant to contracts that included arbitration clauses. As a result, it was only a defendant in the claim brought by the Injunction Class, and the Injunction Class members are not entitled to a cash payment because they did not have a claim for damages. NEPG agreed to be fully bound by any injunction the Court issues in this case; thus, the NEPG settlement secures the full measure of relief sought by the Injunction Class. The $500,000 cash

14

component of the settlement is intended to cover the fees and costs incurred by Class Counsel in pursuing NEPG and securing the injunction.

In injunctive relief class actions, "courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). District courts applying the lodestar method "scrutinize[] the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47. In petitions for attorneys' fees for injunctive relief cases, "[t]he lodestar amount is used as a cross-check to determine the reasonableness of the agreed upon amount of attorneys' fees and costs." *Van Oss v. New York*, No. 10 CIV. 7524, 2012 WL 2550959, at *2 (S.D.N.Y. July 2, 2012).

The $500,000 cash component of the NEPG settlement is a negotiated amount that represents only 3.5 percent of Class Counsel's lodestar, a small fraction of the work performed to pursue this case and achieve this settlement. The large majority of the time represented by Class Counsel's lodestar cannot be differentiated between injunctive and damages classes because the same underlying causes of action applied to both classes. Thus, applying the entirety of the $500,000 NEPG settlement fund to Class Counsel's fees in this matter is appropriate.

### 3.

#### Class Counsel's Fee Request Is Reasonable in Relation to the Net Lodestar

The Court previously awarded Class Counsel $1.2 million in fees from the Aland settlement. Excluding the $1.2 million in Aland settlement fees from the lodestar, Class Counsel still has $12.8 million in unpaid attorneys' fees. Class Counsel's combined request of fees from the NEPG, CPG and Weisheng settlement funds is $8,375,000. This fee request only recovers 72% of Class Counsel's lodestar when combined with the fees awarded from the Aland settlement. As noted previously, courts often award fees that are a multiple of the lodestar.

15

*Lloyd's,* 2002 WL 31663577, at *27 ("This Court approved a multiplier of approximately 3.97 in *In re Nasdaq*, 187 F.R.D. at 489, noting the Honorable Leonard B. Sand's observation that '[i]n recent years multipliers of between 3 and 4.5 have become common.'").  Class Counsel's fee request reflects a fraction of the *net* lodestar including the Aland reimbursement, and thus includes no windfall to Class Counsel.  *See In re Blech Sec. Lit.*, No. 94 Civ. 7696, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (citing evidence that award would represent "negative" multiplier of lodestar as support for fee award).

**4.**

**Reimbursement of Requested Expenses Should Be Awarded**

Class Counsel also requests reimbursement of $1,591,358.94 in expenses.  These are expenses that were incurred after the award of expenses from the Aland settlement.  None of these expenditures has been repaid or recovered to date.

Generally, "[c]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses."  *In re Ashanti Goldfields Sec. Litig.,* No.  CV-00-717, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005).  Second Circuit courts grant expense requests in common fund cases "as a matter of course."  *In re Arakis Energy Com. Sec. Litig.*, No. 95 CV 3421, 2001 WL 1590512, at *17 n.l2 (E.D.N.Y. Oct. 31, 2001); *see also Air Cargo,* 2011 WL 2909162, at *7 (awarding reimbursement of $3,251,477.10 to class counsel without discussion of expenses); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318, 2001 WL 709262, at *7 (S.D.N.Y. June 22, 2001) (granting expenses in a securities class action in a one sentence statement); *In re Fine Host Corp. Sec. Litig*., No. MDL 1241, 2000 WL 33116538, at *6 (D. Conn. Nov. 8, 2008) (granting costs summarily); *Wallace v. Fox*, 7 F. Supp. 2d 132, 142 (D. Conn. 1998) (same).  Costs may be awarded even though the action is proceeding against other defendants.  *See In re Towers Fin. Corp. Noteholders Litig*., No. 93 Civ. 810, 1996 WL 393213,

16

at *2 (S.D.N.Y. Feb. 28, 1996) ("Regardless of what happens in the balance of the litigation, counsel's efforts have benefitted the class, and there is no reason that part of counsel's expenses should not be reimbursed now.").

