Phil A. Nelson, OSB No. 013650
*Admitted Pro Hac Vice*
**phil@slindenelson.com**
SLINDE NELSON STANFORD
111 SW Fifth Avenue, Suite 1740
Portland, OR 97204
Tel:  503-417-7777
Fax:  503-417-4250

*Of Attorneys for Claimants Great Earth Chemical, LLC, an Inactive Oregon-based limited liability company; Great Earth Chemical, a wholly-owned subsidiary; North American World Trade Group, Inc., an Oregon corporation*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST | MASTER FILE 06-MD-1738 (BMC)(JO) |
| This Document Relates To The Class Action Settlement In:  ANIMAL SCIENCE PRODUCTS, INC. and THE RANIS COMPANY, INC., | Case No. CV-05-453 |
| Plaintiffs, | **CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC** |
| -against- | |
| HEBEI WELCOME PHARMACEUTICAL CO., LTD., et al. | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

### I. INTRODUCTION

QualChem, LLC characterizes the class action proceeds ("Proceeds") at issue in this case as a windfall.  Given the fact that QualChem never paid a single dollar to the class action defendants and paid only $30,000 for certain assets that formerly belonged to Great Earth Chemicals, LLC in 2010, long after the class period in this case expired, QualChem is certainly correct in their characterization of what they seek—a windfall.

The same cannot be said for North American World Trade Group, Inc. ("NAWT"), who owned and operated Great Earth Chemicals, LLC for many years, including the entire class period at issue in this case.  Great Earth Chemicals, LLC bought $12,141,589.00 of product from the class action Defendants based on artificially inflated and illegal pricing.  It also

**Page 1 – CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

suffered serious damage to the value of its business caused by Defendants' conduct.   Receiving some portion of that money back can hardly be considered a windfall for NAWT.

The question as to whether QualChem gets its windfall or NAWT gets its partial refund involves the interpretation of an Oregon contract, which is explicitly governed by Oregon law, that memorialized a transaction between two Oregon residents involving an Oregon company. A federal lawsuit is pending in Oregon to interpret this contract.

What QualChem seeks to do in this motion is to short circuit that process.   In one short motion, QualChem seeks to effectively both transfer the Oregon case to New York to have it litigated inside a class action proceeding, and obtain summary judgment without a single shred of discovery changing hands and without having submitted any substantive record whatsoever.

The issue of Oregon law should be decided in an Oregon court.   To the extent that the Court is inclined to reach the substantive issue of Oregon law, it should be decided in NAWT's favor.

## II. FACTS

Between 2004 and 2010, Great Earth Chemical, LLC, an Oregon company, was in the business of importing and distributing vitamin C.[1] As part of that business, Great Earth Chemical, LLC purchased more than twelve million dollars of product from Defendants in this case at variously inflated and illegal prices.[2]

All of the membership units of Great Earth Chemical, LLC, were owned by NAWT, also an Oregon corporation, which owned, in addition to Great Earth Chemical, LLC, two other subsidiaries.[3]   By 2010, in part based on the wild fluctuations and bloated costs of doing business in vitamin C, NAWT had decided to focus on its other businesses.[4]

---

1 *Declaration of Cliff Chulos (Chulos Decl.) at ¶3, Exhibit F.*
2 *Chulos Decl. at ¶4*
3 Documents reflecting the ownership structure of NAWT and Great Earth Chemicals, LLC are attached as exhibits C, D, and E to the *Chulos Decl.* at ¶2
4 *Chulos Decl. at ¶4*

**Page 2 – CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

In June 2010, NAWT sold certain of Great Earth Chemical's assets to its remaining manager, Ruth Yien, also an Oregon resident, for $34,000.[5]  Although neither party was aware of the possibility of a class action claim at the time, the damage caused by defendants' unlawful conduct was built into the low sale price contained in the APA.[6]  The agreement, an Asset Purchase Agreement ("Oregon APA") was executed in Oregon, between two Oregon residents and it contained the following provision:  ***This Agreement shall be governed by and construed in accordance with the laws of the State of Oregon***.   (emphasis added.)[7]

