Douglas Gross
Zachary B. Grendi
HOFHEIMER GARTLIR & GROSS, LLP
530 Fifth Avenue
New York, New York 10036
Telephone: 212-818-9000
Facsimile: 212-897-4980
Email: dgross@hgg.com
Email: zgrendi@hgg.com

Dean C. Eyler
Nicholas Callahan
Gray Plant Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  612-632-3000
Facsimile:  612 632-4444
Email: Dean.Eyler@gpmlaw.com
Email: Nicholas.Callahan@gpmlaw.com
(Prohacvice application in process)

*Counsel for Claimant QualChem, LLC d/b/a Great Earth Chemical*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

| | |
|---|---|
| IN RE: VITAMIN C ANTITRUST | MASTER FILE 06-MD-1738 (BMC)(JO) |
| This Document Relates To The Class Action Settlement In: ANIMAL SCIENCE PRODUCTS, INC., et al., | CV-05-453 |
| Plaintiffs, | **REPLY MEMORANDUM OF LAW** |
| -against- | |
| HEBEI WELCOME PHARMACEUTICAL CO., LTD., et al | |
| Defendants. | |

------------------------------------------------------------

1

{46064/001/01344544:1-ZBG}

QualChem, LLC d/b/a Great Earth Chemical respectfully submits this reply memorandum in support of its motion requesting that certain settlement proceeds that have been set aside by the settlement administrator be awarded to it.

In its Opposition, North American World Trade Group, Inc. ("NAWT"), the party with the competing claim for the class action settlement proceeds, argues this Court does not have jurisdiction to resolve which party should receive the class action settlement proceeds. In making this argument, however, NAWT fails to address the fact that NAWT submitted a claim form to this Court in which NAWT expressly agreed to submit to its jurisdiction. Its silence on this fact should be deemed a concession that this Court has jurisdiction over this dispute between two competing claimants seeking the same class action settlement proceeds.

NAWT's arguments regarding whether the claim to the class action proceeds were sold should also be rejected. NAWT implicitly concedes that the claim form submitted by QualChem was fraudulently withdrawn. Further, the reason why NAWT cannot have confidence in its purported interpretation of the relevant asset purchase agreement is because that agreement states that the company was to be dissolved thirty days after the transaction closed, and therefore under the agreement all assets were intended to be sold, unless specifically excluded. NAWT's argument that a claim to class action proceeds should be considered an "account payable" or "account receivable" would be contrary to the general and technical definitions of those terms, and therefore is not an "excluded asset" under the purchase agreement: Thus, the claim to the class action proceeds were sold and the class action settlement proceeds should be distributed to QualChem.

## II.     ARGUMENT

### A.     NAWT Does Not Dispute The Facts Alleged in QualChem's Memorandum

NAWT challenges QualChem's legal arguments but does not contest any of the facts alleged in QualChem's original memorandum. Most notably, NAWT does not challenge the fact that Ms. Yien secretly withdrew QualChem's claim to the class action settlement proceeds. NAWT also states that it submitted to the class action settlement administrator an affidavit from Cliff Chulos and Ruth Yien about their intent when they executed the first asset purchase agreement ("APA #1"), and relies on this fact to make part of its argument, but still refuses to provide QualChem with a copy of those affidavits. (Opposition at 9-10).

### B.     NAWT Cites No Applicable Authority In Support of Its Argument That This Court Does Not Have Jurisdiction

Each of NAWT's arguments that this Court does not have jurisdiction are easily refuted. First, NAWT expressly consented to the jurisdiction of this Court regarding its claim to the settlement proceeds. Tellingly, NAWT does not even attempt to explain in its Opposition how its express consent to the jurisdiction of this Court in its claim form does not subject it to the jurisdiction of this court for its contested claim to the class action settlement proceeds. Instead, NAWT only addresses whether the settlement agreement in this case that provided this Court with jurisdiction over the settlement proceeds at issue is a second, independent basis on which this Court has jurisdiction over the contested claims. NAWT relies on inapplicable case law for its argument that the settlement agreement does not provide this Court with jurisdiction. In the *Shanghai China Garments* case cited by NAWT, the defendant attempted to file a motion to compel compliance with a settlement agreement between the parties after the case had been dismissed. 2013 U.S. Dist. LEXIS 52460 (S.D.N.Y. Apr. 11, 2013). This action is still pending. The other case cited by NAWT, *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir.

{46064/001/01344544:1-ZBG}

N.Y. 1990), is similarly unavailing. In *Creswell*, the court ruled that a plaintiff suing the opposing party's law firm for allegedly committing discovery violations cannot create federal subject matter jurisdiction on the basis that the law firm violated the federal rules of civil procedure. Unlike the parties in those cases that were contesting jurisdiction, NAWT expressly consented to the jurisdiction of this Court regarding the money at issue, and this Court has jurisdiction over the money sought by both parties.

Second, QualChem is not seeking to have the case in Oregon transferred to this Court and therefore neither 28 U.S.C. § 1407, which governs the consolidation of multi-district litigation, nor the rules regarding a motion to transfer venue, are applicable. This case predates the Oregon action and QualChem has simply followed the instructions of class counsel and the class action settlement administrator to file a motion with this Court to resolve which party should receive the proceeds. QualChem has moved to dismiss or stay that Oregon action, on the ground that the matter should be resolved by this Court, which has presided over the class action case, the settlement, the claims submission process, and the payment of the proceeds at issue. Moreover, NAWT is wrong to argue that when ancillary issues arise in class action cases that those disputes should be decided all over the country in federal or state courts other than the court presiding over the case. Such a result would be grossly inefficient and encourage unnecessary venue battles.

