UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | **MASTER FILE: 06-MD-1738** |
| This Document Relates To: | SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT |
| ALL INDIRECT-PURCHASER ACTIONS | JURY TRIAL DEMAND |

## SECOND AMENDED CONSOLIDATED COMPLAINT

Plaintiffs, Richard Keane, Dennis Audette, Linda Philion, Viviane Melo, Laurel Rose, Linda Kohlenberg, Christine Poon, Melissa Harris, Timothy Purdy, Joan Clark, Ronald Kaufman, Jennifer Clark, Mark Kuchta, Kathleen Davis, Heather Rosene, Cory Rosene, Kimberly Bischler, and Bernadette Iorio, through their attorneys, bring this action on behalf of themselves and all others similarly situated in Arizona, California, the District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin ("the Class Jurisdictions") for damages against Hebei Welcome Pharmaceutical Co. Ltd., North China Pharmaceutical Group Corp.,[1] Weisheng Pharmaceutical Co. Ltd., and China Pharmaceutical Group Ltd. (collectively "Defendants"). Plaintiffs, upon knowledge, information and belief, allege the following:

## INTRODUCTION

1.      This case arises out of a long-running conspiracy extending from at least December 1, 2001 through at least June 30, 2006 (the "Class Period"), among Defendants and their co-conspirators with the purpose and effect of fixing prices, creating supply restraints for

---

[1] Plaintiffs bring claims against North China Pharmaceutical Group Corp. only under Massachusetts law.

vitamin C to be exported to the United States and worldwide, and committing other unlawful practices designed to inflate the prices of bulk Vitamin C ("Vitamin C") sold indirectly to Plaintiffs and other consumers across the United States and in each Class Jurisdiction.

2.      The Classes consist of end-user consumers and businesses that indirectly purchased Vitamin C Products for use or consumption during the Class Period. "Vitamin C Products" means capsules or tablets containing Vitamin C used for pharmacological purposes.

3.      Defendants' and their co-conspirators formed an international cartel to illegally restrict competition in the Vitamin C market, targeting and severely burdening consumers in the various Class Jurisdictions.  The conspiracy has affected hundreds of millions of dollars of commerce for products commonly found in households throughout the Class Jurisdictions, raising the cost of Vitamin C and Vitamin C Products to Plaintiffs and consumers in the Class Jurisdictions.

4.      The charged combination, and conspiracy consists of agreements, understandings, and actions by Defendants and their co-conspirators. The acts in furtherance of the conspiracy by Defendants and their co-conspirators have included, upon information and belief, the following wrongful conduct and horizontal agreements:

   a.      Participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to the prices at which Vitamin C should be sold;

   b.      Participating in meetings and conversations in which Defendants and their co-conspirators discussed and agreed to restrict their exports of Vitamin C in order to create a shortage of supply in the market; and

   c.      Facilitating, effectuating, implementing, monitoring, and concealing the contract, combination and conspiracy to raise the prices of Vitamin C sold by Defendants.

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of at least one Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000, exclusive of interest and costs.

6.      Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) because, during the Class Period, one or more of the Defendants resided, transacted business, was found, and/or had agents in this District.

7.      Each Defendant has: (a) transacted business in the Class Jurisdictions; (b) directly or indirectly sold or marketed substantial quantities of Vitamin C in each Class Jurisdiction; (c) had substantial aggregate contacts with the United States and each Class Jurisdiction; and/or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of causing injury to, persons and entities located in each Class Jurisdiction, including this District.

## TRADE AND COMMERCE

8.      During the Class Period, Defendants and their co-conspirators' activities caused direct, substantial and reasonably foreseeable anticompetitive effects on commerce within the United States and each Class Jurisdiction.

9.      Defendants sold Vitamin C through the means of interstate commerce in a continuous and uninterrupted flow to customers in each Class Jurisdiction. Defendants knew the nature of the markets and the uses for their products, and that they would receive the benefits of their anticompetitive conduct from consumers in each Class Jurisdiction.

10.     Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

a.     transacted business in the Class Jurisdictions;

b.     contracted to supply or obtain services or goods in the Class Jurisdictions;

c.     intentionally availed themselves to the benefits of doing business in the Class Jurisdictions;

d.     produced, promoted, sold, marketed, and/or distributed their products or service in the Class Jurisdictions and, thereby, have purposefully profited from their access to markets in the Class Jurisdictions;

e.     caused tortious damage by act or omission in the Class Jurisdictions;

f.     caused tortious damage in the Class Jurisdictions by acts or omissions committed outside such jurisdiction while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

g.     committed acts and omissions which Defendants knew or should have known would cause damage (and, in fact, did cause damage) in the Class Jurisdictions, to Plaintiffs and other consumers in the Class Jurisdictions while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

h.     engaged in a conspiracy with others doing business in the Class Jurisdictions that caused tortious damage in the Class Jurisdictions; and

i.     otherwise had the requisite minimum contacts with the Class Jurisdictions such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

11.     During the time encompassed by the violations alleged, Defendants sold and shipped substantial quantities of Vitamin C to businesses in the Class Jurisdictions. Those

4

businesses incorporated the Vitamin C into other products, and then sold those goods to consumers and businesses in the Class Jurisdictions.

## PARTIES

### A.    Plaintiffs

12.    Plaintiff Richard Keane is a resident of Queens County, New York who has indirectly purchased Vitamin C Products in New York, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

13.    Plaintiff Linda Philion is a resident of California. She indirectly purchased Vitamin C Products in California, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

14.    Plaintiff Viviane Melo is a resident of Broward County, Florida. She indirectly purchased Vitamin C Products in Florida, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

15.    Plaintiff Laurel Rose is a resident of Johnson County, Kansas. She indirectly purchased Vitamin C Products in Kansas, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

16.    Plaintiff Dennis Audette is a resident of Bristol County, Massachusetts. He indirectly purchased Vitamin C Products in Massachusetts, containing Vitamin C manufactured

5

by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

17.     Plaintiff Linda Kohlenberg is a resident of Oakland County, Michigan. She indirectly purchased Vitamin C Products in Michigan, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

18.     Plaintiff Christine Poon is a resident of Wayne County, Michigan. She indirectly purchased Vitamin C Products in Michigan, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

19.     Plaintiff Melissa Harris is a resident of Ramsey County, Minnesota. She indirectly purchased Vitamin C Products in Minnesota, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

20.     Plaintiff Timothy Purdy is a resident of Clark County, Nevada. He indirectly purchased Vitamin C Products in Nevada, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

21.     Plaintiff Joan Clark is a resident of Santa Fe County, New Mexico. She indirectly purchased Vitamin C Products in New Mexico, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

22.     Plaintiff Bernadette Iorio is a resident of Suffolk County, New York who has indirectly purchased Vitamin C Products in New York for personal use, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

23.     Plaintiff Ronald Kaufman is a resident of Mecklenburg County, North Carolina. He indirectly purchased Vitamin C Products in North Carolina, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

24.     Plaintiff Jennifer Clark is a resident of Burleigh County, North Dakota. She indirectly purchased Vitamin C Products in North Dakota, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

25.     Plaintiff Mark Kuchta is a resident of Minnehaha County, South Dakota. He indirectly purchased Vitamin C Products in South Dakota, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

26.     Plaintiff Kathleen Davis is a resident of Anderson County, Tennessee. She indirectly purchased Vitamin C Products in Tennessee, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

27.     Plaintiffs Heather and Cory Rosene are residents of La Crosse County, Wisconsin. They indirectly purchased Vitamin C Products in Wisconsin, containing Vitamin C

manufactured by one or more of the Defendants during the Class Period, and were injured by the anti-competitive conduct alleged in this Complaint.

