UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | MASTER FILE 06-MD-1738 (BMC) (JO) |
| This Document Relates To: | |
| ALL INDIRECT-PURCHASER ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANTS
WEISHENG PHARMACEUTICAL CO., LTD. AND CSPC PHARMACEUTICAL
GROUP LIMITED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ...............................................................................................1

        A.      Procedural History .............................................................................1

        B.      Weisheng and CSPC Settlement Agreement ....................................3

                1.      The Indirect Purchaser Class Settlement Fund ...................4

                2.      The Release from Indirect Purchaser Releasors ..................4

III.    STANDARD OF JUDICIAL APPROVAL FOR CLASS ACTION SETTLEMENT .......4

        A.      The Proposed Settlement is Procedurally Fair ...............................5

        B.      The Proposed Settlement is Substantively Fair .............................7

                1.      Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1) .............................................................................8

                2.      Reaction of the Class to the Settlement (*Grinnell* Factor 2) .....................9

                3.      Stage of the Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3) ...............................................................10

                4.      Risk of Establishing Liability, Damages, and in Maintaining the Class Action Through the Trial (Grinnell Factors 4, 5, & 6)...........................10

                5.      Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7).....................................................................................11

                6.      Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ...............................................................12

IV.     THE NOTICE PROGRAM SATISFIES DUE PROCESS ...............................14

V.      SETTLEMENT FUNDS WILL BE DISTRIBUTED CY PRES ....................15

VI.     FEES/EXPENSES ..........................................................................................17

VII.    SETTLING DEFENDANTS HAVE SATISFIED THE CAFA NOTICE REQUIREMENT...........................................................................................17

VIII.   CONCLUSION...............................................................................................17

# TABLE OF AUTHORITIES

## CASES

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 MD 06-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)................................5

*In re Ampicillin Antitrust Litig.*,
 82 F.R.D. 652 (D.D.C. 1979)........................................................13

*In re Baldwin United Corp.*,
 105 F.R.D. 475 (S.D.N.Y. 1985) ...................................................11

*In re Chambers Dev. Sec. Litig.*,
 912 F. Supp. 822 (W.D. Pa. 1995)..................................................13

*Brunson v. Louisiana-Pac. Corp.*,
 818 F. Supp. 2d 922 (D.S.C. 2011).................................................13

*Chatelain v. Prudential-Bache Sec., Inc.*,
 805 F. Supp. 209 (S.D.N.Y. 1992) ..................................................6

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ....................................................7, 13

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)......................................................5, 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
 No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................16

*In re Global Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ................................................7, 10

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000).........................................................7

*Ingles v. Toro*,
 438 F. Supp. 2d 203 (S.D.N.Y. 2006)................................................7

*In re Int'l Murex Techs. Corp. Sec. Litig.,*
    No. 93 CV 336, 1996 WL 1088899 (E.D.N.Y. Dec. 4, 1996)..........................................10

*In re Joint E. & S. Dist. Asbestos Litig.,*
    78 F.3d 764 (2d Cir. 1996)...................................................................................................6

*In re Joint E. & S. Dists. Asbestos Litig.,*
    878 F. Supp. 473 (E.D.N.Y. 1995) ......................................................................................6

*Lazy Oil v. Wotco Corp.,*
    95 F. Supp. 2d 290 (W.D. Pa. 1997)..................................................................................11

*In re Linerboard Antitrust Litig.,*
    296 F. Supp. 2d 568 (E.D. Pa. 2003) ..................................................................................8

*In re Lucent Techs., Inc., Sec. Litig.,*
    307 F. Supp. 2d 633 (D.N.J. 2004) ...................................................................................16

*McReynolds v. Richards-Cantave,*
    588 F.3d 790 (2d Cir. 2009).................................................................................................5

*Masters v. Wilhelmina Model Agency, Inc.,*
    473 F.3d 423 (2d Cir. 2007)...............................................................................................15

*In re Merrill Lynch Tyco Research Sec. Litig.,*
    249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................12

*In re Michael Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 57 (S.D.N.Y. 1993) .........................................................................................11