As set forth in the declarations of Southwick, Chutkan, and Hausfeld, these expenses were necessary for the prosecution of these claims and are supported by the books and records of the Class Counsel firms as kept in the ordinary course of business. Class Counsel's principal unreimbursed payments are for expert witnesses ($1,139,051.75), attorney travel ($223,567.66), research services ($75,337.49), outside photocopy services ($61,627.52), and court transcripts ($34,514.29). Class Counsel's expert fees include payments for the expert report of Philip J. Innes, CPA, who analyzed vitamin C sales data from defendants JJPC and Weisheng to determine which sales were subject to arbitration clauses. Class Counsel's expert fees also comprise reimbursement to class damages expert B. Douglas Bernheim, Ph.D., for his report rebutting the opinions of Dr. Lawrence Wu, Defendants' damages expert. The expert witness charges include the cost of preparing for, and in the case of Dr. Bernheim, testifying at trial.

The majority of the attorney travel charge is for hotel accommodations at the New York Marriott Hotel at the Brooklyn Bridge, where the entire trial team from all three Class Counsel firms stayed during the trial, as well as hotel rooms for witnesses and conference rooms for trial preparation, witness preparation, and a deposition. Attorney travel also includes air travel to and from Hong Kong for depositions as well as flights and accommodations in New York and elsewhere for depositions, witness preparation and trial preparation.

The remaining large expenses—research services, outside photocopy services, and court transcripts—are typical of expenses incurred by trial teams preparing for and at trial. For

17

example, Class Counsel created trial demonstratives through an outside vendor and procured copies of all daily transcripts throughout the trial.

In sum, Class Counsel request reimbursement of all litigation costs and expenses incurred from mid-August 2012 through April 2013, totaling $1,591,358.94. These expenses were reasonable and necessary to this litigation, and have been expended for the direct benefit of the class, and should be reimbursed from the settlement fund. *See Visa Check*, 297 F. Supp. 2d at 525 (common practice to grant expense request).

**5.**

**Proportional Payment as CPG and Weisheng Fund the Settlement**

Paragraph 34(c) of the CPG and Weisheng Settlement Agreement states that "[t]he amount of attorneys' fees and expenses payable from the Settlement Fund at any particular point in time shall be no greater than the fraction of the $22,500,000 USD plus interest that [CPG and Weisheng] shall have paid into the Escrow Account as of the particular point in time that payment is to be made." *See* Southwick Decl. Ex. 2, CPG and Weisheng Settlement Agreement ¶ 34(c).

CPG paid $20 million into the escrow account by April 24, 2013; a second payment of $2.5 million is due by March 15, 2014. *See id.* ¶ 28. Therefore, to the extent the Court grants Class Counsel's petition for fees and expenses from the CPG/Weisheng settlement, the award should note that those fees and expenses can only be paid to Class Counsel in proportion to the escrow payments made by CPG and Weisheng. The order should reflect that when CPG and Weisheng make the second payment, Class Counsel may be paid the proportional amount of any award from the settlement fund without further application to the Court.

18

## Conclusion

For the reasons set forth herein, the requested attorneys' fees and expenses are fair and reasonable and should be paid from the settlement funds in accordance with the terms of the CPG, Weisheng and NEPG Settlement Agreements. The Court should award Class Counsel $500,000 in fees from the NEPG settlement fund, and $7,875,000 in fees and $1,591,358.94 in expenses from the CPG and Weisheng settlement fund.

Dated:   June 26, 2013                           Respectfully submitted,


/s/ William A. Isaacson                                    /s/ Michael D. Hausfeld
William A. Isaacson                                        Michael D. Hausfeld
Tanya Chutkan                                              Brian A. Ratner
Jennifer Milici                                            Brent W. Landau
BOIES, SCHILLER & FLEXNER LLP                              Melinda R. Coolidge
5301 Wisconsin Avenue, NW, Suite 800                       HAUSFELD LLP
Washington, DC  20015                                      1700 K Street N.W., Suite 650
Tel.:  (202) 237-2727                                      Washington, DC  20006
Fax:  (202) 237-6131                                       Tel.:  (202) 540-7200
                                                           Fax:  (202) 540-7201
/s/ Alanna Rutherford
Alanna Rutherford (AR-0497)                                /s/ James T. Southwick
BOIES, SCHILLER & FLEXNER LLP                              James T. Southwick
575 Lexington Avenue, 7th Floor                            Shawn L. Raymond
New York, New York 10022                                   Katherine H. Kunz
Tel:  (212) 446-2300                                       SUSMAN GODFREY L.L.P
Fax:  (212) 446-2350                                       1000 Louisiana, Suite 5100
                                                           Houston, TX  77002
                                                           Tel.:  (713) 651-9366
                                                           Fax:  (713) 654-6666


***Co-Lead Counsel for the Certified Direct Purchaser Damages Class and Injunction Class***