It bears emphasizing that the structure of the transaction was an asset sale, not a stock sale.   Even at that, the Oregon APA did not transfer all of the assets of Great Earth Chemicals, LLC to Ruth Yien.   Yien only desired to purchase certain assets of the company so that she could operate it on a go-forward basis; she did not want to purchase any of the legacy issues that might have existed.[8]  Recital A, the first substantive paragraph of the Oregon APA, opens: "Seller desires to sell ***the assets described herein*** * * *."[9]  (emphasis added.)   The purchased assets are defined as ***"all assets used in operation of the Business***, *tangible or intangible, all as detailed in Exhibit 'A', but shall not include any Excluded Assets identified in Paragraph 2.2.***"***[10] (emphasis added.)

The included assets on Exhibit A are those items that one would expect to see on a list of a company's operating assets *going forward*, including, among a few other items, furniture, phones, signage, customer lists, databases, supplier lists and the right to use the company website, logo and marks.[11]

---

5   *Chulos Decl. at ¶5, Exhibit A.*
6   *Id.*
7   *Id.*
8   *Id.*
9   *Id.*
10  *Id.*
11   The company Great Earth Chemicals, LLC remains an Oregon company (an inactive one), owned by NAWT, even though the rights to do business as Great Earth Chemicals were transferred.   Any confusion surrounding the naming rights and entity status is a red herring.   A change in corporate nomenclature does not affect the identity

**Page 3 – CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

The excluded assets are all of the company legacy items, good and bad, including, among other things, "cash on hand or on deposit in Seller's bank account, *accounts receivables or accounts payable of Seller*, payroll obligations or other liabilities of seller."[12]   (emphasis added.)

Unbeknownst to Great Earth Chemical, LLC and North American, Yien apparently had in place an agreement to flip the assets she had just purchased to Diversity Suppliers, LLC, an Illinois company, which would later become QualChem, LLC—the current counter-claimant to the settlement proceeds.   As counsel for QualChem concedes, the form of Asset Purchase Agreement that flipped the purchased assets from Yien to Diversity on June 2, 2010 (the day after the execution of the Oregon APA) is substantively identical to the Oregon APA.[13]

### III. ANALYSIS

**A.   The Interpretation of the Oregon APA is Better Left to an Oregon Court.**

The entitlement to the class action proceeds turns entirely on the interpretation of an Oregon contract.   Yien could have transferred to Diversity Suppliers, and Diversity Suppliers could have transferred to QualChem, no more than Yien originally purchased from Great Earth Chemicals in the Oregon APA.   The Oregon APA controls and QualChem does not appear to be arguing otherwise.

The Oregon APA raises issues related to Oregon law.   To the extent that the parties need discovery, motion practice and ultimately a trial, those activities should be conducted in Oregon, not inside a class action in New York. Substantively and procedurally, this case is better left to a

---

of a corporation.  *See Trustees of Dartmouth College v. Woodward,* 17 U.S. 518, 604, 4 L.Ed. 629, 4 Wheat. 518 (1819) ("It is well settled, that a mere change of the name of a corporation will not affect its identity."); 6 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 2456 at 264-5 (rev. perm. ed. 1989) ("The corporation, upon [a] change in its name, is in no sense a new corporation, nor the successor of the original one, but remains and continues to be the original corporation. It is the same corporation with a different name, and its character is in no respect changed."). The two claimants are NAWT, the owner of Great Earth Chemicals, LLC and QualChem, the assignee of certain of Great Earth Chemicals, LLC assets, including the right to use its mark and logo.

12  *Chulos Decl. at ¶5, Exhibit A.*
13  Chulos Decl. at ¶6, Exhibit B.

**Page 4 –  CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

court familiar with Oregon law.