Third, this is not a motion for summary judgment and therefore NAWT's argument that QualChem must have complied with Local Civil Rule 56.1(a) that requires a numbered statement of the facts is wrong. But even if that assertion were correct, the rule provides the Court with discretion over whether to consider a motion for summary judgment that is not in compliance with that rule. Moreover, NAWT does not appear to contest any of the limited facts alleged by

QualChem, and so it is unclear why NAWT would even be concerned with the rule. Additionally, in this case, where both parties argue the contract is unambiguous, the Court is being asked to interpret the contract, which is a question of law, not fact.

C. **This Court Should Choose To Exercise Its Jurisdiction To Resolve This Dispute**

This Court should choose to exercise its jurisdiction and resolve the matter. NAWT's attempt to gain an advantage over QualChem, an Illinois corporation, by trying to move the litigation from this Court, which has jurisdiction over the parties and the proceeds, and where the class action settlement administrator and class counsel directed the parties to file a motion if they could not resolve their dispute, would reward such behavior and be unnecessary.

Further, this Court is perfectly capable of interpreting a contract that is governed by Oregon law, which, like New York law, requires the court to determine whether the contract provisions are ambiguous as a matter of law, and if not, then to construe the terms of the contract as a matter of law. *Yogman v. Parrott*, 325 Ore. 358, 361 (Or. 1997). But even if this Court were to find that the contract is ambiguous and required limited discovery to determine the parties' actual intent at the time of signing APA #1, that discovery could be conducted under the jurisdiction of this Court.

D. **The Asset Purchase Agreement Unambiguously Sold The Claim To The Class Action Settlement Proceeds Because The Class Action Claim Is Not One Of The "Excluded Assets" Listed**

QualChem agrees with NAWT that the applicable test for contract interpretation requires the Court to first determine whether the terms of the contract are ambiguous, and if not, interpret the contract without considering parol evidence. (Opposition at 8, citing *Yogman v. Parrott*, 325 Ore. 358 (Or. 1997)). APA #1 is unambiguous and therefore requires no parol evidence for its

5

interpretation. Contrary to NAWT's argument, however, APA #1 unambiguously sold the claim to the class action settlement proceeds.

As explained by the Oregon Supreme Court, to interpret each provision of a contract, "the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question… The meaning of disputed text in that context is then determined." *Yogman*, 325 Ore. at 361. Here, APA #1 required the seller, Great Earth Chemical, LLC, to formally dissolve within thirty days after the transaction by filing Articles of Dissolution with the Oregon Secretary of State. (*See* Affidavit of Kevin Martin, **Exhibit 1**, APA #1 at § 3.3). Because of this, NAWT's focus on the phrase "operations of the business" to interpret what assets were sold is misguided. By requiring the company to dissolve shortly after the sale, APA #1 demonstrates a clear intent that all of the assets of the company be sold that were not explicitly excluded.

The issue, therefore, is whether the claim to the class action settlement proceeds falls within one of the "Excluded Assets" identified in APA #1. In its Opposition, the only "excluded asset" that NAWT argues would include the pertinent class action claim is "accounts payable." (Opposition at 9). In *Yogman*, the case cited by NAWT for contract interpretation under Oregon law, that court used Merriam-Webster's dictionary to provide the meaning of the words of the disputed language in that contract. In the same dictionary used by the Oregon Supreme Court in the *Yogman* case, "accounts payable" is defined as "the balance due to a creditor on a current account." (In *Merriam-Webster.com*. Retrieved January 9, 2014, from http://www.merriam-webster.com/dictionary/accountspayable). A legal claim against a supplier for conspiring with its competitors to fix prices is not "a balance due to a creditor on a current account." Not only are the roles reversed about which party is entitled to payment, but a legal claim for price fixing

cannot be considered a 'balance due on an account." The same would be true for an "account receivable," defined by Merriam-Webster as a "balance due from a debtor on a current account."

Moreover, as set forth on page 9 of QualChem's original memorandum, not only would this claim not fall within the general definitions of "account payable" and "account receivable," it would not fall within the official definition that governs accountants who prepare and audit financial statements. *See* Memorandum at 9, citing relevant Financial Accounting Standards Board standards.

In short, APA #1 is not ambiguous regarding whether an asset, the existence of which was unknown to the parties at the time of signing, and which does not fall within one of the "excluded assets" listed in the contract, was sold. It was. Therefore, QualChem owns the claim to the class action proceeds relating to Great Earth Chemical, LLC's purchases of vitamin C.

### III. CONCLUSION

For the foregoing reasons, QualChem, LLC requests this Court order that the class action settlement proceeds relating to Great Earth Chemical's qualifying purchases be distributed to QualChem, LLC.

Dated: January 10, 2013

                                                                    HOFHEIMER GARTLIR & GROSS, LLP

                                                                    By  *s/ Zachary Grendi*
                                                                    Douglas Gross
                                                                    Zachary B. Grendi
                                                                    530 Fifth Avenue
                                                                    New York, New York  10036
                                                                    Telephone: 212-818-9000
                                                                    Facsimile: 212-897-4980
                                                                    Email: dgross@hgg.com
                                                                    Email: zgrendi@hgg.com

                                                                    GRAY, PLANT, MOOTY,
                                                                    MOOTY & BENNETT, P.A.

        Dean Eyler (Minn. ID 267491)(*pro hac vice motion pending*)
Nicholas Callahan (Minn. ID 392656)(*pro hac vice motion pending*)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:  (612) 632-3000
Facsimile:  (612) 632-4444

*Attorneys for QualChem, LLC d/b/a Great Earth Chemical*