28.     Plaintiff Kimberly Bischler is a resident of Haysville, Kansas who has indirectly purchased Vitamin C Products in Kansas, containing Vitamin C manufactured by one or more of the Defendants during the Class Period, and was injured by the anti-competitive conduct alleged in this Complaint.

**B.     Defendants**

29.     Defendant Hebei Welcome Pharmaceutical Co. Ltd. ("Hebei Welcome") is a Chinese corporation with operations in the Hebei province of China. Hebei Welcome is a joint venture between North China Pharmaceutical Holding Co. Ltd., Hong Kong Sanwei Intl. Co. Ltd., and Hong Kong Jinxian Co. Ltd. Hebei Welcome's main product is Vitamin C in the forms of crystalline, direct compressible, calcium, and sodium salts.

30.     Defendant North China Pharmaceutical Group Corp. ("NCPG") is a Chinese corporation based in the Hebei province of China. NCPG was founded in 1953 and is engaged in the business of manufacturing and selling Vitamin C, including through its subsidiaries. NCPG is the indirect parent of Hebei Welcome.

31.     Defendant Weisheng Pharmaceutical Co. Ltd. ("Weisheng") is a Chinese corporation based in the Hebei province of China. Weisheng is an affiliate of China Pharmaceutical Group Ltd.

32.     Defendant China Pharmaceutical Group Ltd. ("CPG") is a Hong Kong corporation. CPG was renamed from its former corporate name China Pharmaceutical Enterprise and Investment Corporation Ltd. on May 7, 2003. The shares of CPG are traded on the Hong Kong stock exchange. CPG owns, controls, and dominates its affiliate Weisheng and through it

is engaged in the business of manufacturing and selling Vitamin C. Collectively, Weisheng and CPG are referred to hereinafter as CPG.

33.    The acts alleged in this Complaint were, upon information and belief, authorized, ordered or done by officers, agents, employees, or representatives of each Defendant while actively engaged in the management of its business or affairs.

## CO-CONSPIRATORS

34.    Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made defendants in this Complaint (the "Co-Conspirators"), participated as Co-Conspirators in the violations alleged herein, and performed acts and made statements in furtherance of the combination in restraint of trade and unfair business practices alleged herein.

35.    Among these Co-Conspirators are Northeast Pharmaceutical Group Co., Ltd. ("NEPG") and Aland (Jiangsu) Nutraceutical Co., Ltd. ("Aland"). Both NEPG and Aland have been dismissed, and are no longer parties to this case.

## CLASS ACTION ALLEGATIONS

36.    This action is brought by Plaintiffs on behalf of themselves and pursuant to Fed. R. Civ. P. 23 as representatives of the following Classes (each Class Jurisdiction will be a subclass):

> All persons or entities, (but excluding all governmental entities, Defendants, their co-conspirators, and their respective subsidiaries or affiliates) residing in [Class Jurisdiction] who indirectly purchased Vitamin C Products for use or consumption and not for resale from within [Class Jurisdiction] at any time from December 1, 2001 to June 30, 2006.

37.    Although the exact size of each of the Classes is unknown, the total number of Class members in each state is in the millions. Based upon the nature of the trade and commerce

involved, the total number of Class members in each state is such that joinder of the claims of all Class members would be impracticable.

38.     Plaintiffs' claims are typical of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have no relevant conflicts of interest with other members of the Classes and have retained competent counsel experienced in class action and antitrust litigation.

39.     Common questions of law and fact exist, including:

a.     whether Defendants have engaged, and have combined with others to engage, in unfair and deceptive conduct;

b.     whether Defendants' unfair, deceptive and unlawful conduct has caused a legally cognizable injury to the Classes by increasing the prices paid by Class members for Vitamin C or products made with or from Vitamin C above what would have prevailed in a competitive market;

c.     whether Defendants' unfair, deceptive and unlawful conduct has caused a legally cognizable injury to the Classes by invading legally protected rights of Class members;

d.     the nature and extent of damages sustained by the Classes and the appropriate measure of damages for those injuries;

e.     whether the Classes are entitled to nominal damages or other relief requested; and

f.     whether Defendants actively concealed the violation alleged herein.

These and other questions of law and fact are common to the Classes and predominate over any questions affecting only individual Class members.

40.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein. The class action vehicle provides an efficient method for the enforcement of the rights of Plaintiffs and members of the Classes, and such litigation can be fairly managed. Plaintiffs know of no unusual problems of management and notice.

41.     It is desirable for the claims of Plaintiffs and members of the Classes, to be consolidated into a single proceeding so as to provide small claimants with a forum in which to seek redress for the violations of the laws of the Class Jurisdictions.

42.     The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure, including but not limited to providing claimants with a suitable method for the redress of their claims.

## **VITAMIN C**

43.     Vitamin C (also known as ascorbic acid) is a water-soluble vitamin. Vitamin C plays an important role in the biosynthesis of collagen in skin and of connective tissue, bones and teeth. It is believed to enhance the functioning of the immune system by acting as an antioxidant.

44.     The manufacture of Vitamin C is a multi-million dollar a year industry worldwide. Approximately 55% of global Vitamin C consumption is for pharmaceutical-related uses, 35% is for food and beverage uses, and the remaining 10% is for the feed industry. The United States market for Vitamin C exceeds $100 million per year. This conspiracy involving Vitamin C has thus affected millions of dollars worth of commerce in products found in nearly every American household.

45.     Defendants manufacture Vitamin C for bulk sales to customers. Defendants sell Vitamin C to food and pharmaceutical distributions and manufacturers in the United States for human consumption. Each of the Defendants produces in excess of 15,000 metric tons of Vitamin C annually. The Vitamin C manufactured by Defendants is then packaged for consumer use under major vitamin pill brand names.

46.     During the Class Period, Defendants dominated the international market for Vitamin C. Defendants' Vitamin C currently accounts for over 60 percent of the global Vitamin C market. During the Class Period, Defendants had a competitive advantage because of low manufacturing costs of $2.30 per kilogram or less and are the only manufacturers worldwide who can produce Vitamin C for a cost below $4.50 to $5 per kilogram. Manufacturers in China also enjoy a competitive advantage relative to manufactures in other nations because, during the Class Period, China employed a fixed currency exchange rate which undervalues the Yuan, making Chinese exports of Vitamin C to the United States less expensive.

## HISTORY OF VITAMIN C MARKET

47.     China began producing and exporting Vitamin C in the late 1950s. In 1969, Chinese scientists developed a two-stage fermentation process to manufacture Vitamin C, which resulted in a significant cost advantage compared to European producers. This technology began to be commercially employed in China in the 1980s.

48.     In the early period of Vitamin C manufacturing, Chinese manufacturers had a reputation for poor product quality. During the Class Period, however, Chinese manufacturers were able to sell at premium prices and supply full range of Vitamin C products, the great majority of which are of bulk ascorbic acid.

49.     In the 1990s, Chinese manufacturers did not play a major role in the Vitamin C market as three European manufacturers, F. Hoffmann La Roche, Ltd. ("Roche"), Merck KgaA ("Merck"), and BASF AG ("BASF"), and a Japanese company, Takeda Chemical Industries, Ltd. ("Takeda") dominated the worldwide Vitamin C market. During the period from 1990 to 1995, these companies engaged in their own conspiracy to suppress competition and fix prices for Vitamin C (the "First Vitamin C Conspiracy"). This conspiracy was addressed in the *In re*

*Vitamins Antitrust Litigation* and resulted in final settlements and judgments for the benefit of a certified class of vitamin purchasers.