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................6, 11

*In re Newbridge Networks Sec. Litig.,*
    No. CIV.A.94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 22, 1998)................................12

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972)...............................................................................................12

iii

*Nichols v. Smithkline Beecham Corp.*,
    No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ......................................12

*In re PaineWebber Inc. Ltd. P'ships Litig.*,
    117 F.3d 721 (2d Cir. 1997)......................................................................................6, 15

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y 1997) ...............................................................................6, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05-MD-1720 (JG)(JO), 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008) ..........................15

*Plotz v. NYAT Maint. Corp.*,
    No. 98 Civ. 8860 (RLE), 2006 WL 298427 (S.D.N.Y. Feb. 6, 2006)...............................16

*In re Shopping Carts Antitrust Litig.*,
    MDL No. 451-CLB, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983)........................................8

*Snapp v. The Topps Co., Inc.*,
    No. 93-CV-0347 JG, 1997 WL 1068687 (E.D.N.Y. Feb. 12, 1997) ..................................9

*In re Sterling Foster & Co. Sec. Litig.*,
    238 F. Supp. 2d 480 (E.D.N.Y. 2002) ...........................................................................6

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) .............................................................................6

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...........................................................................5

*In re Vitamin C Antitrust Litig.*,
    584 F. Supp. 2d 546 (E.D.N.Y. 2008) ...........................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................ *passim*

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986) ...........................7, 9

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ........................................................................11

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ...........................................................................15

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ...............................................................8

**CODE**

28 U.S.C § 1711 ..................................................................................................17

28 U.S.C. § 1715 .................................................................................................17

**RULES**

Fed. R. Civ. P. 23 .................................................................................................4

**OTHER AUTHORITIES**

4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 90-92 (4th ed. 2002)...6

Indirect Purchaser Plaintiffs, by undersigned counsel, respectfully submit this memorandum in support of their motion for final approval of settlement with Weisheng Pharmaceutical Co., Ltd. ("Weisheng") and CSPC Pharmaceutical Group Limited, formerly known as China Pharmaceutical Group, Ltd., ("CSPC").

## I.      INTRODUCTION

On January 16, 2014, the Court preliminarily approved the settlement with Weisheng and CSPC (collectively, "Settling Defendants") in the amount of $2,200,000.  Indirect Purchaser Plaintiffs now seek final approval of the settlement under Federal Rule of Civil Procedure 23(e) because it is a fair and reasonable result for the class.  The settlement represents a substantial recovery in light of Settling Defendants' arguments related to sovereign compulsion and potential difficulties Indirect Purchaser Plaintiffs may encounter in attempting to collect a judgment.  Importantly, Settling Defendants sales remain in the case against the last remaining Defendants, Hebei Welcome Pharmaceutical Co., Ltd. and North China Pharmaceutical Group Corp.[1] (collectively, "non-settling Defendants").  The action is now stayed pending appeal against the non-settling Defendants.

As detailed below, the settlement is fair, reasonable, and adequate; well within the range of possible approval; and in the best interest of class members.  Indirect Purchaser Plaintiffs respectfully submit that the settlement with Settling Defendants should be finally approved by this Court pursuant to Rule 23(e).

## II.     BACKGROUND

### A.      Procedural History

---

[1] Plaintiffs bring claims against North China Pharmaceutical Group Corp. only under Massachusetts law.

1

In early 2005, Indirect Purchaser Plaintiffs began filing cases against the manufacturers of Vitamin C alleging Defendants conspired to unlawfully fix prices of Vitamin C to be exported to the United States and committed other unlawful practices designed to inflate the prices of Vitamin C sold to Indirect Purchaser Plaintiffs and other purchasers in the United States. On February 14, 2006, the Judicial Panel for Multidistrict Litigation transferred all of the related actions to this Court for coordinated pretrial proceedings. The Indirect Purchaser Plaintiffs filed an Amended Consolidated Class Action Complaint ("CAC") in November 2006. Dkt. No. 85. The CAC consolidated several complaints, but not all.