**B.      Procedural and Jurisdictional Barriers to Adjudicating Claims Under the Oregon APA in the Present Motion.**

Even if the dispute under the Oregon APA could properly be resolved inside a New York class action, QualChem has the procedure to get it here all wrong.   At its core, QualChem's motion is an improper and transparent attempt (1) to accomplish a *de facto* transfer the claim(s) pending before the United States District Court for the District of Oregon to the Eastern District of New York, (2) to obtain summary judgment on said claim(s), absent any discovery or observing the local rules to maintaining such a motion, and (3) to adjudicate this matter in the absence of any formal complaint, answer, or other pleadings that adequately invokes this Court's jurisdiction and/or frames the issues over these separate state law matters.   Although the analysis overlaps, each of these matters is addressed separately below.

**(i)      QualChem has not properly sought to transfer the claim(s) under the Oregon APA to the Eastern District of New York.**

To the extent QualChem is seeking to transfer the Oregon litigation to the Eastern District of New York, it has failed to follow any of the established procedures to do so under applicable federal law. *See* 28 U.S.C. § 1407; *In re: Bear Creek Technologies, Inc.,* ('722) Patent Litigation, 858 F.Supp.2d 1375, 1377(U.S. Jud. Pan. Mult. Lit., 2012) (detailing procedures applicable to transferring cases under the Multi-District Litigation statute).

Nor is a transfer of venue properly before this Court. *Eagle Auto Mall Corp. v. Chrysler Group, LLC,* 760 F.Supp.2d 421, 424 (S.D.N.Y., 2011) ("Section 1404(a) allows for transfer for the convenience of the witnesses or parties, and in the interests of justice. ***The burden on such a motion is on the party seeking transfer***.") (emphasis supplied; citations omitted.)   Further, the "moving party must demonstrate through clear and convincing evidence 'that the balance of convenience favors the defendant's choice.'" *Walker v. Jon Renau Collection, Inc.,* 423 F.Supp.2d 115 (S.D.N.Y., 2005).   Of course, any such motion must necessarily originate in the

**Page 5 –  CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

United States District Court for the District of Oregon, the transferring Court. *Id.*

As QualChem has neither invoked nor satisfied any of these procedures, the Court should reject any tacit attempts by QualChem to effectively transfer the Oregon litigation to the Eastern District of New York.

    **(ii)**    **QualChem is Improperly Seeking Summary Judgment Regarding the Claims Arising Under The Oregon APA.**

Even if a unilateral transfer of the case to this court via a bare bones motion were appropriate, the immediate entry of summary judgment is not.  When viewed as motion for summary judgment, it is evident that QualChem has failed to satisfy the local rules and requirements to present such a motion to this Court. Local Civil Rule 56.1(a) ("Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.").

A cursory review of QualChem's motion and submissions reveals that it is almost exclusively based on a series of inadmissible assertions and self-serving argument, and not "supported by citations to specific evidence of the kind required by Fed. R. Civ. P. 56(c)." *See* Committee Note to Local Civil Rule 56.1. Accordingly, the Court should deny QualChem's present motion, in total.

    **(iii)**    **Neither the Settlement Agreement Nor Claims Form Establish the Jurisdiction Of This Court Over the Claim(s) Arising Out of the Oregon APA.**

In an effort to, sidestep all of the procedural/due process barriers discussed above; QualChem relies on an overly simplistic misreading of the settlement agreement at issue. Specifically, the Settlement Agreement cited by QualChem provides, in relevant part:

> "44.    The United States District Court for the Eastern District of New York shall retain jurisdiction over the implementation, enforcement, and performance of this

**Page 6 –  CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement of the Settling Parties.  This Agreement shall be construed according to the laws of the State of New York without regard to its choice of law or conflict of laws principles."

(Dkt. No.470-3)

The matters now under review are, in the first instance, squarely grounded in the terms/issues attendant to the Oregon APA, as defined under Oregon law, and which govern what assets were sold, purchased, and retained among the parties. These claims and issues manifestly do not "arise out of or relate to" the Settlement Agreement resolving the substantive class action claims in the underlying litigation to which it relates. *In re American Exp. Financial Advisors Securities Litigation*, 672 F.3d 113 (2nd Cir.2011) ("It is elementary that a settlement agreement cannot release claims that the parties were not authorized to release.").