50.     In the 1990s, competition from manufacturers of Vitamin C in China began to rise, and in late 1995 this increase in competition undermined the First Vitamin C Conspiracy until it reportedly disbanded.

51.     In 1995, thirteen Chinese Vitamin C manufacturers reportedly met and agreed to form their own cartel to limit production and stabilize prices of Vitamin C. This attempt to control the market reportedly failed.

52.     Toward the end of 1995, world Vitamin C prices slumped and were ultimately cut in half by early 1996. By 1997, the industry in China included as many as 22 competitors.

53.     The rest of the 1990s saw the Chinese Vitamin C industry go through a period of consolidation. Strong price competition by Chinese competitors reduced the number of competitors by driving European competitors from the market. The end result is an industry consisting primarily of the four manufacturers, Hebei Welcome, Aland, NEPG, and Weisheng.

## BACKGROUND OF ANTITRUST VIOLATIONS

54.     In 2001, the price of Vitamin C remained relatively low. By that time, Takeda had withdrawn from the market and sold its manufacturing capacity to BASF. European competitors Merck and Roche also indicated their intention to withdraw from the market. In addition, BASF announced that it would halt its new production line in Takeda, Japan. By the end of 2001, with the exception of Roche and BASF, all major Vitamin C competitors outside China were either acquired by other companies or simply dropped out of the business.

13

55.     By 2001, Defendants had captured approximately 60 percent of the worldwide market for Vitamin C. Defendants currently control 82 thousand metric tons – or approximately 68 percent of the worldwide production capacity for Vitamin C.

56.     Defendants' dominance in the market enabled the formation of a cartel to control the prices and volume of exports for Vitamin C, starting in or around December 2001. At a meeting of the Western Medicine Department of the Association of Importers and Exporters of Medicines and Health Products of China (the "Association") in December 2001, Defendants and the Association successfully reached an agreement in which Chinese manufacturers of Vitamin C agreed to control export quantities and achieve stable and enhanced price goals. The cartel members agreed to restrict their exports of Vitamin C in order to create a shortage of supply in the international market. The cartel members agreed to "restrict quantity to safeguard prices, export in a balanced and orderly manner and adjust dynamically." The agreements of the cartel members were facilitated by the efforts of the Association. Thus began an ongoing conspiracy to suppress competition by fixing the price and controlling the volume of Vitamin C for export to the United States and elsewhere (the "Second Vitamin C Conspiracy").

57.     Beginning by November 2001, Kong Tai, the manager of Aland, took the following acts in furtherance of a conspiracy to fix prices and control supply of Vitamin C sold in the United States, for example:

a.      In November and December, 2001, Kong Tai met and agreed with Du Chengxiang and Wang Rhenzi of NEPG, Feng Zhenying of Weisheng, and Zhang Yingren of Hebei Welcome to establish voluntary self-restraint measures for the export of Vitamin C, with the goal of "restricting quantity to safeguard prices." This agreement was entered into and

14

completely implemented by each Defendant, without government intervention.

b.    On November 3, 2002, Kong Tai met in Beijing with, among others, Du Chengxiang and Wang Renzhi of NEPG, Wang Qi of Aland, Feng Zhenying and Wang Yaguang of Weisheng, and Huang Pinqi and Zhang Yingren of Hebei Welcome. The participants at the meeting discussed market information about Vitamin C, including prices and export volumes. The meeting participants reached an agreement to restrict export volumes for the remainder of 2002 in order to maintain and increase Vitamin C prices.

c.    On January 23, 2003, Kong Tai met in Beijing with, among others, Du Chengxiang and Wang Renzhi of NEPG, Wang Cheng and Wang Qi of Aland, Feng Zhenying and Wang Yaguang of Weisheng, and Zhang Yingren of Hebei Welcome. The parties at the meeting exchanged market information on Vitamin C prices, sales information, and information about competitors. The meeting participants reached an agreement that restricted export volumes for the first quarter of 2003 in order to maintain and increase prices of Vitamin C. The Vitamin C manufacturers at the meeting also agreed to keep their production capacities level and to keep this information secret.

d.    On February 24, 2003, Kong Tai met at the Rainbow Hotel in Shanghai with, among others, Wang Renzhi of NEPG, Wang Qi of Aland, Feng Zhenying and Wang Yaguang of Weisheng, and Zhang Yingren of Hebei

Welcome. The participants at the meeting exchanged market information about Vitamin C, including prices. The meeting participants discussed an export price level of $11 per kilogram and reached agreement to fix domestic market prices for Vitamin C at a similar level.

e.     In April 2003, acting at the direction of Kong Tai, Wang Qi of Aland communicated with Weisheng and Hebei Welcome about maintaining prices of Vitamin C in the United States of $11 per kilogram.

f.     On June 11, 2003, Kong Tai agreed with the domestic manufacturers of Vitamin C in China to set a floor price for Vitamin C of $9.20 per kilogram in order to slow down a decline in Vitamin C prices.

g.     On July 26, 2003, Kong Tai met at the Qindao Regency Hotel with, among others, Wang Renzhi of NEPG, Wang Qi of Aland, Wang Yaguang of Weisheng, Zhang Yingren of Hebei Welcome and other companies. The participants at the meeting exchanged market information about Vitamin C, including export volumes and production capacities. The parties to the meeting unanimously agreed that it was necessary to continue to voluntarily limit export volumes of Vitamin C to protect market prices of Vitamin C. The meeting participants discussed how they had reached an earlier agreement on export prices of $9.20 per kilogram and Kong Tai stated that the agreement was cancelled going forward. Kong Tai further suggested that the Chamber of Medicines and Health Products communicate with the Chairman of each Vitamin C manufacturer to discuss future strategies.

16

h.    On September 3, 2003, Kong Tai participated in a meeting in Beijing with other manufacturers at which the parties discussed the Vitamin C market and proposals for limiting production, limiting export volume, and restrictions on pricing.

i.    On September 6, 2003, Kong Tai participated in a meeting in Qingdao with NEPG, Weisheng, Aland and Hebei Welcome and reached an agreement to maintain supply restrictions and prices for Vitamin C. The participants at the meeting exchanged market information about Vitamin C, including export volumes and Vitamin C prices.

58.    The formation of the cartel in November and December 2001 resulted in price increases of Vitamin C in the United States from approximately $2.50 per kilogram in December 2001 to as high as $7 per kilogram during December 2002. Defendant CPG reported in its 2003 annual report that average prices during 2002 rose from $3.20 per kilogram to $5.90 per kilogram, an increase of 84 percent. CPG also reported gross profit margins for its Vitamin C production of 60.2 percent in 2002, an increase of 28.1 percent.

59.    During the period of the charged combination and conspiracy, Defendants and their Co-Conspirators have participated in meetings and conversations in China and elsewhere in which the prices, volume of sales and exports to the United States, and markets for vitamins were discussed and agreed upon. These meetings have also been coordinated with trade association meetings for associations in which Defendants are members.

60.    At the above-described meetings and during the period of the conspiracy, Defendants and others agreed to and did eliminate, suppress, and limit competition, including by:

    a.       discussing the production volumes and prices of Vitamin C for export to the United States and elsewhere;

    b.       agreeing to control the supply of Vitamin C for export to the United States and elsewhere;

    c.       agreeing to increase and maintain prices of Vitamin C for the sale of Vitamin C in the United States and elsewhere; and

    d.       agreeing to control the worldwide market for Vitamin C.

61.     During the period of the cartel, executives from the Defendants have also warned each other against the adverse effects of the past price wars in Vitamin C.