On June 30, 2006, Defendants filed several motions to dismiss on various grounds including lack of personal jurisdiction and foreign sovereign compulsion. Following the extensive briefing of these issues, Judge Trager denied Defendants' motion in November, 2008. *In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 559 (E.D.N.Y. 2008). During that time, Indirect Purchaser Plaintiffs engaged in joint merit discovery efforts with the Direct Purchaser Plaintiffs that concluded in September, 2008. In November, 2008, a stipulation was entered staying the Indirect Purchaser Plaintiffs' cases until a final judgment is entered by the Court in the Direct Purchaser action. Stipulation, Dkt. No. 340. In February 2013, the Direct Purchasers went to trial against the remaining Defendants and successfully obtained a jury verdict in favor of the Direct Purchasers and a judgment in the amount of $153,300,000. Judgment, Dkt. No. 676.

On April 1, 2013, the Court issued an Order stating that the stay in the Indirect Purchaser Actions shall remain in place, but allowed Indirect Purchaser Plaintiffs to file a motion to amend their pleadings. On May 1, 2013, Indirect Purchaser Plaintiffs filed their Motion to Amend Complaints, Hebei Welcome Pharmaceutical Co., Ltd. ("Hebei") subsequently filed an

opposition, and Indirect Purchaser Plaintiffs filed their reply.  Dkt. Nos. 700, 723, 759. On

January 31, 2014 the Court granted in part Indirect Purchaser Plaintiffs' motion to amend their

pleadings, and on February 14, 2014 Indirect Purchaser Plaintiffs' filed their Second Amended

Consolidated Complaint. Dkt. Nos. 832, 836. The Second Amended Consolidated Complaint

consolidated all the Indirect Purchaser Plaintiff complaints and added North China

Pharmaceutical Group Corp. as a defendant only as to the Massachusetts claims.

 Weisheng and CSPC are the third and fourth Defendants to settle with Indirect Purchaser

Plaintiffs.  In May 2012, Indirect Purchaser Plaintiffs settled with Aland (Jiangsu) Nutraceutical

Co., Ltd ("Aland") for $1,000,000, which was finally approved by this Court on October 23,

2012.  Dkt. No. 560.  In February 2013, Indirect Purchaser Plaintiffs settled with Northeast

Pharmaceutical Group Co., Ltd. ("NEPG") for $500,000 plus the cost of notice, which was

finally approved by this Court on October 2, 2013. Dkt. No.797.

 **B.**  **Weisheng and CSPC Settlement Agreement**

 After several months of vigorous arms-length negotiations, Indirect Purchaser Plaintiffs

reached an agreement with Settling Defendants in November 2013.  *See* Declaration of R.

Alexander Saveri in support of Plaintiffs' Motion for Final Approval ("Saveri Decl.") ¶¶ 2-3.  On

January 16, 2014, the Court preliminarily approved the terms of the Settlement Agreement and

certified the following class ("Settlement Class") for settlement purposes:

> All persons or entities, (but excluding all governmental entities, Defendants, their
> co-conspirators, and their respective subsidiaries or affiliates, and any person or
> entity that timely and validly elects to be excluded from the Settlement Class)
> residing in a Settling Jurisdiction who indirectly purchased Vitamin C Products
> for use or consumption and not for resale from within one or more Settling
> Jurisdictions at any time from December 1, 2001 to June 30, 2006.

*See* Declaration of R. Alexander Saveri in support of Plaintiffs' Motion for Preliminary Approval

("Saveri Preliminary Approval Decl.") Ex. A, Dkt. No. 807-2 ("Settlement Agreement"); Prelim.

Approval Order ¶ 3. For purposes of this settlement, "Vitamin C Products" means capsules or

tablets containing Vitamin C used for pharmacological purposes. Settlement Agreement ¶ 4;

Prelim. Approval Order ¶ 3. "Settling Jurisdictions" means California, New York, Arizona,

District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota,

Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee,

Vermont, West Virginia, and Wisconsin. Settlement Agreement ¶ 2; Prelim. Approval Order ¶ 3.