Respectfully, there is no principled basis to invoke this Court's jurisdiction – over the Oregon state law claims – originating from the approval/oversight of a Settlement Agreement under Fed.R.Civ.P. 23 alone. *See Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 70 (2d Cir.1990) ("The Rules do not provide an independent ground for subject matter jurisdiction over an action for which there is no other basis for jurisdiction."), *cert. denied*, 505 U.S. 1222, 112 S. Ct. 3036, 120 L.Ed.2d 905 (1992).

Nor does the retention of jurisdiction over that *Settlement Agreement* work to confer an unbounded jurisdiction over matters that predate and/or exist outside its express terms. *See Shanghai China Garments J & Y Import & Export Corp. v. Brooks Fitch Apparel Group,* 1499378 *2-3 (S.D.N.Y.,2013) ("'[A] federal court lacks jurisdiction to enforce a settlement agreement in a closed case in the absence of an independent basis for jurisdiction or a dismissal order specifically reserving such authority.'") (citations omitted).  Although subject matter jurisdiction may exist as an abstract proposition, it cannot be invoked through a motion alone. *Id.* at *3 ("Even if there were an independent basis of jurisdiction—diversity, for example—the

**Page 7 –  CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

plaintiff could not simply file a motion for enforcement in this closed case, but would be required to commence a new action.").

In the final analysis, any adjudication of the present issues may not occur by simply filing a motion with this Court.   Rather, a separate and independent lawsuit, initiated and framed by proper pleadings – *i.e.,* Complaint, Answer, *etc.* – is required to invoke this Court's subject matter jurisdiction over the matters at issue in this separate litigation.[14]   Accordingly, QualChem's present motion should be denied.

## C.   To The Extent the Court Reaches the Substantive Issues in This Case, the Class Action Proceeds Should Go to NAWT

Oregon follows the three-step process of contract interpretation laid out by the Oregon Supreme Court in the seminal case of *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997). Step one is to determine whether there is any ambiguity on the face of the contract.   If there is not, the court interprets the contract consistent with its unambiguous, plain meaning.[15]   If the court finds an ambiguity, it moves to step two and analyzes extrinsic evidence of the intent of the contracting parties.[16]   If the issue remains unresolved, the court moves to step three and resorts to maxims of contract construction.[17]

Here, although the asset at issue – the litigation proceeds related to pre-existing but unknown claims – is not specifically identified in the Oregon APA, the document is nonetheless unambiguous on its face.   Pursuant to the Oregon APA, Yien purchased certain specific

---

14  Given that litigation is already initiated in Oregon, that forum is presumed to be the favored jurisdiction to resolve these questions arising under Oregon law. *PPC Broadband, Inc. v. PerfectVision Mfg., Inc.,* 2013 WL 3229620 (N.D.N.Y.,2013) ("The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions."); *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM*, 666 F.Supp.2d 366, 369 (S.D.N.Y.,2009) ("There is a general presumption that 'where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.'") (citations omitted).

15  *Id.*
16  *Id.*
17  *Id.*

**Page 8 –  CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

enumerated operating assets of the company.   The assets at issue here were not enumerated. What was purchased were "operating assets."   Pre-existing, contingent and unknown legal claims cannot be properly considered an "operating asset."   The right to the class action Proceeds was simply not a purchased asset.

This interpretation is supported by reference to the explicitly excluded assets in the Oregon APA.   Specifically excluded are all accounts receivable and accounts payable.   The defendants in the underlying class action were NAWT / Great Earth Chemicals, LLC's suppliers during the class period.   A payment to a supplier is a payment on an account payable.   A partial refund of those payments, which is exactly what the class action proceeds represent, is in the nature of a refund on an account payable.