62.     Defendants' illegal concerted conduct has been facilitated by their concentrated control over sales of Vitamin C. Together, Defendants' sales constitute approximately 80 percent of all Vitamin C sales in the world and virtually 100 percent of the manufacturers who can produce Vitamin C for a cost below $4.50 to $5 per kilogram.

63.     Although non-cartel members BASF and DSM (which acquired the interests of Roche) control 30 to 40 percent of the worldwide market for Vitamin C, the cartel has been successful because the European manufacturers have higher manufacturing costs for Vitamin C than Chinese manufacturers which sets a floor below which the European manufacturers cannot compete. Defendants understand that price levels may be stabilized at $6 per kilogram or higher - a price twice as high as 2004 prices - because the European manufacturers face costs of production of $4.5 to over $5 per kilogram. Further, as the cartel has taken steps to restrain production and increase prices, European competitors have shown that they would follow price increases rather than undercut the new cartel price levels.

64.     The collusive price fixing that began in 2002 helped contribute to remarkable price increases in 2003. Defendants' continued supply restrictions combined with unanticipated increases in world demand for Vitamin C in 2003, attributable in part to an outbreak of severe acute respiratory syndrome ("SARS") – which Vitamin C is believed to help in treating or preventing – in the Spring and Summer of 2003, pushed the price of Vitamin C even higher. Prices jumped to as high as $15 per kilogram in April 2003.

65.     By approximately the third quarter of 2003, although prices remained at extremely competitive levels, cartel members began opportunistically reducing prices to obtain increased sales in the enormously profitable market. Spikes in demand for Vitamin C increased the temptation among cartel members to undercut prices in order to obtain super-normal profits that were still substantially above competitive prices. Labeled a "price war" by the industry, the competition actually reflected price reductions at levels above collusively arranged prices.

66.     To address the price cutting, the Association called an "emergency meeting" in late November or early December 2003, which was attended by representatives from each Defendant. At the meeting, it was discussed how Defendants would rationalize the market and restrain and limit the production levels of Vitamin C to increase prices.

67.     In December 2003, Defendants and their representatives, together with members of the Association, met at the annual China Exhibition of World Pharmaceutical Ingredients. At this exhibition, Defendants and the Association met and devised plans to rationalize the market, limit production levels and increase prices. The Association also warned Defendants that it was impossible for any of them to monopolize the market to the detriment of the others.

68.     The emergency meeting called by the Association and other efforts by cartel members were successful. Prices for Vitamin C in December 2003 increased from a low of $4.20 per kilogram at the beginning of the month to over $9 per kilogram by the end of the month.

69.     In June of 2004, in reaction to price reductions from their highs in December 2003, Defendants agreed to also shut down production for equipment maintenance. Defendants have also continued to agree on export volumes to the United States. These supply restrictions again have had the result of stabilizing prices.

70.     Despite some price decreases in 2004, the collusive arrangements of the cartel have continued to maintain prices well above those of a competitive market.

71.     During the Second Vitamin C Conspiracy, Defendants have sold and shipped their Vitamin C to businesses that incorporate the Vitamin C into other products including, the production of vitamins packaged for consumer use. These businesses then sell Vitamin C Products to consumers and businesses in the Class Jurisdictions.

72.     At the above-described meetings and during the Class Period of the conspiracy, Defendants and their Co-Conspirators agreed to and did eliminate, suppress, and limit competition.

## DIRECT PURCHASER TRIAL

73.     Trial in the related Direct Purchaser Plaintiff action began on February 25, 2013 with Hebei Welcome, NCPG, Weisheng, and CPG as defendants.

74.     These parties actively participated in the trial, up until closing arguments. Just prior to closing arguments, Weisheng and CPG settled with Direct Purchaser Plaintiffs.

75.     The jury returned a verdict the day after closing arguments and awarded Direct Purchaser Plaintiffs their full estimation of damages: $54.1 million. The jury explicitly found, *inter alia*:

      a.    Hebei Welcome and NCPG knowingly entered into an agreement or conspiracy with the purpose or predictable effect of fixing the price or limiting the supply of Vitamin C.

      b.    Hebei Welcome and NCPG were neither actually compelled by the Government of China to enter into agreements fixing the price or limiting the supply of Vitamin C exported from China from the period of December 1, 2001 to June 30, 2006 nor did these Defendants face the prospect of penalties or sanctions for not complying with the directives or commands of the Chinese government in this regard.

76.     The same day the jury returned its verdict, the Court entered judgment, ordering Hebei Welcome and NCPG to pay trebled damages.

## IMPERMISSIBLE MARKET EFFECTS

77.     The contract, combination, and conspiracy alleged herein had the following effects, among others:

      a.    prices paid by Plaintiffs and members of the Classes for Vitamin C or products made with or from Vitamin C were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

      b.    indirect purchasers of Vitamin C or products made with or from Vitamin C were deprived of the benefits of free and open competition; and

c.      competition between and among Defendants and their Co-Conspirators in the sale of Vitamin C was unreasonably restrained.

78.      As a result, Plaintiffs and members of the Classes have been injured in their business and property in that they paid more for products made with or from Vitamin C than they otherwise would have paid in the absence of Defendants' unlawful contract, combination, and conspiracy.

## VIOLATIONS ALLEGED

## COUNT I

### Claims Under Arizona Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of Ariz. Rev. Stat. §§ 44-1401, et seq.

79.      Defendants Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

80.      By reason of the foregoing, Hebei Welcome, CPG, and their Co-Conspirators have acted in violation of Ariz. Rev. Stat. §§ 44-1401, et seq.

81.      During the Class Period, Hebei Welcome and CPG each directly or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Vitamin C in Arizona.

82.      The combination and conspiracy alleged herein has substantially affected trade and commerce throughout Arizona and has had, inter alia, the following effects:

a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Arizona;

b.      The supply of Vitamin C was improperly reduced;

c.      Vitamin C prices were raised, fixed, maintained, and stabilized at
artificially high, non-competitive levels throughout the state of Arizona;
and

d.      Members of the Arizona Indirect Purchaser Class were deprived of free
and open competition.

83.     As a direct and proximate result of Hebei Welcome and CPG's unlawful and
anticompetitive practices, including combinations and contracts to restrain trade and monopolize
the relevant markets, members of the Arizona Indirect Purchaser Class have been injured in their
business and/or property in that they paid supra-competitive, artificially inflated prices for
Vitamin C.

### Unjust Enrichment

84.     By engaging in the unlawful conduct described herein, Hebei Welcome and CPG
received higher prices for their Vitamin C that was sold to indirect purchasers in Arizona than
would have been possible absent the illegal conduct.

85.     Hebei Welcome and CPG were able to achieve their increased revenues and
profits from their sales of Vitamin C to Arizona indirect purchasers because the demand for
Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG
understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C
to indirect purchasers in Arizona was connected to and due to the increased prices paid for Hebei
Welcome and CPG's Vitamin C by indirect purchasers in Arizona.

86.     The enrichment of Hebei Welcome and CPG that occurred because of their illegal
activities was without legally cognizable justification. To the extent legal remedies do not

sufficiently accomplish disgorgement of Hebei Welcome and CPG's illegal profits from their sales to indirect purchasers in Arizona, Hebei Welcome and CPG should be ordered to make restitution for the benefit of Arizona indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT II

### Claims Under District of Columbia Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of D.C. Code §§ 28-4501, et seq.

87. Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

88. By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have acted in violation of D.C. Code §§ 28-4501, et seq.

89. Hebei Welcome and CPG's unlawful conduct has substantially affected District of Columbia commerce and had, inter alia, the following effects:

a. Vitamin C price competition was restrained, suppressed, and/or eliminated throughout the District of Columbia;

b. The supply of Vitamin C was improperly reduced;

c. Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout the District of Columbia; and

24

d.      Members of the District of Columbia Indirect Purchaser Class were

deprived of free and open competition.