### 1.   The Indirect Purchaser Class Settlement Fund

Pursuant to the terms of the Settlement Agreement, Settling Defendants paid the

settlement amount of $2,200,000 into the escrow account. Settlement Agreement ¶¶ 22–23. All

interest earned on the settlement fund shall become and remain part of the settlement fund. *Id.* ¶

9.

### 2.   The Release from Indirect Purchaser Releasors

In consideration of payment to the Settlement Fund, the Weisheng and CSPC Releasees

will be completely released, acquitted, and forever discharged from any and all claims, demands,

actions, suits, causes of action, whether class, individual, or otherwise in nature, concerning the

pricing, production, development, marketing, sale or distribution of Vitamin C from the

beginning of time to the present. *Id.* ¶ 18. This includes claims based on the conduct alleged and

causes of action asserted, or that could have been asserted, in complaints filed in the Action by

the Settling Indirect Purchaser Plaintiffs. *Id.*

## III.   STANDARD OF JUDICIAL APPROVAL FOR CLASS ACTION SETTLEMENT

Under Rule 23(e), a class action "may be settled, voluntarily dismissed, or compromised

only with the court's approval." Fed. R. Civ. P. 23(e). "In order to approve such a settlement,

the court must assure itself that the settlement is 'fair, adequate, and reasonable, and not a product of collusion.'" *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000)), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).  In determining whether a settlement meets these criteria, courts often consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart*, 396 F.3d at 116.  The Second Circuit recognizes a "presumption of fairness, reasonableness, and adequacy . . . where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted).  "Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context." *Id.* (internal quotation marks omitted).

For the reasons explained below, Indirect Purchaser Plaintiffs respectfully submit that the proposed settlement agreement should be approved as fair, reasonable, and adequate. Additionally, the settlement was the result of informed and non-collusive negotiations.

## A.     The Proposed Settlement Is Procedurally Fair

Procedural fairness "must be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2009 WL 3077396, at *6 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks omitted).

The negotiations that led to the proposed settlement were conducted at arm's length by highly qualified counsel who sought to obtain the best possible result for their clients and each

class member, and thus are entitled to a presumption of fairness. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."); *see also In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002); *In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473, 492 (E.D.N.Y. 1995), *aff'd in part, vacated in part sub nom. In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996); 4 Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 90-92 (4th ed. 2002).

The settlement was the result of long and often difficult negotiations. *See* Saveri Decl. ¶¶ 2–4. In such cases, courts afford counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation itself. *See Joint E. & S. Dists. Asbestos*, 878 F. Supp. at 567 ("[Counsel's opinion] is particularly important where there have been hard fought negotiations by many skilled attorneys . . . in an entirely non-collusive manner."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y 1997) (stating that "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation marks omitted), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("A substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement.").

Indirect Purchaser Plaintiffs' Counsel had access to sufficient discovery to allow them to analyze and evaluate the contested legal and factual issues posed by the litigation so that an accurate valuation of Settling Defendants' position could be made. *See* Saevri Decl. ¶ 3; *see,*

*e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d

35 (2d Cir. 1986).  Co-Lead Counsel were well-informed of the facts of the case and the strength

of the claims asserted when the terms of the settlement agreement were negotiated.  Saveri Decl.

¶¶ 2-5, *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)

("Formal discovery is not a prerequisite; the question is whether the parties had adequate

information about their claims.").  Accordingly, the procedural integrity of the settlement process

creates a strong presumption that the settlement is fair, reasonable, and adequate.

### B.      The Proposed Settlement Is Substantively Fair

Nine factors guide courts in evaluating the substantive fairness of the settlement of a class

action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the
> trial; (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery; (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated*

*on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also*

*Wal-Mart*, 396 F.3d at 117 (approving use of *Grinnell* factors to determine fairness of class

action settlement).  In evaluating these factors, "[t]he Court must eschew any rubber stamp

approval in favor of an independent evaluation, yet, at the same time, it must stop short of the

detailed and thorough investigation that it would undertake if it were actually trying the case."

*Grinnell Corp.*, 495 F.2d at 462.  However, "[t]he weight given to any particular factor will vary

based on the facts and circumstances of the case."  *Ingles v. Toro*, 438 F. Supp. 2d 203, 211

(S.D.N.Y. 2006).  Here, the *Ginnell* factors favor approval.