Great Earth's only attempt to create an ambiguity on the face of the document — although its surface-level analysis does not label it as such — is by reference to the accounting treatment of the settlement proceeds upon receipt.   This, of course, has almost nothing to do with how the contingent unknown settlement proceeds from unknown legal claims should be characterized *at the time of sale*.   Whether or not the "gain contingency" is income in the year of receipt or treated in some other fashion is, frankly, irrelevant.   It might also simply be incorrect, but that is a matter of expert testimony, at best; a whole area of inquiry QualChem is seeking to avoid with this motion.   In any event, to the extent it has some bearing on how one should characterize the then-unknown settlement proceeds at the time of sale, QualChem has failed to make that connection.

Even if this Court determined that the Oregon APA was ambiguous as to whether the right to settlement proceeds were transferred in the Oregon APA, the only relevant extrinsic evidence of the parties' intent points to a single conclusion.   Both Cliff Chulos, the NAWT owner who negotiated and executed the Oregon APA, and Ruth Yien have given sworn declarations that they never intended to transfer any legal rights or obligations or rights to then

unknown legal claims.   There is no dispute as between the parties to the only agreement that matters.[18]

Whether it is at step one or step two, the right to the settlement proceeds remained in the possession of NAWT / Great Earth Chemicals, LLC after the execution of the Oregon APA.   To the extent that the Court is inclined to resolve this issue of Oregon law, it should resolve it in NAWT's favor.

## IV. CONCLUSION

NAWT spent over twelve million dollars buying vitamin C from Defendants in this case. Of course NAWT could have sold the rights to receive a partial refund on those payments when it sold certain assets to Ruth Yien for $32,000, but it did not.   QualChem's effort to receive a massive windfall it never paid for – either with product or through a reasonable purchase price of the relevant assets – is inappropriate.


DATED:   January 3, 2014.                    **SLINDE NELSON STANFORD**


                                             By:_  /s/   Phil J. Nelson_____
                                                Phil J. Nelson, OSB No. 013650
                                                *Admitted Pro Hac Vice*
                                                phil@slindenelson.com

*Of Attorneys for Claimants Great Earth Chemical, LLC, an Inactive Oregon-based limited liability company; Great Earth Chemical, a wholly-owned subsidiary; North American World Trade Group, Inc., an Oregon corporation*

---

18 QualChem makes the odd and baseless assertion in its briefing that Yien is somehow working or conspiring with NAWT in connection with the currently pending claim.   That is false, and there is not a shred of evidence in the record to support it.

**Page 10 –  CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **CLAIMANT GREAT EARTH CHEMICAL, LLC, ET AL'S OPPOSITION TO QUALCHEM, LLC'S MOTION FOR DISTRIBUTION OF CLASS ACTION PROCEEDS TO QUALCHEM, LLC** on:

| | |
|---|---|
| Mr. Douglas Gross | Mr. Dean Eyler |
| Mr. Zachary Grendi | Mr. Nicholas Callahan |
| Hofheimer Gartlir & Gross, LLP | Gray Plant Mooty |
| 530 Fifth Avenue | 500 IDS Center |
| New York, NY 10036 | 80 South Eighth Street |
| dgross@hgg.com | Minneapolis, MN 55402 |
| zgrendi@hgg.com | dean.eyler@gpmlaw.com |
| | nicholas.callahan@gpmlaw.com |

*Counsel for QualChem, LLC dba Great Earth Chemical*

by the following indicated method(s):

☐    by **faxing** full, true, and correct copies thereof to said attorney to the fax number noted above, which is the last known fax number for said attorney, on the date set forth below.

☐    by **emailing** full, true, and correct copies thereof to said attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☒    by notice of electronic filing using the CM/ECF system (LR 100.7(a)(2)).

☐    by causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address(es) listed above on the date set forth below.

DATED:   January 3, 2014.          SLINDE NELSON STANFORD

By:  /s/  Phil J. Nelson
    Phil J. Nelson, OSB No. 013650
    *Admitted Pro Hac Vice*
    phil@slindenelson.com

*Of Attorneys for Claimants Great Earth Chemical, LLC, an Inactive Oregon-based limited liability company; Great Earth Chemical, a wholly-owned subsidiary; North American World Trade Group, Inc., an Oregon corporation*

**Page 1 – CERTIFICATE OF SERVICE**