90.     As a direct and proximate result of Hebei Welcome and CPG's unlawful and

anticompetitive practices, including combinations and contracts to restrain trade and monopolize

the relevant markets, members of the District of Columbia Indirect Purchaser Class have been

injured in their business and/or property in that they paid supra-competitive, artificially inflated

prices for Vitamin C.

**Violations of D.C. Code §§ 28-3901, et seq.**

91.     Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or

commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of,

allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-

competitive levels.

92.     The foregoing conduct constitutes "unlawful trade practices" within the meaning

of D.C. Code § 28-3904.

93.     Hebei Welcome and CPG's unlawful conduct had the following effects:

a.      Vitamin C price competition was restrained, suppressed, and/or eliminated

throughout the District of Columbia;

b.      The supply of Vitamin C was improperly limited, reduced and otherwise

manipulated;

c.      Vitamin C prices were raised, fixed, maintained, and stabilized at

artificially high, non-competitive levels throughout the District of

Columbia; and

25

       d.       Members of the District of Columbia Indirect Purchaser Class were

              deprived of free and open competition.

94.     Hebei Welcome and CPG, acting in their position as the dominate domestic producers of Vitamin C, placed members of the District of Columbia Indirect Purchaser Class in a grossly unequal bargaining position by foreclosing their ability to purchase Vitamin C at unrestrained, fair and competitive prices.

95.     As a direct and proximate result of Hebei Welcome and CPG's conduct, members of the District of Columbia Indirect Purchaser Class have been injured.

### Unjust Enrichment

96.     By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in the District of Columbia than would have been possible absent the illegal conduct.

97.     Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to District of Columbia indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in the District of Columbia was connected to and due to the increased prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in the District of Columbia.

98.     Hebei Welcome and CPG were enriched by their illegal activities at the expense of District of Columbia indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of District of Columbia indirect purchasers

because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

**COUNT III**

**Claims Under California Law**

**(Against Defendants Hebei Welcome and CPG)**

**Violations of California Business and Professions Code Section 16720, et seq.**

99.     Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

100.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have acted in violation of Section 16720, California Business and Professions Code.

101.    The combination and conspiracy alleged herein has had, inter alia, the following effects:

a.      Price competition in the sale of Vitamin C has been restrained, suppressed, and/or eliminated in California;

b.      The supply of Vitamin C was improperly reduced;

c.      Prices for Vitamin C sold by Hebei Welcome and CPG and their Co-Conspirators have been fixed, raised, stabilized, and maintained at artificially high, noncompetitive levels in California and throughout the United States; and

27

d.      Those that purchased Vitamin C directly or indirectly from Hebei Welcome and CPG and their Co-Conspirators have been deprived of the benefit of free and open competition.

102.    As a direct and proximate result of Hebei Welcome and CPG's unlawful conduct, Plaintiffs and the California Indirect Purchaser Class have been injured in their business and/or property in that they paid more for Vitamin C than they otherwise would have paid in the absence of Hebei Welcome and CPG's unlawful conduct.

**Violations of Cal. Bus. & Prof. Code. §§ 17200, et seq.**

103.    Hebei Welcome and CPG, and each of them, have acted in violation of Cal. Bus. & Prof. Code. §§ 17200, by engaging in a continuing unlawful trust and concert of, the substantial terms of which were to fix, raise, stabilize, and maintain prices of, allocate markets for, and restrain and manipulate the supply of Vitamin C at supra-competitive levels.

104.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators committed "unlawful, unfair or fraudulent business act[s] or practices[s]" in violation of California's Unfair Competition Law. Cal. Bus. & Prof. Code. §§ 17200, et seq.

105.    Hebei Welcome and CPG's unlawful conduct has substantially affected California commerce and had, inter alia, the following effects:

a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout California;

b.      The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

c.      Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout California; and

28

d.      Plaintiffs and members of the California Indirect Purchaser Class were

deprived of free and open competition.

106.    As a direct and proximate result of Hebei Welcome and CPG's unlawful

practices, including combinations and contracts to restrain trade and allocate relevant markets,

members of the California Indirect Purchaser Class have been injured in their business and/or

property in that they paid more for Vitamin C than they otherwise would have paid in the

absence of Hebei Welcome and CPG's unlawful conduct.

### Unjust Enrichment

107.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG

received higher prices for their Vitamin C that was sold to indirect purchasers in California than

would have been possible absent the illegal conduct.

108.    Hebei Welcome and CPG were able to achieve their increased revenues and

profits from their sales of Vitamin C to California indirect purchasers because the demand for

Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG

understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C

to indirect purchasers in California was connected to and due to the increased prices paid for

Hebei Welcome and CPG's Vitamin C by indirect purchasers in California.

109.    Hebei Welcome and CPG were enriched by their illegal activities at the expense

of California indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be

ordered to make restitution for the benefit of California indirect purchasers because it would be

unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at

illegally inflated prices.

## COUNT IV

### Claims Under Florida Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of F.S. §§ 501.201, et seq.

110.     Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

111.     By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators committed actions that constitute unfair and deceptive trade practices in violation of F.S. § 501.204, and substantially affecting trade and commerce throughout Florida.

112.     Hebei Welcome and CPG's unlawful conduct has substantially affected Florida commerce and had, inter alia, the following effects:

      a.     Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Florida;

      b.     The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

      c.     Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Florida; and

      d.     Plaintiffs and members of the Florida Indirect Purchaser Class were deprived of free and open competition.

113.     As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize

the relevant markets, Plaintiffs and members of the Florida Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Unjust Enrichment**

114.     By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Florida than would have been possible absent the illegal conduct.

115.     Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Florida indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Florida was connected to and due to the increased prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Florida.

116.     Hebei Welcome and CPG were enriched by their illegal activities at the expense of Florida indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Florida indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT V

### Claims Under Iowa Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of Iowa Competition Law §§ 553.1, et seq.

117.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

118.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators committed actions that constitute unfair and deceptive trade practices in violation of Iowa Competition Law §§ 553.1, et seq.

119.    Hebei Welcome and CPG's unlawful conduct has substantially affected Iowa commerce and had, inter alia, the following effects:

      a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Iowa;

      b.    The supply of Vitamin C was improperly reduced;

      c.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Iowa; and

      d.    Plaintiffs and members of the Iowa Indirect Purchaser Class were deprived of free and open competition.

120.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Iowa Indirect Purchaser State have been injured in their

business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

## Unjust Enrichment

121.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Iowa than would have been possible absent the illegal conduct.

122.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Iowa indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Iowa was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Iowa.

123.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of Iowa indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Iowa indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT VI

### Claims Under Kansas Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of K.S.A. §§ 50-101 et seq.

124.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of,

allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

125.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have engaged in a continuing contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Kansas antitrust statutes, K.S.A. §§ 50-101 et seq., substantially affecting trade and commerce throughout Kansas.

126.    Hebei Welcome and CPG's unlawful conduct has substantially affected Kansas commerce and had, inter alia, the following effects:

a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Kansas;

b.    The supply of Vitamin C was improperly reduced;

c.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Kansas; and

d.    Plaintiffs and members of the Kansas Indirect Purchaser Class were deprived of free and open competition.

127.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiffs and the Kansas Indirect Purchaser Class and have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Unjust Enrichment**

128.     By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Kansas than would have been possible absent the illegal conduct.

129.     Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Kansas indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Kansas was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Kansas.