1.      **Complexity, Expense, and Likely Duration of the Litigation (*Grinnell* Factor 1)**

"Federal antitrust cases are complicated, lengthy, and bitterly fought." *Wal-Mart*, 396 F.3d at 118; *see also In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." (citations omitted)); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought"); *In re Shopping Carts Antitrust Litig.*, MDL No. 451-CLB, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) ("[A]ntitrust price fixing actions are generally complex, expensive and lengthy.").

This litigation is no exception.  Pending since early 2005, Indirect Purchaser Plaintiffs in this action conducted an extensive analysis of the operations and pricing of multiple Chinese Vitamin C manufacturers in order to prove the existence of a worldwide price-fixing conspiracy and the damages that resulted from the same.  Navigating through extensive discovery, Indirect Purchaser Plaintiffs have reviewed and translated thousands of documents, participated in numerous depositions, and expended significant resources.  Saveri Decl. ¶ 5.  Further, the parties have engaged in extensive motion practice on a number of complex issues throughout the course of the litigation. *Id.*

The settlement is the result of hard-fought litigation against the Defendants and the Ministry of Commerce of China.  Even though the direct purchasers successfully obtained a jury verdict at trial against Hebei, Hebei continues to vigorously litigate its position on appeal, further evidence of Defendants' resolve. *See* Defs.' Notice of Mot. and Renewed Mot. for J. as a Matter of Law, Dkt. No. 688.  Unlike the Direct Purchasers, Indirect Purchaser Plaintiffs still face significant hurdles such as class certification, before even reaching a trial on the merits.  In

addition, even after a full determination of the claims, Indirect Purchaser Plaintiffs may face difficulty when trying to enforce the final judgment in China.  For all the forgoing reasons, the first *Grinnell* factor strongly favors approval of the settlement.

## 2.     Reaction of the Class to the Settlement (*Grinnell* Factor 2)

As of the objection deadline of April 16, 2014, Co-Lead Counsel have received one objection, but this is an objection to counsel's fee request and not an objection to the actual settlement.[2]  Dkt. No. 870.  Therefore, there are no objections to the settlement.  Even a few objectors out of a large settlement class would be an indication that a proposed settlement is fair.  *See Snapp v. The Topps Co., Inc.*, No. 93-CV-0347 JG, 1997 WL 1068687, at *2 (E.D.N.Y. Feb. 12, 1997); *see also Wal-Mart*, 396 F.3d at 118.   The fact that there are no objections as to the fairness of the settlement argues in favor of approving this settlement as substantively fair.

The deadline to request exclusion was April 16, 2014.  As of this date, only one request for exclusion was received by the claims administrator.  *See* Hyduk Decl. ¶ 8.  There was no reason given for the exclusion.  *Id.*, Exhibit E. The fact that there was only one request for exclusion, despite wide circulation of the notice, also argues in favor of approving this settlement.  *See, e.g.*, *D'Amato*, 236 F.3d at 86–87 (fact that there were 72 requests for exclusion out of 27,883 notices was a proper consideration favoring approval); *In re Warner Commc'ns*, 618 F. Supp. at 746 & n.4 (approving settlement and noting that 222 class members had requested exclusion out of 104,000 notices mailed).

---

[2] The arguments against the objection to attorneys' fees are explored in Indirect Purchaser Plaintiffs' Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses ("Fees Motion").

### 3.    Stage of the Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3)

The third *Grinnell* factor is designed to "assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *Global Crossing*, 225 F.R.D. at 458 (internal quotation marks omitted).  "[F]ull discovery is not a prerequisite for approval as long as the court is assured that the parties had sufficient information about the claims to evaluate intelligently the desirability of settlement." *In re Int'l Murex Techs. Corp. Sec. Litig.*, No. 93 CV 336 (JG), 1996 WL 1088899, at *4 (E.D.N.Y. Dec. 4, 1996); *see also Global Crossing*, 225 F.R.D. at 458–59.