130.     Hebei Welcome and CPG were enriched by their illegal activities at the expense of Kansas indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Kansas indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

<u>**COUNT VII**</u>

**Claims Under Maine Law**

**(Against Defendants Hebei Welcome and CPG)**

**Violations of 10 M.R.S.A. §§ 1101,** *et seq.*

131.     Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

132.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have committed actions that constitute continuing unfair and deceptive trade practices in violation of 10 M.R.S.A. §§ 1101, et seq.

133.    Hebei Welcome and CPG's unlawful conduct has substantially affected Maine's trade and commerce and had, inter alia, the following effects:

    a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Maine;

    b.    The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

    c.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Maine; and

    d.    Members of the Maine Indirect Purchaser Class were deprived of free and open competition.

134.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and reduce supply in the relevant markets, members of the Maine Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Violations of 5 M.R.S.A. §§ 205-A,** *et seq.*

135.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

36

136.     By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have committed actions that constitute continuing unfair and deceptive trade practices in violation of 5 M.R.S.A. §§ 205-A, et seq.

137.     Hebei Welcome and CPG's unlawful conduct has substantially affected Maine's trade and commerce and had, inter alia, the following effects:

      a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Maine;

      b.      The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

      c.      Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Maine; and

      d.      Members of the Maine Indirect Purchaser Class were deprived of free and open competition.

138.     As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and reduce supply in the relevant markets, members of the Maine Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Unjust Enrichment**

139.     By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Maine than would have been possible absent the illegal conduct.

140.     Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Maine indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Maine was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Maine.

141.     Hebei Welcome and CPG were enriched by their illegal activities at the expense of Maine indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Maine indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

**COUNT VIII**

**Claims Under Massachusetts Law**

**(Against Defendants Hebei Welcome, NCPG and CPG)**

**Violations of M.G.L.A. c. 93A, §§ 2, et seq.**

142.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

143.     By reason of the foregoing, Defendants and their Co-Conspirators engaged in "unfair methods of competition and unfair or deceptive acts or practices" in knowing and willful violation of M.G.L.A c. 93A, et seq.

144.     Defendants' unlawful conduct has substantially affected Massachusetts trade and commerce and had, inter alia, the following effects:

       a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Massachusetts;

       b.      The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

       c.      Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Massachusetts; and

       d.      Plaintiffs and members of the Massachusetts Indirect Purchaser Class were deprived of free and open competition.

145.    As a direct and proximate result of Defendants' unlawful practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Massachusetts Indirect Purchaser Class have been injured in their business and/or property in that they paid more for Vitamin C than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### Unjust Enrichment

146.    By engaging in the unlawful conduct described herein, Defendants received higher prices for their Vitamin C that was sold to indirect purchasers in Massachusetts than would have been possible absent the illegal conduct.

147.    The Defendants were able to achieve their increased revenues and profits from their sales of Vitamin C to Massachusetts indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Defendants understood. Thus, the ability of Defendants to profit from their sales of Vitamin C to indirect purchasers in Massachusetts was connected to and due to the illegally inflated prices paid for Defendants' Vitamin C by indirect purchasers in Massachusetts.

148.     Defendants were enriched by their illegal activities at the expense of Massachusetts indirect purchasers of Vitamin C and thus Defendants should be ordered to make restitution for the benefit of Massachusetts indirect purchasers because it would be unjust to allow Defendants to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT IX

**Claims Under Michigan Law**

**(Against Defendants Hebei Welcome and CPG)**

**Violations of M.C.L. §§ 445.771, et seq.**

149.     Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

150.     By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have engaged in a continuing contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Michigan antitrust statutes, M.C.L. §§ 445.771, et seq. (the Michigan Antitrust Reform Act, "MARA").

151.     Hebei Welcome and CPG's unlawful conduct has substantially affected Michigan trade and commerce and had, inter alia, the following effects:

a.     Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Michigan;

b.     The supply of Vitamin C was improperly reduced;

c.     Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Michigan; and

       d.     members of the Michigan Indirect Purchaser Class were deprived of free and open competition.

152.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Michigan Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

153.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Michigan indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Michigan was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Michigan.

154.    The enrichment of Hebei Welcome and CPG that occurred because of Hebei Welcome and CPG's illegal activities was without legally cognizable justification. As an ancillary equitable remedy under MARA, Hebei Welcome and CPG should be ordered to disgorge the profits illegally obtained from sales to Michigan indirect purchasers of Vitamin C.

155.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

## COUNT X

**Claims Under Minnesota Law**

**(Against Defendants Hebei Welcome and CPG)**

**Violations of Minn. Stat. §§ 325D.49 et seq.**

156.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

157.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators formed contracts, combinations or conspiracies in restraint of trade or commerce, in violation of Minnesota's Antitrust Law, Minn. Stat. §§ 325D.49 et seq.

158.    Hebei Welcome and CPG's unlawful conduct has substantially affected Minnesota trade and commerce and had, inter alia, the following effects:

    a.    Vitamin C price competition was restrained, suppressed, and eliminated throughout Minnesota;

    b.    The supply of Vitamin C was improperly reduced;

    c.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; and

    d.    Members of the Minnesota Indirect Purchaser Class were deprived of free and open competition.

159.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Minnesota Indirect Purchaser Class have been injured in

their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

## Unjust Enrichment

160.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Minnesota than would have been possible absent the illegal conduct.

161.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Minnesota indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Minnesota was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Minnesota.

162.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of Minnesota indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Minnesota indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XI

### Claims Under Nebraska Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of Neb. Rev. Stat. § 59-1601, et seq.

163.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of,

allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

164.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have committed actions that constitute continuing unfair and deceptive trade practices in violation of Neb. Rev. Stat. § 59-1601, et seq.

165.    Hebei Welcome and CPG's unlawful conduct has substantially affected Nebraska trade and commerce and had, inter alia, the following effects:

        a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Nebraska;

        b.      The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

        c.      Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Nebraska; and

        d.      Members of the Nebraska Indirect Purchaser Class were deprived of free and open competition.

166.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Nebraska Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Unjust Enrichment**

167.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Nebraska than would have been possible absent the illegal conduct.

168.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Nebraska indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Nebraska was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Nebraska.

169.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of Nebraska indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Nebraska indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XII

**Claims Under Nevada Law**

**(Against Defendants Hebei Welcome and CPG)**

**Violations of Nev. Rev. Stat. Ann. §§ 598A.010, et seq.**

170.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

171.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have engaged in a continuing contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Nevada antitrust statutes, Nev. Rev. Stat. Ann. §§ 598A.010, et seq.

172.    Hebei Welcome and CPG's unlawful conduct has substantially affected Nevada trade and commerce and had, inter alia, the following effects:

a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Nevada;

b.      Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Nevada;

c.      The supply of Vitamin C was improperly reduced; and

d.      Plaintiffs and members of the Nevada Indirect Purchaser Class were deprived of free and open competition.

173.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Nevada Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Unjust Enrichment**

174.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Nevada than would have been possible absent the illegal conduct.

46

175.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Nevada indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Nevada was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Nevada.

176.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of Nevada indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Nevada indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XIII

### Claims Under New Mexico Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of N.M.S.A. 1978, §§ 57-1-1, et seq.

177.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

178.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators formed contracts, combinations or conspiracies in restraint of trade or commerce, in violation of the New Mexico Antitrust Act, N.M.S.A. 1978, §§ 57-1-1, et seq.