Co-Lead Counsel were well-informed of the facts of the case and the strength of their claims against Settling Defendants when the agreement was entered into.  Saveri Decl. ¶¶ 4-5. At this point, the case is well advanced.  Indeed, Indirect Purchaser Plaintiffs have already completed extensive joint merit discovery efforts with the Direct Purchasers and the Court has resolved numerous legal issues. *Id.* This factor thus also strongly favors approval of the settlement.

### 4.    Risk of Establishing Liability, Damages, and in Maintaining the Class Action Through the Trial (*Grinnell* Factors 4, 5, & 6)

Co-Lead Counsel must continue to litigate against the remaining Defendants, and thus a detailed discussion of the potential weaknesses of the litigation is precluded. Even with the strongest case, Indirect Purchaser Plaintiffs face the risk that they may lose at certification or trial.  Settling Defendants are represented by excellent attorneys that would oppose Indirect Purchasers Plaintiffs' efforts to certify a class.  Although Indirect Purchaser Plaintiffs expect to prevail on a motion for class certification and on appeal, the risk of an adverse ruling—which would bar any recovery by the class—must be taken into account.  Similarly, Indirect Purchaser

Plaintiffs believe that they would be able to prove their claims and obtain a substantial recovery at trial, but they recognize that there is no certainty in prevailing on any claim.

Further, if certified, at trial Defendants will assert defenses that will turn on questions of proof, much of which would be the subject of complicated expert testimony, particularly with regard to damages. *See NASDAQ*, 187 F.R.D. at 476 (observing that "[d]amages at trial inevitably would involve a 'battle of the experts'" and noting that it is "difficult to predict with any certainty which testimony would be credited."). "'[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.'" *Lazy Oil v. Wotco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) (quoting *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970) (citing cases in which settlements were disapproved and plaintiffs subsequently lost at trial); *In re Baldwin United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1985) (comparing advantages of immediate cash payments with risks involved in long and uncertain litigation). Moreover, even after trial is concluded, there is the potential for one or more lengthy appeals. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 65 (S.D.N.Y. 1993) (noting that "[i]t must also be recognized that victory even at the trial stage is not a guarantee of ultimate success" and citing a case where a multimillion dollar judgment was reversed). Thus, the fourth, fifth and sixth *Grinnell* factors also favor approval of the settlement.

### 5. Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

The seventh *Grinnell* factor addresses the Defendant's ability to withstand a greater judgment. Settling Defendants may have the ability to withstand a greater judgment, but "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co.*, 262

F.R.D. 431, 447 (D.N.J. 2009). As a result, this factor does not weigh against approval of the settlement.

### 6. Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The determination of a reasonable settlement is not susceptible to a simple mathematical equation yielding a particular sum. Rather, "in any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). After analyzing the litigation risks, many of which were specific to Settling Defendants, Indirect Purchaser Plaintiffs and Settling Defendants agreed to a settlement figure of $2,200,000. The settlement represents a fair result for the class and falls well within the range of reasonableness.

Adjusting for relevant jurisdictions and product market, the settlement, including the value of notice, represents a recovery of approximately 45% of single damages based on Settling Defendants' sales. Saveri Decl. ¶ 6. This settlement compares favorably to many other settlements finally approved in complex litigation cases. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (finding a settlement for 3% of damages to be reasonable); *Nichols v. Smithkline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (upholding a settlement in the range of 9.3–13.9% of damages as "consistent with [the range] approved in other complex class action cases."); *In re Newbridge Networks Sec. Litig.*, No. CIV.A.94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 22, 1998) (approving settlement equal to 6-12% of potential damages in securities fraud class action, holding that such a figure "seems to be within the targeted range of reasonableness").

While Indirect Purchaser Plaintiffs believe their case is strong, Settling Defendants' have advanced formidable arguments related to sovereign compulsion. *See, e.g.*, *Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 926 (D.S.C. 2011) (finding that settlement affords class members prompt relief in light of significant legal and factual hurdles, while "continued litigation risks the possibility of little or no recovery for Plaintiffs."). In light of these and other risks inherent in any complex litigation, Indirect Purchaser Plaintiffs concluded that a "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, as evidenced by the direct purchaser trial and subsequent appeal to the Second Circuit, Defendants continue to mount vigorous defenses. The settlement here avoids the risk, delay and expense of further litigation with Settling Defendants.