47

179.    Hebei Welcome and CPG's unlawful conduct has substantially affected New Mexico trade and commerce and had, inter alia, the following effects:

a.      Vitamin C price competition was restrained, suppressed, and/or eliminated throughout New Mexico;

b.      Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout New Mexico;

c.      The supply of Vitamin C was improperly reduced; and

d.      Members of the New Mexico Indirect Purchaser Class were deprived of free and open competition.

180.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the New Mexico Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Violations of N.M.S.A. § 57-12-1, et seq.**

181.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

182.    The foregoing conduct constitutes "unconscionable trade practices" within the meaning of N.M.S.A. § 57-12-1, et seq.

183.    Hebei Welcome and CPG's unlawful conduct had the following effects:

a.     Vitamin C price competition was restrained, suppressed, and/or eliminated throughout New Mexico;

b.     The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

c.     Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout New Mexico; and

d.     Members of the New Mexico Indirect Purchaser Class were deprived of free and open competition.

184.   Hebei Welcome and CPG, by the design and intent of their conspiracy, intentionally took advantage, to a grossly unfair degree, of members of the New Mexico Indirect Purchaser Class's lack of knowledge, ability to know, experience and/or capacity to learn of Hebei Welcome and CPG's unconscionable trade practice.

185.   Hebei Welcome and CPG, acting in their position as the dominate domestic producers of Vitamin C, through their conspiracy, placed members of the New Mexico Indirect Purchaser Class in a grossly unequal bargaining position by foreclosing their ability to purchase Vitamin C at unrestrained, fair and competitive prices.

186.   As a direct and proximate result of Hebei Welcome and CPG's unconscionable trade practices, members of the New Mexico Indirect Purchaser Class have been injured.

**Unjust Enrichment**

187.   By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in New Mexico than would have been possible absent the illegal conduct.

188.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to New Mexico indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in New Mexico was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in New Mexico.

189.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of New Mexico indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of New Mexico indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XIV

### Claims Under New York Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of New York Gen. Bus. Law § 340, et seq. (The Donnelly Act)

190.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

191.    During the Class Period, Hebei Welcome and CPG each directly or indirectly and through affiliates dominated and controlled, manufactured, sold and/or distributed Vitamin C in the State of New York.

192.    The combination and conspiracy alleged herein has substantially affected trade and commerce throughout the State of New York and has had, inter alia, the following effects:

        a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout the State of New York;

        b.    The supply of Vitamin C was improperly reduced;

        c.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout the State of New York; and

        d.    Plaintiffs and members of the New York Indirect Purchaser Class were deprived of free and open competition.

193.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have acted in violation of New York Gen. Bus. Law. § 340, et seq.

194.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiffs and the New York Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

## COUNT XV

### Claims Under North Carolina Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of N.C. Gen. Stat. §§ 75-1, et seq.

195.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of,

allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

196.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the North Carolina antitrust statutes, N.C. Gen. Stat. §§ 75-1, et seq.

197.    Hebei Welcome and CPG's unlawful conduct has substantially affected North Carolina trade and commerce and had, inter alia, the following effects:

   a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout North Carolina;

   b.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout North Carolina;

   c.    The supply of Vitamin C was improperly reduced; and

   d.    Plaintiffs and members of the North Carolina Indirect Purchaser Class were deprived of free and open competition.

198.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiffs and the North Carolina Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

**Violations of N.C.G.S. §§ 75-1.1, et seq.**

199.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-

competitive levels. Hebei Welcome and CPG's deceptive conduct took place at least in part in North Carolina.

200.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators engaged in unfair methods of competition and unfair or deceptive acts or practices which affected North Carolina commerce in violation of N.C.G.S. § 75-1.1.

201.    Hebei Welcome and CPG's unlawful conduct had the following effects:

    a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout North Carolina;

    b.    The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

    c.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout North Carolina; and

    d.    Plaintiffs and members of the North Carolina Indirect Purchaser Class were deprived of free and open competition.

202.    As a direct and proximate result of Hebei Welcome and CPG's unlawful practices, including combinations and contracts to restrain trade and allocate the relevant markets, Plaintiffs and members of the North Carolina Indirect Purchaser Class have been injured in their business and/or property in that they paid more for Vitamin C than they otherwise would have paid in the absence of Hebei Welcome and CPG's unlawful conduct.

**Unjust Enrichment**

203.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in North Carolina than would have been possible absent the illegal conduct.

204.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to North Carolina indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in North Carolina was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in North Carolina.

205.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of North Carolina indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of North Carolina indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XVI

### Claims Under North Dakota Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of N.D. Cent. Code §§ 51-08.1-01, et seq.

206.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

207.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the North Dakota antitrust statutes, N.D. Cent. Code §§ 51-08.1-01, et seq., substantially affecting trade and commerce throughout North Dakota.

208.    Hebei Welcome and CPG's unlawful conduct has substantially affected North Dakota trade and commerce and had, inter alia, the following effects:

      a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout North Dakota;

      b.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout North Dakota;

      c.    The supply of Vitamin C was improperly reduced; and

      d.    Plaintiffs and members of the North Dakota Indirect Purchaser Class were deprived of free and open competition.

209.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the North Dakota Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

## COUNT XVII

### Claims Under South Dakota Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of S.D. Codified Laws Ann. §§ 37-1-3.1, et seq.

210.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

211.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators have engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the South Dakota antitrust statutes, S.D. Codified Laws Ann. §§ 37-1-3.1, et seq.

212.    Hebei Welcome and CPG's unlawful conduct has substantially affected South Dakota trade and commerce and had, inter alia, the following effects:

      a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout South Dakota;

      b.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout South Dakota;

      c.    The supply of Vitamin C was improperly reduced; and

      d.    Plaintiffs and members of the South Dakota Indirect Purchaser Class were deprived of free and open competition.

213.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the South Dakota Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

## Unjust Enrichment

214.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in South Dakota than would have been possible absent the illegal conduct.

56

215.     Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to South Dakota indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in South Dakota was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in South Dakota.

216.     Hebei Welcome and CPG were enriched by their illegal activities at the expense of South Dakota indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of South Dakota indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XVIII

### Claims Under Tennessee Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of Tenn. Code Ann. §§ 47-25-101, et seq.

217.     Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

218.     By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Tennessee antitrust statutes, Tenn. Code Ann. §§ 47-25-101, et seq.

219.    Hebei Welcome and CPG's unlawful conduct has substantially affected Tennessee trade and commerce and had, inter alia, the following effects:

    a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Tennessee;

    b.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Tennessee;

    c.    The supply of Vitamin C was improperly reduced; and

    d.    Members of the Tennessee Indirect Purchaser Class were deprived of free and open competition.

220.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, members of the Tennessee Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

## Unjust Enrichment

221.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Tennessee than would have been possible absent the illegal conduct.

222.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Tennessee indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C

to indirect purchasers in Tennessee was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Tennessee.

223.    Hebei Welcome and CPG were enriched by their illegal activities at the expense of Tennessee indirect purchasers of Vitamin C. Because the parties from whom indirect purchasers bought the Vitamin C directly were not, so far as indirect purchasers are aware, a party to Hebei Welcome and CPG's or involved in Hebei Welcome and CPG's illegal activities which caused the increased Vitamin C prices to Tennessee indirect purchasers, Hebei Welcome and CPG should be ordered to make restitution for the benefit of Tennessee indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XIV

### Claims Under Vermont Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of 9 V.S.A. §§ 2451, et seq.

224.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

225.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators engaged in a continuing combination and conspiracy in restraint of trade and commerce in violation of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451, et seq.

226.    Hebei Welcome and CPG's unlawful conduct has substantially affected Vermont trade and commerce and had, inter alia, the following effects:

a.     Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Vermont;

b.     The supply of Vitamin C was improperly limited, reduced and otherwise manipulated;

c.     Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Vermont; and

d.     Members of the Vermont Indirect Purchaser Class were deprived of free and open competition.