Finally, because liability is joint and several under the antitrust laws of many of the class jurisdictions, Settling Defendants' sales remain in the case for purposes of assessing damage liability against non-settling Defendants. Saveri Decl. ¶ 7. Thus, this settlement does not prejudice the Indirect Purchaser Plaintiffs' ability to recover its full damages caused by the alleged conspiracy. Because liability under the Sherman Act is joint and several, settlements with a subset of Defendants do not prejudice Indirect Purchaser Plaintiffs' ability to recover treble damages from non-settling co-conspirators. *See In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Based upon the foregoing, the Settlement Agreement is a "fair, reasonable, and adequate" settlement of the Settlement Class's claims. *See Grinnell Corp.*, 495 F.2d at 462–63 (finding that the lower court had sufficient facts to approve the settlement offer).

## IV.    THE NOTICE PROGRAM SATISFIES DUE PROCESS

Due process requires that class members be given notice of, and an opportunity to be

heard regarding, a settlement.  As the Second Circuit has explained:

> The standard for the adequacy of a settlement notice in a class action under either
> the Due Process Clause or the Federal Rules is measured by reasonableness.
> There are no rigid rules to determine whether a settlement notice to the class
> satisfies constitutional or Rule 23(e) requirements; the settlement notice must
> fairly apprise the prospective members of the class of the terms of the proposed
> settlement and of the options that are open to them in connection with the
> proceedings. Notice is adequate if it may be understood by the average class
> member.

*Wal-Mart*, 396 F.3d at 113–14 (internal quotations and citations omitted).

On January 16, 2014, the Court authorized dissemination of notice on behalf of the

Indirect Purchaser Plaintiffs' Damages Settlement Class in the form of a summary notice for

publication. Indirect Purchaser Plaintiffs retained Rust Consulting and its subsidiary Kinsella

Media, LLC, recognized notice experts, which have extensive experience in providing

notification programs and administration services.  Hyduk Decl. ¶¶ 1–8.

The short form notice was published in issues of *Sports Illustrated* on March 5, 2014,

*Time* on March 7, 2014, and *People* on March 14, 2014.  Hyduk Decl. ¶ 3.  The notice was also

published through third-party websites to reach indirect purchasers of Vitamin C.  *Id.*  This

publication notice program was supplemented with a toll-free number and a website for class

members to obtain further information. *Id.* at ¶ 4.  This Court previously approved a publication

notice program in connection with the NEPG settlement. Order Approving Direct and Indirect

Purchaser Plaintiffs' Notice Plan and Form of Notice. Dkt. No. 696.

For the reasons set out above and more fully in the Hyduk Declaration, the notice

program satisfies due process requirements and constitutes the best notice practicable under the

circumstances. *Wal-Mart*, 396 F.3d at 114 ("There are no rigid rules to determine whether a

settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'") (citing *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (JG)(JO), 2008 WL 115104, at *15 (E.D.N.Y. Jan. 8, 2008) (describing requirements of constitutionally adequate notice).

## V.   SETTLEMENT FUNDS WILL BE DISTRIBUTED CY PRES

Whether an allocation plan is fair and reasonable is "squarely within the discretion of the district court." *In re PaineWebber*, 171 F.R.D. at 132.  In making this determination, courts give substantial weight to the opinions of experienced counsel. *Id.* at 133. Class counsel's opinion should therefore be afforded the same substantial weight. *Id.*

As explained in the Notice, a direct cash distribution to the Indirect Purchaser Plaintiffs' Damages Settlement Class is not practical as there are millions of members in the class. In the alternative, a cy pres plan of allocation is most appropriate due to the high cost of processing claims and distributing funds to potentially millions of claimants relative to the average claim award. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ("Federal courts have frequently approved [the Cy Pres] remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly.") (alteration in original).  A cy pres distribution allows the Court to put money that has been wrongfully obtained to its "*next best* compensation use . . . ." *Id.* (internal quotation marks omitted).  The Notice explained that the settlement funds will be distributed to charitable, not-for-profit, or governmental organizations. The Notices also explained that Class Counsel would recommend that the funds (less court approved fees and costs) be distributed one third each to Vitamin Angels, the State Center, and the American Antitrust Institute. *See* Hyduk Decl., Ex. A.