227.    Members of the Vermont Indirect Purchaser Class paid supra-competitive, artificially inflated prices or portions of the price for Vitamin C.

228.    As a direct, proximate and foreseeable cause of Hebei Welcome and CPG's conduct in violation of 9 V.S.A. §§ 2451, et seq., members of the Vermont Indirect Purchaser Class have been damaged in their property in that the price or a portion of the price which they have paid for or in respect of Vitamin C has been inflated to a supra-competitive level.

**Unjust Enrichment**

229.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Vermont than would have been possible absent the illegal conduct.

230.    Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Vermont indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C

to indirect purchasers in Vermont was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Vermont.

231.   Hebei Welcome and CPG were enriched by their illegal activities at the expense of Vermont indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Vermont indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## COUNT XV

### Claims Under West Virginia Law

### (Against Defendants Hebei Welcome and CPG)

### Violations of W. Va. Code §§ 47-18-1, et seq.

232.   Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

233.   By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the West Virginia antitrust statutes, W. Va. Code §§ 47-18-1, et seq.

234.   Hebei Welcome and CPG's unlawful conduct has substantially affected West Virginia trade and commerce and had, inter alia, the following effects:

a.   Vitamin C price competition was restrained, suppressed, and/or eliminated throughout West Virginia;

61

b.      Vitamin C prices were raised, fixed, maintained, and stabilized at

artificially high, non-competitive levels throughout West Virginia;

c.      The supply of Vitamin C was improperly reduced; and

d.      Members of the West Virginia Indirect Purchaser Class were deprived of

free and open competition.

235.    As a direct and proximate result of Hebei Welcome and CPG's unlawful and

anticompetitive practices, including combinations and contracts to restrain trade and monopolize

the relevant markets, members of the West Virginia Indirect Purchaser Class have been injured

in their business and/or property in that they paid supra-competitive, artificially inflated prices

for Vitamin C.

### Unjust Enrichment

236.    By engaging in the unlawful conduct described herein, Hebei Welcome and CPG

received higher prices for their Vitamin C that was sold to indirect purchasers in West Virginia

than would have been possible absent the illegal conduct.

237.    Hebei Welcome and CPG were able to achieve their increased revenues and

profits from their sales of Vitamin C to West Virginia indirect purchasers because the demand

for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG

understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C

to indirect purchasers in West Virginia was connected to and due to the illegally inflated prices

paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in West Virginia.

238.    Hebei Welcome and CPG were enriched by their illegal activities at the expense

of West Virginia indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be

ordered to make restitution for the benefit of West Virginia indirect purchasers because it would

be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

**COUNT XVI**

**Claims Under Wisconsin Law**

**(Against Defendants Hebei Welcome and CPG)**

**Violations of Wis. Stat. § 133.01, et seq.**

239.    Hebei Welcome and CPG agreed to, and did in fact, act in restraint of trade or commerce by unfairly and deceptively fixing, raising, stabilizing, and maintaining prices of, allocating markets for, and restraining and manipulating the supply of Vitamin C at supra-competitive levels.

240.    By reason of the foregoing, Hebei Welcome and CPG and their Co-Conspirators engaged in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in violation of the Wisconsin antitrust statutes, Wis. Stat. § 133.01, et seq.

241.    Hebei Welcome and CPG's unlawful conduct has substantially affected Wisconsin trade and commerce and had, inter alia, the following effects:

   a.    Vitamin C price competition was restrained, suppressed, and/or eliminated throughout Wisconsin;

   b.    Vitamin C prices were raised, fixed, maintained, and stabilized at artificially high, non-competitive levels throughout Wisconsin;

   c.    The supply of Vitamin C was improperly reduced; and

   d.    Plaintiffs and members of the Wisconsin Indirect Purchaser Class were deprived of free and open competition.

242.     As a direct and proximate result of Hebei Welcome and CPG's unlawful and anticompetitive practices, including combinations and contracts to restrain trade and monopolize the relevant markets, Plaintiffs and the Wisconsin Indirect Purchaser Class have been injured in their business and/or property in that they paid supra-competitive, artificially inflated prices for Vitamin C.

### Unjust Enrichment

243.     By engaging in the unlawful conduct described herein, Hebei Welcome and CPG received higher prices for their Vitamin C that was sold to indirect purchasers in Wisconsin than would have been possible absent the illegal conduct.

244.     Hebei Welcome and CPG were able to achieve their increased revenues and profits from their sales of Vitamin C to Wisconsin indirect purchasers because the demand for Vitamin C by indirect purchasers is relatively price inelastic, as Hebei Welcome and CPG understood. Thus, the ability of Hebei Welcome and CPG to profit from their sales of Vitamin C to indirect purchasers in Wisconsin was connected to and due to the illegally inflated prices paid for Hebei Welcome and CPG's Vitamin C by indirect purchasers in Wisconsin.

245.     Hebei Welcome and CPG were enriched by their illegal activities at the expense of Wisconsin indirect purchasers of Vitamin C and thus Hebei Welcome and CPG should be ordered to make restitution for the benefit of Wisconsin indirect purchasers because it would be unjust to allow Hebei Welcome and CPG to retain the benefits of their sales of Vitamin C at illegally inflated prices.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs pray that this Court:

A.      Determine that this action may be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, be given to all members of the Plaintiff Classes;

B.      Adjudge and decree that Hebei Welcome and CPG each engaged in an unlawful contract, combination, and conspiracy in restraint of trade or commerce in violation of the antitrust, deceptive and unfair trade practices, and consumer protection statutes of the Class Jurisdictions, and an unlawful civil conspiracy in violation of common law, substantially affecting trade or commerce throughout the United States, and that the Court award Plaintiffs and members of the Classes (i) actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; (ii) treble damages; and (iii) all other damages available under the laws of the Class Jurisdictions;

C.      Adjudge and decree that NCPG engaged in an unlawful contract, combination, and conspiracy in restraint of trade or commerce in violation of the antitrust and unfair trade practices statutes of Massachusetts, and an unlawful civil conspiracy in violation of common law, substantially affecting trade or commerce throughout the United States and in Massachusetts, and that the Court award members of the Massachusetts' Class (i) actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; (ii) treble damages; and (iii) all other damages available under the laws of Massachusetts;

65

D.      Adjudge and decree that Hebei Welcome and CPG have been unjustly enriched and that the Court return to Plaintiffs and members of the Classes the amount of such overpayments as damages or restitution;

E.      Adjudge and decree that NCPG has been unjustly enriched and that the Court return to members of the Massachusetts Class the costs of the suit, including reasonable attorneys' fees;

F.      Award Plaintiffs and the members of the Classes pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law;

G.      Grant such other and further relief as this Court deems to be just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims for which they are entitled to a jury trial.


Dated: February 14, 2014


Respectfully submitted,


/s/  *Timothy D. Battin*
Timothy D. Battin


Timothy D. Battin
Christopher Le
**Straus & Boies, LLP**
4041 University Drive, Fifth Floor
Fairfax, VA  22030
Tel: (703) 764-8700
Fax: (703) 764-8704
Email: Tbattin@straus-boies.com

Daniel E. Gustafson
Daniel C. Hedlund
Daniel J. Nordin
**Gustafson Gluek, PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
Email: Dhedlund@gustafsongluek.com

R. Alexander Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Tel: (415) 217-6810
Email: rick@saveri.com

**Interim Co-Lead Counsel for the Indirect
Purchaser Plaintiffs**