Following notice, courts also consider the class' reaction to the plan of allocation and whether any objections have been submitted. *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (citing *Maley v. Del Global Techs. Corp*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)). The Notice advised class members that they had until April 16, 2014, to object, and to date there has been only one objection, and it was not objecting to the plan of distribution. *See* Hyduk Decl., Ex. A, Dkt. No. 869. As a result, the lack of objections provides the court with further proof of the plan of allocation's reasonableness. *EVCI Career*, 2007 WL 2230177, at *11 (approving plan of allocation after noting that no objections had been received); *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) (noting reasonableness of allocation plan reflected in lack of objections following notice to class members).

Parties are also afforded significant leeway in fashioning a plan of allocation that puts the settlement funds to the next best use. *See Plotz v. NYAT Maint. Corp.*, No. 98 Civ. 8860 (RLE), 2006 WL 298427, at *2 (S.D.N.Y. Feb. 6, 2006) ("The distribution preference of class counsel should be entitled to deference . . . where the designated recipient is a legitimate and appropriate organization."). Therefore, Indirect Purchaser Plaintiffs recommend that the funds (less court approved fees and costs) be distributed one third each to Vitamin Angels, the State Center, and the American Antitrust Institute. All three are non-profit organizations dedicated to the improvement of the public welfare. *See* Saveri Preliminary Approval Decl., Exhs. E-G. Given the impracticalities of a cash distribution to the class, distribution to these three non-profit organizations is the "next best" use for the funds.

If Indirect Purchaser Plaintiffs reach additional settlements with non-settling Defendants, or the case is resolved through trial or dispositive ruling, or the Court deems it appropriate,

Indirect Purchaser Plaintiffs will distribute any additional settlement funds to cy pres recipients approved by the Court.

## VI.    FEES/EXPENSES

As explained in the Notice, counsel for Indirect Purchaser Plaintiffs are seeking an award of attorneys' fees and reimbursement of expenses. *See* Fees Motion.

## VII.   SETTLING DEFENDANTS HAVE SATISFIED THE CAFA NOTICE REQUIREMENT

The Class Action Fairness Act, 28 U.S.C § 1711 *et seq.* ("CAFA"), requires settling defendants to serve notice of a proposed settlement on the "appropriate" state and federal officials after a proposed class action settlement is filed with the court.  28 U.S.C. § 1715(b). CAFA also provides a 90-day window following service of such notice within which the noticed officials may review the settlement before a court may grant approval of the settlement.  *Id.* § 1715(d).  Settling Defendants' CAFA notice was mailed on December 20, 2013.  *See* Declaration of Jiangxiao Athena Hou Certifying Compliance with Notice Requirement of 28 U.S.C § 1715, Dkt. 813.

## VIII.  CONCLUSION

For all the foregoing reasons, Indirect Purchaser Plaintiffs respectfully request that the Court grant final approval of the settlement with Weisheng and CSPC and approve the cy pres plan of allocation.

Dated: April 25, 2014                        Respectfully submitted,

*/s/ Daniel E. Gustafson*                     */s/ Timothy Battin*
Daniel E. Gustafson                           David Boies
Daniel C. Hedlund                             Timothy Battin
**GUSTAFSON GLUEK, PLLC**                     **STRAUS & BOIES, LLP**
Canadian Pacific Plaza                        4041 University Drive, Fifth Floor
120 South Sixth Street, Suite 2600            Fairfax, VA 22030

Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622

Tel: (703) 764-8700
Fax: (703) 764-8704

*/s/ R. Alexander Saveri*
R. Alexander Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Tel: (415) 217-6810
Fax: (415) 217-6813

*Co-Lead Counsel for the Putative Settlement Class*